**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DELOITTE CONSULTING LLP and DELOITTE DEVELOPMENT LLC, )<br><br>Plaintiffs, )<br><br>v. )<br><br>SAGITEC SOLUTIONS, LLC, )<br><br>Defendant. ) | )<br>)<br>)<br>)<br>)<br>) C.A. No. 23-325-MN<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION,
OR IN THE ALTERNATIVE, TRANSFER VENUE**

Dated:  May 15, 2023

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert Vrana (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

OF COUNSEL:
Christopher K. Larus
David A. Prange
Rajin S. Olson
Brandon A. Carmack
ROBINS KAPLAN LLP
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500
clarus@robinskaplan.com
dprange@robinskaplan.com
rolson@robinskaplan.com
bcarmack@robinskaplan.com

*Attorneys for Sagitec Solutions, LLC*

## <u>TABLE OF CONTENTS</u>

NATURE AND STAGE OF PROCEEDINGS ............................................................................. 1

SUMMARY OF ARGUMENT .................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ........................................................................................................................... 5

I.     SAGITEC IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE
      DISTRICT OF DELWARE .............................................................................................. 5

     A.    Deloitte Fails to Show Sagitec Is Subject to General Personal Jurisdiction
          as Required by Subsection (c)(4) of the Delaware Long-Arm Statute. ................. 7

     B.    Deloitte Fails to Show Sagitec Is Subject to Specific Personal Jurisdiction
          as Required by Subsections (c)(1) and (c)(2) of the Delaware Long-Arm
          Statute. ............................................................................................................... 7

          1.    Sagitec has not purposefully directed its activities at the State of
                 Delaware. ................................................................................................ 8

          2.    Deloitte's claims do not arise out of Sagitec's alleged contacts with
                 Delaware. .............................................................................................. 11

     C.    Even if Deloitte Had Established a Statutory Basis for Exercising General
          or Specific Jurisdiction, Deloitte Fails to Show the Exercise of Personal
          Jurisdiction Comports with Constitutional Due Process. ..................................... 13

II.    ALTERNATIVELY, THIS COURT SHOULD TRANSFER THIS ACTION TO
      THE DISTRICT OF MINNESOTA. .............................................................................. 15

     A.    Deloitte Could Have Brought This Action in the District of Minnesota. ............. 15

     B.    *Jumara* Private Interest Factors Favor Transfer to the District of
          Minnesota .......................................................................................................... 16

          1.    Deloitte's forum preference should be afforded little weight
                 because Deloitte's principal place of business is not in Delaware. ........... 16

          2.    The fact that Sagitec's preferred forum is the District of Minnesota
                 favors transfer ........................................................................................ 16

          3.    The fact that the claims arose in Minnesota, not Delaware, favors
                 transfer. ................................................................................................. 17

          4.    The convenience of the parties favors transfer. ....................................... 17

5.      The convenience of the witnesses is neutral. ...............................................18

6.      The location of books and records favors transfer. ....................................18

C.      The *Jumara* Public Factors Favor Transfer ..........................................................19

1.      Practical considerations that could make trial easy, expeditious, or inexpensive favor transfer. .........................................................................19

2.      The local interest of the for a favors transfer. ...........................................19

3.      Enforceability of the judgement, administrative difficulty arising from court congestion, public policies of the fora, and familiarity of state law should not have any weight in this case. ...............................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AstraZeneca AB v. Mylan Pharmaceuticals, Inc.*,
   72 F. Supp. 3d 549 (D. Del. 2014)...................................................................................8, 12

*Boston Sci. Corp. v. Wall Cardiovascular Techs., LLC*,
   647 F. Supp. 2d 358 (D. Del. 2009)........................................................................................6

*BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*,
   229 F.3d 254 (3d Cir. 2000)........................................................................................ *passim*

*Bristol-Myers Squibb v Superior Court of Cal., San Francisco Cty.*,
   582 U.S. 255 (2017)...............................................................................................................14

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..................................................................................................................6

*Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*,
   C.A. No. 21-1365-GBW, 2022 WL 16921988 (D. Del. Nov. 14, 2022)...........................15, 16

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)........................................................................................................6, 7, 15

*Element Fin. Corp. v. ComQi, Inc.*,
   52 F. Supp. 3d 739 (E.D. Pa. 2014) .......................................................................................9

*Endeavor Meshtech, Inc. v. Itron, Inc.*,
   C.A. No. 13-1343-GMS, 2014 WL 11788638 (D. Del. June 4, 2014)...................................18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..............................................................................................................1, 7

*Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*,
   988 F.2d 476 (3d Cir. 1993)...................................................................................................9

*Hepp v. Facebook*,
   14 F.4th 204 (3d Cir. 2021) ....................................................................................................8

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995)....................................................................................2, 15, 16, 19

*Katz v. Apuzzo*,
   C.A. No. 17-1328 MN, 2019 WL 3219513 (D. Del. July 17, 2019) ............................. *passim*

*Linex Techs., Inc. v. Hewlett Packard Co.*,
   No. 11-400-GMS, 2013 WL 105323 (D. Del. Jan. 7, 2013) ..................................................19

iii

*Mekiki Co., Ltd. v. Facebook, Inc.*,
    C.A. No. 09-745-JAP, 2010 WL 2348740 (D. Del. June 7, 2010)...........................................16

*Mitel Networks Corp. v. Facebook, Inc.*,
    943 F. Supp. 2d 463 (D. Del. 2013)........................................................................................16

*Myers v. Am. Dental Ass'n*,
    695 F.2d 716 (3d Cir. 1982)......................................................................................................5

*of Nation Safe Drivers Employee Stock Ownership Plan v. Wilmington Tr., N.A.*,
    473 F. Supp. 3d 366 (D. Del. 2020)........................................................................................20

*Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n*,
    819 F.2d 434 (3d Cir. 1987)......................................................................................................6

*RMG Media, LLC v. iBoats, Inc.*,
    C.A. No. 20-290-RGA, 2021 WL 1227730 (D. Del. Mar. 31, 2021)......................................15

*Robert Bosch LLC v. Alberee Prod., Inc.*,
    70 F. Supp. 3d 665 (D. Del. 2014)............................................................................................5

*Shoemaker v. McConnell*,
    556 F. Supp. 2d 351 (D. Del. 2008)........................................................................................12

*SMC Corp. of Am., Inc. v. King Indust. of Valley, Inc.*,
    IP 02-0752-C-M/S, 2003 WL 21398103 (S.D. Ind. June 12, 2003)................................10, 11

*Turner v. Prince Georges Cty. Pub. Sch.*,
    694 F. App'x 64 (3d Cir. 2017) ................................................................................................2

*Turner v. Shirey*,
    C.A. No. 16-3886, 2017 WL 1709811 (E.D. Pa. May 2, 2017) ................................................8

*United States v. United States Sugar Corp.*,
    C.A. No. 21-1644-MN, 2022 WL 354228 (D. Del. Jan. 11, 2022) ..................................17, 19

*Wacoh Co. v. Kionix Inc.*,
    845 F. Supp. 2d 597 (D. Del. 2012)....................................................................................18, 20

*Walden v. Fiore*,
    571 U.S. 277 (2014)............................................................................................................9, 11

## Statutes

10 Del. C. § 3104(c)...................................................................................................... *passim*

28 U.S.C. § 1391(b)(1) ......................................................................................................15

28 U.S.C. § 1404(a) ..........................................................................................................15

28 U.S.C. § 1331 ..................................................................................................15

28 U.S.C. § 1338 ..................................................................................................15

28 U.S.C. § 1367 ..................................................................................................15

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) ..............................................................1, 5

## NATURE AND STAGE OF PROCEEDINGS

On March 23, 2023, Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC (collectively, "Deloitte") sued Defendant Sagitec Solutions LLC ("Sagitec") for copyright infringement, trade secret misappropriation, unfair competition, and unjust enrichment. D.I. 1. On April 12, 2023, the Court granted Deloitte's unopposed motion to extend the time for Sagitec to move against, answer, or otherwise respond to Deloitte's Complaint by May 15, 2023. D.I. 10.

## SUMMARY OF ARGUMENT

1. This case should be dismissed under Rule 12(b)(2) because Sagitec is not subject to personal jurisdiction in Delaware. Fed. R. Civ. P. 12(b)(2). First, there is no general personal jurisdiction over Sagitec as required to satisfy subsection (c)(4) of the Delaware Long-Arm Statute addressing out-of-state tortious conduct. *See* 10 Del. C. § 3104(c)(4); *Katz v. Apuzzo*, C.A. No. 17-1328 MN, 2019 WL 3219513, at *2 (D. Del. July 17, 2019). General personal jurisdiction exists when a corporation's affiliations with the forum state are "so continuous and systematic as to render [the Defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Sagitec is not incorporated in Delaware. Sagitec's principal place of business, and headquarters, are in St. Paul, Minnesota, not Delaware. There are no continuous or systematic contacts, and there is no general jurisdiction.

2. Second, there is no specific personal jurisdiction over Sagitec as required to satisfy subsections (c)(1) or (c)(2) of the Delaware Long-Arm Statute addressing business or contracts in the state of Delaware. *See* 10 Del. C. § 3104(c) (1-2); *Katz*, 2019 WL 3219513, at *2. Courts maintain specific jurisdiction over a nonresident defendant when the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or [are] related to those activities." *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) (citation omitted). Beyond conclusory

1

allegations, Deloitte identifies only a single contract with the Delaware Department of Labor. Deloitte's alleged contacts are insufficient because all communications giving rise to the contract and business associated with the lone Delaware contract occurred outside of Delaware and the contemplated future consequences were minimal. More significantly, the contacts alleged are unrelated to the alleged conduct and alleged injuries giving rise to Deloitte's claims, which all purportedly occurred outside of Delaware. There is no personal jurisdiction over Sagitec.

3.      Third, even if there were general or specific personal jurisdiction for purposes of the Delaware Long-Arm Statute, this action should still be dismissed because Deloitte's alleged contacts fail to satisfy the Due Process Clause. The Due Process Clause "requires that a non-resident defendant have certain minimum contacts with a forum state – contacts that would provide the defendant 'fair warning' that he might be sued there – before a federal court in that forum can constitutionally exercise personal jurisdiction over that defendant." *Turner v. Prince Georges Cty. Pub. Sch.*, 694 F. App'x 64, 65-66 (3d Cir. 2017) (citation omitted). The contacts Deloitte cites fail to provide "fair warning" to Sagitec and fail to satisfy the Due Process Clause.

4**.**      Alternatively, this Court should transfer this action to the District of Minnesota under the private and public factors set forth in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). This case involves a New York-based company (Deloitte) suing a Minnesota-based company (Sagitec) with key employees, documents, and electronic information in Minnesota and other locations, regarding software developed in Minnesota and India. Nothing is located in Delaware. This action could have been brought in Minnesota, and it is more convenient to the parties to litigate in Minnesota. If this Court denies Sagitec's motion to dismiss for lack of personal jurisdiction, the case should be transferred.

