## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DELOITTE CONSULTING LLP and DELOITTE DEVELOPMENT LLC, )<br>)<br>)<br>)<br>Deloitte, )<br>)<br>v. )<br>)<br>SAGITEC SOLUTIONS, LLC, )<br>)<br>Deloitte. ) | C.A. No. 23-325-MN |

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF
## MOTION FOR A MORE DEFINITE STATEMENT

Dated:  May 15, 2023

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert Vrana (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

OF COUNSEL:
Christopher K. Larus
David A. Prange
Rajin S. Olson
Brandon A. Carmack
ROBINS KAPLAN LLP
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500
clarus@robinskaplan.com
dprange@robinskaplan.com
rolson@robinskaplan.com
bcarmack@robinskaplan.com

*Attorneys for Sagitec Solutions, LLC*

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ............................................................................... 1

SUMMARY OF ARGUMENT .................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 3

ARGUMENT ............................................................................................................................ 6

I.       LEGAL STANDARD ..................................................................................................... 6

II.      DELOITTE'S DESCRIPTION OF ITS ALLEGED TRADE SECRETS IS SO
         VAGUE AND AMBIGOUS THAT SAGITEC CANNOT REASONABLY
         PREPARE A RESPONSE. ............................................................................................... 9

         A.      Deloitte's Allegations Are Vague and Ambiguous Because Its Description
                 of the Alleged Trade Secrets Encompasses the *Entire* uFACTS Solution. ............10

         B.      Deloitte's Trade Secret Allegations Are Vague and Ambiguous Because
                 they Facially Include Information that Cannot Be a Trade Secret. ........................12

         C.      Deloitte's Allegations Are Vague and Ambiguous by Failing to Distinguish
                 the Alleged Trade Secrets from Generic Development Elements Known in
                 the Trade ..........................................................................................................14

CONCLUSION ........................................................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agency Solutions.Com, LLC v. TriZetto Group, Inc.*,
   819 F. Supp. 2d 1001 (E.D. Cal. 2011)....................................................................2, 9, 13, 14

*Bausch & Lomb Inc. v. SBH Holdings LLC*,
   C.A. No. 20-1463-LPS, 2022 WL 856750 (D. Del. Mar. 23, 2022) .........................................6

*Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*,
   1 F. Supp. 3d 224 (S.D.N.Y. 2014)..........................................................................................7

*Colgate Inn, LLC v. Eberhardt, LLC*,
   171 N.Y.S.3d 183 (2002)..........................................................................................................8

*Desmond v. Phelps*,
   C.A. No. 12-1120-SLR, 2016 WL 2742384 (D. Del. May 10, 2016) ......................................6

*Dow Chemical Canada Inc. v. HRD Corp.*,
   909 F.Supp.2d 340 (D. Del. 2012)............................................................................................8

*Gabriel Techs. Corp. v. Qualcomm, Inc.*,
   No. 08cv1992, 2011 WL 6152240 (S.D. Cal. Dec. 12, 2011)................................................14

*IDX Sys. Corp. v. Epic Sys. Corp.*,
   285 F.3d 581 (7th Cir. 2002) ...................................................................................10, 12, 13

*Lincoln Labs., Inc. v. Savage Labs., Inc.*,
   26 F.R.D. 141 (D. Del. 1960) ...................................................................................................6

*Mallet & Co. Inc. v. Lacayo*,
   16 F.4th 364 (3d Cir. 2021) .............................................................................................3, 9, 14

*Oakwood Labs. LLC v. Thanoo*,
   999 F.3d 892 (3d Cir. 2021).......................................................................................... *passim*

*Thomas v. Independence Twp.*,
   463 F.3d 285 (3d Cir. 2006)............................................................................................3, 4, 7

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
   C.A. No. 09-157-RGA, 2013 WL 867640 (D. Del. Mar. 8, 2013)....................................10, 15

