IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DELOITTE CONSULTING LLP and DELOITTE DEVELOPMENT LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SAGITEC SOLUTIONS, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 23-325-MN<br>)<br>)<br>)<br>) |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR A MORE DEFINITE STATEMENT**

OF COUNSEL:
Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
(202) 389-5000

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Dated: June 15, 2023

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiffs Deloitte Consulting LLP
and Deloitte Development LLC*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | NATURE AND STAGE OF PROCEEDINGS...................................................................1 | |
| II. | SUMMARY OF ARGUMENT.......................................................................................4 | |
| III. | STATEMENT OF FACTS..............................................................................................4 | |
| | A. | Deloitte Develops the uFACTS Solution to Administer Unemployment Insurance and Tax Benefits Programs for State Agencies........................................4 |
| | B. | Sagitec Misappropriates Deloitte's uFACTS Trade Secrets...................................6 |
| IV. | ARGUMENT...................................................................................................................8 | |
| | A. | Deloitte's Complaint Properly Pleaded Its Trade Secret Misappropriation Claims .....................................................................................................................8 |
| | B. | Sagitec Relies on Standards That Do Not Apply at this Stage of Litigation or to the Claims at Issue........................................................................................12 |
| | C. | Sagitec's Motion Essentially Seeks Premature and Improper Discovery..............14 |
| V. | CONCLUSION ..............................................................................................................16 | |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agency Solutions.com, LLC v. TriZetto Grp., Inc.*,
    819 F. Supp. 2d 1001 (E.D. Cal. 2011) ................................................................................... 13

*Am. Bio Medica Corp. v. Bailey*,
    341 F. Supp. 3d 142 (N.D.N.Y. 2018) ....................................................................................... 9

*Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*,
    1 F. Supp. 3d 224 (S.D.N.Y. 2014) ........................................................................................ 13

*Colgate Inn, LLC v. Eberhardt, LLC*,
    206 A.D.3d 1197 (N.Y. App. Div. 2022) ................................................................................ 13

*Corporate Synergies Grp., LLC v. Andrews*,
    CA No. 18-13381, 2019 WL 3780098 (D.N.J. Aug. 12, 2019) ................................................ 9

*Ctr. Pointe Sleep Assocs., LLC v. Panian*,
    CA No. 08-1168, 2009 WL 789979 (W.D. Pa. Mar. 18, 2009) ............................................. 15

*Desmond v. Phelps*,
    CA No. 12-1120-SB, 2016 WL 2742384 (D. Del. May 10, 2016) ......................................... 14

*Dow Chem. Canada Inc. v. HRD Corp.*,
    909 F. Supp. 2d 340 (D. Del. 2012) ....................................................................................... 13

*Eastman Chem. Co. v. Alphapet Inc.*,
    CA No. 09-971-LPS-CJB, 2011 WL 5402767 (D. Del. Nov. 4, 2011) .................................... 9

*Elmagin Cap., LLC v. Chen*,
    555 F. Supp. 3d 170 (E.D. Pa. 2021) ..................................................................................... 15

*Flexible Techs., Inc. v. Sharkninja Operating LLC*,
    CA No. 18-348-CFC, 2019 WL 1417465 (D. Del. Mar. 29, 2019) .................................... 9, 10

*Gabriel Tech. Corp. v. Qualcomm, Inc.*,
    CA No. 08-1992-AJB-MDD, 2011 WL 6152240 (S.D. Cal. Dec. 12, 2011) ......................... 13

*Gross v. Weinstein, Weinburg & Fox, LLC*,
    123 F. Supp. 3d 575 (D. Del. 2015) ......................................................................................... 8

*IDX Sys. Corp. v. Epic Sys. Corp.*,
    285 F.3d 581 (7th Cir. 2002) .................................................................................................. 12

*Imax Corp. v. Cinema Techs., Inc.*,
  152 F.3d 1161 (9th Cir. 1998) ..................................................................................................13

*Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*,
  C.A. No. 11-4568, 2011 WL 6046923 (E.D.Pa. Dec. 6, 2011) ..................................................8

*Lincoln Labs., Inc. v. Savage Labs., Inc.*
  26 F.R.D. 141 (D. Del. 1960) ........................................................................................8, 13, 14

*Mallet & Co., Inc. v. Lacayo*,
  16 F. 4th 364 (3d Cir. 2021) ...............................................................................................12, 15

