IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| DELOITTE CONSULTING LLP and DELOITTE DEVELOPMENT LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SAGITEC SOLUTIONS, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) C.A. No. 23-325-MN<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR
<u>ALTERNATIVELY TRANSFER TO MORE APPROPRIATE VENUE</u>**

OF COUNSEL:

Christopher K. Larus
David A. Prange
Rajin S. Olson
Brandon A. Carmack
ROBINS KAPLAN, LLP
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500
CLarus@RobinsKaplan.com
DPrange@RobinsKaplan.com
ROlson@RobinsKaplan.com
BCarmack@RobinsKaplan.com

Dated: August 15, 2023

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Defendant
Sagitec Solutions, LLC*

# **TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | iii |
| I. | Sagitec Has Not Purposefully Directed Activities To Delaware As Necessary To Support A Finding Of Specific Personal Jurisdiction Under The Due Process Clause Or Delaware Long-Arm Statute. | 1 |
| II. | Deloitte Fails To Show Its Claims Arise From Sagitec's PUA Contract As Necessary To Support A Finding Of Specific Personal Jurisdiction Under The Due Process Clause Or Delaware Long-Arm Statute. | 7 |
| III. | If There Is Personal Jurisdiction Over Sagitec, This Action Should Be Transferred. | 9 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985)............................................................................................................1, 7

*Florida Chem. Co., LLC v. Flotek Indus., Inc.*,
 CV 2021-0288-JTL, 2021 WL 3630298 (Del. Ch. Aug. 17, 2021)..........................................5

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
 141 S. Ct. 1017 (2021).............................................................................................................8

*Graphics Props. Holdings, Inc. v. ASUS Computer Int'l*,
 70 F. Supp. 3d 654 (D. Del. 2014)..........................................................................................6

*Harris v. Harris*,
 289 A.3d 277 (Del. Ch. 2023).................................................................................................7

*Hepp v. Facebook*,
 14 F.4th 204 (3d Cir. 2021) ....................................................................................................8

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
 797 F. Supp. 2d 472 (D. Del. 2011).......................................................................................10

*McRo, Inc v. Activision Blizzard, Inc*,
 C.A. No. 12-1508-LPS-CJB, 2013 WL 6571618 (D. Del. Dec. 13, 2013) .......................9, 10

*Padcom Inc. v. NetMotion Wireless Inc.*,
 C.A. No. 03-983-SLR, 2004 WL 1192641 (D. Del. May 24, 2004) ...................................5, 6

*Regan v. Loewenstein*,
 292 F. App'x 200 (3d Cir. 2008) .........................................................................................3, 4

*Rockwell Automation Inc. v. EU Automation Inc.*,
 C.A. No. 21-1162-MN-MPT, 2022 WL 1978726 (D. Del. June 6, 2022)...............................3

*Seiden for S. China Livestock, Inc. v. Schwartz, Levitsky, & Feldman LLP*,
 C.A. No. 17-1869-MN, 2018 WL 5818540 (D. Del. Nov. 7, 2018).........................................2

*Tessara, Inc. v. Broadcom Corp.*,
 C.A. No. 16-379-LPS-CJB, 2017 WL 1065865 (D. Del. Mar. 21, 2017)................................9

*Univ. Accounting Serv. LLC v. ScholarChip Card LLC*,
 17-CV-901-JPS, 2017 WL 4877418 (E.D. Wis. Oct. 27, 2017)...............................................4

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*,
    75 F.3d 147 (3d Cir. 1996)..................................................................................................2

*Whirlpool Corp. v. Cabri*,
    C.A. No. 21-979-EJW, 2022 WL 1421126 (D. Del. May 5, 2022)...........................................5

*Yankees Entm't & Sports Network, LLC v. Hartford Fire Ins. Co.*,
    634 F. Supp. 3d 203 (D. Del. 2022)......................................................................................1

# ARGUMENT

I. **Sagitec Has Not Purposefully Directed Activities To Delaware As Necessary To Support A Finding Of Specific Personal Jurisdiction Under The Due Process Clause Or Delaware Long-Arm Statute.**

Deloitte fails to show that exercise of specific personal jurisdiction over Sagitec comports with the Due Process Clause and the Delaware Long-Arm Statute. Instead, Deloitte relies heavily on the Delaware Long-Arm Statute, summarily concluding "the same conduct satisfies the Due Process Clause." D.I. 37 at 8. But the analysis is not coextensive. "Delaware law . . . does not teach that the statutory and constitutional steps should be collapsed into a single analysis." *Yankees Entm't & Sports Network, LLC v. Hartford Fire Ins. Co.*, 634 F. Supp. 3d 203, 208 (D. Del. 2022). Delaware's Long Arm Statute cannot confer jurisdiction where the Due Process Clause precludes jurisdiction. *See Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1289, 1295 (D. Del. 1990) ("Assuming *arguendo* that § 3104 applies . . . assertion of personal jurisdiction over [the defendant] would not comport with the requirements of due process.").

