**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

DELOITTE CONSULTING LLP and
DELOITTE DEVELOPMENT LLC,

    *Plaintiffs*,

    v.

SAGITEC SOLUTIONS LLC,

    *Defendant*.

§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 23-325-WCB

## MEMORANDUM OPINION AND ORDER

Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC (collectively, "Deloitte") filed this action against defendant Sagitec Solutions LLC on March 23, 2023. In its complaint, Deloitte asserted claims for copyright infringement under federal law, trade secret misappropriation under New York and federal law, unfair competition under New York law, and unjust enrichment under New York law. Dkt. No. 1. On May 15, 2023, Sagitec moved to dismiss the complaint for lack of personal jurisdiction and, in the alternative, to transfer the case to the District of Minnesota. Dkt. No. 11. For the reasons set forth below, the motion is DENIED.

### I.     Background

The Deloitte plaintiffs are organized under Delaware law and have their principal place of business in New York, New York. Sagitec is a Nevada limited liability company and has its principal place of business in Saint Paul, Minnesota. Both Deloitte and Sagitec offer, among other products and services, software products that allow state governments to manage their unemployment insurance programs.

1

In or around 2003, BearingPoint Inc., a predecessor company of Deloitte, began developing an unemployment insurance software system called "uFACTS."  Dkt. No. 1 ¶ 19.  Deloitte's complaint describes uFACTS as a "customizable enterprise application for managing [unemployment insurance] claims, appeals, and wage determinations."  *Id.* ¶ 21.  BearingPoint first deployed the uFACTS software in 2007.  In 2009, Deloitte acquired the uFACTS software and associated intellectual property from BearingPoint.  *Id.* ¶¶ 22–23.  Deloitte alleges that it has "continued to develop and create new material" for uFACTS since acquiring the uFACTS intellectual property from BearingPoint.  *Id.* ¶ 23.

According to Deloitte's complaint, Sagitec hired several former Deloitte employees who had worked on the uFACTS software, and used those employees to develop a competing product called "Neosurance."  *Id.* ¶¶ 44–45.  The principal allegation underlying Deloitte's claims is that the former Deloitte employees used Deloitte's source code and trade secrets regarding the uFACTS software in developing the Neosurance software for Sagitec.

Although Sagitec claims that its PUA software "was not a full unemployment insurance system like Neosurance," *id.*, Deloitte contends that the PUA software was based on Sagitec's Neosurance product.  *See* Dkt. No. 37-1 at 7 ("Sagitec will leverage the existing Neosurance™ functionality . . . ."); Dkt. No. 37-3 ("[W]e understand that you are leveraging your NEOSURANCE base system . . . .").  The system was designed for use by Delaware residents, who would file claims for pandemic unemployment benefits using the software.  *See generally* Dkt. No. 37-1.

In 2020, Chris Peretto, Sagitec's Director of Business Development, contacted a representative of the Delaware Department of Labor by email, offering a proposal for providing technology that could assist the State in dealing with unemployment compensation claims during

2

the pandemic, referred to as the Pandemic Unemployment Assistance ("PUA") software.  Dkt. No. 37-1, Exh. 1.  Sagitec subsequently provided the Delaware official with a demonstration of the operation of its PUA system.

After negotiations that involved numerous conversations and the exchange of numerous drafts, the Delaware Department of Labor subsequently approved the proposal.  Dkt. No. 15 ¶10; Dkt. No. 37-1, Exhs. 5–14.  The parties ultimately agreed on a price for the initial implementation of the system, along with monthly maintenance fees and storage costs after the expiration of the PUA program.  The agreement became effective as of May 1, 2020.  *Id.*, Exhs. 2, 4, 5.  The contract was set to remain in effect until December 2024, and it has been amended at least twice, once in October 2020, and again in May 2023.  *Id.*, Exhs. 17–18, 28.  The contract further provided that its interpretation would be governed by Delaware law, and as part of the contract, Sagitec consented to jurisdiction and venue in Delaware.[1]  In addition, Sagitec agreed to indemnify Delaware for any claims of violations of third parties' intellectual property rights.  *Id.*, Exh. 16, at 2155–58.

Although Sagitec claims that the PUA software "was not a full unemployment insurance system like Neosurance," *id.*, Deloitte contends that the PUA software was based on Sagitec's Neosurance product.  *See* Dkt. No. 37-1 at 7 ("Sagitec will leverage the existing Neosurance™ functionality . . . ."); Dkt. No. 37-3 ("[W]e understand that you are leveraging your

---

[1]   Sagitec argues, correctly, that its consent to the application of Delaware law and the jurisdiction of Delaware courts is limited to disputes arising from the contract.  However, Sagitec's willingness to subject itself to Delaware law and the jurisdiction of Delaware courts in connection with the contract provides support for the conclusion that Sagitec did not contemplate that its contacts with Delaware in connection with its contractual relationship with the Delaware Department of Labor were random or incidental.

