IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DELOITTE CONSULTING LLP and                §
DELOITTE DEVELOPMENT LLC,                  §
                                           §
        *Plaintiffs*,                      §
                                           §
        v.                                 §            Civil Action No. 23-325-WCB
                                           §
SAGITEC SOLUTIONS LLC,                     §
                                           §
        *Defendant*.                       §
                                           §
                                           §

## MEMORANDUM OPINION AND ORDER

Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC (collectively, "Deloitte") filed this action against defendant Sagitec Solutions LLC on March 23, 2023. In its complaint, Deloitte asserted claims for copyright infringement under federal law, trade secret misappropriation under New York and federal law, unfair competition under New York law, and unjust enrichment under New York law. Dkt. No. 1. On May 15, 2023, Sagitec filed a motion for a more definite statement under Federal Rule of Civil Procedure 12(e). For the reasons set forth below, the motion is DENIED.

I.      **Background**

Both Deloitte and Sagitec offer, among other products and services, software products that allow state governments to manage their unemployment insurance ("UI") programs. Deloitte sells a software system called "uFACTS," and Sagitec sells a software system called "Neosurance." A more detailed discussion of the background facts can be found in my order denying Sagitec's motion to dismiss or, in the alternative, transfer the case, filed contemporaneously with this order.

In its complaint, Deloitte alleges that several former Deloitte employees accepted jobs at Sagitec and began working on the Neosurance software product.  Dkt. No. 1 ¶¶ 39, 44.  According to Deloitte, the former employees used Deloitte's trade secrets and copyrighted source code in violation of Deloitte's intellectual property rights while they were developing Neosurance.  *Id.* ¶¶ 45–49.  In its complaint, Deloitte set forth three categories of materials that it alleged to be trade secrets:  (1) the "uFACTS Application," (2) the "uFACTS Design," and (3) the "uFACTS Framework."  *Id.* ¶ 28.

The first category, the "uFACTS Application," refers to the "proprietary application software" that Deloitte develops for its clients.  *Id.* ¶ 29.  The complaint explains that this category includes "the source code, libraries, configurations, settings, logic, routines, scripts, and database schemas that enable uFACTS to operate."  *Id.*  Deloitte has registered certain portions of the uFACTS software program with the United States Copyright Office.  *Id.* ¶ 25.  Deloitte alleges that the "uFACTS Application" category of trade secrets includes the "non-public portions of the registered uFACTS Computer Program . . . as well as subsequent versions and improvements that Deloitte has continued to develop."  *Id.* ¶ 30.

The second category, the "uFACTS Design," refers to "design assets related to uFACTS that describe in plain language how the software is intended to operate."  *Id.* ¶ 31.  Those assets, Deloitte explains,

> describe specific modules or functions of the software, including, for example, the ordered steps a user may execute using the module or function, the forms or information that will be displayed to the user at each step, the data that may be accepted from the user, the structure of the data and its location and identification in the database schema, and any interfaces with other modules and functions.

*Id.*  Deloitte further alleges that those materials "tell a developer the purpose of the software to be implemented from an end-user's perspective."  *Id.*

The third category, the "uFACTS Framework," refers to "reusable and customizable software packages" that are distinct from the uFACTS Application but are "used to generate the uFACTS application software for customers." *Id.* ¶ 32. Deloitte alleges that the "uFACTS Framework" includes "both the software components and related confidential documentation." *Id.*

In its complaint, Deloitte refers to the three categories outlined above as the "uFACTS Trade Secrets." *Id.* ¶ 28. Deloitte alleges that it "derives economic value and gains a continued competitive advantage from the secrecy of the uFACTS Trade Secrets," and that it maintains those trade secrets "in strict confidence to protect their value and the substantial investments Deloitte has made to develop them." *Id.* ¶¶ 33–34.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(e) permits a party to "move for a more definite statement of a pleading" if that pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Courts have applied Rule 12(e) where "a pleading is unintelligible . . . or the issues cannot be determined." *Gross v. Weinstein, Weinburg & Fox, LLC*, 123 F. Supp. 3d 575, 581 (D. Del. 2015). Rule 12(e) motions are "generally viewed with disfavor, particularly 'where the information sought by the motion could easily be obtained by discovery.'" *Id.* (quoting *CFMT, Inc. v. YieldUp Int'l Corp.*, No. 95-549, 1996 WL 33140642, at *1 (D. Del. Apr. 5, 1996)).

## III.    Discussion

Sagitec argues that it is entitled to relief under Rule 12(e) because, in its view, Deloitte has not identified the alleged trade secrets "with any particularity." Dkt. No. 14 at 9. Specifically, Sagitec contends that the complaint (1) "do[es] not offer any definition of the information that is claimed to be secret," (2) includes material in its categories of trade secrets "that is facially not

secret because it is available to the public through proper means," and (3) "do[es] not offer any delineation between what information is alleged to be secret and what information is generalized knowledge or known to those skilled in the art." *Id.* at 10.

