IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DELOITTE CONSULTING LLP and<br>DELOITTE DEVELOPMENT LLC,<br><br>      Plaintiffs,<br><br>      v.<br><br>SAGITEC SOLUTIONS, LLC,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 23-325-WCB<br>)<br>)<br>)<br>)<br>) |

**STIPULATED ESI PROTOCOL**

To expedite the flow of discovery material and to facilitate consistency in the format of Documents to be produced in this case, Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC (together, "Deloitte") and Defendant Sagitec Solutions LLC ("Sagitec") (collectively the "Parties" and each individually a "Party") by and through their respective counsel hereby stipulate and agree to the terms of this order regarding the protocol for producing Documents and Electronically Stored Information ("ESI").

IT IS HEREBY ORDERED THAT:

**I.      Purpose**

This stipulated protocol for producing Documents and ESI ("ESI Protocol") governs the production of Documents and ESI by the Parties in this Action. This ESI Protocol supplements the Default Standard for Discovery, Including Discovery of ESI, in the District of Delaware (the "Default Standard"). For the avoidance of doubt, the ESI Protocol supersedes any conflicting provisions of the Default Standard.

**II.     Applicability**

This ESI Protocol applies to Paper Records and ESI that are first produced in this Action after the date of entry of this order. Productions in this Action that were delivered before the date of entry of this order are exempt, unless the Producing Party and Receiving Party otherwise agree.

This ESI Protocol governs productions made by any third party who is subpoenaed in this Action, unless otherwise agreed to by the issuing party and the third party. Any Party issuing a subpoena in this Action shall attach this ESI Protocol to the subpoena.

This ESI Protocol is binding upon the Parties in this Action and any third party that produces or receives Documents in this Action, including their respective corporate parents, successors, and assigns, and their respective attorneys, agents, consultants, representatives, officers, and employees.

**III.    Definitions**

The following definitions shall apply to the terms used in this order. Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. To the extent a technical term is not defined herein, the meaning of such terms shall be the same as set forth in the "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020.

    (a)    "Action" means the above-captioned litigation.

    (b)    "Confidentiality Designation" means the legend affixed to "Confidential" or "Highly Confidential" Discovery Material as defined by, and subject to, the terms of the Stipulated Protective Order filed in this Action.

    (c)    "Document" has the same meaning as in Federal Rule of Civil Procedure 34.

    (d)    "Document Family" means a collection of pages or files produced manually or by a software application, constituting a communication and any attachments or a file and any extracted embedded objects, consisting of more than a single stand-alone record.

(e) "Electronically Stored Information" or "ESI" has the same meaning as in Federal Rule of Civil Procedure 34.

(f) "Hash Value" means a MD5 has value or other unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file based on a standard mathematical algorithm applied to the characteristics of the data set.

(g) "Metadata" means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, or usage or validity of the electronic file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such system.

(h) "Native" when referring to a file or format means the file structure of a document created by the original creating application. "Native Format" does not refer to a static image, which is a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .TIFF or .PDF.

(i) "Optical Character Recognition" or "OCR" means an automated, machine-driven process for recognizing and extracting text within an image file or other electronic document.

(j) "Paper Records" or "Hard Copy Documents" means Documents existing in paper form at the time of collection.

(k) "Producing Party" means a Party to this Action or third party who is subpoenaed in this Action who produces Documents in this Action.

(l) "Receiving Party" means a Party to whom Documents are produced in this Action.

(m) "Requesting Party" means a Party to this Action who issues a request for ESI to another Party to this Action or third party who is subpoenaed in this Action.

(n) "Searchable Text" means the text extracted from ESI and any OCR text generated from a Hard-Copy Document or electronic image.

## IV. Collection and Search

### A. Scope of Discovery

The Parties agree pursuant to Federal Rule of Civil Procedure Rule 26(b)(1) that the scope of discovery is limited to those matters that are both relevant to the Parties' claims and defenses and proportional to the needs of the case. The Parties agree that ESI is subject to discovery. Parties

are not obligated to produce or attempt to restore deleted ESI lost as a result of the routine, good-faith operation of an ESI system or application of retention policies in place prior to the Party's obligation to preserve ESI in this Action. This provision does not excuse the failure to preserve relevant material after an obligation to preserve it has attached, nor is it intended to waive a Party's ability to seek relief from a Court for such a failure.

B.   **Collection and Search Methods**

The Parties agree that different categories of requested ESI may require different collection methods. For example, requests that are commensurate in scope with readily identifiable sources (*i.e.*, requests for discrete documents or groups of documents, such as documents already collected and produced in other litigations or proceedings) may not warrant the use of search terms. Requests that require review of email communications may warrant the use of search terms to limit the review set to a reasonable volume while ensuring that potentially responsive documents are not excluded from review.

If a Producing Party elects to use search terms to satisfy a request for ESI, it shall notify the Requesting Party of its intent to do so and, upon request, it shall disclose the proposed search terms, as well as the custodians, date ranges, and other filters or limitations, to the Requesting Party. The Requesting Party may request reasonable modifications to the Producing Party's search terms, date ranges, and other filters or limitations if there is reason to believe such modifications would locate nonduplicative responsive ESI and the proposed modifications do not result in an unreasonable number of additional documents to review. The Requesting Party may also request up to 10 additional search terms.

The parties agree to a tiered collection strategy, where a Producing Party shall not initially be required to search the ESI of more than 10 custodians absent a showing a good cause. Collection from non-custodial sources does not count against the 10-custodian limit. If a

4

Producing Party intends to search fewer than 10 custodians, a Requesting Party may identify additional custodians for the Producing Party to search. A Requesting Party will be given a reasonable opportunity to correct or replace proposed search terms that do not yield any results.

The Parties shall meet and confer to address requested search terms, custodians, or other parameters that result in an unreasonable volume of documents to review. If the Parties are unable to agree on custodians, search terms, date ranges, or other parameters, the Requesting Party may promptly seek relief from the Court.

The foregoing default limits do not prevent a Party from requesting additional discovery, including ESI from additional custodians, as the case proceeds. A Party may choose to search additional custodians or employ additional search terms beyond the foregoing default limits without prejudice to its ability to rely on any Document in its possession, custody, or control to support its claims or defenses in this Action, provided these additional search terms and custodians are disclosed to the opposing party.

### V.     Production Format

The Parties agree to produce Documents and ESI in this Action in accordance with the following specifications and procedures.

#### A.     Paper Records

Paper Records will be scanned or otherwise converted into electronic form in the format specified in Appendix A. Paper Records should be logically unitized (*i.e.*, separate Documents should not be merged into a single Document, nor should a single Document be split into multiple Documents). The Parties will undertake best efforts to unitize Documents correctly.

**B.     ESI**

Unless otherwise agreed, the Parties will produce ESI in TIFF format according to the following specifications and as set forth in Appendix A.  This order provides minimum requirements, which a Party may choose to exceed.

A Producing Party shall produce black & white Documents as single-page TIFF images in accordance with the technical specifications set out in Appendix A.  Documents produced in color shall be produced as single page, 300 DPI, color JPEG images with a quality setting of 75% or higher.  A Producing Party should produce a Document, or individual pages thereof, in color if (a) the Document or pages thereof contain substantial color elements (*e.g.*, images, charts, diagrams, or annotations); (b) information within the Document or pages thereof are no longer legible once converted to black & white; or (c) the Receiving Party of a Document produced in black & white reasonably requests a color copy of the Document.

For each produced document, a text file should be provided along with the image files and metadata.  The text of native files should be extracted directly from the native file.  However, if a document has been redacted or does not contain extractable text (e.g., JPEG, PNG, TIFF), OCR of the redacted document will suffice in lieu of extracted text.

**C.     Metadata**

The Metadata specified in Appendix B shall be provided for each produced Document, to the extent available.  The parties reserve the right to request additional metadata fields as necessary during discovery.

**D.     Native Files**

The following types of ESI will be produced in their respective Native file formats only, without preparing corresponding TIFF/JPEG images:

(a)     Spreadsheets (*e.g.*, Excel) and comma-delimited data (*e.g.*, CSV);

      (b)      Source code;[1]

      (c)      Scripting files;

      (d)      Databases and other structured data;

      (e)      Markup language files (including HTML, XML, and similar file formats);

      (f)      CAD or similar engineering drawings or schematics;

      (g)      Audio, video, or audiovisual recordings; and

      (h)      Any other file format that cannot be processed as a series of TIFF or JPEG images without a substantial or total loss of text, graphics, audio/visual, or formatting information.

If a Native version of an above Document is available, it should be produced in its Native file format. A Receiving Party may request the production of Documents in Native format if, upon reviewing the imaged versions, it reasonably believes that potentially relevant information has been lost during the conversion process. A Producing Party shall not refuse to produce a Document in Native format absent good cause.

      **E.**      **Redacted Documents**

Redacted Documents produced in image format shall be processed in accordance with Section V.B, above. A Producing Party may choose to redact the Native file of a Document produced in Native format by eliminating the information to be redacted, as long as the location of the redacted information is made clear (*e.g.*, by replacing the redacted information with "[REDACTED]" or, for spreadsheets, shading the cells where information has been removed). Alternatively, if redaction of a Native file is impractical, a Producing Party may redact the imaged version. Regardless of format, redacted Documents shall be identified using the "Redacted" Metadata field as specified by Appendix B.

---

[1] Source code may also be produced under the protocol set forth in the Parties' Stipulated Protective Order submitted contemporaneously with this order.

### F.    Deduplication

Each Party will deduplicate ESI globally for exact duplicate Documents (based on MD5 or SHA-1 Hash Values at the parent Document level).  A Producing Party should attempt to produce only a single copy of duplicate Documents, provided that all other custodians of the Document are identified in the "All Custodians" Metadata field.  The Parties shall deduplicate stand-alone Documents against other stand-alone Documents and shall deduplicate parent Documents against other parent Documents.  Deduplication shall not break apart families if not all members of the family are duplicates.

### G.    Parent-Child Relationships

Parent-child relationships (*e.g.*, the association between an email and its attachments, a file and any embedded files or objects, or a container and its included files) that are maintained in the ordinary course of business should be preserved to the extent reasonably practicable.  To the maximum extent possible, such parent-child relationships should be indicated using the "Attachment Begin" and "Attachment End" Metadata files in accordance with Appendix B, and a Document Family should use a continuous sequence of production numbers, with the parent Document bearing the lowest production number in the sequence.

### H.    Proprietary or Third-Party Software

To the extent that information produced pursuant to this Protocol cannot be rendered or viewed without the use of proprietary or third-party software, the Parties agree to meet and confer to minimize any expense or burden associated with the production of such information in an acceptable format.

### I.    Enterprise Systems and Reports

For responsive ESI that is maintained natively as structured data and comprises a subset of data within a relational database or system (*e.g.*, data within an enterprise's financial, accounting,

time tracking, or customer relationship management system), a Producing Party may choose to produce intelligible extracts, summaries or reports output from such systems which comprise the discoverable, responsive and nonprivileged data. In the event the Receiving Party finds these extracts insufficient, the Parties agree to meet and confer to discuss the production of such information in an acceptable format. If relevant, responsive, and nonprivileged reports or data tables derived from a database were also maintained in the ordinary course of business in static form (*e.g.*, as a PDF attachment or hard copy in a file), those documents will be produced consistent with Section V.A or V.B of this order as appropriate.

### J. Production Media

The Parties shall produce Documents via a Secure File Transfer Protocol ("SFTP") service or similar secure and encrypted online file-sharing mechanism. The Producing Party shall provide the Receiving Party with all credentials necessary to access, download, and decrypt produced Documents and associated Metadata. If electronic transmission of a production is impractical, the Producing Party may provide the Receiving Party with a portable, USB-compatible hard drive containing an encrypted copy of the production via overnight courier.

## VI. Miscellaneous Provisions

### A. Objections Preserved

Nothing in this stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties as to matters not expressly addressed herein. Nothing in this agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI. The parties preserve their right to object on any ground to use in evidence of any material covered by this protocol.

### B. No Waiver

The parties and their attorneys do not intend by this protocol to waive their rights to any privileges. All parties preserve their attorney-client privileges and other privileges and there is no intent by the protocol, or the production of documents pursuant to the protocol, to in any way waive or weaken these privileges. The inadvertent production of a privileged document or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding. Moreover, the mere production of ESI in a litigation shall not itself constitute a waiver for any purpose. The Parties acknowledge and understand that, if a lawyer receives materials covered by the attorney-client privilege or that otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were produced or made available through inadvertence, the lawyer should refrain from examining the materials any more than is essential to ascertain if the materials are privileged and should immediately notify the sender that he or she possesses material that appears to be privileged.

### C. Modification

Variations from this ESI Protocol may be required. Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing. If the Parties cannot agree to a specific modification, any affected Party may request the Court's assistance to resolve such dispute.

SHAW KELLER LLP

/s/ Andrew E. Russell
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

OF COUNSEL:

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
(202) 389-5000

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

*Attorneys for Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC*

Dated: October 24, 2023

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Robert M. Vrana
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

OF COUNSEL:
Christopher K. Larus
David A. Prange
Brandon A. Carmack
ROBINS KAPLAN, LLP
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500

*Attorneys for Sagitec Solutions, LLC*

SO ORDERED

SIGNED this 27th day of October, 2023

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

## Appendix A: Summary of Technical Specifications

1. **Images**

    (a) Produce documents as a series of single page, black & white CCITT Group 4 compressed TIFF files **or** color JPEG images with quality set to 75% or greater, depending on whether the native file or hard copy document contains color elements

    (b) Image Resolution: 300 DPI or greater

    (c) File names shall match the Bates number stamped on the image in the lower right corner

    (d) Confidentiality endorsements shall be placed in the lower left corner of the image

    (e) Images should reflect original document orientation

    (f) Images shall reveal annotations (*e.g.*, comments, tracked changes, speaker notes) in the original, to the extent practicable

2. **Native Files**

    (a) If only the Native version of a file is produced, include a placeholder image (*i.e.*, a single-page TIFF slipsheet indicating that the Native file was produced, including the Bates number and any confidentiality endorsements)

    (b) Native version file names shall match the Bates number stamped on the slipsheet **or** the first page of the imaged version of the Document, if the latter is produced

    (c) The confidentiality designation may be included in the Native version file name if so desired

3. **Searchable Text**

    (a) Produce a single text file per Document

    (b) File names shall match the Bates number of the first page of the Document

    (c) Searchable text will include the complete extracted text for all unredacted ESI and redacted Documents in Native format, including all embedded and hidden text

    (d) Searchable text will include OCR text for Paper Records, Documents originally in a graphical format, redacted Documents produced in image format

4. **Volume and Load Files**

    (a) If a production is provided on physical media (*e.g.*, a hard drive), provide a separate volume for each piece of media

## APPENDIX A

(b) Volume names should end in a sequence number (001, 002, 003, etc.)

(c) Load file names should correspond to the volume name

(d) Provide metadata load files (.DAT) in Concordance format using standard delimiters

(e) The first record of a metadata load file should contain the field names in the order of the data

(f) Use a carriage return line feed (CRLF) to separate records

(g) Format date/time values as MM/DD/YYYY HH:MM:SS (24-hour)

(h) Provide image load files (.OPT) in Opticon format indicating document start, end, and page-break information with the following comma-delimited fields, one image per line: page identifier (Bates number), volume label, image file path, document marker ("Y" indicating the start of a unique document), folder, box, page count. Unused fields should be left empty.

**Appendix B: Required Metadata Fields**

| Field[1] | Description/Format | Email | Email Attachments[2] | Other ESI | Paper Records |
|---|---|---|---|---|---|
| Production Number Begin | Beginning Bates number of Document | Y | Y | Y | Y |
| Production Number End | Ending Bates number of Document | Y | Y | Y | Y |
| Attachment Begin | Beginning Bates number of Document Family | Y | Y | Y | Y |
| Attachment End | Ending Bates number of Document Family | Y | Y | Y | Y |
| Attachment Count | Number of child Documents | Y | Y | Y | Y |
| Custodian | Last Name, First Name | Y | Y | Y | Y |
| All Custodians | Last Name, First Name (semicolon-delimited) | Y | Y | Y | |
| File Name | From source file | | Y | Y | |
| File Extension | From source file | | Y | Y | |
| File Path | Location of source file at point of collection | | | Y | |
| Page Count | Based on imaged version of Document, or "1" for a placeholder image | Y | Y | Y | Y |
| Document Title | Extracted from Document properties | | Y | Y | |

**APPENDIX B**

| Field[1] | Description/Format | Email | Email Attachments[2] | Other ESI | Paper Records |
|---|---|---|---|---|---|
| Document Author | Extracted from Document properties | | Y | Y | |
| Item Type | Email, Chat, Contact, Calendar Item, Note, Task, etc. | Y | | | |
| Email Subject | | Y | | | |
| Email From | | Y | | | |
| Email To | | Y | | | |
| Email CC | | Y | | | |
| Email BCC | | Y | | | |
| Email Date Sent | | Y | | | |
| Email Date Received | | Y | | | |
| Message ID | If available from email header | Y | | | |
| Conversation or Thread Index | If available from email header | Y | | | |
| File Created | From source file or extracted from Document properties | | Y | Y | |
| File Last Modified | From source file or extracted from Document properties | | Y | Y | |
| Hash Value | | Y | Y | Y | |

B-2

**APPENDIX B**

| Field[1] | Description/Format | Email | Email Attachments[2] | Other ESI | Paper Records |
|---|---|---|---|---|---|
| Production Volume | | Y | Y | Y | Y |
| Confidentiality | CONFIDENTIAL or HIGHLY CONFIDENTIAL | Y | Y | Y | Y |
| Redacted | Y/N | Y | Y | Y | Y |
| Path to Native File | | Y | Y | Y | Y |
| Path to Searchable Text | | Y | Y | Y | Y |

[1]   The parties may use abbreviated names for metadata fields.

[2]   Refers to email attachments that are not themselves emails; an email attached to another email should be treated as an email for the purpose of determining what metadata to provide.

B-3