**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DELOITTE CONSULTING LLP and
DELOITTE DEVELOPMENT LLC,

§
§
§

    *Plaintiffs*,

§
§
§

    v.

§
§

Civil Action No. 23-325-WCB

SAGITEC SOLUTIONS LLC,

§
§
§

**FILED UNDER SEAL**

    *Defendant*.

§
§
§

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC (collectively, "Deloitte") filed this action against defendant Sagitec Solutions LLC on March 23, 2023.  In its complaint, Deloitte asserted claims for copyright infringement under federal law, trade secret misappropriation under New York and federal law, unfair competition under New York law, and unjust enrichment under New York law. Dkt. No. 1.  On July 27, 2023, Sagitec moved to stay this case pending the completion of a related criminal action against two of Sagitec's former employees. Dkt. No. 34.  The court denied that motion. Dkt. No. 50.

Sagitec has now filed a second motion seeking a stay of this case in light of the pendency of the criminal action.  Dkt. No. 102.  Sagitec argues that its new motion is justified because circumstances have materially changed since the court denied Sagitec's previous motion for a stay six months ago.  Although some discovery has taken place in this case, the circumstances have not materially changed respecting the factors that bear on whether to grant a stay.  Sagitec's motion for a stay is therefore denied.

1

Sagitec has also sought leave to file an early summary judgment motion directed to its statute of limitations defense as applied to Deloitte's trade secret and state law claims.  For the reasons given by Deloitte, a motion for summary judgment at this point in the case would be premature.  While Sagitec may file its summary judgment motion prior to the September 13, 2024, filing deadline, it will not be allowed to file multiple summary judgment motions in this case.  In addition, by filing its summary judgment motion prior to the close of discovery, Sagitec will be at risk of having its motion denied or action on the motion deferred on the ground that Deloitte has not had full discovery on factual issues important to the disposition of the motion.

## I.  The Renewed Motion for a Stay

In the court's order denying Sagitec's initial motion for a stay pending the completion of the criminal action against two former Sagitec employees, David Minkkinen and Sivaraman Sambasivam, the court explained in some detail why a stay of this action was not warranted.[1]  The court added, however, that Sagitec could renew its motion "if changes in the status of the criminal proceedings indicate that the case for a stay has become more compelling."   Dkt. No. 50 at 13.  Sagitec now argues that the status of the criminal proceedings has changed in a way that renders the case for a stay more compelling.  In fact, nothing has happened in the criminal case that was not fully anticipated at the time of my earlier order denying Sagitec's motion for a stay.

At the time of the court's prior order denying a stay, Mr. Minkkinen and Mr. Sambasivam had been indicted in the United States District Court for the Southern District of West Virginia on various charges including conspiracy to misappropriate trade secrets, wire fraud, conspiracy to commit wire fraud, and false statements in a matter within the jurisdiction of the executive branch. The district court dismissed some of the charges against Mr. Minkkinen and all the charges against

---

[1]  The court's discussion and analysis in that order will not be repeated here, but will be deemed incorporated in this order by reference.

Mr. Sambasivam because of pre-indictment delay.  The government then took an appeal to the United States Court of Appeals for the Fourth Circuit.  The district court stayed the remaining undismissed counts against Mr. Minkkinen pending the resolution of the appeal.

All of those events had occurred by the time of Sagitec's initial motion for a stay and my order denying that motion.  At that time, it was anticipated that briefs would be filed in the government's criminal appeal from the district court's dismissal order, there would be an argument on the appeal, and that at some point the court of appeals would decide the case.  During the intervening six months between my order denying the initial stay motion and today, nothing unexpected has occurred in the criminal proceeding.  Briefs have been filed and an argument date in the court of appeals (May 10, 2024) has been set, just as had been expected.  But Sagitec points to these events as new developments that require the court to reconsider its denial of stay.  These are not new developments.  They are exactly the events that were anticipated at the time of the briefing and decision denying the motion for a stay in September 2023.

In this action, there have also been no unanticipated events.  Documentary discovery has occurred, but neither fact discovery nor expert discovery has been completed.

What has changed is Sagitec's characterization of the stay it is seeking.  In its initial motion, Sagitec requested a stay pending the disposition of the criminal cases against the two defendants.  Now, Sagitec casts its stay request in more limited terms, requesting a stay "until the Fourth Circuit criminal appeal is resolved or September 1, 2024, whichever is earlier."  Dkt. No. 102 at 1.

Sagitec's request for a stay with a date certain for termination may be based at least in part on its hope that a more modest request will be more appealing to the court.  But the time limitations proposed by Sagitec make little sense.  The entire justification for a stay while the criminal proceeding is pending is the expectation that when the criminal proceeding is completed, the

defendants will be available to testify, by deposition, at trial, or both, and that there will no longer be any basis for them to invoke their privilege against compulsory self-incrimination to avoid testifying. There are several problems with that reasoning.

First, there is no guarantee that the court of appeals' decision will be issued before September 1, 2024. Government appeals in criminal cases are unusual, and the government's appeal in this case raises some difficult questions. For that reason, it is not unlikely that a decision in the case will take longer than the median period for Fourth Circuit decisions cited in Sagitec's brief. If the court of appeals does not decide the appeal by September 1, 2024, nothing in the criminal case will be different from what it is today. In that scenario, it can be expected that if there is no appellate decision by September 1, 2024, Sagitec will be back asking for an extension of the stay.

Second, even if there is a decision from the court of appeals by September 1, there are three possible outcomes of the criminal appeal: an affirmance, a reversal, or a remand for further district court proceedings on the issue on which the government has taken its appeal. Even if there is an affirmance by the court of appeals, it is highly unlikely that the defendants in the criminal action will be willing to surrender their Fifth Amendment privilege and promptly make themselves available to testify, for several reasons.

In the case of an affirmance, the criminal defendants' testimony would almost certainly not be forthcoming until the time for rehearing and/or certiorari had passed and the government had determined not to seek further review. That process would likely take several months at minimum; if rehearing or certiorari were granted, the process would take much longer.[2]

---

[2]   While Rule 40 of the Federal Rules of Appellate Procedure requires petitions for rehearing in criminal cases to be filed within 14 days of the decision, the government routinely seeks an extension of that period to allow the Solicitor General time to consider whether to seek

4

In addition, an affirmance in the criminal case would have no effect on the additional charges against Mr. Minkkinen, which have been stayed pending the government's appeal. Following an affirmance, those charges would remain in place and presumably would proceed to trial. It is a near certainty that Mr. Minkkinen's counsel would not permit him to testify in the civil action as long as those other charges remain pending.[3] And even if the trial on the remaining charges were to take place relatively quickly, a conviction on any of the remaining charges would likely give rise to a further delay resulting from appeals from any convictions obtained on those counts. Mr. Minkkinen's testimony would not likely be available during the pendency of those trial and appellate proceedings.[4]

Because the district court has dismissed all the charges against Mr. Sambasivam, it is possible that his testimony could become available at some point following an affirmance. If so, however, that would be unlikely to occur until after the time for the government to seek further review had expired, at the earliest. The government would be entitled to seek rehearing and, if rehearing is denied, the government would have up to 150 days within which to decide whether to

---

further review in the case. Petitions for certiorari are due for filing within 90 days of the date of a court of appeals decision or the court's decision on a petition for rehearing, but an extension of up to 60 additional days is permitted by the Supreme Court's rules. *See* Rule 13, Rules of the Supreme Court of the United States.

[3] Deloitte notes that Sagitec has successfully scheduled the defendants for depositions in April 2024 in a different case pending in the United States District Court for the Northern District of Illinois. That by no means indicates that the defendants will waive their Fifth Amendment rights and be willing to testify in that proceeding about matters having anything to do with the charges in the criminal action. It would be surprising if any competent criminal defense lawyer would allow his clients to give substantive testimony in a civil case on matters related to the charges in a criminal action pending against them.

[4] The stayed charges against Mr. Minkkinen relate to the events that gave rise to the charges in the dismissed counts, and it can confidently be assumed that as long as the stayed charges are pending against Mr. Minkkinen, he will assert his Fifth Amendment privilege against compulsory self-incrimination to avoid testifying about any of the events that are pertinent to the allegations in this civil action.

file a petition for a writ of certiorari.  It is very unlikely that defense counsel would allow Mr. Sambasivam to testify until the end of that period when the dismissal of the criminal charges would become final.

If the court of appeals were to remand the case to the district court for further findings, the process could again be delayed by many months.  Even if the district court were to act promptly, there would be the prospect of another appeal if the district court ruled against the government, followed by briefing, argument, and decision by the court of appeals.  That would lead to a delay well in excess of a year before the remand proceedings and any appeal from the district court's ruling on remand were completed.  And, of course, if the remand proceeding resulted in a decision against the defendants, any realistic possibility that the defendants would be available and willing to testify in this action would have to await (at least) the trial and (possibly) any appellate proceedings flowing from the trial.

Finally, if the court of appeals were to reverse the district court's dismissal order, the defendants would have an opportunity to seek further review of that decision.  Even absent such further review, the case would return to the district court, where trial and possible appeals from the trial would effectively negate any prospect of obtaining testimony from the two criminal defendants for the foreseeable future.

In sum, there is no significant chance of a decision by the court of appeals that would make testimony from Mr. Minkkinen and Mr. Sambasivam promptly available to the parties in this case. So Sagitec's proposed four-month stay would either serve no purpose, or would almost certainly be simply a first step in a request for a longer stay or a series of stays extending for a much longer period of time.

Because the justifications for denying Sagitec's request for a stay are largely unchanged since the court's order of September 15, 2023, I will not revisit the analysis set forth in that order, except to point out that Sagitec has not made a persuasive showing that those considerations are no longer applicable, or that they are less compelling than they were in September 2023.

First, Sagitec is wrong in asserting that the "length of the proceedings ahead in the criminal appeal is no longer 'unclear.'" Dkt. No. 102, at 1. That assertion simply blinks reality, for the reasons explained in detail above. And, for the reasons discussed, Sagitec's assertion that "[s]hould the appeal result in affirmance, discovery can resume expeditiously," *id.* at 2, is completely unrealistic.

Second, the fact that "the parties are approaching fact depositions," *id.* at 1, does not constitute a change in circumstances. It has been assumed from the outset—and is still assumed today—that the criminal defendants will not be available to be deposed until the criminal proceedings are ended, if then. That central fact has not changed.

Third, Sagitec argues that the fact that documentary discovery has taken place since the September order undercuts Deloitte's claim of prejudice from the delay. While the availability of documentary discovery may have given Deloitte additional insight into the nature of the alleged theft of trade secrets, Deloitte's claim of prejudice from the alleged continued use of its trade secrets by a competitor is the same now as it was in September 2023. Delay in prosecuting this case is delay in Deloitte's ability to obtain any of the relief to which it believes it is entitled.

Fourth, Sagitec argues that a stay will "allow Sagitec's motion on the statute of limitations to be disposed of (should the Court so permit)," and that doing so will advance the public policy in favor of enforcing statutes of limitation. *Id.* at 2. The problem with that argument is that Sagitec's desire to file an early summary judgment motion on the statute of limitations (an issue

7

discussed below) has little to do with whether a stay is granted.  If the court were disposed to allow Sagitec to file an early summary judgment motion on the statute of limitations issue, it could do so regardless of whether it granted a stay.  In any event, as discussed below, the court is not disposed to halt the proceedings in this case to facilitate Sagitec's filing such a motion prior to the conclusion of discovery.  Therefore, the prospect of enabling Sagitec to file an early summary judgment motion has no impact on the factors bearing on whether to grant the renewed motion for a stay.

In short, because the factors that underlay the court's decision to deny a stay in its September 15, 2023, order have not materially changed, the request for a stay will again be denied.

## II.  The Motion to File an Early Partial Summary Judgment Motion

Sagitec argues that Deloitte's trade secret and state law claims all accrued prior to a tolling agreement that the parties entered in 2022, and that for the purpose of simplifying the case, the court should permit Sagitec to file an early summary judgment motion directed to the statute of limitations issues.  Dkt. No. 102 at 2.  In a footnote, Sagitec adds that its early summary judgment motion should be "without prejudice to Sagitec bringing another full-length summary judgment motion on unrelated issues on the schedule set by the Court."  *Id.* at 3 n.2.

To begin with, Sagitec will not be permitted to file multiple motions for summary judgment.  Instead, each party will be limited to a single summary judgment motion within the page limitations set forth in Local Rule 7.1.3(4).  While Sagitec may file its summary judgment earlier than the deadline set forth in the scheduling order, it will be limited to a single summary judgment motion and will not be allowed to file another summary judgment motion (or motions) at a later point in the case.  Moreover, if Sagitec files its motion for partial summary judgment before the close of discovery, it is likely to be met by a claim from Deloitte that the motion is

premature, which could result either in denial of the motion or a postponement in the disposition of the motion until after discovery is completed.

Sagitec proposes that the parties be permitted to take Rule 30(b)(6) depositions directed to the statute of limitations issue, with those depositions to be completed by April 25, 2024, and briefing of the summary judgment motion to be completed by June 14, 2024.  I see no particular efficiency in setting up a separate schedule for discovery and briefing on the partial summary judgment motion.  First, given that Sagitec's motion for a stay is being denied, the schedule for depositions and briefing limited to the limitations issue would likely interfere with the completion of fact discovery and expert discovery.  Second, Deloitte submits that Sagitec has not yet produced substantial discovery related to the limitations issue, including responses to interrogatories and documentary materials.  Those disputes would seem likely to spill over into the period that Sagitec has proposed for depositions and briefing on the limitations issue.  Finally, Deloitte asserts that the limitations issues are likely to differ among different causes of action and different alleged claims, such that it is unlikely that the case would be significantly narrowed prior to the close of discovery.  And Sagitec does not suggest that its statute of limitations arguments, even if accepted in whole, are likely to dispose of all Deloitte's claims in this action.  The interests of judicial economy are therefore unlikely to be served by interrupting the ongoing discovery process and creating a new schedule for discovery and briefing restricted to the limitations issue as it applies to the certain claims in this case.

The motion to file an early motion partial summary judgment on the issue of the statute of limitations is therefore denied.

\* \* \* \* \*

The parties have filed each of their letters in this case under seal, and Deloitte has marked its letter with the highest level of confidentiality permitted under the court's protective order—

"Highly Confidential—Attorneys' Eyes Only."  Out of an abundance of caution, I have filed this order under seal.  Within three days, the parties are directed to advise the court by jointly submitted letter if there are any portions of this order that should remain under seal and, if so, to explain why. An unsealed version of this order will be docketed after counsel's letter is received.

IT IS SO ORDERED

SIGNED this 9th day of April, 2024

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE