**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DELOITTE CONSULTING LLP and DELOITTE DEVELOPMENT LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.  23-325-WCB |
| SAGITEC SOLUTIONS LLC, | ) ) ) |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR'S MOTION
FOR A PROTECTIVE ORDER**

1

## TABLE OF CONTENTS

**Page**

**STATEMENT OF FACTS**...........................................................................................4

**ARGUMENT**..............................................................................................................7

I.    **The Email is Protected Work Product, and No Waiver of the Protection is Present.**.......................................................................7

    A.    **The Email is Squarely Protected by the Work-Product Doctrine.**...........................................................................7

    B.    **There Has Been No Waiver of the Work-Product Doctrine.**...............................................................................9

II.    **The Email is Protected by the Attorney-Client Privilege, and that Privilege Has Not Been Waived.**...........................................11

    A.    **The Email is Attorney-Client Privileged.**.......................................11

    B.    **There Has Been No Waiver of the Attorney-Client Privilege.**...........................................................................12

        1.    **Mr. Sambasivam Had an Expectation of Privacy in the Email with Regard to Deloitte, an Outsider.**..................................................12

        2.    **Mr. Sambasivam Also Had an Expectation of Privacy Vis-à-Vis Sagitec.**...................................14

            (a)    **Sagitec Policy Did Not Ban Personal Use of Work Computers.**...............................14

            (b)    **Mr. Sambasivam Was Not Aware of Sagitec Actually Monitoring Employee Emails When He Sent the Email.**...........................15

            (c)    **The Mere Presence of the Broad and Ambiguous Employee Handbook Policy Does Not Support Waiver.**.......................16

            (d)    **Sagitec Did Not Make Clear to Mr. Sambasivam that Attorney-Client Privileged Emails Could be Accessed Pursuant to the Employee Handbook Policy.**...........................................17

III.    **Because the Email is Protected by the Work-Product Doctrine**

and Attorney-Client Privilege, This Court Should Enter a
Protective Order. ..........................................................................................**20**

**CONCLUSION** ..........................................................................................**20**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Tech. Assocs. v. Herley Indus.*,
    Civil Action No. 96-0132, 1996 U.S. Dist. LEXIS 17931 (E.D. Pa. Dec. 5,
    1996) ....................................................................................................................7

*Ala. Aircraft Indus. v. Boeing Co.*,
    Civil Action No. 2:11-cv-03577-RDP, 2016 U.S. Dist. LEXIS 181847 (N.D.
    Ala. Dec. 2, 2016) ..............................................................................................12

*Alamar Ranch, LLC v. County of Boise*,
    Case No. CV-09-004-S-BLW, 2009 U.S. Dist. LEXIS 101866 (D. Idaho Nov.
    2, 2009) ..............................................................................................................16

*Am. Career Coll., Inc. v. Medina*,
    2:21-cv-00698-PSG (SK), 2022 U.S. Dist. LEXIS 235294 (C.D. Cal. Dec. 9,
    2022) ..................................................................................................................12

*In re Asia Global Crossing, Ltd.*,
    322 B.R. 247 (Bankr. S.D.N.Y. 2005) ..........................................................11, 14

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*,
    924 F.3d 662 (3d Cir. 2019)...............................................................................17

*Brigham & Women's Hosp., Inc. v. Teva Pharms. USA, Inc.*,
    707 F. Supp. 2d 463 (D. Del. 2010)....................................................................9

*In re Cendant Corp. Sec. Litig.*,
    343 F.3d 658 (3d Cir. 2003)........................................................................4, 5, 6

*In re Chevron Corp.*,
    633 F.3d 153 (3d Cir. 2011)................................................................................6

*Fidelity & Deposit Co. v. McCulloch*,
    168 F.R.D. 516 (E.D. Pa. 1996)........................................................................17

*In re Grand Jury (Impounded)*,
    138 F.3d 978 (3d Cir. 1998)................................................................................6

*In re High-Tech Emp. Antitrust Litig.*,
    Case No.: 11-CV-2509-LHK-PSG, 2013 U.S. Dist. LEXIS 28623 (N.D. Cal.
    Feb. 28, 2013) ...............................................................................................12, 16

1

*In re Info. Mgmt. Servs., Inc. Derivative Litig.*,
    81 A.3d 278 (Del. Ch. 2013)..............................................................9, 10

*Jordan v. Temple Univ. Health Sys.*,
    Civil Action No. 16-5561, 2017 U.S. Dist. LEXIS 232717 (E.D. Pa. Aug. 9,
    2017) ..............................................................................................11, 12

*Katz v. AT&T Corp.*,
    191 F.R.D. 433 (E.D. Pa. 2000)..........................................................8, 10

*Kaufman v. SunGard Invest. Sys.*,
    Civil Action No.: 05-cv-1236 (JLL), 2006 U.S. Dist. LEXIS 28149 (D.N.J.
    May 6, 2006) .........................................................................................16

*Kevlik v. Goldstein*,
    724 F.2d 844 (1st Cir. 1984) ...................................................................15

*Kreuze v. VCA Animal Hosps., Inc.*,
    Civil Action No.: PJM-17-1169, 2018 U.S. Dist. LEXIS 66667 (D. Md. Apr.
    20, 2018) ..........................................................................................12, 13

*Martin v. Bally's Park Place Hotel & Casino*,
    983 F.2d 1252 (3d Cir. 1993) ...................................................................5

*Martin v. Monfort, Inc.*,
    150 F.R.D. 172 (D. Colo. 1993) ...............................................................5

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
    229 F.R.D. 441 (S.D.N.Y. 2004) ...................................................5, 6, 7, 8

*O'Blenis v. Nat'l Elevator Indus. Pension Plan*,
    Civil Action No. 2:13-cv-05842 (SRC)(CLW), 2015 U.S. Dist. LEXIS 80860
    (D.N.J. June 18, 2015) ...........................................................................17

*Pearson v. Miller*,
    211 F.3d 57 (3d Cir. 2000)....................................................................8, 17

*Sprenger v. Rector & Bd. of Visitors of Va. Tech*,
    Civil Action No. 7:07cv502, 2008 U.S. Dist. LEXIS 47115 (W.D. Va. June
    17, 2008) ..........................................................................................12, 13

*In re Teleglobe Commc'ns Corp.*,
    493 F.3d 345 (3d Cir. 2007).....................................................................8, 9

*United Coal Cos. v. Powell Constr. Co.*,
    839 F.2d 958 (3d Cir. 1988).......................................................................5

2

*United States v. Finazzo,*
10-CR-457 (RRM)(RML), 2013 U.S. Dist. LEXIS 22479 (E.D.N.Y. Feb. 19, 2023) ..................................................................................................................14

*United States v. Hudson,*
2013 U.S. Dist. LEXIS 126655 (D. Kan. Sept. 5, 2013) .......................................12

*United States v. Liebman,*
742 F.2d 807 (3d Cir. 1984)...........................................................................9, 10, 11

*United States v. Minkkinen,*
Criminal Action No. 2:22-cr-00163, 2023 U.S. Dist. LEXIS 109682 (S.D.W. Va. June 26, 2023) ................................................................................................1, 2, 3

*United States v. Minkkinen,*
Criminal Action No. 2:22-cr-00163, 2023 U.S. Dist. LEXIS 89009 (S.D.W. Va. May 22, 2023) ..........................................................................................................2, 8

*United States v. Minkkinen,*
No. 23-4443 (4th Cir.) ...............................................................................................3

*United States v. Nagle,*
U.S. Dist. LEXIS 104711, at *11-12 (M.D. Pa. Sept. 30, 2010). ..........................11

*United States v. Nobles,*
422 U.S. 225 (1975)................................................................................................4, 6

*United States v. Rockwell Int'l,*
897 F.2d 1255 (3d Cir. 1990)..................................................................................5, 9

*United States v. Schwimmer,*
892 F.2d 237 (2d Cir. 1989)......................................................................................15

*Westinghouse Elec. Corp. v. Republic of Phil.,*
951 F.2d 1414 (3d Cir. 1991)......................................................................................6

**Other Authorities**

Fed. R. Civ. P. 26(b)(3)..................................................................................................4

Fed. R. Civ. P. 26(c) ..................................................................................................1, 17

Fed. R. Civ. P. 26(b)(1)................................................................................................17

Pursuant to Fed. R. Civ. P. 26(c), Intervenor Sivaraman Simbasivam ("Mr. Simbasavam") respectfully moves this Court for a protective order compelling Plaintiff Deloitte Consulting LLP and Deloitte Development LLC (collectively, "Deloitte") to return a privileged communication between Mr. Simbasivam and his attorney that was inadvertently produced during discovery by Defendant Sagitec Solutions LLC ("Sagitec").[1]  In support thereof, Intervenor states as follows:

## STATEMENT OF FACTS

This case arises out of Deloitte's allegations that its former employees, including Mr. Sambasivam, misappropriated its trade secrets while employed for Sagitec.  *See* ECF No. 1 at ¶¶ 39, 43, 45.  Although the factual intricacies of this case are complex, the relevant facts for purposes of this Motion are limited.

Since at least 2016, Deloitte has enlisted the assistance of the federal government in investigating and prosecuting Ms. Sambasivam's alleged trade secret misappropriation.  *See United States v. Minkkinen*, Criminal Action No. 2:22-cr-00163, 2023 U.S. Dist. LEXIS 109682, at *12 (S.D.W. Va. June 26, 2023).  In December 2019, the U.S. Department of Justice informed Sagitec that it was the target of a criminal investigation related to the alleged misappropriation of Deloitte's trade secrets.  *See id.*  In February 2020, counsel for Sagitec met with counsel for the United States and agreed to conduct an internal investigation into the allegations. *See id* at *12–13.  In October 2020, Sagitec provided a report of its internal investigation to the United States.

---

[1] Pursuant to Fed. R. Civ. P. 26(c), Intervenor certifies that the parties conferred in good faith to resolve this dispute without court action.  As further described below, Sagitec issued a clawback notice for the communication in question, which Deloitte refused.  After being informed of this impasse, counsel for Mr. Sambasivam emailed counsel for Deloitte on April 22, 2024, raising the privileged nature of the communication, explaining that Mr. Sambasivam would move the court for a protective order, and stating that he was available to discuss this issue.  *See* Declaration of RJ Zayed ("Zayed Decl.") at ¶ 3.  On April 23, 2024, Deloitte's counsel confirmed receipt of the email and agreed to sequester the communication pending resolution by the Court.  *Id.*

*See id.* at \*13.  The internal investigation concluded that the materials at issue did not constitute trade secrets and that no trade secrets were stolen from Deloitte.  *See United States v. Minkkinen*, Criminal Action No. 2:22-cr-00163, 2023 U.S. Dist. LEXIS 89009, at \*6 (S.D.W. Va. May 22, 2023).

Government investigators later requested to interview Mr. Sambasivam on March 12, 2021.  *See* Declaration of Sivaraman Sambasivam ("Sambasivam Decl.") at ¶ 2.  In response, Mr. Sambasivam contacted Sagitec's CEO, who  advised Mr. Sambasivam to contact Sagitec's outside counsel handling the internal investigation and communications with the government.  *See id.*  On or around March 8, 2021, Mr. Sambasivam met with Tim Keller, a Sagitec attorney, to discuss the government's request for the interview.  *See id.*  On March 11, 2021—a day before he was interviewed by investigators—Mr. Sambasivam met with two of Sagitec's outside counsel, who advised him on how to proceed during the interview.  *See id.*  Government investigators then interviewed Mr. Sambasivam on March 12, 2021.  *See* Sambasivam Decl. at ¶ 3.

On March 17, 2021, Mr. Sambasivam received a "target letter" from the United States, informing him that he was the target of a criminal investigation related to the alleged misappropriation of Deloitte's trade secrets.  *See* Sambasivam Decl. at ¶ 4.  Approximately one week after receiving this target letter, Mr. Sambasivam hired attorney Robert McCoid to represent him in connection with the federal investigation.  *See* Sambasivam Decl. at ¶ 5; Declaration of Robert McCoid ("McCoid Decl.") at ¶ 1.

Mr. McCoid was scheduled to meet with the federal prosecutors leading the investigation in April 2021, to discuss the pending investigation against Mr. Sambasivam.  *See* Sambasivam Decl. at ¶ 6; McCoid Decl. at ¶ 2.  In preparation for the meeting with the prosecutors, on April 9, 2021, Mr. Sambasivam met with Mr. McCoid to discuss his case.  *See id.*

Mr. McCoid asked Mr. Sambasivam to provide information that would assist Mr. McCoid in the preparation and presentation of Mr. Sambasivam's case. *See id.* Therefore, on April 12, 2021, Mr. Sambasivam sent an email with an attached document to Mr. McCoid (the "Email") that started at the top of the Email with the heading "Attorney-Client Privileged" and immediately below and attached providing the requested information for the purpose of receiving legal advice and counsel from Mr. McCoid. *See* Sambasivam Decl. at ¶ 7; McCoid Decl. at ¶ 2.[2]

Ultimately, federal prosecutors brought criminal charges against Mr. Sambasivam and another former Deloitte employee, David Minkkinen, on August 23, 2022, in connection with the alleged misappropriation of Deloitte's trade secrets. *See Minkkinen*, 2023 U.S. Dist. LEXIS 109682, at *2. The district court dismissed all charges against Mr. Sambasivam on June 26, 2023, due to the United States's prejudicial and unjustified pre-indictment delay.[3] *Id.* at *40.

On March 23, 2023, Deloitte initiated this civil action against Sagitec, premised on the same allegations that former employees of Deloitte—including Mr. Sambasivam— misappropriated Deloitte's trade secrets while working for Sagitec. *See generally* ECF No. 1.

During the course of discovery in this case, Sagitec inadvertently produced the Email and its attached document to Deloitte. *See* Exhibit A, March 11, 2024 Letter to Deloitte Counsel. Recognizing that the Email and its attachment were privileged and protected work product, Sagitec sought to claw back the Email on March 11, 2024, pursuant to Section 16(f) of the parties' Protective Order on the basis that "Sagitec inadvertently produced these documents, which are

---

[2]     Intervenor will provide a copy of the Email and the attachment for this Court's ex parte, in camera review.

[3]     The United States has appealed the district court's dismissal of charges to the Fourth Circuit, where the appeal is pending. *See United States v. Minkkinen*, No. 23-4443 (4th Cir.).

subject to attorney-client privilege, work-product privilege, and/or common interest privilege." *Id.* On March 29, 2024, counsel for Deloitte refused Sagitec's clawback request as to the Email. *See* Exhibit B, March 29, 2024 Letter to Sagitec Counsel at 4–5. Deloitte claimed that Mr. Sambasivam waived any privilege or protection when he sent the Email to his attorney using Sagitec's business email system. *Id.*

On April 16, 2024, counsel for Sagitec informed Mr. Sambasivam's counsel of Deloitte's challenge to Sagitec's clawback request for the Email. *See* Declaration of RJ Zayed ("Zayed Decl.") at ¶ 2. Sagitec's counsel indicated that Sagitec would be withdrawing its clawback request for the Email, and that continued assertion of privilege would be left to Mr. Sambasivam. *Id.* To protect his rights, Mr. Sambasivam filed the instant Motion.

## ARGUMENT

This Court should grant Mr. Sambasivam's Motion because the Email and its attachment are protected from disclosure by the work-product doctrine and the attorney-client privilege.

**I.    The Email is Protected Work Product, and No Waiver of the Protection is Present.**

**A.    The Email is Squarely Protected by the Work-Product Doctrine.**

The work-product doctrine protects all documents "prepared by or for the attorney of the party from whom discovery is sought . . . so long as they were prepared in anticipation of litigation or preparation for trial." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003) (citation omitted); *see also* Fed. R. Civ. P. 26(b)(3). The doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). Here, the Email and its attachment fall squarely within the heartland of the work-product doctrine.

*First,* Mr. Sambasivam prepared the Email "in anticipation of litigation." *In re Cendant*, 343 F.3d at 662. "Litigation need not be imminent . . . as long as the primary motivating purpose

7

behind the creation of the document was to aid in possible future litigation." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990) (citation omitted). "Investigation by a federal agency presents more than a remote prospect of future litigation, and provides reasonable grounds for anticipating litigation sufficient to trigger application of the work product doctrine." *Martin v. Monfort, Inc.*, 150 F.R.D. 172, 173 (D. Colo. 1993); *see also Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1261 (3d Cir. 1993) (federal agency inquiry was sufficient to anticipate litigation so that work-product doctrine applied).

Here, Mr. Sambasivam was notified that he was the target of a federal investigation on March 12, 2021. Sambasivam Decl. at ¶ 4. Mr. Sambasivam then hired Mr. McCoid to represent him in connection with the federal investigation, and he drafted the April 12, 2021 Email and its attachment in response to Mr. McCoid's request so that Mr. McCoid could prepare and present Mr. Sambasivam's case. Sambasivam Decl. at ¶ 5; McCoid Decl. at ¶¶ 1–2. Given that a federal investigation was underway against Mr. Sambasivam at the time he drafted the Email, the Email was unquestionably created "to aid in possible future litigation." *Rockwell Int'l*, 897 F.2d at 1266; *see also Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445 (S.D.N.Y. 2004) (applying work-product protection to documents when they were created after the party was informed that it was the subject of a criminal investigation); *Martin*, 983 F.2d at 1261.

*Second*, the Email and its attachment were "prepared by or for" Mr. Sambasivam's attorney. Protected work product may include materials that are drafted or prepared by a non-attorney. *See United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Indeed, protected work product includes documents prepared by a non-attorney "act[ing] at the attorney's direction in creating such documents." *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998).

Here, Mr. Sambasivam drafted the Email and its attachment at Mr. McCoid's request, so that Mr. McCoid could prepare and present Mr. Sambasivam's case. Sambasivam Decl. at ¶ 7 McCoid Decl. at ¶ 2. Because Mr. Sambasivam was "act[ing] at [his] attorney's direction" in preparing the Email, it is protected by the work-product doctrine. *In re Grand Jury (Impounded)*, 138 F.3d at 981 (affirming determination that documents created by a suspect at the direction of his attorney were work product).

*Third*, the content of the Email is core opinion work-product material. Opinion work product "encompasses the mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation" and is "generally afforded near absolute protection from discovery." *In re Cendant*, 343 F.3d at 663. Here, Mr. Sambasivam drafted the Email and its attachment for the explicit purpose of assisting his attorney "analyze and prepare his client's case." *Nobles*, 422 U.S. at 238. The Email therefore constitutes core, opinion work product. *In re Cendant*, 343 F.3d at 667.

## B.   There Has Been No Waiver of the Work-Product Doctrine.

Because the work-product doctrine serves to protect materials from "falling into the hands of an adversary, disclosure to a third party does not necessarily waive the protection of the work-product doctrine." *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1428 (3d Cir. 1991). Rather, "it is only in cases in which the material is disclosed in a manner inconsistent with keeping it from an *adversary* that the work-product doctrine is waived." *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011) (emphasis added). Accordingly, "where the disclosing party and the third party share a common interest, there is no waiver of the work product privilege." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 446 (S.D.N.Y. 2004).

Deloitte has argued that Mr. Sambasivam waived any privilege or protection over the Email

because Mr. Sambasivam sent the Email over Sagitec's business email system.  *See* Ex. B at 4-5.

Deloitte argues that because Sagitec policy allowed the company to monitor its employees'

business email accounts, Mr. Sambasivam effectively disclosed the Email to Sagitec and waived

any privilege or protection over the email.  *Id.*

Even if Mr. Sambasivam somehow "disclosed" the Email to Sagitec (which, as described

*infra* Part II.B.2, he did not), Mr. Sambasivam did not waive work-product protection over the

Email because he never disclosed it to an adversary.  By the time Mr. Sambasivam sent the Email,

Sagitec's internal investigation was over and it concluded that the materials at issue did not

constitute trade secrets and that no trade secrets were stolen from Deloitte.

When Mr. Sambasivam sent the Email to Mr. McCoid on April 12, 2021, Mr.

Sambasivam had no reason to believe that Sagitec was his adversary.  In fact, when government

investigators approached Mr. Sambasivam for an interview only a month earlier, Sagitec's CEO

advised Mr. Sambasivam to meet with Sagitec's attorneys handling the internal investigation and

communications with the government, three of whom met with Mr. Sambasivam to prepare him

for his interview.  *See* Sambasivam Decl. at ¶ 2.  Given that Sagitec affirmatively assisted Mr.

Sambasivam in the face of his pending federal investigation, Sagitec acted as Mr. Sambasivam's

"ally," not his adversary.  *Advanced Tech. Assocs. v. Herley Indus.*, Civil Action No. 96-0132,

1996 U.S. Dist. LEXIS 17931, at *27-28 (E.D. Pa. Dec. 5, 1996) (holding that two parties were

not "adversaries" to waive work-product protection when one of the parties was offering assistance

to the other).

Just as Mr. Sambasivam had no reason to believe he was adverse to Sagitec, Sagitec had

no reason to believe that it was adverse to Mr. Sambasivam.  Indeed, Sagitec's own internal

investigation, provided to the United States in October 2020, concluded that there was no trade

secret infringement by former Deloitte employees like Mr. Sambasivam. *See Minkkinen*, 2023 U.S. Dist. LEXIS 89009, at *6. Because Sagitec had concluded that Mr. Sambasivam had not committed wrongdoing, there is no basis on which to argue that Sagitec was Mr. Sambasivam's adversary on April 12, 2021.

Indeed, Sagitec and Mr. Sambasivam unquestionably shared a common legal interest: defending against Deloitte's and the government's claims of trade secret misappropriation. Because Sagitec and Mr. Sambasivam have common adversaries (Deloitte and the United States) and shared a common legal interest—both today and on April 12, 2021—Mr. Sambasivam never disclosed the Email to an adversary, and the Email and its attachment accordingly remain protected opinion work product. *See Merrill Lynch & Co.*, 229 F.R.D. at 446; *Katz v. AT&T Corp.*, 191 F.R.D. 433, 437 (E.D. Pa. 2000) (explaining that "parties with shared interest in actual or potential litigation against a common adversary may share privileged information without waiving their right to assert the privilege").

## II. The Email is Protected by the Attorney-Client Privilege, and that Privilege Has Not Been Waived.

### A. The Email is Attorney-Client Privileged.

The attorney-client privilege attaches to "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007).[4] Here, there is effectively no dispute between the parties on the first, second, and fourth elements of attorney-client privilege. Nor could there be: the Email was a communication, it was made between Mr.

---

[4] Because this case raises federal law claims and is premised on federal-question jurisdiction, *see* ECF No. 1 at ¶ 13, federal privilege law applies. *See Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000).

Sambasivam and his attorney (a privileged person), and it was made for the purpose of obtaining legal advice (specifically, to assist Mr. Sambasivam's attorney with the preparation of his case). However, Deloitte argues that the Email was not made in confidence because Mr. Sambasivam sent the Email using Sagitec's business email system.  *See* Ex. B at 4–5.  This—says Deloitte— waives the attorney-client privilege as to the Email.  *Id.*  Not so.

**B.    There Has Been No Waiver of the Attorney-Client Privilege.**

A party may waive the attorney-client privilege as to communications that "are intended to be disclosed to third parties or that in fact are so disclosed."  *Rockwell Int'l*, 897 F.2d at 1265.  In determining whether a communication is made in confidence, courts look to whether the communication was made with the "expectation of privacy."  *United States v. Liebman*, 742 F.2d 807, 810 (3d Cir. 1984).  "The party seeking to obtain privileged information has the burden of proving that a waiver has occurred."  *Brigham & Women's Hosp., Inc. v. Teva Pharms. USA, Inc.*, 707 F. Supp. 2d 463, 469 (D. Del. 2010).

**1.    Mr. Sambasivam Had an Expectation of Privacy in the Email with Regard to Deloitte, an Outsider.**

Deloitte cannot obtain the Email and its attachment on the basis that Mr. Sambasivam used his Sagitec email to communicate with his attorney.  As the Delaware Chancery Court has explained, "the premise that an employer's access to an employee's work email compromises the attorney-client privilege makes the most sense in litigation between the employer or its successor-in-interest and the employee."  *In re Info. Mgmt. Servs., Inc. Derivative Litig.*, 81 A.3d 278, 296 (Del. Ch. 2013).  In *In re Info. Mgmt. Servs.*, the Court recognized that corporate outsiders "cannot routinely access work email accounts, and laws like the Federal Wiretap Act and the Federal Stored Communications Act have teeth when they try."  *Id.*  The Court therefore concluded that the "corporation and its employees should be on different and stronger ground when those outside the

corporation seek to compel production of otherwise privileged documents that employees have sent using work email." *Id.*

That logic applies readily to the Email. Mr. Sambasivam's use of his work email address to send the Email to his attorney was entirely consistent with an "expectation of privacy" as to corporate outsiders like Deloitte. *Liebman*, 742 F.2d at 810. Mr. Sambasivam had no reason to believe that Deloitte would have access to his work email account on April 12, 2021. And for good reason: as described above, on April 12, 2021, Mr. Sambasivam and Sagitec had a common adversary in Deloitte, who alleged trade secret infringement by Sagitec and its employees and who was instrumental in convincing the government to pursue the same claims through a federal investigation and eventual indictment. *See, e.g.*, ECF No. 1 at ¶ 35.

Simply put, Mr. Sambasivam had an expectation of privacy in the Email vis-à-vis Deloitte because, as an outsider to Sagitec, Deloitte had no ability to access the emails of Sagitec employees. *See In re Info. Mgmt. Servs.*, 81 A.3d at 296. Mr. Sambasivam could not have possibly contemplated that a privileged communication like the Email would fall into the hands of his and Sagitec's adversary.

This conclusion is bolstered by the fact that on April 12, 2021, Sagitec and Mr. Sambasivam had a common adversary (Deloitte) and shared a common legal interest: defending against Deloitte's claims of trade secret infringement. Therefore, to the extent that Mr. Sambasivam "disclosed" the Email to Sagitec, this disclosure would not effect a waiver of the attorney-client privilege because "parties with shared interest in actual or potential litigation against a common adversary may share privileged information without waiving their right to assert the privilege." *Katz*, 191 F.R.D. at 437. Therefore, Mr. Sambasivam has not waived attorney-client privilege over the Email and its attachment with respect to Deloitte, a corporate outsider and

common adversary with Sagitec.

### 2. Mr. Sambasivam Also Had an Expectation of Privacy Vis-à-Vis Sagitec.

If this Court concludes that Mr. Sambasivam's use of his work email to send the Email somehow "disclosed" the Email to Sagitec, and that disclosure affects the attorney-client privilege with regard to Deloitte, then this Court engages in the same inquiry: whether Mr. Sambasivam had an "expectation of privacy" when he sent the Email. *Liebman*, 742 F.2d at 810. Courts in this Circuit have applied a four-factor test announced in *In re Asia Global Crossing, Ltd.*, 322 B.R. 247 (Bankr. S.D.N.Y. 2005), to determine whether an employee has waived the attorney-client privilege of personal communications transmitted on a company computer. *See Jordan v. Temple Univ. Health Sys.*, Civil Action No. 16-5561, 2017 U.S. Dist. LEXIS 232717, at *1 n.1 (E.D. Pa. Aug. 9, 2017); *United States v. Nagle*, Criminal No. 1:09-CR-384, 2010 U.S. Dist. LEXIS 104711, at *11-12 (M.D. Pa. Sept. 30, 2010). Those four factors are:

> (1) [D]oes the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?"

*Asia Global*, 322 B.R. at 257. Each of the factors weighs in Mr. Sambasivam's favor.

### (a) Sagitec Policy Did Not Ban Personal Use of Work Computers.

Sagitec's email and computer use policy reads as follows:

> All emails, phone messages, transmitted or received on Sagitec provided equipment are considered company property. For business purposes, management reserves the right to enter, search and/or monitor the company provided e-mail / phone system and the files/transmission of any employee without advance notice and consistent with applicable state and federal laws.

Exhibit C, Sagitec Employee Handbook at 24. Nowhere does this policy "outright ban"

14

the personal use of Sagitec computers, so this factor weighs in Mr. Sambasivam's favor.[5]  *See*

*Jordan*, 2017 U.S. Dist. LEXIS 232717, at *1 n.1 (holding that this factor weighed against waiver

when company policy "discourage[d]" employees from sending personal emails, but did not

"outright ban" the personal use of work email); *In re High-Tech Emp. Antitrust Litig.*, Case No.:

11-CV-2509-LHK-PSG, 2013 U.S. Dist. LEXIS 28623, at *22 (N.D. Cal. Feb. 28, 2013) (holding

that this factor weighed against waiver when company policy did not contain an "all-out ban" on

personal use).

> **(b)    Mr. Sambasivam Was Not Aware of Sagitec Actually
> Monitoring Employee Emails When He Sent the Email.**

Under the second *Asia Global* factor, courts have held that parties seeking to pierce

privilege must demonstrate "evidence of actual monitoring" by the company. *Kreuze v. VCA

Animal Hosps., Inc.*, Civil Action No.: PJM-17-1169, 2018 U.S. Dist. LEXIS 66667, at *5 (D. Md.

Apr. 20, 2018); *Ala. Aircraft Indus. v. Boeing Co.*, Civil Action No. 2:11-cv-03577-RDP, 2016

U.S. Dist. LEXIS 181847, at *25–26 (N.D. Ala. Dec. 2, 2016); *United States v. Hudson*, 2013 U.S.

Dist. LEXIS 126655, at *32–33 (D. Kan. Sept. 5, 2013); *Sprenger v. Rector & Bd. of Visitors of

Va. Tech*, Civil Action No. 7:07cv502, 2008 U.S. Dist. LEXIS 47115, at *13 (W.D. Va. June 17,

2008).

Deloitte points to Sagitec's employee handbook policy, but does not argue that Sagitec

actually monitored Mr. Sambasivam's email.  *See* Ex. B at 4.  Although Mr. Sambasivam was

aware that Sagitec monitored his email in relation to the company's internal investigation,

---

[5] This fact distinguishes this case from *Am. Career Coll., Inc. v. Medina*, 2:21-cv-00698-PSG (SK),
2022 U.S. Dist. LEXIS 235294, at *4 (C.D. Cal. Dec. 9, 2022), cited by Deloitte in its letter to
Sagitec's counsel.  *See* Ex. A at 4.  In *Medina*, the company policy clearly prohibited the use of
work computers for "private or personal use."  2022 U.S. Dist. LEXIS 235294, at *4

critically, Mr. Sambasivam was not aware that the company was monitoring emails marked "Attorney-Client Privileged."  *See* Sambasivam Decl. at ¶ 10.  This is important because, as described below, *see* Part II.B.2.(d), Sagitec's attorney affirmatively told Mr. Sambasivam as early as 2015 that emails marked "Attorney-Client Privileged" would be confidential.  Because Mr. Sambasivam was not aware of Sagitec's actual monitoring of emails marked "Attorney-Client Privileged" (as the Email was), this factor weighs in favor of Mr. Sambasivam's reasonable expectation of privacy.

### (c)     The Mere Presence of the Broad and Ambiguous Employee Handbook Policy Does Not Support Waiver.

Under the third *Asia Global* factor, courts have held that the "mere presence of a policy does not impart upon the employee the presence of third party access."  *Kreuze*, 2018 U.S. Dist. LEXIS 66667, at *6 (citing *Sprenger*, 2008 U.S. Dist. LEXIS 47115, at *13.  In this case, Deloitte solely points to the "mere presence" of Sagitec's policy, which is not sufficient to warrant this factor weighing in favor of waiver.

Moreover, if the scope of the employer's access is unclear, courts are less likely to hold that the employer had a right of access to the employee's emails.  For example, in *Sprenger*, the employer's policy was nearly a mirror image of Sagitec's: it stated that "no user should have any expectation of privacy in any message, file, image, or data created, sent, retrieved, or received by use of the Commonwealth's equipment and/or access" and that state agencies have the right to monitor e-mail sent or received by agency users "at any time, without notice, and without the user's permission."  2008 U.S. Dist. LEXIS 47115, at *3–4.  In applying the third *Asia Global* factor, the Court held that it was "unclear whether third parties had a right of access to the e-mails" to the emails at issue.  *Id.* at *13.

Similarly here, Sagitec's policy purports to reserve access to "company provided e-mail /

phone system and the files/transmission of any employee", Ex. C at 24, but it is unclear to which "files/transmission[s]" Sagitec purports to reserve access. Sagitec's extraordinarily broad and ambiguous policy fails to clearly define the scope of Sagitec's access and accordingly does not support a finding of waiver here.

Finally, *Asia Global* contemplates that the third factor will also take into account steps the employee may have taken to protect communications to which the employer otherwise had electronic access. *See Asia Global*, 322 B.R. at 257 & n.7 (stating, in reference to the third factor, "[a]n employee may take precautions to limit access; offices can be locked, computers can be password-protected, and e-mails can be encrypted"). Here, Mr. Sambasivam's work computer was password-protected, and he maintained a private office at Sagitec. *See* Sambasivam Decl. at ¶ 9. Mr. Sambasivam's conduct to limit access to his emails further cements the conclusion that waiver is inappropriate here. *See Asia Global*, 322 B.R. at 257 & n.7; *United States v. Finazzo*, 10-CR-457 (RRM)(RML), 2013 U.S. Dist. LEXIS 22479, at *29 (E.D.N.Y. Feb. 19, 2023) (describing password protection and a private office as precautions relevant to the third *Asia Global* factor).

Because the mere presence of the employee handbook policy does not impart the presence of third party access, and because the employee handbook policy is unclear as to the scope of Sagitec's access, this factor weighs in Mr. Sambasivam's favor. Mr. Sambasivam's efforts to maintain the confidentiality of his emails further bolsters this conclusion.

> **(d)** **Sagitec Did Not Make Clear to Mr. Sambasivam that Attorney-Client Privileged Emails Could be Accessed Pursuant to the Employee Handbook Policy.**

Deloitte asserts that Mr. Sambasivam was aware of the employee handbook policy and signed an acknowledgment of the terms of the handbook. *See* Ex. B at 4. But that assertion is beyond the point because regardless of Mr. Sambasivam's acknowledgment of the employee

handbook policy, representations made to Mr. Sambasivam by Sagitec's counsel led him to reasonably believe that the Email would not be monitored or disclosed.

As early as 2015, and throughout Mr. Sambasivam's tenure at Sagitec, Sagitec's counsel told Mr. Sambasivam that if he marked emails as "Attorney-Client Privileged," they would be considered confidential. *See* Sambasivam Decl. at ¶ 8. Importantly, Sagitec's attorneys did not tell Mr. Sambasivam that the confidentiality of emails marked "Attorney-Client Privileged" might not extend to conversations with his own attorney pertaining to matters relevant to the investigation. *See id.* Mr. Sambasivam therefore reasonably believed that if he marked an email "Attorney-Client Privileged," it would be confidential between his attorney and him. *See id.* Consequently, Mr. Sambasivam marked the Email as "Attorney-Client Privileged," in accordance with his reasonable expectation that the Email would remain confidential between him and Mr. McCoid. *See id.*

Therefore, whether Mr. Sambasivam acknowledged the terms of the employee handbook is immaterial. The "key question in determining the existence of a privileged communication is 'whether the client reasonably understood the conference to be confidential.'" *Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir. 1984) (quoting McCormick on Evidence, § 91 at 189). Here, based on Sagitec's representations to Mr. Sambasivam that emails marked "Attorney-Client Privileged" would remain confidential, Mr. Sambasivam "reasonably understood" that such emails would not be monitored by Sagitec, let alone Deloitte. *See id.*; *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989) (explaining that a claim of privilege requires "a showing that the communication in question was given in confidence and that the client reasonably understood it to

be so given").[6]

Because Sagitec informed Mr. Sambasivam that emails marked "Attorney-Client Privileged" would remain confidential, this factor weighs in Mr. Sambasivam's favor, notwithstanding the employee handbook policy.

*       *       *

The weight of the four *Asia Global* factors falls heavily against any finding of waiver of the attorney-client privilege, particularly given that the employee handbook policy did not ban personal use of Mr. Sambasivam's computer, Mr. Sambasivam took precautions to limit access to his emails, and Sagitec attorneys told Mr. Sambasivam that emails marked with "Attorney-Client Privilege"—like the Email—would remain confidential.  This Court should therefore hold that no waiver of the attorney-client privilege occurred, even if this Court is inclined to find the *Asia Global* factors evenly split.  *In re High-Tech Emp. Antitrust Litig.*, 2013 U.S. Dist. LEXIS 28623, at *21–25 (notwithstanding finding that a policy allowing employer monitoring reflected third-party access to the communications, and an even split of the four *Asia Global* factors, upholding privilege because of "the importance of the attorney-client privilege as well as the lack of evidence that [the employer] in fact monitored [the employee's] emails").

---

[6]  The fact that Mr. Sambasivam's employer told him that emails marked "Attorney-Client Privileged" distinguishes this case from the cases cited by Deloitte in its letter to Sagitec's counsel. *See Kaufman v. SunGard Invest. Sys.*, Civil Action No.: 05-cv-1236 (JLL), 2006 U.S. Dist. LEXIS 28149, at *11–12 (D.N.J. May 6, 2006) (no reasonable expectation of privacy in emails on company server when the employee knowingly acknowledged the company's policy); *Alamar Ranch, LLC v. County of Boise*, Case No. CV-09-004-S-BLW, 2009 U.S. Dist. LEXIS 101866, at *11 (D. Idaho Nov. 2, 2009) (no reasonable expectation of privacy in emails on company server when the employee was on ample notice that emails sent on the work server were not confidential).

**III.    Because the Email is Protected by the Work-Product Doctrine and Attorney-Client Privilege, This Court Should Enter a Protective Order.**

A motion for a protective order is governed by Federal Rule of Civil Procedure 26(c), which provides that "for good cause," the Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Good cause means "that disclosure will work a clearly defined and serious injury to the party seeking closure."  *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (citation omitted).  Courts in this Circuit have routinely held that a party may demonstrate good cause for the issuance of a protective order by establishing that the sought after discovery is privileged.  *See, e.g.*, *Fidelity & Deposit Co. v. McCulloch*, 168 F.R.D. 516, 522 (E.D. Pa. 1996); *O'Blenis v. Nat'l Elevator Indus. Pension Plan*, Civil Action No. 2:13-cv-05842 (SRC)(CLW), 2015 U.S. Dist. LEXIS 80860, at *12 (D.N.J. June 18, 2015); *see also Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) ("Any material covered by a properly asserted privilege would necessarily be protected from discovery, pursuant to Rule 26(b)(1).").

Here, Mr. Sambasivam has established that the Email and its attachment are protected by the attorney-client privilege and work-product doctrine.  Disclosure of the Email and its attachment to Deloitte would "work a clearly defined and serious injury" to Mr. Sambasivam because it would jeopardize his ability to assert those privileges with regard to his communications with Mr. McCoid.  *In re Avandia*, 924 F.3d at 671.  Consequently, after this Court concludes that the Email and its attachment are protected by the attorney-client privilege and work-product doctrine, it should conclude that good cause exists to enter a protective order requiring Deloitte to return the Email and its attachment to Sagitec.

## CONCLUSION

Mr. Sambasivam respectfully requests that this Court grant his Motion and require Deloitte

to return the Email and its attachment to Sagitec.

DATED THIS <u>6th</u> day of May, 2024.

DORSEY & WHITNEY LLP

/s/ Alessandra Glorioso

Alessandra Glorioso (#5757)
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801
Telephone:  (302) 425-7171

RJ Zayed (MN# 0309849) *PHV Pending*
Daniel Wassim (MN# 0403445) *PHV Pending*
50 South Sixth Street
Suite 1500
Minneapolis, MN  55101
(612) 340-2600
*Attorneys for Intervenor Sivaraman Sambasivam*