## STATEMENT OF FACTS

1.      Sagitec is a Nevada limited liability company with its headquarters and principal

2

place of business in St. Paul, Minnesota. Sagitec is a global technology solutions company delivering dynamic IT solutions to leading public and private organizations, including states. Declaration of Chris Peretto [hereinafter, "Peretto Decl."] ¶ 1; DI. 1 ¶ 50. Sagitec does not have offices, facilities, employees, a local telephone number, or bank accounts in Delaware. Sagitec does not own any real or personal property in Delaware. Peretto Decl. ¶ 3.

2.      Deloitte accuses Sagitec of copyright infringement, trade secret misappropriation, unfair competition, and unjust enrichment arising from Sagitec's hiring of two former Deloitte employees in 2013. D.I. 1 ¶¶ 61-103. The two former Deloitte employees, David Minkkinen and Sivaraman Sambasivam, were hired from Deloitte's Minneapolis/St. Paul Office, and they were located in Sagitec's St. Paul office. Peretto Decl. ¶ 2. D.I. 1 ¶ 5.

3.      Deloitte accuses Sagitec of infringing its copyrights and using its trade secrets to develop a complete unemployment insurance system comprising software known as Neosurance. *Id*. Sagitec's development of Neosurance software occurred in Minnesota and India. Peretto Decl. ¶¶ 6, 9. No development of Neosurance software occurred in Delaware. *Id.* Individuals knowledgeable of Neosurance software development and architecture include Rick Deshler and Sindhu Nair, who are located in Minnesota. *Id.* ¶ 6-7.

4.      Documentation, and servers storing electronic documents, are located in Minnesota, Colorado, and Kansas. The Neosurance source code is securely stored on servers located in Kansas. There are no Sagitec servers, documents, or source code located in Delaware. *Id.* ¶ 4. The production software is hosted on servers outside of Delaware. *Id.* ¶ 4.

5.      Sagitec has sold a single IT software solution to Delaware that addresses pandemic unemployment benefit processing. *Id.* ¶ 10. Specifically, Sagitec sold its Pandemic Unemployment Assistance ("PUA") software to Delaware's Department of Labor. *Id.* The PUA

software was not a full unemployment insurance system like Neosurance, but instead was limited to collecting pandemic unemployment-related information from a given Delaware citizen and providing to the Delaware Department of Labor pandemic-related unemployment calculations and information for that Delaware citizen. *Id.*

6.      The initial contact that led to the PUA sale occurred at a conference in Kansas City. *Id.* ¶ 11. Thereafter, the Delaware Department of Labor requested that Sagitec provide a proposal for creating a custom PUA software for Delaware. *Id.* All subsequent communications between Sagitec and the Delaware Department of Labor occurred remotely. *Id.* There were no in-person communications in Delaware. *Id.* Sagitec employees have not physically visited Delaware at any time relating to the PUA Contract. *Id.*

7.      Development of the PUA software occurred in Minnesota and India. *Id.* ¶ 13. The PUA production software is hosted on servers located in Virginia. *Id.* The PUA software source code and production application software is not stored or located in Delaware. *Id.* Because the PUA software is remotely hosted and accessible, the Delaware Department of Labor does not download or otherwise apply any aspects of the PUA software onto Delaware hardware. *Id.* ¶ 15. Sagitec does not ship any products or software, nor provide any physical hardware to Delaware or its residents through the PUA software website. *Id.* ¶ 14.

8.      Effective May 1, 2020, Sagitec and the Delaware Department of Labor memorialized the sale through an agreement that contemplated a limited, four-year relationship (the "PUA Contract"). *Id* ¶10. All ongoing support, training, and maintenance of the PUA software occurs remotely. *Id.*

9.      Sagitec has never promoted its IT solutions, including Neosurance or PUA, to private businesses located in Delaware. *Id.* ¶ 16. Other than the PUA software, which did not

4

result from a competitive bidding process, Sagitec submitted one proposal to Delaware in February 2023 to implement a bespoke custom-developed unemployment insurance software. *Id.* Sagitec has not had any substantive communications with the Delaware Department of Labor about that proposal. *Id.* Sagitec has not marketed or otherwise bid for other contracts with any private or public organizations in Delaware. *Id.* Further, Sagitec, including its employees, has never physically visited Delaware to market its IT solutions. *Id.* ¶¶ 11, 16.

## ARGUMENT

### I.   SAGITEC IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE DISTRICT OF DELWARE.

Sagitec is not subject to the personal jurisdiction of this Court. "Because federal courts are courts of limited jurisdiction, a presumption arises that they are without jurisdiction until the contrary affirmatively appears." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982) (citation omitted). "When a defendant challenges a court's exercise of personal jurisdiction under Rule 12(b)(2), 'the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence and must do so by establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Katz*, 2019 WL 3219513, at *1 (quoting *Turner*, 694 F. App'x 64 at 66).

"Two requirements, one statutory and one constitutional, must be satisfied for personal jurisdiction to exist over a defendant." *Id.*, at *2 (citation omitted). Specifically, a federal district court may exercise personal jurisdiction over an out-of-state defendant only if (1) personal jurisdiction exists under the forum state's long-arm statute, and (2) exercising jurisdiction over the out-of-state defendant would be consistent with the limitations of the Due Process Clause. *Robert Bosch LLC v. Alberee Prod., Inc.*, 70 F. Supp. 3d 665, 672 (D. Del. 2014).

The Delaware Long-Arm Statute has six subsections. *See* 10 Del. C. § 3104(c)(1)-(6).

5

The potentially relevant subsections here are (c)(1) ("Transacts any business or performs any character of work or service in the State"), (c)(2) ("Contracts to supply services or things in this State"), and (c)(4) ("Causes tortious injury in the State or outside the State by an act or omission outside the State if the person regularly does or solicits business [in the State], engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State").[1] *Id.*

Subsections (c)(1) and (c)(2) of the long-arm statute "require a showing of specific jurisdiction"—not just general jurisdiction. *Boston Sci. Corp. v. Wall Cardiovascular Techs., LLC*, 647 F. Supp. 2d 358, 365 (D. Del. 2009) (citations omitted). Specific jurisdiction exists where a defendant has "purposefully directed" its activities at residents of the forum and where the "litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (citation omitted). "In contrast, subsection (c)(4) of the long-arm statute requires a showing of general jurisdiction, that is, a showing that defendant or its agent, through more than minimum contacts, is 'generally present' in the forum state." *Boston Sci. Corp.*, 647 F. Supp. 2d at 365 (citations omitted). General jurisdiction exists when the defendant's contacts with the district "are so constant and pervasive as to render it essentially at home[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).

If a defendant is found to be within reach of the Delaware long-arm statute, then courts proceed to analyze whether the exercise of personal jurisdiction comports with due process. *Id.* It is a plaintiff's burden to establish "with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident Nat. Bank v. California Fed.*

---

[1] The other subsections relate to tortious injuries in the state caused by acts or omissions in the state, real property in the state, and insurance contracts. *See* 10 Del. C. § 3104(c)(3), (5-6). The Complaint does not allege facts relating to these subsections. *See* D.I. 1.

*Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). Here, Deloitte has not met its burden to show Sagitec is subject to personal jurisdiction or to show that due process is satisfied.

A.     **Deloitte Fails to Show Sagitec Is Subject to General Personal Jurisdiction as Required by Subsection (c)(4) of the Delaware Long-Arm Statute.**

Subsection (c)(4) of the Delaware Long-Arm Statute addresses tortious conduct (such as copyright infringement or trade secret misappropriation) occurring due to acts outside Delaware, and it requires general personal jurisdiction. 10 Del. C. § 3104(c)(4); *Katz*, 2019 WL 3219513, at *2. General personal jurisdiction requires a corporation's affiliations with the forum state to be "so continuous and systematic as to render [the Defendant] essentially at home in the forum State." *Goodyear*, 564 U.S. at 919; *see also Daimler AG*, 571 U.S. at 133 n.11. For non-resident companies, "the paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG*, 571 U.S. at 137.

The alleged contacts between Sagitec and this District are insufficient to establish general personal jurisdiction. Deloitte alleges, "on information and belief," that Sagitec has "regularly and systematically transacted business in Delaware." D.I. 1 ¶ 14. But Deloitte provides no facts about any purported regular and systematic contacts. As the Complaint admits, Sagitec is not incorporated in Delaware, and Sagitec's principal place of business is not in Delaware. *See* D.I. 1 ¶ 12. In fact, Sagitec has no physical location or business operation in Delaware; and otherwise has no meaningful systematic or continuous presence in Delaware. SOF ¶ 1[2]. Sagitec is not subject to general personal jurisdiction in Delaware.

B.     **Deloitte Fails to Show Sagitec Is Subject to Specific Personal Jurisdiction as Required by Subsections (c)(1) and (c)(2) of the Delaware Long-Arm Statute.**

Subsections (c)(1) and (c)(2) of the Delaware Long-Arm Statute generally address

---

[2] Citations to "SOF" relate to the Statement of Facts, *supra* at 3-5 (¶¶ 1-9).

business and contracts to supply services or things in Delaware, and they require specific

personal jurisdiction. 10 Del. C. § 3104(c)(1-2); *Katz*, 2019 WL 3219513, at *2. Specific

personal jurisdiction arises if a defendant "[1] 'purposefully directed' his activities at residents of

the forum and [2] the litigation results from alleged injuries that 'arise out of or relate to' those

activities." *AstraZeneca AB v. Mylan Pharmaceuticals, Inc.*, 72 F. Supp. 3d 549, 553 (D. Del.

2014); (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, (1985)). Both

requirements are necessary to establish specific personal jurisdiction. Neither is met here.

**1.**      **Sagitec has not purposefully directed its activities at the State of Delaware.**

Sagitec has not purposefully directed its activities at residents of Delaware. A defendant's

purposeful direction of activities to Delaware means "minimum contacts with the forum state

that show the defendant took a *deliberate act reaching out to do business in that state*." *Hepp v.

Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (emphasis in original). Sagitec has not engaged in

such a deliberate act as required to establish specific personal jurisdiction in the Third Circuit.

Deloitte relies on conclusory assertions to overstate the scope of Sagitec's alleged

relationship with Delaware. "The mere fact that plaintiff's complaint contains conclusory

allegations in support of personal jurisdiction is not sufficient to defeat defendant's 12(b)(2)

motion." *Turner v. Shirey*, C.A. No. 16-3886, 2017 WL 1709811, at *4 (E.D. Pa. May 2, 2017)

(citations omitted). Deloitte asserts conclusory allegations that Sagitec:

> has regularly and systematically transacted business in Delaware, purposefully
> directed its activities at Delaware, purposefully availed itself of the benefits of
> doing business in Delaware, committed acts of trade secret misappropriation in
> Delaware, and committed, contributed to, and/or induced acts of copyright
> infringement in Delaware.

D.I. 1 ¶ 14. Deloitte pleads no factual support for these conclusory allegations—because there is

none. Sagitec has no business operations in Delaware. SOF ¶ 1. All accused activity on the part

of Sagitec occurred in Minnesota or other states in which development or hosting of software has occurred. SOF ¶¶ 2-3. Deloitte's general conclusory allegations do not establish jurisdiction.

Beyond Deloitte's conclusory allegations, the only specific contact Deloitte alleges is the PUA Contract. But as to subsection (c)(2) of the Delaware Long Arm Statute, "Delaware courts have consistently found that 'contracts negotiated and performed outside of Delaware will not support personal jurisdiction.'" *Katz*, 2019 WL 3219513, at *4 (citation omitted). More broadly, "a contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum.'" *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Burger King*, 471 U.S. at 478). Rather, "[c]ourts must also look to the 'prior negotiations and contemplated future consequences' to determine whether specific jurisdiction attaches." *Id.* (quoting *Burger King*, 471 U.S. at 479). Specific personal jurisdiction requires that "the contractual relationship . . . 'envision[s] continuing and wide-reaching contacts' in the forum State." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "[I]nformational communications in furtherance of such a contract" are "insufficient to establish the requisite minimum contacts." *BP Chems.*, 229 F.3d at 261. "Where the Court has found interstate communication to ground specific jurisdiction, it is generally in conjunction with an actual appearance by the non-resident defendant in the forum state and continuing obligations between the parties." *Element Fin. Corp. v. ComQi, Inc.*, 52 F. Supp. 3d 739, 747 (E.D. Pa. 2014).

Consistent with these principles, at least one other court has specifically considered a contract for remotely hosted and maintained websites and held that the contract did not confer personal jurisdiction. In *University Accounting Service LLC v. ScholarChip Card LLC*, a Wisconsin-based company (the plaintiff) contracted with the defendant to build and host an internet-based software system accessible in Wisconsin. 17-CV-901-JPS, 2017 WL 4877418, at

*1-2 (E.D. Wis. Oct. 27, 2017). The plaintiff filed suit for breach of contract in the Eastern District of Wisconsin, and the defendant argued there was no personal jurisdiction. *Id.* at *1. The court held there was no personal jurisdiction over the defendant. *Id.* at *5. The court concluded that "[w]hile some minor aspects of [defendant's] contractual duties touch upon Wisconsin, the principal reason this state is involved is because [plaintiff] is located in Wisconsin. This is not a viable basis upon which to hale [defendant] into this State's courts." *Id.* at *6. The court came to this conclusion despite a defendant representative having traveled to Wisconsin to pitch the software, which was deemed "but one consideration among many, and it is undisputed that [defendant] employees have not entered Wisconsin in many years." *Id*. at 7. And, crucially, the internet-based software platform at issue was hosted outside the state of Wisconsin. *Id*. at *7.

In comparison, the alleged contacts in this case are even weaker. In *University Accounting Service*, a single visit to the forum state several years before suit was insufficient to establish personal jurisdiction. *Univ. Accounting Serv.*, 2017 WL 4877418, at *6-8. Here, Sagitec has **never** visited Delaware. SOF ¶¶ 6, 9. All communications giving rise to the PUA Contract were outside of Delaware, without Sagitec ever visiting Delaware. SOF ¶ 6. Nor has Sagitec ever traveled to Delaware to make any sales presentations, marketing, or other acts of purposeful availment. SOF ¶ 9. Instead, Sagitec learned of the Delaware Department of Labor's needs at a trade show in Kansas City, Missouri. SOF ¶ 6. Merely soliciting business of a forum resident at a trade show outside the forum is insufficient to establish contacts with that forum. *See SMC Corp. of Am., Inc. v. King Indust. of Valley, Inc.*, IP 02-0752-C-M/S, 2003 WL 21398103, at *4 (S.D. Ind. June 12, 2003) (noting the defendant's contractual relationship with the plaintiff formed at a trade show outside the forum state to deny jurisdiction). And although the parties exchanged subsequent communications in support of the PUA Contract, those communications do not

10

confer jurisdiction either. *See BP Chems.*, 229 F.3d at 262 (citations omitted) (holding that even though one hundred phone calls between parties could "remain a consideration, they are insufficient, alone, to confer personal jurisdiction").

Moreover, there is no specific personal jurisdiction because the contemplated future consequences of the PUA Contract were minimal. Contractual obligations to provide future remote training and support are not significant enough "future consequences" to establish specific contacts. *See Univ. Accounting Serv.*, 2017 WL 4877418, at *5-6. Even a nine-year (or more) contractual relationship is not itself enough to establish personal jurisdiction. *Id.* at *6 (citation omitted). Here, however, the PUA Contract contemplates that Sagitec will provide training and support for a term of just four years. SOF ¶ 8. Further, the Delaware Department of Labor does not download or otherwise apply any aspects of the PUA software onto Delaware hardware. SOF ¶ 7. Nor does Sagitec ship products or provide physical hardware to Delaware or its residents. *Id*. Other than a four-year period of remote training and support, there are no contemplated future consequences of the contract.

Accordingly, the PUA Contract does not satisfy the minimum contacts test. This lone contract did not "envision[] continuing and wide-reaching contacts." *See Walden*, 571 U.S. at 285. Rather, Sagitec performed limited obligations remotely in response to an urgent need resulting from a global pandemic crisis, which were contemplated to last for a limited time. Deloitte's reliance on Sagitec's limited PUA Contract with Delaware is insufficient to establish the minimum contacts necessary for specific personal jurisdiction over Sagitec.

### 2. Deloitte's claims do not arise out of Sagitec's alleged contacts with Delaware.

Even if the Court finds Sagitec purposefully directed its activities at the state of Delaware, specific jurisdiction only attaches if "the litigation results from alleged injuries that

'arise out of or relate to' those activities." *AstraZeneca AB*, 72 F. Supp. 3d at 553. Specific

jurisdiction, including under subsections (c)(1) and (c)(2) of the Delaware Long Arm Statute,

"requires that the cause of action arise from the Defendant's conduct in the forum state."

*Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354-55 (D. Del. 2008). For example, even if a

defendant has contracted with a forum resident, there is no personal jurisdiction if the alleged

wrongful acts occurred outside of the forum state and if the alleged injury is felt outside of the

forum. *BP Chems.*, 229 F.3d at 261.

 Here, there is no specific personal jurisdiction because the cause of action does not arise

from Sagitec's conduct in Delaware. *See Shoemaker*, 556 F. Supp. 2d at 354-55. Deloitte's

claims do not arise from Sagitec's alleged contacts with Delaware (namely, the PUA Contract).

Rather, Deloitte's claims center on activities that occurred in Minnesota or India. *See* SOF ¶¶ 3-

4. Further, Deloitte alleges it was injured outside of Delaware, and the alleged copyright

infringement and alleged misappropriation occurred outside of Delaware. Like the plaintiffs in

*BP Chems.*, Deloitte concedes its alleged injuries are felt in New York—not Delaware. *See BP*

*Chems.*, 229 F.3d at 261; D.I. 1 ¶¶ 60, 78.

 With respect to its copyright claims, Deloitte's allegations fail to establish any relation to

Delaware. Deloitte alleges Sagitec "reproduce[d], distribut[ed] or create[ed] derivative works

based on [uFACTS] without any authorization or other permission from Deloitte." D.I. 1 ¶ 65.

Furthermore, Deloitte alleges Sagitec "provided the infringing . . . software to its customers" and

"worked with related entities to develop and sell Neosurance." *Id.* Sagitec, however, does not

have offices, operations, or employees in Delaware. SOF ¶ 1. Rather, Sagitec developed its

Neosurance product in Minnesota and India. SOF ¶ 3. Like Neosurance, Sagitec developed and

hosts its PUA software outside of Delaware. SOF ¶ 7. Following the award of the PUA Contract,

the implementation and all contractual obligations of Sagitec's custom software solution occurred remotely from Minnesota and elsewhere. *Id*. Accordingly, Deloitte's copyright claim cannot have "arisen out of" Sagitec's "acts or omissions" in Delaware because none of the underlying alleged acts or omissions alleged by Deloitte occurred in Delaware. Deloitte's copyright claim does not arise from the PUA Contract.

The same holds true for Deloitte's trade secret and other New York state law claims.[3] For both its DTSA and state law trade secret misappropriation claims, Deloitte alleges Sagitec "acquir[ed] the uFACTS Trade Secrets" through former "Deloitte employees who disclosed the uFACTS Trade Secrets to Sagitec, including at least Minkkinen and Sambasivam." D.I. 1 ¶¶ 77-78, 88-89. Deloitte's allegations as to its other New York claims only recite the legal elements of those claims. *Id*. ¶¶ 95-97, 100-103. These claims, focused on Sagitec activity relating to Mr. Minkkinen and Mr. Sambasivam, and subsequent Sagitec activity relating to the design and development of Neosurance outside the state of Delaware, are far removed from the PUA Contract formed years later. SOF ¶¶ 2, 8. Deloitte's trade secret claims and New York state law claims do not arise from the PUA Contract or any other alleged contacts with Delaware.[4] There is no specific personal jurisdiction none of the alleged underlying conduct occurred in Delaware.

**C.    Even if Deloitte Had Established a Statutory Basis for Exercising General or Specific Jurisdiction, Deloitte Fails to Show the Exercise of Personal Jurisdiction Comports with Constitutional Due Process.**

If this Court finds there is general or specific jurisdiction here—which it should not—the

---

[3] Sagitec does not concede that New York state law applies to this dispute and reserves its arguments regarding choice of law for when the merits are considered.

[4] Deloitte's Complaint vaguely refers to "bid and contracts" in Delaware, but it only specifically identifies the PUA Contract. *See* D.I. 1 ¶ 14. Sagitec has not been awarded any other contracts in Delaware. Although Sagitec submitted a response to a new Delaware Department of Labor RFP in early 2023, Sagitec has not received any substantive additional communication from Delaware regarding the RFP, and no contract has been awarded to Sagitec. Peretto Decl. ¶ 16.

Court then analyzes whether exercise of jurisdiction comports with the Due Process Clause. Here, exercise of either general or specific jurisdiction would violate the Due Process Clause.

As to general jurisdiction, to comport with due process, Deloitte must do more than show that Sagitec's contacts are sufficiently continuous and systematic to make Sagitec "reasonably anticipate being hailed into court." *Katz*, 2019 WL 3219513, at *4. Deloitte must also establish that the alleged continuous and systematic contacts are "so substantial and of such a nature as to render [Sagitec] at home in [Delaware]." *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19). This is a high standard; "[o]nly in an exceptional case would a foreign business entity be at home in a place outside of its place of incorporation or principal place of business." *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19). This is not an exceptional case. Sagitec is not incorporated or located in Delaware. Sagitec's connections to Delaware are minimal, and certainly not so "systematic or continuous" as to render Sagitec at home in Delaware.

As to specific jurisdiction, to comport with due process, "there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb v Superior Court of Cal., San Francisco Cty.*, 582 U.S. 255, 264 (2017) (quoting *Goodyear*, 564 U.S. at 919). "The Third Circuit follows a three-part analysis: (1) whether defendant purposefully availed himself of the forum, (2) whether the litigation arises out of defendant's activities in the forum, and (3) whether the exercise of jurisdiction otherwise 'comports with fair play and substantial justice." *Katz*, 2019 WL 3219513, at *5 (citing *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007)). As discussed above, the first two parts of this analysis are not met here. Moreover, exercise of specific jurisdiction here would not comport with fair play or substantial justice. It would be fundamentally unfair to exercise specific jurisdiction over Sagitec based on a single

contract initiated, negotiated, executed, and implemented outside of Delaware, particularly when Deloitte is not a party to the PUA Contract and does not assert a cause of action based on the contract. The exercise of personal jurisdiction in this case would violate the Due Process clause. Accordingly, this case should be dismissed.

## II. ALTERNATIVELY, THIS COURT SHOULD TRANSFER THIS ACTION TO THE DISTRICT OF MINNESOTA.

If the Court finds Sagitec is subject to personal jurisdiction here, Deloitte's lawsuit should be transferred to the District of Minnesota. Delaware district courts have discretion to transfer cases to a different venue for the convenience of the parties and witnesses. 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 883. The analysis involves two steps. "The District Court must first decide whether the case could have been brought in the district to which the movant wishes to transfer." *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*, C.A. No. 21-1365-GBW, 2022 WL 16921988, at *3 (D. Del. Nov. 14, 2022). Second, courts in the Third Circuit evaluate a motion to transfer under both the private and public interest factors outlined in *Jumara*. *Id.* (citations omitted).

### A. Deloitte Could Have Brought This Action in the District of Minnesota.

The District of Minnesota would have general personal jurisdiction over Sagitec because, as Deloitte's Complaint alleges (D.I. ¶ 12), Sagitec's headquarters and principal place of business is in Minnesota. *See Daimler*, 571 U.S. at 118. Venue is proper as to Deloitte's copyright claim because Sagitec "may be found" in Minnesota and is subject to personal jurisdiction there. *See RMG Media, LLC v. iBoats, Inc.*, C.A. No. 20-290-RGA, 2021 WL 1227730, at *4 (D. Del. Mar. 31, 2021). Venue in Minnesota is proper for Deloitte's other claims because Sagitec "resides" in Minnesota. *See* 28 U.S.C. § 1391(b)(1). The District of Minnesota would also have subject matter jurisdiction over Deloitte's claims per 28 U.S.C. §§ 1331,

1338(a), 1338(b), and 1367.

**B.** *Jumara* **Private Interest Factors Favor Transfer to the District of Minnesota.**

On a motion to transfer, courts consider six private interests: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the expected witnesses; and (6) the location of books and records. *See Jumara*, 55 F.3d at 879. On balance, these factors favor transfer.

> **1.** **Deloitte's forum preference should be afforded little weight because Deloitte's principal place of business is not in Delaware.**

Deloitte's selection of Delaware—not its home state of New York—minimally favors transfer because Deloitte chose to litigate outside of its home forum. This Court has routinely held that "when a [p]laintiff's choice of forum is not his 'home turf' . . . 'the convenience to the plaintiff of litigating in his chosen forum is not as great [and] [t]his reduction in convenience lessens the defendant's burden to show that the balance of convenience favors transfer.'" *Mekiki Co., Ltd. v. Facebook, Inc.*, C.A. No. 09-745-JAP, 2010 WL 2348740, at *4 (D. Del. June 7, 2010) (citation omitted). Deloitte concedes its principal place of business, or home turf, is New York. D.I. 1 ¶¶ 9-10, 60, and 72. Deloitte further concedes that its alleged harm is felt in New York, *not* Delaware. *Id.* ¶¶ 60, 72. Because Deloitte identifies no connection to Delaware "other than its choice to sue here and its Delaware incorporation," this Court should give Deloitte's venue selection little, if any, weight. *See Cisco Sys.*, 2022 WL 16921988, at *4 (citations omitted).

> **2.** **The fact that Sagitec's preferred forum is the District of Minnesota favors transfer.**

A defendant's preference to litigate a case in the district where the defendant operates its principal place of business favors transfer. *See Mitel Networks Corp. v. Facebook, Inc.,* 943 F. Supp. 2d 463, 470 (D. Del. 2013). Sagitec has a strong preference to litigate this case in the

District of Minnesota. Sagitec's principal place of business and headquarters is in St. Paul, Minnesota, which is in the District of Minnesota. SOF ¶ 1. Substantial development work relating to the Neosurance software, and Sagitec employees involved in that work, are located in the District of Minnesota. SOF ¶ 3-4. Accordingly, Sagitec's preference of forum favors transfer.

### 3. The fact that the claims arose in Minnesota, not Delaware, favors transfer.

The District of Minnesota is the more convenient forum because alleged acts underlying Deloitte's claims occurred there. "As to where the claim(s) arose . . . the Court should look to where the corporate decisions underlying th[e] claims were made." *United States v. United States Sugar Corp.*, C.A. No. 21-1644-MN, 2022 WL 354228, at *4 (D. Del. Jan. 11, 2022) (citations and quotation marks omitted). As detailed above, the Sagitec activities addressed in Deloitte's complaint, including the hiring of Mr. Minkkinen and Mr. Sambasivam; the design, development, and implementation of the Neosurance software product; and the marketing and sale of Neosurance occurred in, or were directed from, Sagitec's headquarters in Minnesota. SOF ¶ 1. Though Sagitec disputes Deloitte's asserted claims, those claims arose from Sagitec's activities occurring in Minnesota, weighing in favor of transfer.

### 4. The convenience of the parties favors transfer.

The convenience of the parties favors transfer because none of the parties are physically located in Delaware. Evaluating a requested transfer includes consideration of (1) the parties' physical location; (2) the associated costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district); and (3) the relative ability of each party to bear these costs. *MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017).

No party in this litigation has a principal place of business in Delaware. Sagitec is in Minnesota. SOF ¶ 1. Deloitte is in New York. D.I. 1 ¶ 10. Sagitec would incur significantly more

costs from employees traveling to Delaware than it would if the case was venued in the District of Minnesota. *See Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 603 (D. Del. 2012) (granting transfer because, "it seems clear that it would be less expensive for the defendants to litigate where their operations are. It would also interfere less with the defendants' business operations if there were no travel to Delaware involved."). Some potential Deloitte witnesses may also be located in Minnesota, as Deloitte's government practice group that markets its uFACTS software is also located in Minnesota. *See* Exhibits 1-2 attached to the Declaration of David A. Prange [*hereinafter* Prange Decl.]. If this case is litigated in Delaware, all parties, their witnesses, and their counsel (other than Delaware counsel) will need to travel to Delaware. Alternatively, if the case is transferred to Minnesota, travel will be significantly reduced, particularly for witnesses and counsel located in Minnesota (and, for one of Deloitte's attorneys, Chicago). Potential Sagitec witnesses, including Sindhu Nair and Rick Deshler, are located in Minnesota. Decl. ¶¶ 5-7. Deloitte may also have witnesses in Minnesota. Further, as to the relative ability to bear costs, Deloitte is far larger—and wealthier—than Sagitec, reporting annual revenue of nearly $60 Billion in 2022. *See* Prange Decl. Ex. 3. This factor favors transfer because Minnesota is significantly more convenient for Sagitec, with minimal impact on Deloitte.

### 5.    The convenience of the witnesses is neutral.

No third-party witnesses have been identified in Delaware. This factor is neutral.

### 6.    The location of books and records favors transfer.

The location of documentary evidence favors transfer because, overall, more evidence is located in Minnesota. As this District has observed in patent cases addressing transfer motions, "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *See, e.g., Endeavor Meshtech, Inc. v. Itron, Inc.*, C.A. No. 13-1343-GMS, 2014 WL 11788638, at *2

(D. Del. June 4, 2014). The same could be said for a copyright/trade secret case that involves equally complex technical issues regarding software products built by Sagitec. The bulk of books, records, and electronic servers related to Deloitte's claims are located or are accessible at Sagitec's headquarters in Minnesota, not Delaware. Moreover, if Sagitec's source code is produced, it would occur at Sagitec's counsel's office in Minnesota to minimize transport risk.

### C.    The *Jumara* Public Factors Favor Transfer

*Jumara* identifies several public interest factors for consideration by a court, including: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora, and (6) familiarity of the judge with applicable state law. *See Jumara*, 55 F.3d at 879-80. The public interest factors weigh in favor of transfer or are neutral.

#### 1.    Practical considerations that could make trial easy, expeditious, or inexpensive favor transfer.

Trying this case in Minnesota will be far more practical for all parties involved. "The Court must consider 'practical considerations that could make the trial easy, expeditious, or inexpensive.'" *United States Sugar Corp*., 2022 WL 354228, at *7 (D. Del. Jan. 11, 2022) (quoting *Jumara*, 55 F.3d at 879). For the reasons discussed above, it would be more convenient to litigate in Minnesota than to travel to Delaware. *See Linex Techs., Inc. v. Hewlett Packard Co.*, No. 11-400-GMS, 2013 WL 105323, at *6 (D. Del. Jan. 7, 2013) (litigating at home is a "practical consideration" that supports transfer). The public interest is best served by transfer.

#### 2.    The local interest of the for a favors transfer.

This factor favors transfer because Minnesota has a stronger interest in resolving this dispute than Delaware. When weighing Delaware's interest against the proposed forum, this

Court looks to the relationships of the parties and their desired forums, and the location of events giving rise to the lawsuit. *See Fink on behalf of Nation Safe Drivers Employee Stock Ownership Plan v. Wilmington Tr., N.A.*, 473 F. Supp. 3d 366, 376 (D. Del. 2020). Sagitec resides in Minnesota, Deloitte's principal place of business is in New York, and Deloitte concedes its alleged harm occurred in New York. D.I. ¶ 10, 60. The activities related to the claims occurred in Minnesota. SOF ¶ 3-4. Minnesota has a greater interest in resolving this dispute than Delaware.

### 3. Enforceability of the judgement, administrative difficulty arising from court congestion, public policies of the fora, and familiarity of state law should not have any weight in this case.

These factors are neutral. Enforceability of any judgment is neutral because a judgment against either party is equally enforceable in either Delaware or Minnesota. Congestion of relevant dockets is neutral because both districts face similar levels of congestions. As of December 31, 2022, the District of Minnesota reported 458 civil trials per judge versus the District of Delaware's report of 426 civil trials per judge. Prange Decl. Ex. 4. There is no significant public policy of Delaware at issue here. While "[t]he public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for the resolution of business disputes[,]" *Wacoh*, 845 F. Supp. 2d. at 604, this concern should be neutral when Deloitte asserts that it has suffered no harm in Delaware. D.I. 1 ¶ 72. Finally, although Deloitte has invoked the state law of New York, and not Delaware or Minnesota, both courts can apply New York law. Thus, the factor addressing the familiarity of relevant state law is inapplicable.[5]

## CONCLUSION

For the foregoing reasons, Sagitec respectfully requests that this case be dismissed for lack of personal jurisdiction, or, in the alternative, transferred to the District of Minnesota.

---

[5] Sagitec raises this point exclusively for the determination of transfer. Sagitec does not concede applicability of New York law to this case and reserves its right to dispute its applicability.

Dated: May 15, 2023

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert Vrana (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

OF COUNSEL:
Christopher K. Larus
David A. Prange
Rajin S. Olson
Brandon A. Carmack
ROBINS KAPLAN, LLP
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500
clarus@robinskaplan.com
dprange@robinskaplan.com
rolson@robinskaplan.com
bcarmack@robinskaplan.com

*Attorneys for Defendant*
*Sagitec Solutions, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 15, 2023, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

OF COUNSEL:

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
(202) 389-5000

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

John W. Shaw
Andrew E. Russell
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

*Attorneys for Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC*

  */s/ Anne Shea Gaza*
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Sagitec Solutions, LLC*