**Statutes**

18 U.S.C. 1839(3) .............................................................................................................................8

Cal. Civ. Code § 3426.1 (Cal. Uniform Trade Secrets Act) ........................................8, 9

Defend Trade Secrets Act ...........................................................................................7

Minn. Stat. § 325C.01 (Minn. Uniform Trade Secrets Act) ........................................8

Uniform Trade Secrets Act .........................................................................................8

**Other Authorities**

Federal Rule of Civil Procedure 12(e) ....................................................................3, 6

## NATURE AND STAGE OF PROCEEDINGS

On March 23, 2023, Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC (collectively "Deloitte") sued Sagitec Solutions LLC ("Sagitec") for copyright infringement, misappropriation of trade secrets, unfair competition, and unjust enrichment. D.I. 1. On April 12, 2023, the Court granted Deloitte's unopposed motion to extend the time for Sagitec to move against, answer, or otherwise respond to Deloitte's Complaint. D.I. 10.[1]

## SUMMARY OF ARGUMENT

1.      Deloitte's allegations in its Complaint (D.I. 1) addressing its alleged trade secrets are hopelessly vague and ambiguous, so much that the allegations fail to provide Sagitec with adequate notice about what, specifically, is the alleged trade secret information. Asserting a claim of trade secret misappropriation imposes on the claimant an obligation to sufficiently identify in the complaint the information it alleges as a trade secret, including with sufficient particularly to differentiate them from general knowledge in the trade or knowledge of persons skilled in the trade. *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905-06 (3d Cir. 2021). This pleading requirement is one of fairness so that a defendant may know of the specific trade secret(s) alleged so that it may fully develop and present its defensive case. Deloitte's pleading does not comply with this pleading obligation.

2.      Deloitte asserts three ambiguous sub-categories of "uFACTS Trade Secrets" that provide no form or definition of the alleged trade secrets. Deloitte's vague descriptions are problematic for at least three reasons. *First*, the allegations fail to provide any meaningful description of the categories (defined by Deloitte) that could correspond to a protectible scope of alleged trade secrets. Instead, Deloitte offers broad allegations of the scope of the information,

---

[1] Sagitec is also contemporaneously filing a motion to dismiss this action in its entirety for lack of personal jurisdiction or, in the alternative, to transfer.

without any significant limitation, relating to its uFACTS solution. Courts, however, have rejected that allegations addressing all information in or about software are plausible trade secrets. Coupled with broad inclusionary language of what may be included, it is impossible for a defendant such as Sagitec to understand the scope of what may be asserted as a trade secret.

3.      *Second*, Deloitte's allegations are vague and ambiguous because they refer to publicly accessible information as part of Deloitte's alleged trade secrets. Specifically, Deloitte's Complaint uses the self-identified categories of "uFACTS Application," "uFACTS Design," and "uFACTS Framework" to describe three categories that make up the entirety of uFACTS and label the totality of those categories as the "uFACTS Trade Secrets." Even at the most granular description of these categories, however, Deloitte improperly continues to use broad categorical language without disclosing any identifiable trade secret information underlying those categories. *See Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1021 (E.D. Cal. 2011) ("[D]escriptions of the design and function features of software are not [trade secret] *information* . . . even where a particular design or functional element may be unique to that software[.]") (emphasis in original). Deloitte's broad categorical language envelopes non-trade secret components, such as "information displayed to the customer," which can be readily obtained through proper means, and thus cannot be a trade secret.

4.      *Third*, Deloitte's allegations are vague and ambiguous because they do not distinguish Deloitte's alleged trade secrets from software and framework tools generally known in the industry. Commonly known information, or information known to a person of skill in the art, is not a trade secret. *Oakwood Labs.*, 999 F.3d at 905. Deloitte merely parrots general categories relating to software development "that could be used to describe [information] found in any number of corporations." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 382 (3d Cir. 2021).

5. Sagitec cannot reasonably prepare a response to Deloitte's vague and ambiguous allegations. Accordingly, Fed. R. Civ. P. 12(e) provides Sagitec with the "best procedural tool to obtain . . . the factual basis underlying [Deloitte's] claim for relief." *Thomas v. Independence Twp.*, 463 F.3d 285, 301 (3d Cir. 2006). Based on the foregoing, Sagitec respectfully moves this Court for an order directing Deloitte to amend its Complaint to provide a more definite statement with respect to its identification of alleged trade secrets.

## STATEMENT OF FACTS

Sagitec is a global technology solutions company that delivers dynamic IT solutions to leading public and private organizations. Its service offerings include software solutions for states to manage pension, unemployment insurance, and health care benefits offered to their citizens. This case is about Sagitec's unemployment insurance software solution. D.I. 1 ¶ 4.

Deloitte Consulting and Deloitte Development provide their own software solutions to businesses and government agencies. D.I. 1 ¶ 16. Deloitte alleges that it offers "software solutions for managing state [unemployment insurance, or "UI"] programs," including the processing of claims for unemployment insurance benefits. *Id.* ¶ 18. Each state administers its unemployment insurance programs with its own system and eligibility guidelines.

On March 23, 2023, Deloitte sued Sagitec for copyright infringement, trade secret misappropriation, unfair competition, and unjust enrichment. D.I. 1. The gravamen of Deloitte's Complaint is that Sagitec hired two former employees of Deloitte who allegedly took Deloitte company information when they left their employment and used that company information to develop certain software at Sagitec. *Id.* ¶¶ 39-45. Deloitte alleges the company information at issue constitutes protectible trade secrets. *Id.* ¶ 28. The two individuals, David Minkkinen and Sivaraman Sambasivam, were indicted on charges of criminal trade secret misappropriation, among other charges, and are scheduled for trial in July 2023. *Id.* ¶ 5.

3

This motion is about Deloitte's deficiently pled description of its alleged trade secrets. Deloitte alleges that the trade secrets at issue relate to its uFACTS unemployment insurance solution. *Id*. Deloitte alleges that the "uFACTS trade secrets are proprietary" (D.I. 1 § III), and it then makes up three categories of alleged trade secrets: (1) a "uFACTS Application;" (2) "uFACTS Design;" and (3) the "uFACTS Framework." *Id.* ¶ 28. These made-up categories of alleged trade secrets are then purportedly described in detail in five short paragraphs, which use open-ended and non-limiting language to apparently claim everything about uFACTS as proprietary trade secrets. *Id*. ¶¶ 28-32. Despite uFACTS having been developed over years (allegedly since before 2007, including Deloitte's predecessor BearingPoint), (*id.* ¶¶ 19-22), Deloitte's full and allegedly specific description of its trade secrets amount to just 475 words, generously counted:

> 28. In addition to its copyrights, Deloitte owns trade secrets in its uFACTS solution, including (1) the application software that Deloitte develops and installs for clients, which consists of source code, libraries, configurations, settings, logic, routines, scripts, and database schemas (as embodied in data dictionaries) (the "uFACTS Application"); (2) design assets used by Deloitte to develop specific instances of the uFACTS software, including specification documentation and use cases (the "uFACTS Design"); and (3) the development framework used by Deloitte's software developers to implement the various components of the uFACTS application software (the "uFACTS Framework") (collectively, the "uFACTS Trade Secrets").

29.  **uFACTS Application:**  Deloitte develops proprietary application software for its clients, which includes the source code, libraries, configurations, settings, logic, routines, scripts, and database schemas that enable uFACTS to operate. The software, which is embodied in source code and related material, is written in one or more computer-readable programming languages or data structures, and specifies the detailed operation and structure of uFACTS. Access to source code and related material provides insight into how Deloitte solved specific programming problems and implemented uFACTS to address various client needs to create a complete UI solution.

30. Deloitte's uFACTS Application trade secrets include the non-public portions of the registered uFACTS Computer Program, described above, as well as subsequent versions and improvements that Deloitte has continued to develop.

31. **uFACTS Design:**  Deloitte also generates design assets related to uFACTS that describe in plain language how the software is intended to operate. Deloitte's developers use design assets to develop specific instances and features of the uFACTS software. Certain such assets describe specific modules or functions of the software, including, for example, the ordered steps a user may execute using the module or function, the forms or information that will be displayed to the user at each step, the data that may be accepted from the user, the structure of the data and its location and identification in the database schema, and any interfaces with other modules and functions. They also tell a developer the purpose of the software to be implemented from an end-user's perspective, and therefore provide additional insight into the source code and other related material described above. Deloitte's design assets are based upon and relate to the uFACTS Application, and are used in conjunction with it.

5

32. **uFACTS Framework:**  Deloitte further maintains a proprietary uFACTS development framework, which is distinct from the uFACTS application software delivered to clients, and is used by Deloitte's software developers to efficiently implement such application software. The uFACTS development framework consists of reusable and customizable software packages that can be used to generate the uFACTS application software for customers. The uFACTS Framework includes both the software components and related confidential documentation. Access to Deloitte's uFACTS Framework, when combined with its library of design assets, would allow rapid development of a complete uFACTS implementation customized to a client's needs.

*Id.* ¶¶ 28-32. Deloitte's breadth of description, including caveats, reservations, and inclusionary language purportedly referencing other information not described in the Complaint, prohibits Sagitec from fairly addressing this imprecise and amorphous description. Accordingly, Sagitec moves for a more definite statement.

## ARGUMENT

### I.   LEGAL STANDARD

A defendant may "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *Bausch & Lomb Inc. v. SBH Holdings LLC*, C.A. No. 20-1463-LPS, 2022 WL 856750, at *2 (D. Del. Mar. 23, 2022) (citing *Schaedler v. Reading Eagle Publ'n, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967)). The moving party must "point out the defects complained of and the details desired" under a Rule 12(e) motion. *Desmond v. Phelps*, C.A. No. 12-1120-SLR, 2016 WL 2742384, at *2 n. 3 (D. Del. May 10, 2016). Courts will grant a Rule 12(e) motion when "the pleadings are so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." *Lincoln Labs., Inc. v. Savage Labs., Inc.*, 26 F.R.D. 141, 142 (D. Del. 1960). A motion for a more definite statement under Rule 12(e) is "the best

procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief." *Thomas*, 463 F.3d at 301.

It is a plaintiff's burden to adequately describe the alleged trade secrets in the complaint to put a defendant on notice of what is allegedly misappropriated. "[I]nformation alleged to be a misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it." *Oakwood Labs.*, 999 F.3d at 906; *see also id.* at 905 ("To plead the existence of a trade secret in a misappropriation claim brought under the DTSA, [plaintiff] must sufficiently identify the information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such.") (citing 18 U.S.C. §§ 1836(b), 1839(3)); *see also Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 257 (S.D.N.Y. 2014) ("The requirement of particularity exists for the simple reason that a defendant must know what constitutes a plaintiff's trade secret, so that it does not infringe upon that trade secret and so that the defendant can defend itself at any trial.").

As the Third Circuit explained in *Oakwood Laboratories*, a trade secret plaintiff under the DTSA must show three elements, including the existence of trade secrets with economic value that the owner has taken reasonable measures to keep secret:

> The DTSA [Defend Trade Secrets Act] requires a plaintiff to demonstrate (1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret, 18 U.S.C. § 1839(3); (2) that "is related to a product or service used in, or intended for use in, interstate or foreign commerce[,]" *id.* § 1836(b)(1); and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret, *id.* § 1839(5). *See id.* § 1836(b)(1), (3) (recognizing a federal private cause of action for trade secret misappropriation and establishing remedies).

*Oakwood Labs.*, 999 F.3d at 905; *see also* 18 U.S.C. 1839(3) (providing that trade secret

information must "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information"). State implementations of the Uniform Trade Secrets Act, and New York common law on trade secrets define trade secrets similarly. *See* Cal. Civ. Code § 3426.1 (Cal. Uniform Trade Secrets Act); Minn. Stat. § 325C.01 (Minn. Uniform Trade Secrets Act); *Colgate Inn, LLC v. Eberhardt, LLC*, 171 N.Y.S.3d 183, 190 (2002) (summarizing New York common law).[2]

Reciting broad categories of information in a complaint is insufficient if the pleading does not "'separate [the alleged trade secret] from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and [does not provide sufficient particularity] to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *Oakwood Labs.*, 999 F.3d at 906 (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (Ct. App. 1968)); *see also id.* at 900 ("failure to identify or point to a specific action, process or formula ... resulted in the Court concluding that [plaintiff] failed to sufficiently plead allegations supporting the elements necessary to bring a claim for misappropriation" (internal quotations omitted)); *Dow Chemical Canada Inc. v. HRD Corp.*, 909 F.Supp.2d 340, 346-48 (D. Del. 2012) (granting summary judgement to trade-secret-misappropriation-claim defendant where several alleged trade secrets were not identified with sufficient specificity to separate the alleged trade secrets from matters of general knowledge in the trade or of specific knowledge of persons skilled in the trade). Moreover, a pleading should delineate what is alleged as a trade

---

[2]Deloitte asserts several claims under New York common law, including misappropriation of trade secrets. D.I. 1, *e.g.* at Count II. In making this motion, Sagitec does not concede that New York law applies (particularly because there are no allegations that any of the alleged Sagitec activity is related to New York). Sagitec reserves its argument that other state statutory or common law may apply, such as the law of Minnesota where Sagitec is based.

secret in view of what a trade secret cannot be, which includes:

1. [G]eneral knowledge in the trade or [...] special knowledge of those persons who are skilled in the trade" are not trade secrets.

2. Ideas or concepts are not, in and of themselves, trade secrets.

3. Proprietary ways of doing the same thing that others in the same field do are not trade secrets. ...

4. Plans, flows, inputs, outputs, rules of operation, priorities of operation, and the like are not trade secrets to the extent they are manifest in the way a program works. In other words, background information comprising, for example, the features and functions, the business requirements and the high level design specifications that are incorporated into software and are evident in the operation of the software are not trade secrets. While source code is undoubtably a trade secret, the way the source code works when compiled and run is not.

*Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011) (citations omitted) (applying Cal. Civ. Code § 3426.1 (California Uniform Trade Secrets Act)). "When the breadth of a trade secret description is so far-reaching that it includes publicly available information ... and admitted industry knowledge, that information is not specific enough to be accorded trade secret status." *Mallet*, 16 F.4th at 384. "'[C]are must [still] be taken to not allow a plaintiff in a trade secret misappropriation case to make generalized claims that leave a defendant wondering what the secrets at issue might be'." *Id.* (quoting *Oakwood Labs.*, 999 F.3d at 907).

## II.  DELOITTE'S DESCRIPTION OF ITS ALLEGED TRADE SECRETS IS SO VAGUE AND AMBIGUOUS THAT SAGITEC CANNOT REASONABLY PREPARE A RESPONSE.

Despite allegedly investing "millions of dollars and tens of thousands of person-hours" to develop the uFACTS trade secrets, D.I. 1 ¶ 33, Deloitte only provides a 475-word statement of vague and ambiguous language that fail to state Deloitte's alleged trade secrets with any particularity. Deloitte's allegations fail to provide any meaningful description, even under the

9

broad allowance of pleading standards, because (1) the trade secret allegations do not offer any definition of the information that is claimed to be secret; (2) the trade secret allegations cover information that is facially not secret because it is available to the public through proper means; and (3) the trade secret allegations do not offer any delineation between what information is alleged to be secret and what information is generalized knowledge or known to those skilled in the art.

### A. Deloitte's Allegations Are Vague and Ambiguous Because Its Description of the Alleged Trade Secrets Encompasses the *Entire* uFACTS Solution.

Deloitte's allegations describing its trade secrets are vague and ambiguous because they characterize all information in or related to the uFACTS Solution as secret, including all information existing in each uFACTs category. As such, these allegations are vague and ambiguous as to what specific information is alleged as the trade secret. "[D]escriptions that 'effectively assert[ ] that ***all information*** ... about [the plaintiff's] software is a trade secret,' by describing the 'methods and processes underlying and the ***inter-relationships among various features*** making up [the plaintiff's] software package,' are too broad." *XpertUniverse, Inc. v. Cisco Sys., Inc.*, C.A. No. 09-157-RGA, 2013 WL 867640, at *3 (D. Del. Mar. 8, 2013) (quoting *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002)) (emphasis added). When trade secret plaintiffs "effectively assert[] that all information in or about its software is a trade secret . . . [t]hat's not plausible." *IDX*, 285 F.3d at 583. Such descriptions are vague and ambiguous because they encompass information that cannot be a trade secret, which sows confusion as to the metes and bounds of the alleged trade secret.

Although the pleading standard applied here is more lenient than the summary judgment standard applied in *XpertUniverse¸* it is facially implausible to claim at the pleading stage that all

information about uFACTS allegedly is a trade secret.[3] Deloitte relies on broad categorical and descriptive language that effectively includes the entire uFACTS software and related documentation. Deloitte alleges the entire scope of the "uFACTS Trade Secrets" consists of three categories: the uFACTS Application, the uFACTS Design and the uFACTS Framework. D.I. 1 ¶ 28. Deloitte then lists various component parts that are included, without limitation, in each category. For example, at its most granular descriptions, Deloitte alleges its "uFACTS Application includes source code, libraries, configurations, settings, logic, routines, scripts and database schemas that enable uFACTS to operate." *Id.* ¶ 29. Likewise, Deloitte describes the uFACTS Design category as the "design assets that describe in plain language how the software is intended to operate." *Id.* ¶ 31. Finally, the uFACTS Framework category is described as including "reusable and customizable software packages." *Id.* ¶ 32. In sum, Deloitte's description of its trade secrets is a categorical list of component parts related to uFACTS: source code, libraries, configurations, settings, logic, routines, scripts database schemas, design assets, and software packages. Without more, this language constitutes mere generic categorical descriptions of software or software development constructs because it simply asserts uFACTS is made up of various technical components without specifying the underlying information within those components that purportedly is Deloitte's trade secret.

The ambiguity and vagueness of Deloitte's trade secret allegations is compounded by its use of generalized inclusionary language, removing all definition of the actual scope of what is claimed. Specifically, Deloitte uses a variation of the descriptor word "including" in every description of its alleged trade secrets. First, Deloitte claims to generally own trade secrets "in its

---

[3] Deloitte apparently disclaims the public portions of its copyright deposit relating to the uFACTS computer program. D.I. 1 ¶ 30.

uFACTS solution, ***including***" the three categories of uFacts Application, uFACTS Design, and the uFACTS Framework. D.I. 1 ¶ 28 (emphasis added). Second, Deloitte claims the uFACTS Application category "***includes*** the source code, libraries, configurations, settings, logic, routines, scripts, and database schemas that enable uFACTS to operate." *Id.* ¶ 29 (emphasis added). Third, the uFACTS Design category encompasses "design assets" that "describe specific modules or functions of the software, ***including*** . . . the ordered step a user may execute . . . the forms or information that will be displayed . . . the data that may be accepted . . . the structure of the data . . .and any interfaces with other modules or functions." *Id.* ¶ 30 (emphasis added). Finally, Deloitte claims the uFACTS Framework "***includes*** both the software components and related confidential information." *Id.* ¶ 31 (emphasis added). Deloitte "has been both too vague and too inclusive, effectively asserting that all information in or about its software is a trade secret." *IDX*, 285 F.3d at 583.

Deloitte's vague, ambiguous, and overbroad pleading gives Sagitec no way to identify where Deloitte's alleged trade secrets begin or end. Sagitec has no ability to prepare a defense against Plaintiff's non-exhaustive list of purported trade secrets because Deloitte forces Sagitec to guess as to what potentially qualifies for trade secret protection through catchall language without any reference to tangible material.

### B.  Deloitte's Trade Secret Allegations Are Vague and Ambiguous Because they Facially Include Information that Cannot Be a Trade Secret.

Deloitte's trade secret allegations are also vague and ambiguous because they include elements of uFACTS that facially cannot be a trade secret. As observed by the court in *Agency Solutions.com*, not all information qualifies for protection as a trade secret:

> Plans, flows, inputs, outputs, rules of operation, priorities of operation, and the like are not trade secrets to the extent they are manifest in the way a program works. In other words, background information comprising, for example, the features and functions, the business requirements and the high level design

> specifications that are incorporated into software and are evident in the operation
> of the software are not trade secrets. While source code is undoubtably a trade
> secret, the way the source code works when compiled and run is not.

*Agency Solutions.com*, 819 F.Supp.2d at 1017 (citation omitted); *see also IDX,* 285 F.3d at 584

(holding descriptions of trade secrets too broad when including items "such as the appearance of

data-entry screens" that "are exceedingly hard to call trade secrets: things that any user or passer-

by sees at a glance are 'readily ascertainable by proper means'").

Deloitte's description of the uFACTS software is vague and ambiguous through including

aspects that are not trade secrets. Deloitte's language describing the alleged uFACTS trade

secrets includes "the ordered steps a user may execute using the module or function, the forms or

information ***that will be displayed to the user*** at each step, the data that may be accepted from

the user . . . and any interfaces with other modules and functions." D.I. 1 ¶ 31 (emphasis added).

Like the data-entry screens in *IDX*, "information that will be displayed to the user" is

"exceedingly hard to call a trade secret" because that data is "readily ascertainable by proper

means." 285 F.3d at 584. Indeed, Deloitte concedes the entire uFACTS concept resulted from the

need for "client-server technology, which would enable the use of a self-service portal for

employers, claimants, and administrators, allowing data to be submitted and reviewed in a

streamlined process." D.I. 1 ¶ 19. Information is not secret if it will be displayed to the general

public. Nor will designs and interfaces be secret if users submit and review data on that portion

of the system.

Similarly, Deloitte vaguely and ambiguously alleges its "design assets" constitute a trade

secret. Specifically, Deloitte alleges it "generates design assets related to uFACTS that describe

in plain language how the software is intended to operate." D.I. 1 ¶ 31. But "rules of operation,

priorities of operation, and the like are not trade secrets to the extent they are manifest in the way

a program works." *Agency Solutions.Com*, 819 F. Supp. 2d at 1017. Deloitte's broad descriptions

of its alleged trade secrets encompass elements that are facially not trade secrets.

**C.    Deloitte's Allegations Are Vague and Ambiguous by Failing to Distinguish the Alleged Trade Secrets from Generic Development Elements Known in the Trade.**

Deloitte's Complaint fails to draw any lines between the general elements of uFACTS's software categories and any specifically alleged trade secrets. "The subject matter of the trade secret must be described 'with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade." *Oakwood Labs.*, 999 F.3d at 905; *see also Agency Solutions.com*, 819 F.Supp.2d at 1017 ("General knowledge in the trade or special knowledge of those persons who are skilled in the trade are not trade secrets.") (internal quotation omitted).

Deloitte's trade secret allegations are vague and ambiguous because they fail to distinguish what is allegedly secret from information that may be known generally or to a person of skill in the art. Deloitte's identified categories (source code, libraries, configurations, settings, logic, routines, scripts, database schemas, design assets, and software packages), D.I. 1 ¶¶ 28-32, are "better characterized as a list of general categories of business and technical information, a list that could be used to describe [information] found in any number of corporations." *Mallet*, 16 F.4th at 382 (vacating preliminary injunction because trade secrets were not identified with sufficient specificity where court's order merely repeated plaintiff's vague descriptions). A plaintiff's "very general description of categories does not 'sufficiently identify the information it claims as a trade secret[.]'" *Id.* at 387 (quoting *Oakwood Labs.*, 999 F.3d at 905); *see also id.* at 385 ("[I]t is first and foremost the plaintiff's burden to specifically identify what it contends to be its trade secrets[.]"); *see also Gabriel Techs. Corp. v. Qualcomm, Inc.*, No. 08cv1992, 2011 WL 6152240, *5 (S.D. Cal. Dec. 12, 2011) (holding plaintiff had failed to identify alleged software-related trade secrets sufficiently to merit discovery where "[e]ntirely lacking is any

description of the configuration or essential programming" of listed categories of components which "alone condemns the designation to intolerable vagueness"); *XpertUniverse*, 2013 WL 867640, at *4 ("None of [plaintiff's] descriptions designate any [trade secret] information or identify any source code; they are very general recitations of processes implementing equally general features, structures, design considerations, and platforms[.]").

Importantly, Deloitte makes no effort to distinguish between the source code, libraries, configurations, settings, logic, routines, scripts, database schemas, design components, and software packages that constitute Deloitte's alleged trade secrets, and those that are commonly used in software development. Nor does Deloitte identify which aspects of these categories ascribe specific competitive value to Deloitte, such that Sagitec could ascertain where the trade secrets lie. Deloitte's mere listing of general categories related to software is particularly deficient in this case given that any unemployment insurance ("UI") administration software would be largely bound and determined by state and federal laws, regulations, and requirements. *See, e.g.*, Declaration of David A. Prange, Ex. 5 (describing structure and goals of the federal-state UI system for the protection of workers). For example, UI software built to administer UI program benefits, such as taxes, benefit awards, and appeals, would need source code and data tables to account for (1) Federal law and regulations, including the Social Security Act of 1935 and the Federal Unemployment Tax Act of 1939; and (2) State law and polices, which vary by State. *Id.* at Ex. 5 at 3. Thus, UI software solutions based on these federal and state requirements, and the use cases which define the system requirements and functionality, are based on these commonly-known federal and state unemployment laws. Accordingly, across various UI platforms and products developed by different vendors, including Deloitte and Sagitec, many aspects of the software will inevitably appear substantively similar to one another. Deloitte

cannot assert a blanket claim that entire general categories common to all software in the industry are a trade secret because the bulk of the functionality driving the software is commonly required.

## CONCLUSION

For the foregoing reasons, Deloitte's allegations addressing its purported trade secrets are vague and ambiguous. Deloitte should be ordered to provide a more definite statement.


Dated: May 15, 2023

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert Vrana (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

OF COUNSEL:
Christopher K. Larus
David A. Prange
Rajin S. Olson
Brandon A. Carmack
ROBINS KAPLAN LLP
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500
clarus@robinskaplan.com
dprange@robinskaplan.com
rolson@robinskaplan.com
bcarmack@robinskaplan.com

*Attorneys for Defendant*
*Sagitec Solutions, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 15, 2023, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

OF COUNSEL:

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
(202) 389-5000

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

John W. Shaw
Andrew E. Russell
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

*Attorneys for Plaintiffs Deloitte Consulting LLPand Deloitte Development LLC*

/s/ Anne Shea Gaza

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Sagitec Solutions, LLC*