*In re Methyl Tertiary Butyl Ether ("MTB") Prods. Liab. Litig.*,
  233 F.R.D. 133 (S.D.N.Y. 2005) ................................................................................................8

*MK Strategies, LLC v. Ann Taylor Stores Corp.*,
  567 F. Supp. 2d 729 (D.N.J. 2008) .......................................................................................8, 14

*Oakwood Labs. LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021)............................................................................................2, 8, 14

*Owal, Inc. v. Caregility Corp.*,
  CA No. 21-13407, 2022 WL 890182 (D.N.J. Mar. 25, 2022) ....................................................9

*PeopleFlo Mfg, Inc. v. Sundyne, LLC*,
  CA No. 20-3642, 2021 WL 3129264 (N.D. Ill. July 23, 2021) ..................................................9

*Schaedler v. Reading Eagle Publ'n, Inc.*,
  370 F.2d 795 (3d Cir. 1967) .......................................................................................................8

*Thomas v. Independence Tp.*,
  463 F.3d 285 (3d Cir. 2006) .....................................................................................................14

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
  CA No. 09-157-JAP, 2011 WL 1226365 (D. Del. Mar. 28, 2011) ..........................................14

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
  CA No. 09-157-RGA, 2013 WL 867640 (D. Del. Mar. 8, 2013) ......................................12, 13

*You Map, Inc. v. Snap Inc.*,
  CA No. 20-162-CFC, 2021 WL 3171838 (D. Del. July 27, 2021) ....................................10, 11

**Rules**

Fed. R. Civ. P. 8 ................................................................................................................................2, 9

Fed. R. Civ. P. 11 ..................................................................................................................................15

Fed. R. Civ. P. 12 ............................................................................................................... *passim*

Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC (collectively, "Deloitte") oppose Defendant Sagitec Solutions LLC's ("Sagitec") Motion for a More Definite Statement under Federal Rule of Civil Procedure 12(e), D.I. 13.

## I. NATURE AND STAGE OF PROCEEDINGS

Deloitte's uFACTS software solution is designed to administer seamlessly state unemployment insurance (UI) systems.  Sagitec stole it.  It took Deloitte's source code, its database schemas, its documentation, and its framework.  Sagitec then used those proprietary and confidential materials to create its Neosurance software so that it could quickly enter the market for UI systems and compete directly with Deloitte, using Deloitte's own technology.

On March 23, 2023, once it became clear what Sagitec had done and how it had attempted to mislead Deloitte and the federal government as to its actions, Deloitte sued Sagitec. Its Complaint seeks relief for Sagitec's willful trade secret misappropriation, copyright infringement, unfair competition, and unjust enrichment.  It also details (a) Deloitte's development of uFACTS; (b) Sagitec's theft; (c) how and approximately when Sagitec accomplished it; and (d) how Sagitec is using uFACTS to compete directly against Deloitte.  It even identifies and explains in detail the three categories of uFACTS trade secrets that Deloitte alleges Sagitec misappropriated:

- The **uFACTS Application**, which "consists of source code, libraries, configurations, settings, logic, routines, scripts, and database schemas," D.I. 1 (Compl.) ¶ 28;

- The **uFACTS Design**, which consists of "specification documentation and use cases" that are used by developers "to develop specific instances and features of the uFACTS software," *id.*; and

1

- The **uFACTS Framework**, which consists of "reusable and customizable software packages that can be used to generate the uFACTS application software for customers" and thus can "implement the various components of the uFACTS application software," *id.* ¶¶ 32, 28.

In view of Deloitte's detailed pleading, there can be no question that the Complaint states a claim upon which relief can granted. *See Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021) ("[A] plaintiff need not 'spell out the details of the trade secret to avoid' dismissal.").

Evidently recognizing the sufficiency of Deloitte's Complaint, Sagitec has not moved to dismiss under Rule 12(b)(6). Instead, it seeks a more definite statement on the basis that Deloitte's trade secrets are defined insufficiently for Sagitec to answer. Sagitec's motion is misguided. Rule 8's permissive pleading standard requires merely "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Deloitte's Complaint does so. With regard to the trade secret claim, the Complaint identifies the software solution Sagitec's employees stole, explains the three component parts that constitute the asserted trade secrets, and provides specific examples of Sagitec's use of those components without authorization. It also distinguishes the trade secret material from knowledge known in the parties' industry, delineating the boundaries within which the secrets lie.

To grant Sagitec's Rule 12(e) motion, Sagitec admits that this Court would need to find that the Complaint "is so vague and ambiguous that [Sagitec] cannot reasonably prepare a response." D.I. 14 (Mot.) at 6. Such motions are generally disfavored and require a finding that a pleading is *unintelligible*—mere lack of detail is insufficient. Yet, tellingly, nowhere in Sagitec's motion does it identify any such unintelligibility, nor does it cite to a single decision in which a court has granted or affirmed such a motion regarding the identification of trade secrets

in a pleading.  Instead, Sagitec describes Deloitte's allegations in some detail, undermining any assertion that the allegations are unintelligible.  Moreover, Sagitec's motion relies on preliminary injunction, summary judgment, and motion to dismiss decisions involving other causes of action, not trade secret misappropriation.  Still worse, for several cases on which Sagitec relies where courts found trade secret allegations to be deficient after discovery, those same courts previously ***denied*** motions for a more definite statement at the pleadings stage.  This is consistent with Sagitec's citation to decisions denying Rule 12(e) motions involving similar contexts to those present here.[1]

      Rule 12(e) is designed to allow defendants to compel greater particulars where a complaint is otherwise unintelligible.  Deloitte's Complaint far surpasses the required threshold, and Sagitec's own motion reveals that it knows what is being alleged against it in this case.  What Sagitec's motion actually seeks is a premature and highly factual determination concerning whether Deloitte's asserted trade secrets are, in fact, trade secrets.  Leaving aside the fact that the materials Sagitec stole and used repeatedly for its own benefit are trade secrets, numerous courts have held that making that determination before the parties have had an opportunity to engage in discovery is inappropriate.  That is the case here.  Resolution of Sagitec's fact-intensive arguments would require this Court to consider whether Deloitte's uFACTS Trade Secrets were kept confidential, whether they contain public or common industry information and, even if they did, whether the material as a whole was a trade secret compilation.  Sagitec is free to seek discovery on these topics at the appropriate time.  It is not entitled to relief at the pleadings stage

---

[1] The few cases where such motions were granted involved different causes of action or immunity defenses with key deficiencies that are not implicated by a trade secret claim against a single defendant.

3

under Rule 12(e).  As Sagitec is capable of answering the Complaint based on the information reasonably available to it, its Rule 12(e) motion should be denied.

## II.     SUMMARY OF ARGUMENT

1. Sagitec tacitly admits that Deloitte's Complaint states a claim upon which relief can be granted, and it has not shown that the Complaint is unintelligible as would be required to grant a motion for a more definite statement under Rule 12(e).

2. Sagitec's improperly relies on cases applying standards other than that provided by Rule 12(e).

3. Sagitec can request additional information during the course of discovery.  It is not entitled to more detail at this stage of the proceeding.

## III.    STATEMENT OF FACTS

### A.     Deloitte Develops the uFACTS Solution to Administer Unemployment Insurance and Tax Benefits Programs for State Agencies

As explained in the Complaint, Deloitte has invested significant time, effort, and resources developing uFACTS, a "software solution for managing state UI programs."  Compl. ¶¶ 2, 18, 33.  The uFACTS solution is a customizable enterprise application for managing UI claims, appeals, and wage determinations.  *Id*. ¶ 21.  State agencies hire Deloitte to implement the uFACTS solution to help them manage their state's UI programs.  *Id*.  uFACTS is extremely complex: it integrates with state-specific systems and can handle a dizzying array of requirements that differ from state to state.  *Id*. ¶¶ 2, 18, 19.  And to help Deloitte more efficiently set up the uFACTS solution for a state, Deloitte (and its predecessors) developed a "'framework' system that provided developers with a suite of flexible 'building blocks' that could be combined and adapted to suit the unique and constantly changing needs" of a state.  *Id*.

¶ 19.  Deloitte owns the uFACTS software solution and all the intellectual property (including trade secrets) contained therein.  *Id.* ¶ 23.

Three confidential components of Deloitte's uFACTS solution are at issue in this case (the "uFACTS Trade Secrets"):

- The **uFACTS Application** is the "application software that Deloitte develops and installs for clients, which consists of source code, libraries, configurations, settings, logic, routines, scripts, and database schemas (as embodied in data dictionaries)."  *Id.* ¶ 28.  It includes "the source code, libraries, configurations, settings, logic, routines, scripts, and database schemas that enable uFACTS to operate" and that "specif[y] the detailed operation and structure of uFACTS."  *Id.* ¶ 29.  The source code and related material "provide[] insight into how Deloitte solved specific programming problems and implemented uFACTS to address various client needs to create a complete UI solution."  *Id.*

- The **uFACTS Design** is the "design assets used by Deloitte to develop specific instances of the uFACTS software, including specification documentation and use cases."  *Id.* ¶ 28.  These assets "describe in plain language how the software is intended to operate" and can be used by developers "to develop specific instances and features of the uFACTS software."  *Id.* ¶ 31.  For example, these assets "describe specific modules or functions of the software, including . . . the ordered steps a user may execute using the module or function, the forms or information that will be displayed to the user at each step, the data that may be accepted from the user, the structure of the data and its location and identification in the database schema, and any interfaces with other modules and functions."  *Id.*

- The **uFACTS Framework** is the "development framework used by Deloitte's software developers to implement the various components of the uFACTS application software." *Id*. ¶ 28. This proprietary framework is "distinct from the uFACTS application software delivered to clients" and consists of "reusable and customizable software packages that can be used to generate the uFACTS application software for customers" and "related confidential documentation." *Id*. ¶ 32.

Deloitte keeps the uFACTS Trade Secrets confidential to protect their value and to protect Deloitte's investments in developing them. *Id*. ¶¶ 3, 34–37. These confidentiality measures include "access controls, non-disclosure and confidentiality agreements, and restrictions on the use of uFACTS material," such as restricting access to "only select individuals . . . subject to strict confidentiality and non-disclosure agreements"; confidentiality agreements that are part of Deloitte employment agreements and contracts with state agencies; and information retention policies upon termination of employment. *Id*. (describing the specific employment agreement and state contract confidentiality language to keep uFACTS Trade Secrets confidential). As a result, Deloitte's uFACTS Trade Secrets are "not publicly known, nor are they generally known within any relevant industry," and are not susceptible to reverse engineering. *Id*. ¶ 38. Deloitte also earns revenue and maintains a competitive advantage from its exclusive use of the uFACTS Trade Secrets. *Id*. ¶ 33.

### B.   Sagitec Misappropriates Deloitte's uFACTS Trade Secrets

Sagitec took Deloitte's uFACTS Trade Secrets and misused them to benefit Sagitec. It did so by poaching nearly a dozen former Deloitte executives and developers who had direct access to Deloitte's uFACTS software solution (and thus Deloitte's trade secrets). *Id.* ¶ 44. These now-Sagitec employees include David Minkkinen, Deloitte's former Labor and Employment Practice Leader who led efforts to upgrade UI offerings for multiple states and led

6

the team that developed the uFACTS solution framework; Sivaraman Sambasivam, Deloitte's former Lead System Architect for the uFACTS Solution Framework; and at least nine other Deloitte R&D personnel who had access to the uFACTS Trade Secrets. *Id*. ¶¶ 41–42, 44. Each agreed to hold Deloitte's proprietary and confidential information in "strict confidence" and not to retain or use any Deloitte property after leaving Deloitte. *Id*. ¶ 44.

Despite those agreements, at least two of those Sagitec employees (Messrs. Minkkinen and Sambasivam) ***downloaded and transmitted*** the uFACTS Trade Secrets—including the source code, database schemas, and use cases—to Sagitec. *Id*. ¶¶ 43–45. Sagitec then used and relied on the illicitly downloaded and transmitted uFACTS Trade Secrets to develop its competing UI benefits solution, called "Neosurance." *Id*. ¶¶ 45–49. Indeed, Sagitec hired these turncoat employees specifically so that Sagitec could enter the UI benefits market, and it only developed Neosurance after gaining access to Deloitte's uFACTS Trade Secrets. *Id*. Sagitec's use went as far as to, for example, "directly incorporat[e] one or more elements from the uFACTS source code and data dictionaries" and other identical or equivalent functionality from the uFACTS Trade Secrets into its own Neosurance solution. *Id*. ¶¶ 46–47. As a specific example, Sagitec used Deloitte's proprietary uFACTS data dictionary for Sagitec's project with Washington, D.C. (which was not a Deloitte client). *Id*. ¶ 46. And it directly accessed and used Deloitte's proprietary "uFACTS Solution Framework documentation, which comprises hundreds of pages of detailed descriptions of the functionality of the uFACTS Framework" to develop Neosurance. *Id*. ¶ 48. This unauthorized use of Deloitte's uFACTS Trade Secrets helped Sagitec rapidly bring Neosurance to market and, to this day, Sagitec uses those trade secrets to win bids to modernize UI systems, including in direct competition with Deloitte. *Id*. ¶¶ 50–51.

IV.     **ARGUMENT**

To grant a motion for a more definite statement, a complaint must be "so vague or ambiguous that the [defendant] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *Schaedler v. Reading Eagle Publ'n, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967) (more definite statement required only when complaint is "so vague or ambiguous" that defendant "cannot reasonably be required to frame a responsive pleading"). Such motions are "generally disfavored," *Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*, C.A. No. 11-4568, 2011 WL 6046923, at *3 (E.D. Pa. Dec. 6, 2011), because of "their dilatory effect." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 233 F.R.D. 133, 134–35 (S.D.N.Y. 2005). "The basis for granting such a motion is unintelligibility, not lack of detail." *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 737 (D.N.J. 2008) (citing *Lincoln Labs., Inc. v. Savage Labs., Inc.* 26 F.R.D. 141, 142–43 (D. Del. 1960)). Moreover, Rule 12(e) motions are particularly inappropriate "where the information sought by the motion could easily be obtained by discovery." *See Gross v. Weinstein, Weinburg & Fox, LLC*, 123 F. Supp. 3d 575, 581 (D. Del. 2015).[2]

    A.     **Deloitte's Complaint Properly Pleaded Its Trade Secret Misappropriation Claims**

Far from discharging the heavy burden of showing that Deloitte's Complaint is unintelligible, Sagitec's motion rests solely on the assertion that Deloitte has insufficiently described its trade secrets. Yet, the Third Circuit has specifically held that a complaint alleging trade secret misappropriation need identify the misappropriated information with only "enough specificity to place a defendant on notice of the bases for the claim being made against it"; it

---

[2] Indeed, as made clear by a case on which Sagitec relies, "it is not a function of 12(e) to provide greater particularization of information alleged in the complaint or which presents a proper subject for discovery." *Lincoln Labs.*, 26 F.R.D. at 143.

need not "spell out the details of the trade secret to avoid dismissal." *Oakwood*, 999 F.3d at 906. As a result, courts routinely find that trade secret identifications far less detailed than Deloitte's satisfy Rule 8's liberal requirements. *See, e.g., Flexible Techs., Inc. v. SharkNinja Operating LLC*, CA No. 18-348-CFC, 2019 WL 1417465, at *2 (D. Del. Mar. 29, 2019) (trade secrets described as "'know-how' relating to 'current carrying self-retracting stretch hoses'"); *Eastman Chem. Co. v. AlphaPet Inc.*, CA No. 09-971-LPS-CJB, 2011 WL 5402767, at *2 (D. Del. Nov. 4, 2011) (trade secrets defined as information "related to [the product at issue]" and referenced the "[product's] technology"); *Owal, Inc. v. Caregility Corp.*, CA No. 21-13407, 2022 WL 890182, at *6–7 (D.N.J. Mar. 25, 2022) (trade secrets described in two categories, "Confidential Information," which "include[s] 'notes, analyses, compilations, studies, or other documents,'" and "Evaluation Materials," which "include[s] 'financial information, business plans and strategies . . . . software, systems, products, services, and website designs, code, algorithms, and technology, trade secrets, records, notes . . . and other documents and information,'" discussing *Oakwood* and noting these descriptions were more than "generic lists of categories of information" because the material was contained in "a reasonably finite category of information" that sufficiently separated the trade secrets "from matters of general knowledge in the trade"); *Corporate Synergies Grp., LLC v. Andrews*, CA No. 18-13381, 2019 WL 3780098, at *4 (D.N.J. Aug. 12, 2019) (trade secrets described as "names and describes documents that [the defendant] accessed the day before he resigned from [the plaintiff] and that [another employee] emailed to herself prior to her resignation").[3]

---

[3] *See also PeopleFlo Mfg., Inc. v. Sundyne, LLC*, CA No. 20-3642, 2021 WL 3129264, at *6 (N.D. Ill. July 23, 2021) (trade secrets described as "technical and financial information, design specification, marketing strategy, pricing and cost strategies, and lists of vendors" where plaintiff tied them to "specific aspects of its technology or marketing strategy," noting that "[a]t the pleading stage, the complaint can describe trade secret information in general terms") ; *Am. Bio*

9

For example, in *You Map, Inc. v. Snap Inc.*, the plaintiff asserted that the defendants misappropriated three trade secret components of its software solution. CA No. 20-162-CFC, 2021 WL 3171838, at *3 (D. Del. July 27, 2021). The complaint defined each component as:

> includ[ing] the . . . system/method/process, and all of its functional and visual features, variations, expressions and embodiments, and the various steps comprising its component methods and processes, including the mobile software application and its underlying source-code metadata and object code, library files, machine code, and software algorithm systems, all as implemented and expressed by and through various software algorithms.

*Id*. The defendants asserted that the description was not sufficient because "visual aspects" are publicly available and, thus, not trade secrets. The court disagreed, holding that the pleading "identifies its trade secrets with enough particularity to provide notice to Defendants about what they are accused of misappropriating" and are thus "sufficient to put Defendants on notice of what is alleged to be a trade secret." *Id*. at *8–9. Even if the defendants were correct, the court could not conclude that "all aspects of the alleged trade secrets were publicly available," such as the "underlying algorithms and source code." *Id.* at *9. Thus, because the court "would allow the trade secret claim to move forward even if [it] were to find that certain aspects were publicly known at the time the misappropriation [was] alleged to have occurred," the court denied the defendants' motion. *Id.*

Deloitte's Complaint specifically identifies the uFACTS Trade Secrets as technology Sagitec stole from the uFACTS software solution; delineates that technology into three specific categories (the uFACTS Application, Design, and Framework) that are adequately and appropriately described; explains what Sagitec's employees accessed, downloaded, and transmitted; and provides examples of Sagitec's use of the uFACTS Trade Secrets. Compl.

---

*Medica Corp. v. Bailey*, 341 F. Supp. 3d 142, 159 (N.D.N.Y. 2018) (trade secrets described as "compilation of information" described as involving "marketing, pricing packaging, and selling testing kits") .

¶¶ 41–50.  In particular, the Complaint describes what the confidential uFACTS Application, Design, and Framework are, including that they contain subcomponents such as "source code," "algorithms," "use cases," and "data dictionaries."  *Id.* ¶ 28–32.  It also explains why they are proprietary to Deloitte, not "matters of general knowledge."  *Id.* ¶¶ 33–38.  These allegations easily satisfy the Rule 12(e) standard.

Faced with this, Sagitec misrepresents Deloitte's trade secret identification as three "made up categories of trade secrets."  Mot. 2.  But these are not "made up categories."  The uFACTS Application, Design, and Framework describe three, non-public components of the uFACTS software solution that Deloitte developed, each of which is described as being Deloitte's confidential and proprietary technology.  Compl. ¶ 38.

Sagitec also claims that it cannot understand what the uFACTS Trade Secrets are because the Complaint uses "inclusionary" language that Sagitec asserts means the trade secrets "include information that cannot be a trade secret," or does not draw "lines between the general elements of uFACTSs software categories and any specifically alleged trade secrets."  Mot. 12, 14.  That argument fails for three, independent reasons:

- ***First***, Sagitec does not cite to any authority for the proposition that these criticisms render a trade secret identification at the pleadings stage so vague and ambiguous that a defendant cannot frame a responsive pleading.  As Sagitec fails to satisfy Rule 12(e)'s requirements, its motion can be denied for this reason alone.

- ***Second***, Sagitec does not argue that all of the components of the uFACTS Trade Secrets "cannot be a trade secret."  Thus, as explained in *You Map*, given that the trade secret claim will move forward regardless, the motion should be denied in favor of addressing any further identification through the discovery process.  2021 WL 3171838, at *9.

11

- ***Third***, Sagitec fails to explain why it requires this information to answer the Complaint, or why a general denial is not sufficient. To the contrary, Sagitec's motion makes abundantly clear that Sagitec ***does*** understand what the uFACTS Trade Secrets are: Sagitec asserts that the uFACTS software might include "software packages" and that such UI software would be "based on . . . unemployment laws." Mot. 15. That Sagitec understands what it stole (Deloitte's "UI platform," uFACTS, including its software) and can make arguments in its defense reveals that Sagitec understands what is being alleged such that it can answer the Complaint, admitting or denying the allegations as appropriate.

Deloitte's trade secret identifications go beyond the specificity required for Sagitec to understand the nature of the claims against it and what it is accused of being misappropriated. As no more is required, Sagitec's motion should be denied.

### B. Sagitec Relies on Standards That Do Not Apply at this Stage of Litigation or to the Claims at Issue

Sagitec, apparently recognizing that it is not entitled to a more definite statement under what it admits is the "more lenient" standard of Rule 12(e), Mot. 9, relies on standards that do not apply here, such as those applicable after some discovery to preliminary injunction or summary judgment motions. *See, e.g.*, *Mallet & Co., Inc. v. Lacayo*, 16 F. 4th 364, 385 (3d Cir. 2021) (vacating preliminary injunction, but not dismissing complaint, where district court "did not articulate with particularity the information to which it accorded trade secret status"); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 585 (7th Cir. 2002) (affirming summary judgment after plaintiff failed to identify trade secrets with the requisite particularity in written discovery responses); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, CA No. 09-157-RGA, 2013 WL 867640, at *2 (D. Del. Mar. 8, 2013) (granting summary judgment where, following discovery, plaintiff's

trade secret identification was "insufficient to create a triable factual issue"); *Agency Solutions.com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001 (E.D. Cal. 2011) (denying preliminary injunction but permitting the case to continue without requiring additional specificity in the pleadings); *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 229 n.1, 256 (S.D.N.Y. 2014) (granting summary judgment in part because plaintiff did not identify its alleged trade secret "with particularity" after a "herculean discovery effort" involving hundreds of exhibits and "thousands of pages of deposition transcripts"); *Colgate Inn, LLC v. Eberhardt, LLC*, 206 A.D.3d 1197, 1203 (N.Y. App. Div. 2022) (affirming summary judgment where, following discovery, there was no dispute of material fact that alleged trade secrets were public); *Dow Chemical Canada Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 342 (D. Del. 2012) (granting summary judgment where plaintiff failed to show "the existence of a trade secret with [a] 'reasonable degree of precision and specificity such that a reasonable jury could find the plaintiff established each statutory element of a trade secret'" following discovery (citing *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998)); *Gabriel Tech. Corp. v. Qualcomm, Inc.*, CA No. 08-1992-AJB-MDD, 2011 WL 6152240, at *5 (S.D. Cal. Dec. 12, 2011) (denying motion to compel discovery).[4]

Tellingly, not one of these cases was decided at the pleadings stage or involved a Rule 12(e) motion. As a result, none of those cases required the plaintiff to amend its complaint to provide a more detailed trade secret description. Instead, the defendant filed a responsive pleading and the parties proceeded to discovery. For example, in *XpertUniverse*, two years prior

---

[4] In its motion, Sagitec acknowledges this for only one case on which it relies. Mot. 10–11 (noting that "the pleading standard applied [for the instant motion] is more lenient than the summary judgment standard applied in *XpertUniverse*."). But the same is true for many of the trade secret cases on which Sagitec relies.

13

to the summary judgment decision on which Sagitec relies, Mot. 10, the court **denied** the defendant's motion to dismiss, finding that the trade secret identification in the complaint was sufficient under the liberal pleading standard. *XpertUniverse, Inc. v. Cisco Sys., Inc.*, CA No. 09-157-JAP, 2011 WL 1226365 at *2–3 (D. Del. Mar. 28, 2011). As that liberal pleading standard applies to Sagitec's motion as well, this Court should deny it for the same reasons.

Likewise, not a single one of the Rule 12(e) decisions Sagitec cites granted a motion for a further description of trade secrets. *See Thomas v. Independence Twp.*, 463 F.3d 285, 298–299 (3d Cir. 2006) (affirming grant of motion in qualified immunity case); *Desmond v. Phelps*, CA No. 12-1120-SB, 2016 WL 2742384, at *2 (D. Del. May 10, 2016) (granting motion in religious freedoms case). Indeed, the court in *Lincoln Laboratories, Inc. v. Savage Laboratories, Inc.*, which granted such a motion as to the trademark claims, **denied the motion as to the misappropriation of confidential information claim**. 26 F.R.D. at 143. As to that claim, the court found that there was no need for additional identifications of specific "product[s]," "secret[s]," "confidential information," or "promotion[s] and sales techniques." *Id.* It held that any such questions were better left to discovery. *Id.*[5] So too here.

C.  **Sagitec's Motion Essentially Seeks Premature and Improper Discovery**

A motion for a more definite statement is not the vehicle through which to seek particularized information that can be gleaned through discovery. *MK Strategies*, 567 F. Supp. 2d at 737 ("It is not the function of 12(e) to provide greater particularization of information alleged in the complaint or which presents a proper subject for discovery." (quoting *Lincoln Labs.*, 26 F.R.D. at 142–43)). This is particularly true in the trade secrets context

---

[5] The court granted the motion as to the trademark claim because the plaintiff had not identified any of the 60 trademarks it accused the defendant of infringing. *Id.* Here, the Complaint is clear that Sagitec misappropriated the uFACTS Trade Secrets.

14

because, as the Third Circuit acknowledged in *Oakwood*, requiring too much detail too early would place trade secret owners in a "Catch-22": if "the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret"; but if "it is too specific, it may miss what the defendant is doing." 999 F.3d at 907. Moreover, "[w]hether a particular piece of information or a combination of pieces of information constitutes a trade secret is generally a question of fact" that requires a "jury to determine." *Elmagin Cap., LLC v. Chen*, 555 F. Supp. 3d 170, 179 (E.D. Pa. 2021).

Sagitec may disagree that the uFACTS Trade Secrets constitute protectable trade secrets, Mot. 13 (arguing that technology includes material that is "manifest in the way a program works" or shown to a user), or it may try to argue as the case progresses that the trade secrets are not distinguishable "from generic development elements known in the trade," *id.* at 13–14. Sagitec is wrong on both counts, as discovery will show, but the fact remains that Deloitte has adequately pleaded that the uFACTS Trade Secrets are, in fact, confidential, non-public components of the uFACTS software solution and that they are not part of the public's general knowledge, nor are they generally known in any relevant industry. Compl. ¶¶ 33–38. Moreover, the Third Circuit made clear, in a case Sagitec itself cited, that confidential compilations do not lose trade secret protection because ***some*** component parts are publicly known or available. *See Mallet*, 16 F.4th at 386 ("A confidential compilation and organization of public information can amount to a trade secret."). If Sagitec has a good faith basis to disagree with the Third Circuit's holding or Deloitte's factual allegations, Fed. R. Civ. P. 11(b)(2)–(3), it may say so in its answer. Its motion still must be denied. *Cf. Ctr. Pointe Sleep Assocs., LLC v. Panian*, CA No. 08-1168, 2009 WL 789979, at *3 (W.D. Pa. Mar. 18, 2009) (denying motion to dismiss that argued that plaintiff would not be able to show that "information relating to trucking companies is not

generally known or ascertainable to those in the industry" because "all that is required" was pleading that the information at issue was "not generally known in the industry," "not easily ascertainable from other sources," and "extremely valuable to [plaintiff]").[6]

## V. CONCLUSION

As Sagitec is able to respond to Deloitte's detailed, intelligible Complaint, its motion for a more definite statement should be denied.

|  |  |
|---|---|
|  | /s/ John W. Shaw |
|  | John W. Shaw (No. 3362) |
| OF COUNSEL: | Andrew E. Russell (No. 5382) |
| Joshua L. Simmons | SHAW KELLER LLP |
| KIRKLAND & ELLIS LLP | I.M. Pei Building |
| 601 Lexington Avenue | 1105 North Market Street, 12th Floor |
| New York, NY 10022 | Wilmington, DE 19801 |
| (212) 446-4800 | (302) 298-0700 |
|  | jshaw@shawkeller.com |
| Gregg F. LoCascio | arussell@shawkeller.com |
| Patrick Arnett | *Attorneys for Plaintiffs Deloitte Consulting LLP* |
| Nicholas Teleky | *and Deloitte Development LLC* |
| KIRKLAND & ELLIS LLP |  |
| 1301 Pennsylvania Ave NW |  |
| Washington, DC 20004 |  |
| (202) 389-5000 |  |
|  |  |
| John F. Hartmann |  |
| KIRKLAND & ELLIS LLP |  |
| 300 North LaSalle |  |
| Chicago, IL 60654 |  |
| (312) 862-2000 |  |

Dated: June 15, 2023

---

[6] To be clear, Sagitec is wrong when it asserts that Deloitte alleged that "all information in or related to the uFACTS Solution" is secret. Mot. 10. Deloitte was clear that the uFACTS Application included "the non-public portions of the registered uFACTS Computer Program." Compl. ¶¶ 29–32. Deloitte also described the non-public portions of uFACTS that Sagitec employees downloaded, transmitted, and used when developing Sagitec's UI software. *Id.* ¶¶ 39–49.

16