The Due Process Clause precludes a dispositive finding of personal jurisdiction based only on the existence of a single contract. "An individual's contract with an out-of-state party cannot *alone* automatically establish sufficient minimum contacts in the other party's home forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463 (1985) (emphasis in original); D.I. 12 at 15-16. Beyond the existence of a contract, the Due Process analysis for specific personal jurisdiction considers the "[1] prior negotiations and [2] contemplated future consequences, along with [3] the terms of the contract and [4] the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts with the forum." *Id.* Sagitec's lone contract with the State of Delaware is insufficient to establish specific personal jurisdiction under these factors.

**Prior Negotiations:** Sagitec's pre-contract conversations with Delaware do not

**support a finding of sufficient minimum contacts**. Communications between Sagitec and the State of Delaware began outside of Delaware. "Purposeful availment requires a 'deliberate targeting of the forum.' . . . '[C]ontacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." *Seiden for S. China Livestock, Inc. v. Schwartz, Levitsky, & Feldman LLP*, C.A. No. 17-1869 (MN), 2018 WL 5818540, at *6 (D. Del. Nov. 7, 2018) (quoting *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007)). Contrary to Deloitte's assertions, Sagitec learned of Delaware's pandemic-related unemployment software need during a conference in Kansas City (not through a solicitation email). *Compare* D.I. 37 at 4 ("[Sagitec's sale] process started on April 15, 2020 when . . . Chris Peretto[] emailed . . . the Delaware Department of Labor,") *with* D.I. 15 (Peretto Decl.) ¶ 11. Sagitec never "targeted" the State of Delaware through marketing or other means. D.I. 15 ¶ 16.

Sagitec's pre-contract communications with Delaware, for less than a month, are not relevant because they were merely informational communications in furtherance of a contract. "[I]nformational communications in furtherance of [a contract between a resident and a nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 152 (3d Cir. 1996). Delaware approved Sagitec's stand-alone PUA proposal two days after Sagitec followed up from the Kansas City conversations. *See e.g.*, D.I. 37-2; D.I. 37-4; D.I. 15 ¶ 11. The cited communications reflect the presentation and discussion of the technical needs of Delaware and Sagitec's proposal. These conversations between Sagitec and Delaware are not relevant to minimum contacts because they merely related to the scope and substance of Delaware's communicated technical needs. *Vetrotex*, 75 F.3d at 152.

Deloitte fails to show that Sagitec's pre-contract communications with Delaware

sufficiently demonstrate minimum contacts. Instead, Deloitte simply argues that Sagitec's communications with Delaware *can* confer jurisdiction because they are remote. D.I. 37 at 10 (citing *Rockwell Automation Inc. v. EU Automation Inc.*, C.A. No. 21-1162-MN-MPT, 2022 WL 1978726, at *3 (D. Del. June 6, 2022) [hereinafter, *Rockwell II*]). *Rockwell II* did not involve a single contract as a basis for jurisdiction. *Rockwell II* found jurisdiction under the Due Process Clause because the defendant's website solicited, sold, and shipped orders for Delaware residents. *Id.* at 4. Here, however, Sagitec does not engage with residents of Delaware to sell products to Delaware residents. D.I. 15 ¶ 16. Sagitec has no customers in Delaware beyond the Department of Labor. *Id.* Sagitec's prior negotiations with Delaware did not "purposefully target marketing efforts towards Delaware residents." *Rockwell*, 2022 WL 1978726, at *3.

**Contemplated Future Consequences: The PUA Contract does not impose any obligations on Sagitec that must be or will be performed in Delaware**. A plaintiff must show that the purported contract would require future action in Delaware by a defendant. *Regan v. Loewenstein*, 292 F. App'x 200, 204 (3d Cir. 2008); *Sears*, 744 F. Supp. at 1292 (finding no personal jurisdiction because "the contract . . . did not *require* performance in Delaware.") (emphasis in original). Indeed, while arguing against transfer of venue, Deloitte appears to concede that Sagitec's continuing obligations, to the extent they exist, are remote. D.I. 37 at 18 ("[Sagitec] already *remotely* transacts business in Delaware") (emphasis added).

The PUA Contract imposes limited obligations on Sagitec, which are fulfilled outside of Delaware and, thus, do not contribute to a finding of minimum contacts. *See* D.I. 37-16 at 145.[1] Sagitec provides Delaware with "Hosted Services," which includes the "implementation,

---

[1] Citations to page numbers in exhibits refer to the numerical portion of the Bates stamp.

3

hosting, management and operation of the Service Software." *Id.*; *see also Univ. Accounting Serv. LLC v. ScholarChip Card LLC*, 17-CV-901-JPS, 2017 WL 4877418, at *7 (E.D. Wis. Oct. 27, 2017) (denying jurisdiction where "[t]he parties' contracts contemplate primarily the development and hosting of an internet-based software platform, both of which indisputably occurred outside Wisconsin").[2] Sagitec hosts Delaware's PUA software in Virginia. D.I. 15 ¶ 13. Sagitec provides ongoing maintenance and "Support Services," which include corrections, telephone support, online support, and responding to service requests. D.I. 37-16 at 2170; *see also Univ. Accounting Serv.*, 2017 WL 4877418, at * 8 ("[C]ontractual provisions creating the training and support duties, and subsequent performance of those duties, do not 'demonstrate a real relationship with the state with respect to the transaction at issue.'"). Sagitec provides these services remotely on an as-needed basis. D.I. 15 ¶ 14. The PUA Contract does not obligate Sagitec to provide any products, physical training or support, or downloadable products in Delaware, or to take other proactive steps in Delaware. *Id.*

**Terms of the Agreement: Sagitec did not Consent to Delaware's Jurisdiction for Deloitte's Claims.** Deloitte repeatedly and mistakenly asserts that Sagitec "consented" to jurisdiction in Delaware. D.I. 37 at 2, 5, 12. Deloitte relies on the PUA Contract's dispute resolution clause, which states in relevant part: "Contractor agrees to jurisdiction and venue in Delaware for any dispute arising from this Contract." D.I. 37-16 at 2164. But Delaware law makes clear that "[i]n Delaware, a consent to jurisdiction clause operates only as a consent to

---

[2] Deloitte incorrectly asserts *Univ. Accounting Serv.* applied Wisconsin law. D.I. 37 at 13. The court expressly held that "*due process, and not the long-arm statute, is what obliges the Court to dismiss the case.*" *Univ. Accounting Serv.*, 2017 WL 4877418, at * 4 n.3 (emphasis added).

jurisdiction with respect to the claims to which it applies. . . . That is 'the party is bound only by the terms of the consent, and such consent applies only to those causes of action that are identified in the consent provision.'" *Whirlpool Corp. v. Cabri*, C.A. No. 21-979-EJW, 2022 WL 1421126, at *13 (D. Del. May 5, 2022) (citation omitted).

The dispute resolution provision of the PUA Contract is inapplicable to the personal jurisdiction analysis for Deloitte's claims. "As a general matter, only a party to a contract has standing to enforce it." *Florida Chem. Co., LLC v. Flotek Indus., Inc.*, CV 2021-0288-JTL, 2021 WL 3630298, at *1085 (Del. Ch. Aug. 17, 2021). Deloitte is neither a party nor third-party beneficiary to the PUA Contract, and therefore has no standing to enforce it. And Sagitec's consent to Delaware's jurisdiction is limited by law to the express language of the PUA Contract: "for any dispute arising from this Contract." D.I. 37-16 at SAG-JUR-0002164. The PUA Contract does not confer Sagitec's consent to jurisdiction for Deloitte's unrelated claims.

**Course of Dealing: There is no course of dealing by Sagitec in Delaware**. Deloitte asserts that "Sagitec engaged in a pattern of conducting business with the forum" by submitting a "UI Proposal" in 2023, D.I. 37 at 13, and arguing that "solicitation of business counts as purposeful direction." D.I. 37 at 9 (citing *Padcom Inc. v. NetMotion Wireless Inc.*, C.A. No. 03-983-SLR, 2004 WL 1192641, at *4–6 (D. Del. May 24, 2004)). But *Padcom v. NetMotion Wireless* explicitly states: "[t]he Third Circuit's test [for purposes of § 3104(c)(1)-(c)(4)] is whether the defendant 'intentionally and knowingly transacted business with residents of the forum state *and had significant other contacts with the forum besides those generated by its web site*.'" *Padcom*, 2004 WL 1192641, at *5 (D. Del. May 24, 2004) (emphasis added) (citations omitted). There, the court found jurisdiction over the defendant because the defendant hired a third-party telemarketer and mailed promotional materials to solicit business in Delaware,

5

targeting Delaware health care facilities. *Id.* at 6. *Padcom* did not involve a constitutional due process analysis of specific personal jurisdiction involving a single contract. *Id.*

Here, there is no such course of conduct under either Delaware's Long Arm Statute or the Due Process Clause. Preliminarily, it is a stretch to argue that submission of a single proposal constitutes a course of conduct in Delaware. Sagitec has not engaged in any substantive communications with Delaware regarding the UI Proposal since its submission. D.I. 15 ¶ 16. And while Deloitte speculates what the UI RFP "will" require, D.I. 37 ¶¶ 8-11, such conjecture is legally irrelevant (nor has it factually occurred). *See Graphics Props. Holdings, Inc. v. ASUS Computer Int'l*, 70 F. Supp. 3d 654, 664 (D. Del. 2014) (The court cannot base jurisdiction on events that occurred after the filing of [the] complaint."). Furthermore, Sagitec submitted the UI Proposal *in response to* Delaware's UI RFP. D.I. 15 ¶ 16. Deloitte concedes that "the Delaware Department of Labor issued" the UI RFP in a publicly available medium that allowed Deloitte to remotely bid on the project. D.I. 37 at 7, ¶ 11. This was not a result of Sagitec's marketing.

Deloitte also relies on several cases that either confirm there is no personal jurisdiction here or are simply inapposite. D.I. 37 at 12. *Thorn EMI N. Am., Inc. v. Micron Tech., Inc*. held that "[m]ere solicitation does *not* arise to transacting business [under the Delaware Long Arm Statute], nor does the isolated shipment of goods into Delaware." 821 F. Supp. 272, 274 (D. Del. 1993) (emphasis added). Instead, *Thorn* found "purposeful availment" because the defendant engaged in the "solicitation of business in Delaware *in conjunction with* the distribution of products in Delaware" as "part of a general business plan." *Id.* (emphasis added). In contrast, Sagitec did not solicit business in Delaware or distribute any products in Delaware. D.I. 15 ¶ 14. In *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, the court found jurisdiction over the defendant because the defendant "entered into seven contracts with Internet access providers" and sold

6

approximately 3,000 subscriptions to Delaware residents. 952 F. Supp. 1119, 1126 (W.D. Pa. 1997). Here, there is only one contract at issue—the PUA Contract. D.I. 15 ¶ 16. And *Sprint Commc'ns Co. L.P. v. Mediacom Commc'ns Corp.* is inapposite, as it involved a Delaware-incorporated defendant's third-party complaint to enforce an indemnification provision with a foreign entity. C.A. No. 17-1736-RGA, 2020 WL 5593933, at *2 (D. Del. Sept. 18, 2020).

The factual underpinnings of the Sagitec and State of Delaware relationship do not support a conclusion that there are sufficient minimum contacts under the Delaware Long Arm Statute or the Due Process Clause. As to the latter, Deloitte incorrectly reduces the Due Process Clause analysis to a question of the defendant's burden. Deloitte argues Sagitec must point to "other considerations" like "the burden on the defendant" that would "render jurisdiction unreasonable." D.I. 37 at 15. Deloitte then tears down its strawman, arguing Sagitec fails to show such a burden. *Id.* But a defendant's burden is only *one* of "other factors to determine whether personal jurisdiction would comport with 'fair play and substantial justice,'" which is an analysis that occurs only *after* "it has been decided that a defendant purposefully established minimum contacts within the forum." *Burger King*, 471 U.S. at 476 (1985). That analysis is consistent with Sagitec's venue transfer analysis (D.I. 12 at 16-20) and the burdens to Sagitec articulated therein, but before getting there, Deloitte fails to show the PUA Contract establishes sufficient minimum contacts between Delaware and Sagitec.

**II.    Deloitte Fails To Show Its Claims Arise From Sagitec's PUA Contract As Necessary To Support A Finding Of Specific Personal Jurisdiction Under The Due Process Clause Or Delaware Long-Arm Statute.**

The Delaware Long Arm Statute requires a "sufficient nexus between the jurisdictional act and the claims that the party is asserting." *Harris v. Harris*, 289 A.3d 277, 302 (Del. Ch. 2023); *see also Sears, Roebuck & Co. v. Sears plc*, 752 F. Supp. 1223, 1227 (D. Del. 1990) (finding no jurisdiction because the "jurisdictional act . . . was the negotiation and signing of a

7

contract between the defendants [and a third party] . . . [and] "plaintiffs were not a party to this contract"). Deloitte relies on cases devoid of any "jurisdictional act" analysis under the Delaware Long Arm Statute (even citing two Texas cases) and further devoid of any facts pertaining to whether a single contract gave rise to the plaintiffs' claims. *See* D.I. 37 at 14.

The Due Process Clause requires a defendant's contacts "give rise to—or relate to—plaintiff's claims." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021). Deloitte overemphasizes the "or relate to" standard permitted under *Ford.* D.I. 37 at 14 (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021)). *Ford* makes clear that "relate to" "does not mean anything goes," and still "incorporates real limits." *Ford*, 141 S. Ct. at 1026. Thus, the second prong of specific jurisdiction requires "a strong 'relationship among the defendant, the forum, and the litigation.'" *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (quoting *Ford*, 141 S. Ct. at 1028) (finding Imgur and Reddit's advertising, online merchandise store sales, and premium membership business and online communities, all directed to Pennsylvania, were not connected to plaintiff's intellectual property claims).

Like the plaintiff in *Hepp*, Deloitte has not demonstrated a "strong relationship" between Sagitec, Delaware, and this litigation. Deloitte's copyright claim does not arise from the PUA Contract. Deloitte alleges Sagitec "reproduce[d], distribut[ed] or create[ed] derivative works based on [uFACTS]." D.I. 1 ¶ 65. Furthermore, Deloitte alleges Sagitec "worked with related entities to develop and sell Neosurance." *Id.* Deloitte has not provided any facts to connect these allegations to the PUA Contract, which Deloitte alleges is the jurisdictional act. To the contrary, Sagitec could not copy or create derivative works of the allegedly copyrighted portions of uFACTS in Delaware because Sagitec has no operations in Delaware. D.I. 15 ¶ 3. Nor could Sagitec distribute the same in Delaware because Sagitec never entered Delaware. *Id.* ¶¶ 11, 16.

8

Deloitte's trade secret claims do not arise from the PUA Contract either. Deloitte alleges Sagitec misappropriated the alleged trade secrets "by acquiring the uFACTS Trade Secrets." D.I. 1 ¶¶ 77, 88. Deloitte does not identify any facts showing that Sagitec acquired the alleged trade secrets in Delaware. Sagitec could not possibly have done so, because all development, testing, and implementation of the accused Neosurance software occurred in Minnesota and India. D.I. 15 ¶ 6. Further, specific employees accused of misappropriation were based in Sagitec's Minnesota office and were employed by Deloitte in Minnesota. *Id*. ¶ 2.

### III. If There Is Personal Jurisdiction Over Sagitec, This Action Should Be Transferred.

Deloitte does not dispute Minnesota is an appropriate alternative forum. D.I. 37 at 16-20.

#### A. Deloitte Fails to Articulate Its Private Interests in Delaware.

**Factor 1:** Deloitte overstates its interest in a Delaware forum. In Delaware, courts do not universally consider a corporate entity's Delaware incorporation as dispositive of its interest; instead, the plaintiff's overall relationship with the forum is considered. *McRo, Inc v. Activision Blizzard, Inc*, C.A. No. 12-1508-LPS-CJB, 2013 WL 6571618, at *3 n.18 (D. Del. Dec. 13, 2013) ("[T]he weaker the connection between the forum and either the plaintiff or the lawsuit, the greater the ability of a defendant to show sufficient inconvenience to warrant transfer.") (citation omitted), *report and recommendation adopted*, 2013 WL 6869866 (D. Del. Dec. 30, 2013); *Tessara, Inc. v. Broadcom Corp.*, C.A. No. 16-379-LPS-CJB, 2017 WL 1065865, at *4 n.6 (D. Del. Mar. 21, 2017) (same). "The appropriate focus as to this first *Jumara* private interest factor is on the strength and legitimacy of [plaintiff's] reasons for filing suit in this District." *McRo*, 2013 WL 6571618, at *3 n.18. Deloitte offers *no* reasons for suing in Delaware. None of Deloitte's alleged activity occurred in Delaware. Deloitte invokes New York law and alleges injury in New York. D.I. 1 ¶¶ 72-73. Neither party has a principal place of business in Delaware.

9

The remaining factors favor transfer or are neutral, and Deloitte offers no factual reasons to oppose transfer. **Factor 2:** The parties agree Sagitec's choice of forum favors transfer. D.I. 37 at 18. **Factor 3:** As shown above, Deloitte offers no factual explanation for how the alleged misconduct outlined in the Complaint arose from any alleged actions by Sagitec in Delaware. **Factor 4:** Deloitte ignores the convenience to both parties of litigating in Minnesota, *see* D.I. 12 at 17-18, and fails to explain why Delaware is convenient. D.I. 37 at 19. **Factor 5:** The parties agree this factor (convenience of third-party witnesses) is neutral. *Id.* **Factor 6:** Deloitte does not dispute that the bulk of Sagitec's books, records, and electronic servers related to Deloitte's claims are located or are accessible at Sagitec's headquarters in Minnesota, not Delaware (where Sagitec has no facilities). *Id.* While the source code is physically stored in Kansas, it is accessible in Minnesota and would be produced there, if at all, minimizing transportation and loss risk.

### B. Deloitte Fails to Show the Public Interest Factors Weigh Against Transfer.

Two public factors support transfer: (1) practical considerations; and (2) local interest of the fora. *See* D.I. 12 at 19. All other factors are neutral. Deloitte argues that Sagitec's private convenience is not a "cognizable public cost[.]" D.I. 37 at 19. But Deloitte contradicts its own case law that found, under a public interest analysis, that the need "to retain Delaware counsel, which will drive up the expense of resolving . . . litigation . . . favors transfer" even if "slightly." *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 486 (D. Del. 2011). Further, Deloitte's incorporation in Delaware is insufficient to support Delaware's interest in this suit over Minnesota's. *See* D.I. 12 at 20. None of the events in Deloitte's complaint occurred in Delaware, and Deloitte alleges "all of [its] harm" occurred in New York. D.I. 1 ¶ 60.

### CONCLUSION

Sagitec respectfully requests that this case be dismissed for lack of personal jurisdiction, or, in the alternative, transferred to the District of Minnesota.

| | |
|---|---|
| OF COUNSEL:<br>Christopher K. Larus<br>David A. Prange<br>Rajin S. Olson<br>Brandon A. Carmack<br>ROBINS KAPLAN, LLP<br>800 LaSalle Avenue<br>Minneapolis, MN 55402<br>(612) 349-8500<br>CLarus@RobinsKaplan.com<br>DPrange@RobinsKaplan.com<br>ROlson@RobinsKaplan.com<br>BCarmack@RobinsKaplan.com<br><br>Dated: August 15, 2023 | YOUNG CONAWAY STARGATT &<br>TAYLOR, LLP<br><br>*/s/ Anne Shea Gaza*<br>Anne Shea Gaza (No. 4093)<br>Robert Vrana (No. 5666)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>agaza@ycst.com<br>rvrana@ycst.com<br><br>*Attorneys for Defendant*<br>*Sagitec Solutions, LLC* |

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 15, 2023, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

| | |
|---|---|
| OF COUNSEL: | John W. Shaw |
| | Andrew E. Russell |
| Joshua L. Simmons | SHAW KELLER LLP |
| KIRKLAND & ELLIS LLP | I.M. Pei Building |
| 601 Lexington Avenue | 1105 North Market Street, 12th Floor |
| New York, NY 10022 | Wilmington, DE 19801 |
| (212) 446-4800 | (302) 298-0700 |
| | jshaw@shawkeller.com |
| Gregg F. LoCascio | arussell@shawkeller.com |
| Patrick Arnett | |
| Nicholas Teleky | *Attorneys for Plaintiffs Deloitte Consulting* |
| KIRKLAND & ELLIS LLP | *LLP and Deloitte Development LLC* |
| 1301 Pennsylvania Ave NW | |
| Washington, DC 20004 | |
| (202) 389-5000 | |
| | |
| John F. Hartmann | |
| KIRKLAND & ELLIS LLP | |
| 300 North LaSalle | |
| Chicago, IL 60654 | |
| (312) 862-2000 | |

                                                */s/ Anne Shea Gaza*
                                        YOUNG CONAWAY STARGATT
                                        & TAYLOR, LLP
                                          Anne Shea Gaza (No. 4093)
                                          Robert M. Vrana (No. 5666)
                                          Rodney Square
                                          1000 North King Street
                                          Wilmington, DE 19801
                                          (302) 571-6600
                                          agaza@ycst.com
                                          rvrana@ycst.com

                                          *Attorneys for Sagitec Solutions, LLC*