NEOSURANCE base system . . . .").  The system was designed for use by Delaware residents, who would file claims for PUA using the software.  *See generally* Dkt. No. 37-1.

Mr. Peretto asserted in his declaration that the PUA software is the only product that Sagitec has sold to the State of Delaware or in Delaware.  Dkt. No. 15 ¶ 10.  However, he noted that in February 2023, Sagitec submitted a proposal to Delaware to implement "a bespoke custom-developed unemployment insurance software." *Id.* ¶ 16.  As of Maya 15, 2023, he added, Sagitec "has not had any substantive communications with the Delaware Department of Labor about that proposal. *Id.*

## II.   **Legal Standard**

### A. *Personal Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint on the ground that the court lacks personal jurisdiction over that defendant.  In ruling on a motion to dismiss for lack of personal jurisdiction, the court must first determine whether the exercise of jurisdiction is permitted under the long-arm statute of the state in which the court is located.  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).  If so, the court must next determine whether the exercise of jurisdiction is permitted under the Due Process Clause of the Fifth Amendment to the Constitution.  *Id.*  In general, the Due Process Clause permits the exercise of jurisdiction if there are "minimum contacts" between the defendant and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).  The plaintiffs bear the burden of showing the basis for jurisdiction.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).  In doing so, the plaintiffs "need only establish a prima

facie case of personal jurisdiction," and are "entitled to have [their] allegations taken as true and all factual disputes drawn in their favor." *Id.* (citation omitted).

>    ### B.   Transfer

Under 28 U.S.C. § 1404(a), a district court may, for the convenience of parties and witnesses, "transfer any civil action to any other district or division where it might have been brought" if doing so would be "in the interest of justice." In patent cases, the Federal Circuit has instructed district courts to apply the law of the regional circuit, here the Third Circuit, in evaluating motions to transfer. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021). The Third Circuit has explained that "[t]he burden of establishing the need for transfer . . . rests with the movant," and that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995). In evaluating a motion to transfer, the court must first determine "whether the case could have been brought in the district to which the movant wishes to transfer." *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*, No. 21-1365, 2022 WL 16921988, at *3 (D. Del. Nov. 14, 2022) (citing *Jumara*, 55 F.3d at 878). If venue would have been proper in that district, the court must then evaluate whether the public and private interest factors set forth in *Jumara* favor transfer. *Id.* at *3–4. The defendant must show that "the balance of convenience of the parties is *strongly* in favor" of transfer in order to prevail on its motion. *Paycom Software, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 21-01403, 2022 WL 1063845, at *2 (D. Del. Apr. 8, 2022) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).

### III.   <u>Discussion</u>

#### A.   *Personal Jurisdiction*

I begin by addressing Sagitec's argument that this case should be dismissed for lack of personal jurisdiction.  The Delaware long-arm statute provides six categories of activities that may subject a defendant to personal jurisdiction in the State.  10 Del. C. § 3104(c).  As relevant to this case, the long-arm statute provides that jurisdiction lies over a person who "[t]ransacts any business or performs any character of work or service in the State"; "[c]ontracts to supply services or things in this State"; or "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State."  *Id.*  The Supreme Court of Delaware has recognized that section 3104(c) "has been broadly construed to confer jurisdiction to the maximum extent possible under the due process clause."  *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986).  Accordingly, the exercise of jurisdiction over Sagitec is permissible if doing so would comport with the Due Process Clause of the Fifth Amendment.

In applying the Due Process Clause to questions of personal jurisdiction, the Supreme Court has recognized two types of personal jurisdiction: general jurisdiction and specific jurisdiction.  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).  General jurisdiction typically lies over a corporation in its place of incorporation and in the state in which it has its principal place of business.  *Id.*  Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims."  *Id.*  For the exercise of specific jurisdiction to be proper, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Id.* at 1025 (quoting *Bristol-Myers Squibb Co.*

6

*v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017)).  There is no contention that Sagitec is subject to general jurisdiction in Delaware, so the question is whether Sagitec is subject to specific jurisdiction in Delaware with respect to Deloitte's claims.

In determining whether a defendant is subject to specific jurisdiction in a particular forum, courts look to (1) whether the defendant has "'purposefully directed' its activities at residents of the forum" and (2) whether "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted).  The critical question is whether Sagitec has conducted activity in Delaware such that it should "reasonably anticipate being haled into court" in that forum.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### 1. Whether Sagitec Purposefully Directed Its Activities at Delaware Residents

The first question is whether Sagitec "purposefully directed" its activities at Delaware residents.  *See id.*  Deloitte argues that Sagitec engaged in three types of activities that were directed at Delaware residents:  (1) interacting with representatives with the Delaware Department of Labor in developing its proposal for the PUA product; (2) entering into a contract with a Delaware resident, namely, the Delaware Department of Labor; and (3) selling a product (the PUA software) that Sagitec knew would be used in Delaware by Delaware residents. Dkt. No. 37 at 10–11.  Those activities plainly appear to be purposefully directed at the State of Delaware.

Sagitec argues that it has not purposefully directed its activities at residents of Delaware for several reasons: because the PUA software is developed and hosted outside of Delaware; because Sagitec's negotiations with the Delaware Department of Labor took place outside of Delaware; and because Sagitec has never physically visited the State of Delaware. Dkt. No. 12 at 8–11.  The core of Sagitec's argument on this point is that its contract with the Delaware

Department of Labor does not constitute an activity purposefully directed at Delaware residents because all the activity relating to the contract took place outside of Delaware.

As the Supreme Court has explained, "even a single act can support jurisdiction," which "may not be avoided merely because the defendant did not *physically* enter the forum state." *Burger King*, 471 U.S. at 475 n.18, 476.  Many courts have held that the solicitation of business from residents of a particular state, even if that solicitation occurs over the internet or the telephone, is sufficient to support the exercise of jurisdiction.  *See, e.g.*, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (If a web site operator "knowingly conducts business with forum state residents via the site, then the 'purposeful availment' requirement is satisfied."); *Rockwell Automation, Inc. v. EU Automation, Inc.*, No. 21-1162, 2022 WL 1978726, at *7 (D. Del. June 6, 2022), *report and recommendation adopted*, 2022 WL 3576231 (D. Del. Aug. 19, 2022) (holding that the court had jurisdiction over the defendants who "operated a website accessible in Delaware" and "received orders and payments from Delaware customers" via the website, even though the defendants had "no offices, telephone listings, employees, bank accounts, advertising, personal or real property in Delaware, or any ongoing contracts with any Delaware customers"); *RMG Media, LLC v. iBoats, Inc.*, No. 20-cv-290, 2021 W 1227730, at *3 (D. Del. Mar. 31, 2021) (Delaware court had jurisdiction over the defendant who contracted with two boat dealers to advertise their inventory on the defendant's website); *Owens v. Lead Stories, LLC*, No. S20C-10-016, 2021 WL 3076686, at *7 (Del. Super. Ct. July 20, 2021), *aff'd*, 273 A.3d 275 (Del. 2022) (Delaware court had jurisdiction over the defendant because the defendant's website was "very much designed to interact with Delaware residents"); *Padcom, Inc. v. NetMotion Wireless, Inc.*, No. 03-983, 2004 WL 1192641, at *4–6 (D. Del. May 24, 2004) (Delaware court had jurisdiction over the defendant when the defendant communicated by email and telephone with Delaware residents and attempted

8

to "solicit business and purchases" from those residents); *see also Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 808 (E.D. Tex. 2014) (Texas court had jurisdiction over defendant airline that "d[id] not fly to Texas or have any offices in Texas," but "offer[ed] membership in loyalty awards programs to Texas residents and enabl[ed] them to convert loyalty award credits with other vendors").  In view of those and other similar cases, it is quite clear that Sagitec's attempts to solicit business from the Delaware Department of Labor, its entry into a contract with the Delaware Department of Labor, and its development of a website for use by Delaware residents constitute activities that are purposefully directed at Delaware residents.

Moreover, the evidence before the court indicates that Sagitec's dealings with the Delaware Department of Labor in connection with the PUA contract were not the only contacts that Sagitec has had with Delaware regarding the sales of its unemployment insurance software products.  In February 2023, as Mr. Peretto noted, Sagitec submitted another proposal to the Delaware Department of Labor to implement a custom-developed unemployment insurance package.  *See* Dkt. No. 15 ¶ 16.  That second, and separate, offer to provide services to the Delaware Department of Labor serves as a further indication that Sagitec was engaged in substantial and ongoing activity directed at Delaware entities.

Sagitec contends that its contacts with Delaware are not sufficient to support personal jurisdiction in this district, but the cases Sagitec cites for that  proposition do not support its position.  First, Sagitec relies on the court's statement in *Katz v. Apuzzo*, No. 17-1328, 2019 WL 3219513, at *4 (D. Del. July 17, 2019) (citation omitted), that "contracts negotiated and performed outside of Delaware will not support personal jurisdiction."  The court in that case, however, found that it lacked jurisdiction over one defendant because no part of the plaintiff's contract with that defendant "related to the provision of services in Delaware."  *Id.*  In this case, Sagitec's contract

with the Delaware Department of Labor relates directly to the provision of the PUA software product to Delaware residents.

Second, Sagitec relies on the Third Circuit's statement in *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (citation omitted), that "a contract alone does not 'automatically establish minimum contacts in the other party's home forum.'" The court explained that "[c]ourts must also look to 'prior negotiations and contemplated future consequences.'" *Id.* For example, the court noted that "contract negotiations with forum residents," as well as "[m]ail and telephone communications sent by the defendant into the forum," can support the "exercise [of] personal jurisdiction over persons outside that forum." *Id.* In this case, the record shows that Sagitec engaged in substantial efforts to communicate with the Delaware Department of Labor regarding the PUA software. *See, e.g.*, Dkt. No. 37-20 (identifying 13 Sagitec attendees on a call between Sagitec and the Delaware Department of Labor); Dkt. Nos. 37-5, 37-6, 37-7, 37-21, 37-22, 37-23, 37-24, 37-25, 37-26, 37-27 (email correspondence between Sagitec and the Delaware Department of Labor). And those efforts culminated in a contract formed between Sagitec and the Delaware state agency.[2]

Third, Sagitec relies on the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014). In that case, the Court stated that jurisdiction over a defendant is proper if, "for example, [the defendant] enter[ed] a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." *Id.* at 285 (quoting *Burger King*, 471 U.S. at 479–80). Applying that standard to the facts of the case, the court noted that the defendant "never traveled to,

---

[2] Sagitec's characterization of its contacts with Delaware as consisting of only "the submission of a single proposal" (Dkt. No. 42 at 6) overlooks the fact that the proposal gave rise to a contractual relationship to provide services to the Delaware Department of Labor for the benefit of Delaware citizens. That relationship cannot fairly be characterized as limited to the "submission of a single proposal."

conducted activities within, contacted anyone in, or sent anyone or anything to" the forum State, and held that jurisdiction could not lie "simply because [the defendant] allegedly directed his conduct at plaintiffs whom he knew had" connections with the forum state. *Id.* at 289. In this case, Sagitec contacted the Delaware Department of Labor on numerous occasions and entered into a contract to develop software that would be used by Delaware residents. Those connections can fairly be characterized as envisioning "continuing and wide-reaching contacts" with Delaware. *See Walden*, 571 U.S. at 285. That conclusion is reinforced by Sagitec's subsequent attempt to negotiate with the Delaware Department of Labor through its February 2023 proposal to develop unemployment insurance software for the State.

Fourth, Sagitec relies on the Third Circuit's decision in *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254 (3d Cir. 2000). In that case, the court held that a defendant's "informational communications in furtherance of [a] contract" were insufficient to establish personal jurisdiction over the defendant. *Id.* at 261. The plaintiff's allegations against the defendant in *BP Chemicals* related to an injury caused in Great Britain due to activities occurring at a plant in Taiwan. *Id.* The court observed that the defendant's only contacts with the United States "were for a one-time purchase of equipment that was to be shipped to Taiwan and were solicited and negotiated through the Taiwanese agents of the U.S. vendors." *Id.* Under those circumstances, the court declined to find that the defendant had "purposefully avail[ed] itself of the privilege of conducting activities" within the United States, "thus invoking the benefits and protections of its laws." *Id.* (quoting *Burger King*, 471 U.S. at 475). Here, by contrast, Sagitec negotiated directly with the Delaware Department of Labor to enter into a contract for the provision of software to be used by Delaware residents; those connections to the forum are much stronger than the defendant's in *BP Chemicals*.

11

Fifth, a court in the Eastern District of Pennsylvania observed that where courts have exercised specific jurisdiction over a defendant based on interstate communication, "it is generally in conjunction with an actual appearance by the non-resident defendant in the forum state and continuing obligations between the parties." *Element Fin. Corp. v. ComQi, Inc.*, 52 F. Supp. 3d 739, 747 (E.D. Pa. 2014).  Although that may be true as a general proposition, the Supreme Court has made clear that physical presence in the forum state is not required to support the exercise of jurisdiction.  *Burger King*, 471 U.S. at 476; *Walden*, 571 U.S. at 285.  And, as discussed in more detail above, courts have found a defendant's activities to be purposefully directed to a forum state when the defendant communicates with residents of the state via email or telephone, even if the defendant is not physically present in the state.  *See, e.g.*, *Rockwell*, 2022 WL 1978726, at *7; *Padcom*, 2004 WL 1192641, at *4–6.

Sixth, Sagitec relies on a case from the Southern District of Indiana, *SMC Corp. of America v. King Industrial of the Valley, Inc.*, No. 02-0752, 2003 WL 21398103 (S.D. Ind. June 12, 2003). In that case, the court determined that the defendant was not "doing any business" in Indiana, as required by the State's long-arm statute.  *Id.* at *4 (citing Ind. T.R. 4.4(A)(1)).  The court expressly declined to consider whether the exercise of jurisdiction "comport[ed] with federal due process requirements."  *Id.* at *5.  Accordingly, the *SMC* case is entirely inapposite here.

The closest case of those cited by Sagitec is a case from the Eastern District of Wisconsin, *University Accounting Service LLC v. ScholarChip Card LLC*, No. 17-CV-901, 2017 WL 4877418 (E.D. Wis. Oct. 27, 2017).  The court in that case held that it lacked personal jurisdiction over the defendant in light of facts roughly similar to the facts of this case.  Even assuming that case was correctly decided, however, the contacts between the defendant and the forum state are much stronger in this case than in *University Accounting Service*.  In that case, the only contact between

12

the defendant and the forum state (Wisconsin) was a contract entered into with a Wisconsin resident for software that would be developed and hosted in New York and would have "end users scattered across the country." *Id.* at *7. In this case, the software that Sagitec is alleged to have developed for the State of Delaware is intended to be used principally by Delaware residents. In addition, Sagitec's contacts with Delaware are not limited to its 2020 contract with the Delaware Department of Labor, but include Sagitec's submission of a proposal of additional work for the Delaware Department of Labor in 2023, a fact that was not present by analogy in the *University Accounting* case.

In view of the analysis set forth in the cases discussed above, I find that Sagitec's communications with the Delaware Department of Labor and its choice to enter into a contract with a Delaware state agency to provide software that would be used by Delaware residents constitute activities that were "purposefully directed" at forum residents, and therefore support a finding that this court has personal jurisdiction over Sagitec in this matter. *See Burger King*, 471 U.S. at 472. Simply put, this case satisfies the "purposeful availment" requirement of *Burger King*, because Sagitec's contacts with Delaware are "the defendant's own choice" and not "random, isolated, or fortuitous" contacts, *Ford Motor Co.*, 141 S. Ct. at 1025, or "the unilateral activity of another party or a third person," *Burger King*, 471 U.S. at 475, which are insufficient to establish personal jurisdiction.

## 2. Whether Deloitte's Claims Arise Out of Sagitec's Contacts with Delaware

The next question is whether this litigation "arises out of" Sagitec's contacts with Delaware. *See id.* Deloitte argues that the Neosurance product that it accuses of infringement in this case is effectively the same product that was sold to the Delaware Department of Labor pursuant to the PUA contract. Dkt. No. 37 at 13–14. Sagitec argues that Deloitte's claim arose

from activities that occurred in Minnesota or India, where the Neosurance software is developed, and that Deloitte's alleged injuries are felt in New York and not Delaware.  Dkt. No. 12 at 12–13.

The problem for Sagitec is that in intellectual property cases, claims are typically treated as arising out the defendant's contacts with the forum state if the defendant makes the accused product available in the forum state.  *See, e.g.*, *TriStrata Tech., Inc. v. Emulgen Lab'ys, Inc.*, 537 F. Supp. 2d 635, 641–42 (D. Del. 2008) (court exercised jurisdiction over the defendant because the defendant "received orders [for the accused products] from and shipped orders to Delaware residents"); *Rockwell Automation, Inc. v. EU Automation, Inc.*, No. 21-1162, 2022 WL 3576231, at *5 (D. Del. Aug. 19, 2022) (court had personal jurisdiction over the defendant because the defendant sold products in Delaware that "form[ed] the basis of the injuries alleged by" the plaintiff, namely, trademark infringement); *Astute Tech., LLC v. Learners Dig. Int'l LLC*, No. 2:12-cv-689, 2014 WL 12596468, at *6–7 (E.D. Tex. Apr. 28, 2014) (sales of the accused products in the forum district held to be sufficient to justify the exercise of jurisdiction, even though both parties were "foreigner[s]" to the district).

More generally, the Due Process Clause does not require a "strict causal relationship" between the plaintiff's claims and the defendant's contacts with the forum.  *Ford Motor Co.*, 141 S. Ct. at 1026.  Instead, there need only be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State."  *Id.* at 1025 (quoting *Bristol-Myers*, 582 U.S. at 262).  There is plainly an "affiliation" between Sagitec's provision of the PUA software to the State of Delaware and Deloitte's claims in this action.

In its opening brief, Sagitec makes the passing suggestion that Neosurance, the product accused by Deloitte in this case, is distinct from the PUA product that Sagitec developed for the Delaware Department of Labor.  *See* Dkt. No. 12 at 3–4 (asserting that the PUA software "was not

14

a full unemployment insurance system like Neosurance"). As noted, however, Deloitte has pointed to evidence suggesting that the PUA software was developed using the Neosurance product at least as a starting point. *See, e.g.*, Dkt. No. 37-1 at 7; Dkt. No. 37-3; Dkt. No. 37-19. To the extent there is a factual dispute as to whether the PUA software encompasses the accused portions of the Neosource software, Deloitte is entitled to have that dispute resolved in its favor for purposes of the present motion. *See O'Connor*, 496 F.3d at 316.

In sum, Sagitec negotiated a contract with the Delaware Department of Labor to provide a version of the software that is alleged in this case to infringe Deloitte's copyrights and contain Deloitte's trade secrets. It was plainly contemplated that the PUA software that Sagitec provided for the Delaware Department of Labor would be accessed principally by Delaware residents. Those contacts, taken together, are more than sufficient to satisfy the requirement that Sagitec have "minimum contacts" with Delaware such that the exercise of jurisdiction would not "offend 'traditional notions of fair play and substantial justice.'" *See Int'l Shoe*, 326 U.S. at 316 (1945) (citation omitted). Accordingly, Sagitec's motion to dismiss for lack of personal jurisdiction is denied.

### B.   *Motion to Transfer*

I now turn to Sagitec's request, in the alternative, that this case be transferred to the District of Minnesota. Sagitec has made a sufficient showing that, by virtue of having its headquarters in Minnesota, Sagitec could have been sued in the District of Minnesota. *See* Dkt. No. 12 at 15. As a result, I must address the private and public interest factors articulated by the Third Circuit in *Jumara*. The private interest factors include (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, to the extent they may be unavailable for trial in one of the forums; and (6) the

location of books and records, to the extent they could not be produced in the alternative forum. *Jumara*, 55 F.3d at 879.  The public interest factors include (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the degree of court congestion in the two forums; (4) the local interest in deciding local controversies at home; (5) the public policies of the forums; and (6) in diversity cases, the familiarity of the trial judge with the applicable state law.  *Id.* at 879–80.  Overall, I find that the factors do not weigh strongly in favor of transfer and I will therefore deny Sagitec's motion.

## 1. Private Interest Factors

### i. *Plaintiffs' Choice of Forum*

The first private interest factor is the plaintiff's choice of forum.  A plaintiff's choice to sue in a particular jurisdiction is a "paramount consideration" in the section 1404(a) analysis, and thus it weighs "strongly" in the plaintiff's favor, particularly if the plaintiff elects to sue in its home jurisdiction.  *NXP USA, Inc. v. IMPINJ, Inc.*, No. 19-1875, 2020 WL 5665257, at *2 (D. Del. Sept. 23, 2020) (quoting *Shutte*, 431 F.2d at 25).  However, because the plaintiffs in this case have their principal places of business in New York, their choice of forum does not weigh "as strongly as it would if Plaintiffs had their principal place of business . . . in Delaware."  *Id.*; *see also Selene Commc'n Techs., LLC v. Trend Micro Inc.*, No. 14-435, 2015 WL 237142, at *1 (D. Del. Jan. 16, 2015) ("[T]he deference to be given to [the plaintiff's] choice of forum is reduced because [the plaintiff's] principal place of business is in Shaker Heights, Ohio."); *Express Mobile, Inc. v. Web.com Grp., Inc.*, No. 19-1936, 2020 WL 3971776, at *2 (D. Del. July 14, 2020) (the plaintiff's choice of forum does not "dominate the balancing to the same extent as it otherwise might" when the plaintiff has a principal place of business outside Delaware).  Accordingly, this factor weighs

16

against transfer, but not as strongly as it would if the plaintiffs had their principal places of business in Delaware.

ii.     *Defendant's Preferred Forum*

The second private interest factor is the defendant's preferred forum.  Sagitec represents that it would prefer to litigate this case in the District of Minnesota.  Dkt. No. 12 at 16–17.  This factor therefore favors transfer.  *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 470 (D. Del. 2013).

iii.    *Where the Claim Arose*

The third private interest factor is where the plaintiffs' claim arose.  In analyzing this factor, courts typically focus on "where the corporate decisions underlying th[e] claims were made." *United States v. United States Sugar Corp.*, No. 21-1644, 2022 WL 354228, at *4 (D. Del. Jan. 11, 2022).  In intellectual property cases, courts may also consider "the location of the production, design and manufacture of the accused instrumentalities," *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 439 (D. Del. 2015), and where the "marketing[] and sale of the accused products largely occurred," *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, No. 11-1050, 2013 WL 828220, at *5 (D. Del. Mar. 6, 2013).

It is undisputed that Sagitec directed the activities relating to its Neosurance software from its headquarters in Minnesota, and that it conducted much of the design, development, sales, and marketing activities related to the product there.  Those factors, standing alone, would generally weigh in favor of transferring this case to Minnesota.

However, it is also clear, as discussed in more detail above, that Deloitte's claims of copyright infringement and trade secret misappropriation arose in part out of Sagitec's sale of the PUA software to the Delaware Department of Labor.  In an analogous case, Judge Noreika found

this factor to be neutral when all the design, development, and marketing activities related to the accused products occurred outside of Delaware, but the defendant sold and advertised the accused products to Delaware customers. *P Tech, LLC v. Arthrex, Inc.*, No. 21-968, 2022 WL 1490733, at *3 (D. Del. May 11, 2022). Here, Sagitec's provision of the accused software to a Delaware state agency for use by Delaware residents is a strong indication that Deloitte's claims arose, at least in part, in Delaware.[3] Accordingly, this factor is neutral.

### iv.   Convenience of the Parties

The fourth private interest factor is the convenience of the parties. In assessing that factor, the court must consider (1) the parties' physical locations; (2) "the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes"; and (3) "the relative ability of each party to bear these costs in light of its size and financial wherewithal." *ANI Pharms., Inc. v. Method Pharms., LLC*, No. 17-1097, 2019 WL 176339, at *8 (D. Del. Jan. 11, 2019) (quoting *MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017)).

---

[3] In *Take2 Technologies Ltd. v. Pacific Biosciences of California*, No. 22-1595, 2023 WL 4930359 (D. Del. Aug. 2, 2023), I found this factor to weigh in favor of transfer. In that case, the defendants' accused systems were developed and marketed entirely in California, but the plaintiffs focused on the fact that one of the defendant's customers in Delaware likely used the accused functionality. *Id.* at *5. With respect to where the claim arose, the *Take2* case is distinguishable for two reasons. First, it was not clear that the customer in Delaware was actually using the accused functionality. *See id.* at *8 n.7. Second, the defendant in that case had 19 other customers who were "in a similar posture" as the Delaware customer with respect to the infringement allegations, and the defendant had many other customers throughout the United States, including in the proposed transferee district. *Id.* at *6 & n.4. In this case, Sagitec is alleged to have sold the accused Neosource product in eight states, including Delaware but, importantly, not Minnesota, Dkt. No. 1 ¶ 50. Thus, it is not the case, as it was in *Take2*, that the nationwide sales of the accused technology "significantly undercuts the suggestion that the plaintiffs' infringement claims arose primarily or even substantially in Delaware." 2023 WL 4930359, at *6.

Sagitec argues that the District of Minnesota is a more convenient forum for it because its principal place of business is in Saint Paul, Minnesota, and it would incur "significantly more costs from employees traveling to Delaware than it would" if the case were litigated in Minnesota.  Dkt. No. 12 at 17–18.  Sagitec adds that "[s]ome potential Deloitte witnesses may also be located in Minnesota, as Deloitte's government practice group that markets its uFACTS software is also located in Minnesota."  *Id.* at 18 (citing Dkt. No. 16-1, Exhs. 1–2).  Sagitec further asserts that because "Deloitte is far larger—and wealthier—than Sagitec," this factor weighs in favor of transfer.

I agree with Sagitec that travel considerations regarding its Minnesota-based witnesses are significant and cut in favor of transferring this case to the District of Minnesota.  I am less persuaded that the presence of some Deloitte employees in Minnesota weighs substantially in favor of transfer, because it would appear that at least some of Deloitte's employees will need to travel from New York regardless of whether the case is transferred.[4]  *See MEC Resources*, 269 F. Supp. 3d at 226 (observing that the plaintiff's litigation costs "will likely remain the same because its two employees must travel" regardless of which venue is chosen).  And the convenience to any Minnesota-based Deloitte witnesses is largely offset by the fact that any witnesses based in New York would incur a greater burden in traveling to Minnesota than in traveling to Delaware.

As to the parties' resources, it is true that Deloitte is a large company with substantial revenues and with employees and offices worldwide.  But the same is true of Sagitec, albeit to a lesser degree.  Sagitec describes itself as a "global technology solutions company"; it has

---

[4]  Notably, Sagitec has not shown how many relevant Deloitte witnesses are in Minnesota.  Sagitec's showing on this point is limited to evidence that a single Deloitte employee, Scott Malm, maintains an office in Minneapolis, Minnesota. Dkt. No. 16-1, Exhs. 1–2.  Sagitec has not asserted that Mr. Malm is likely to be called at trial, nor has it shown whether any other relevant Deloitte employees may be located in Minneapolis.

operations in multiple countries; and it has annual revenues exceeding $90 million.  Dkt. No. 15 ¶ 1; Dkt. No. 37-33 at SAG-JUR-003132.  Although Deloitte is much larger than Sagitec, it is clear that both parties are more than capable of bearing the costs associated with traveling to Delaware, as opposed to Minnesota, for this litigation.

In sum, the fact that many of Sagitec's employee witnesses are likely to be in Minnesota weighs in favor of transfer.  The other considerations raised by Sagitec are largely neutral. Accordingly, this factor weighs somewhat in favor of transfer.

*v.    Convenience of the Witnesses*

The fifth private interest factor is the convenience of the witnesses, particularly if some of the witnesses would be unavailable for trial in one of the districts.  Neither party has identified any relevant third-party witnesses, so the parties agree that this factor is neutral.  Dkt. No. 12 at 18; Dkt. No. 37 at 19.

*vi.    Location of Books and Records*

The sixth private interest factor is the location of books and records, to the extent that they could not be produced in the alternative forum.  Although it would appear to be true that a large amount of relevant documentary evidence is located in the District of Minnesota, neither party has shown that there is any likelihood that such evidence could not be produced in either Delaware or Minnesota.[5]  *See Jumara*, 55 F.3d at 879 (noting that this factor is "limited to the extent that the

---

[5]  Sagitec asserts in its opening brief that "if Sagitec's source code is produced, it would occur at Sagitec's counsel's office in Minnesota to minimize transport risk."  Dkt. No. 12 at 19. Although Sagitec might prefer for any source code review to take place in Minnesota, that assertion does not amount to a contention that the source code could not be produced in Delaware.  For example, Sagitec has not explained why the source code could not readily be produced at the offices of its Delaware counsel.

files could not be produced in the alternative forum"). Accordingly, this factor is neutral. *See Take2*, 2023 WL 4930359, at *9.

### 2. Public Interest Factors

#### i. *Enforceability of the Judgment*

The first public interest factor is the enforceability of the judgment. The parties agree that any judgment entered in this case would be equally enforceable regardless of which forum is chosen. Dkt. No. 12 at 20; Dkt. No. 37 at 20. Accordingly, this factor is neutral.

#### ii. *Practical Considerations*

The second public interest factor relates to practical considerations that could make the trial easy, expeditious, or inexpensive. Courts in this district have treated this factor as neutral when the parties' contentions regarding this factor "have been raised, in some way, as to other *Jumara* factors," so as to avoid "double-counting" those considerations. *See, e.g.*, *Wiremed Tech LLC v. Adobe Inc.*, No. 18-1066, 2019 WL 2250643, at *5 (D. Del. May 24, 2019) (cleaned up). The parties' arguments as to this factor are largely duplicative of their arguments as to the other *Jumara* factors. Accordingly, this factor is neutral.

#### iii. *Court Congestion*

The third public interest factor is the relative court congestion in the two districts. Sagitec does not contend that this factor weighs in favor of transfer, and the evidence cited by Sagitec indicates that the number of civil filings per judge is largely similar in the two forums. Dkt. No. 16-1, Exh. 4 (426 filings per judge in Delaware; 458 filings per judge in Minnesota). Although the weighted filings per judge are greater in Delaware than in Minnesota, that factor is offset by the fact that this case has been assigned to a visiting judge with a smaller district court docket than the active judges in the District of Delaware. *See Trover Grp., Inc. v. Tyco Int'l, Ltd.*, No. 2:13-

CV-52, 2014 WL 12596722, at *5 (E.D. Tex. April 11, 2014).  The court congestion factor does not weigh decidedly in favor of either forum.  This factor is neutral.

### iv.    Local Interest

The fourth public interest factor is the local interest in deciding local controversies at home. The District of Minnesota has a local interest in this case because Sagitec has its headquarters in that district.  *Harris*, 2019 WL 1854562, at *5 ("[A] district in which a defendant is headquartered maintains an interest in the litigation.") (citing *In re Amendt*, 169 F. App'x 93, 97 (3d Cir. 2006)). On the other hand, the plaintiffs' status as Delaware corporate entities means that Delaware has at least some interest in adjudicating the dispute.  *Ceradyne, Inc. v. RLI Ins. Co.*, No. 20-1398, 2021 WL 3145171, at *8 (D. Del. July 26, 2021).  Both forums have a local interest in the controversy, and neither forum's interest is substantially greater than the other.  This factor is therefore neutral.

### v.    Public Policies

The fifth public interest factor relates to the public policies of the respective districts.  It is generally accepted that "Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts."  *Williamsburg Furniture, Inc. v. Lippert Components, Inc.*, No. 19-1993, 2020 WL 331119, at *6 (D. Del. Jan. 21, 2020).  That policy generally weighs against transfer "even where only one party is a Delaware corporation."  *P Tech*, 2022 WL 1490733, at *6 (citing *Graphics Properties Holdings Inc. v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320, 331 (D. Del. 2013)).  Courts in this district have also observed, however, that the public policy of encouraging Delaware corporations to litigate in Delaware "generally applies to the use of Delaware's state courts," and not to federal courts in the District of Delaware, because claims "are resolved in the same manner and under the same Federal Rules of Civil Procedure and Evidence"

22

in every federal district court.  *Express Mobile*, 2020 WL 3971776, at *5 (quoting *MEC Resources*, 269 F. Supp. 3d at 228).  For those reasons, this factor weighs only slightly against transfer.

> *vi.*     *Familiarity with State Law*

The sixth public interest factor is the familiarity of the trial judge with the applicable state law in diversity cases.  The parties agree that this factor is neutral as applied to this case.  Dkt. No. 12 at 20; Dkt. No. 37 at 20.

### 3.     Balancing the Factors

Of the private interest factors, one weighs against transfer, one weighs in favor of transfer, one weighs somewhat in favor of transfer, and three are neutral.  Of the public interest factors, one weighs slightly against transfer and the other five are neutral.  Balancing all the factors, I find that the factors as a whole do not strongly favor transfer.  I therefore conclude that Sagitec has failed to satisfy the standard for obtaining a transfer under section 1404(a).  Accordingly, Sagitec's motion for transfer is denied.

IT IS SO ORDERED.

SIGNED this 15th day of September, 2023.


WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

23