1. With respect to the first point, I disagree with Sagitec that Deloitte has not offered any definition of the information that Deloitte claims as secret. As discussed above, Deloitte has identified three categories of information—the uFACTS Application, the uFACTS Design, and the uFACTS Framework—that it contends are trade secrets. To be sure, those categories are broad, but they are not ambiguous. For example, the uFACTS Application category would readily be understood to encompass the source code, settings, and other implementation details of the uFACTS software. *See* Dkt. No. 1 ¶¶ 29–30. The uFACTS Design category would readily be understood to include documents that explain the process for using the uFACTS software, including "ordered steps a user may execute using [a particular] module or function," or the "information that will be displayed to the user at each step." *See id.* ¶ 31. And the uFACTS Framework category would include software and related documentation for "reusable and customizable software packages" that are used in the development of the uFACTS software. *See id.* ¶ 32.

Sagitec's principal contention regarding its first argument is that the alleged trade secrets "encompass[] the *entire* uFACTS Solution." Dkt. No. 14 at 10 (capitalization altered). In Sagitec's view, an allegation that the entirety of a plaintiff's software is a trade secret "gives Sagitec no way to identify where Deloitte's alleged trade secrets begin or end." *Id.* at 12.

In support of that contention, Sagitec relies on two cases, neither of which is pertinent to the circumstances of this case. In *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 09-157, 2013 WL 867640, at *4 (D. Del. Mar. 8, 2013), the court granted the defendant's motion for summary

4

judgment on the plaintiff's trade secret claim because the plaintiff "failed to adequately describe" many of its alleged trade secrets.  In granting the motion, the court explained that descriptions of trade secrets that "effectively assert that all information about the plaintiff's software is a trade secret . . . are too broad."  *Id.* at *3 (cleaned up).  Although that standard may be relevant to Deloitte's claims as this case progresses, the procedural posture of the *XpertUniverse* case is important.  The court described the basis for its decision to grant summary judgment as being "that the identification of the trade secrets is insufficient to create a triable factual issue."  *Id.* at *2.  The court did not consider or articulate the level of specificity with which a trade secret must be described at the pleading stage.

The same is true of *IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581 (7th Cir. 2002), a case cited by the court in *XpertUniverse* and relied on by Sagitec.  In that case, the district court granted summary judgment to the defendants "after concluding that [the plaintiff] had failed to identify with specificity the trade secrets that it accuses the defendants of misappropriating."  *Id.* at 583.  The court of appeals affirmed, explaining that the plaintiff had "effectively assert[ed] that all information in or about its software is a trade secret," an assertion that the court described as "not plausible."  *Id.*

A more applicable precedent is the Third Circuit's decision in *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021), in which the court addressed the specificity required to plausibly allege a trade secret claim for purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The court explained that the alleged trade secret "must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it."  *Id.* at 906.  The court added, however, that a plaintiff need not "spell out the details of the trade secret to avoid dismissal."  *Id.* (cleaned up).  The plaintiff need only describe the trade secret

"with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* (citation omitted).

The decision of the district court in *OWAL, Inc. v. Caregility Corp.*, No. 21-13407, 2022 WL 890182 (D.N.J. Mar. 25, 2022), is similarly instructive.  In that case, the plaintiff's complaint identified two categories of trade secrets:  "Confidential Information" and "Evaluation Materials." *Id.* at *7.  "Confidential Information," the plaintiff explained, included "notes, analyses, compilations, studies, or other documents" prepared by the plaintiff.  *Id.*  "Evaluation Materials" included numerous categories of information including "software, systems, products, services, and website designs, code, algorithms and technology."  *Id.*  The court found those categories to be sufficient to satisfy the particularity standard set forth by the Third Circuit in *Oakwood*, noting that the complaint pointed to "a reasonably finite category of information as containing its trade secrets."  *Id.*

In this case, I find that the three categories of information set forth in Deloitte's complaint are similar, and in some respects more specific, than the categories that the court in *OWAL* held sufficient to satisfy the requirement of definiteness.  That is, they set forth "reasonably finite" categories of information that put Sagitec on notice of the claims against it.  *See id.*  It is not the case, as Sagitec suggests, that Sagitec has "no way to identify where Deloitte's alleged trade secrets begin or end."[1]  *See* Dkt. No. 14 at 12.

---

[1]  Sagitec devotes a considerable portion of its reply brief to arguing that the government was unable to articulate the alleged trade secret during a parallel criminal action against two former Sagitec employees.  In that case, the district court ordered the government to provide a bill of particulars that included a specific articulation of the information alleged to be a trade secret.  Dkt. No. 23-1, Exh. 2, at 14–15.  Before the government provided the bill of particulars, it filed a superseding indictment that did not include charges of trade secret misappropriation.  Dkt. No. 23-1, Exh. 3.  Sagitec seems to suggest that the trade secret charges were not included in the

2.   With respect to the second point, Sagitec contends that the categories set forth in Deloitte's complaint encompass "elements of uFACTS that facially cannot be a trade secret." Dkt. No. 14 at 12.  For example, Sagitec points to the "uFACTS Design" category of alleged trade secrets, which the complaint defines to include "the forms or information that will be displayed to the user." *Id.* at 13.  Sagitec argues that such information cannot plausibly be a trade secret because "[i]nformation is not secret if it will be displayed to the general public." *Id.*

The problem with that argument is that it is directed to the merits of Deloitte's allegations, not to whether the allegations are so indefinite that Sagitec is entitled to relief under Rule 12(e). Deloitte has made clear in its complaint that it regards the uFACTS Application, uFACTS Design, and uFACTS Framework categories as constituting trade secrets, and those categories are defined in a sufficiently finite manner to allow Sagitec to respond to the complaint.  Sagitec may wish to argue in this case that certain subsets of that information do not meet the substantive requirements to qualify as trade secrets, but those arguments are more properly raised in, for example, a motion for summary judgment.

In any event, the fact that certain aspects of the alleged trade secrets may be publicly known or accessible does not render the complaint deficient as a matter of law.  In *You Map, Inc. v. Snap Inc.*, 20-162, 2021 WL 3171838, at *9 (D. Del. July 27, 2021), *report and recommendation adopted*, 2022 WL 4377031 (D. Del. Sept. 22, 2022), the defendants made an argument similar to the one Sagitec makes here; namely, that certain aspects of the plaintiff's software could not constitute trade secrets "because they were publicly disclosed prior to the alleged

---

superseding indictment because the government was unable to identify the trade secrets with specificity.  *See* Dkt. No. 22 at 3–4.  But to assume that the charges were removed for that reason is no more than speculation.  In any event, given the differences in the parties, the causes of action, and the burden of proof in this case compared to the criminal action, any inferences that might be drawn from the government's actions in the criminal case are of limited application here.

misappropriation." The court rejected that argument because the court could not conclude "that all aspects of the alleged trade secrets were publicly available" and because the record did not "demonstrate that the underlying software algorithms and source code were publicly known." *Id.* In other words, the court explained, "I would allow the trade secret claim to move forward even if I were to find that certain aspects were publicly known at the time the misappropriation is alleged to have occurred." *Id.*

Accordingly, the fact that some publicly available information may be contained within the categories articulated by Deloitte does not render the complaint insufficient such that Sagitec is entitled to a more specific articulation of the alleged trade secrets at this stage of the case.

3. With respect to its third point, Sagitec argues that Deloitte has "fail[ed] to draw any lines between the general elements of uFACTS's software categories and any specifically alleged trade secrets." Dkt. No. 14 at 14. For example, Sagitec contends that categories such as "source code, libraries, configurations, settings, [and] logic" are "better characterized as a list of general categories of business and technical information" that are not sufficiently definite to constitute a trade secret. *Id.* (quoting *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 382 (3d Cir. 2021)).

As an initial matter, the *Mallet* case is inapposite. In that case, the district court granted the plaintiff's motion for a preliminary injunction, and articulated the trade secrets at issue as "includ[ing], among other things, highly sensitive details about how [the plaintiff] produces, markets and sells" its products. *Mallet*, 16 F.4th at 381. The court of appeals vacated the district court's judgment on the ground that the district court had failed "to articulate with particularity the information to which it accorded trade secret status." *Id.* at 385. One major difference between the *Mallet* case and this one is that the court in *Mallet* made a finding that the plaintiff was likely to succeed on the merits of its trade secret claims, which requires a much stronger showing than

that required to satisfy the notice pleading standards of the Federal Rules of Civil Procedure. *See id.* at 380. Moreover, the trade secrets identified by the district court included "thirteen broad categories of information" that were apparently unbounded as to any particular product or process. *Id.* at 381–82. Here, by contrast, Deloitte has alleged in its complaint that certain aspects of the uFACTS software in particular are trade secrets; that information is more definite than the categories identified by the district court in *Mallett*.

Even if more specificity were required, it is not clear how Deloitte could provide that specificity without "spell[ing] out the details of the trade secret." *See Oakwood*, 999 F.3d at 906. Sagitec suggests that Deloitte should be required to identify with specificity which source code files, libraries, configurations, settings, and other components "constitute Deloitte's alleged trade secrets." Dkt. No. 14 at 15. Such a granular identification at the pleading stage is unnecessary, as Deloitte need only "place [Sagitec] on notice of the bases for the claim being made against it." *Oakwood*, 999 F.3d at 906. As the court explained in *Oakwood*, a trade secret plaintiff at the pleading stage faces something of a "Catch-22":

> Satisfying the requirement of detailed disclosure of the trade secrets without knowledge of what the defendant is doing can be very difficult. If the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret. If instead it is too specific, it may miss what the defendant is doing.

*Id.* at 907 (cleaned up).

To require Deloitte to identify its trade secrets with granularity at this stage of the case could thus risk requiring Deloitte to define its trade secrets too narrowly and to "miss what the defendant is doing." *See id.* More generally, courts have recognized that a complaint "can describe trade secret information in general terms." *PeopleFlo Mfg., Inc. v. Sundyne, LLC*, No. 20-3642, 2021 WL 3129264, at *6 (N.D. Ill. July 23, 2021) (quoting *Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F.Supp.3d 815, 831 (N.D. Ill. 2019)); *see also Leucadia, Inc. v. Applied Extrusion Techs.,*

*Inc.*, 755 F. Supp. 635, 636 (D. Del. 1991) ("Courts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation . . . .").

4.  For the first time in its reply brief, Sagitec contended that it would be prejudiced if its motion for a more definite statement were denied.[2]  Sagitec argued that it would be prejudiced in its "ability to take discovery and form an effective discovery plan," to "respond to Deloitte's allegations in good faith," and to "determine whether it is necessary to join additional parties." Dkt. No. 22 at 4–5.  I am not persuaded that Sagitec faces significant prejudice in either of those respects.

A Rule 12(e) motion should be granted only if the pleading in question "is so vague or ambiguous that the [movant] cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  It appears from Sagitec's briefing that it is seeking to ascertain "how much third party discovery may be necessary" and what other "appropriate discovery deadlines or limitations might be."  Dkt. No. 22 at 4.  Those considerations, however, are often not made clear until initial disclosures have been exchanged and the discovery process has begun.  I see no significant risk that any indefiniteness in the characterization of the trade secrets will impede Sagitec in planning and executing its discovery.

As for the ability to respond to the allegations in good faith, Sagitec suggests that if it denies certain allegations now, Deloitte may "later add[] unwritten, implied definitions to its trade secret pleadings and accus[e] Sagitec of breaching its Rule 11 obligations."  Dkt. No. 22 at 5.  That is not a realistic concern.  Sagitec has not pointed to any particular allegation in the complaint to

---

[2]  At the parties' request, I allowed Deloitte to file a sur-reply brief and Sagitec to file a sur-sur-reply brief to address this new argument.  I will not deem the prejudice argument waived as any unfair advantage that may have resulted from Sagitec's raising the issue belatedly has been cured by the supplemental briefing.

which it cannot respond in good faith. Sagitec suggests that "[a] general denial would not capture" certain positions that it may take in the litigation. The pleadings, however, need not capture every nuance of Sagitec's positions. For example, if Sagitec believes that certain information does not constitute a Deloitte trade secret because the information belongs to another entity, Sagitec can simply deny the allegation that Sagitec has misappropriated those trade secrets. Sagitec is also free to explain its positions in detail in its answer, to the extent that its positions are known prior to discovery. Thereafter, the discovery process—and in particular the use of contention interrogatories—will allow the parties to refine their positions.

As for the ability to determine whether additional parties should be joined in the action, that is also not a relevant consideration in deciding a Rule 12(e) motion. If it becomes clear in discovery that the joinder of additional parties is necessary, the parties can seek leave to join additional parties at that time. Indeed, courts regularly allow the joinder of additional parties during the discovery period if such joinder would be appropriate given the needs of the case. *See, e.g.*, *Impossible Foods Inc. v. Motif FoodWorks, Inc.*, No. 22-311, Dkt. No. 128 (D. Del. June 30, 2023); *F45 Training Pty Ltd. v. Body Fit Training USA Inc.*, No. 20-1194, Dkt. No. 165 (D. Del. Aug. 3, 2022). There is no reason to believe that remedy, if it turns out to be called for, would not be fully satisfactory in this case.

## IV.   <u>Conclusion</u>

In conclusion, Deloitte's complaint sets forth the alleged trade secrets with sufficient specificity to enable Sagitec to prepare a response to the complaint. Many of Sagitec's arguments are directed to the merits of the case (e.g., arguing that certain categories of materials are not trade secrets) or to issues that are best addressed during the discovery process. Accordingly, Sagitec's motion for a more definite statement is denied.

IT IS SO ORDERED.

SIGNED this 15th day of September, 2023.


WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE