# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DELOITTE CONSULTING LLP and DELOITTE DEVELOPMENT LLC<br><br>Plaintiffs,<br><br>v.<br><br>SAGITEC SOLUTIONS LLC<br><br>Defendant. | **Redacted - Public Version**<br><br>C.A. No. 23-325-WCB<br><br> |

## RESPONSIVE LETTER TO THE HONORABLE WILLIAM C. BRYSON
## FROM ANDREW E. RUSSELL

OF COUNSEL:
Joshua L. Simmons
Stephany S. Kim
Dana DeVlieger
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Gregg F. LoCascio
Patrick Arnett
Nick Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
(202) 389-5000

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Dated: August 8, 2024

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

*Attorneys for Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC*

Dear Judge Bryson:

Deloitte requests that the Court deny Sagitec's motion to compel supplemental responses and documents. D.I. 171 ("Motion" or "Mot."). As discussed below, Interrogatory Nos. 22 and 23 and Requests for Production Nos. 118 and 119 seek the identification of "deliverables" authored by or created for Massachusetts or New Mexico, which are not at issue in this litigation. In any case, Deloitte already gave Sagitec responsive documents and answers, showing that no asserted trade secrets or elements of the uFACTS computer program are such "deliverables." Although Sagitec offers a lengthy discussion about its theory of contract interpretation, its motion does not identify the text in its discovery requests that require more than the responses Deloitte provided. Thus, Sagitec has received all of the information to which it is entitled.

As to Sagitec's request for additional cost and revenue data, Deloitte's existing productions are both responsive and adequate to the needs of this case because they contain the relevant data as maintained in Deloitte's ordinary course of business. Sagitec, however, refuses to acknowledge the ███████████████████████████████████████████████████████████████████ Although Deloitte has continued to cooperate to locate and produce additional documents, Sagitec's unwieldy request would require Deloitte to assemble information contrary to its practice. The Federal Rules do not require parties to do so. Thus, Deloitte requests that the Court deny Sagitec's Motion.

**Interrogatory Nos. 22 and 23.** Sagitec's Interrogatory No. 22 asks Deloitte to "[i]dentify and describe the extent to which, and which portions of, the deliverables or other works relating to the Massachusetts QUEST Project . . . resulted from or incorporated any: (1) works authored by Massachusetts personnel or any third-party; (2) works authored by Deloitte in connection with any prior project(s); and/or (3) works specifically authored for the Massachusetts QUEST Project." D.I. 171-1 Ex. 1 at 23–24. Sagitec's Interrogatory No. 23 is similar, but focused on the New Mexico UI project. *Id*. at 24–26. The interrogatories are overly broad, unduly burdensome, and disproportionate to the needs of the case because, as written, they go beyond the trade secrets and copyrights Deloitte has asserted in this litigation. *Id*. at 23–26. Nevertheless, Deloitte provided an answer: none of the uFACTS trade secrets or asserted portions of the uFACTS computer program were authored by or customized specifically for the states, and Deloitte "has not asserted in this litigation any trade secrets or copyrights for which Deloitte is not the author and/or owner." *Id*. Deloitte then incorporated by reference interrogatory responses identifying Deloitte's trade secrets and the corresponding documentation (Interrogatory No. 1) and explaining Deloitte's licensing contracts with Massachusetts and New Mexico (Interrogatory No. 6). *Id*. Sagitec simply does not like Deloitte's answer.

Tellingly, Sagitec does not (and has not) challenged Deloitte's objections to the overbroad nature of these interrogatories, apparently agreeing that it would be burdensome to identify such aspects of the uFACTS solution when Deloitte has asserted ownership over only those portions which were *not* custom and identified those portions to Sagitec. Given that those are the only portions at issue, it does not make sense to require Deloitte to delineate the others. Moreover, although Sagitec offers for the first time to "narrow[]" these requests "to only the derivation of the asserted intellectual property as laid out in Deloitte's responses to Interrogatory Nos. 1 and 13," Mot. 3 n.1, that is precisely the information contained in Deloitte's responses. None of the asserted uFACTS trade secrets or portions of the uFACTS computer program were customized

specifically for Massachusetts, and none of the asserted uFACTS trade secrets or portions of the uFACTS computer program for New Mexico were derived from deliverables customized for Massachusetts. D.I. 171-1 Ex. 1 at 23–26 (Deloitte "has not asserted in this litigation any trade secrets or copyrights for which Deloitte is not the author and/or owner."). As Deloitte answered Sagitec's interrogatories, there is no relief to be ordered.

Instead of squarely responding to Deloitte's objections or actual response, Sagitec puts forward a strawman argument about its interpretation of Deloitte's contract with Massachusetts.[1] But, as Sagitec acknowledges, the Court need not now rule on the correct interpretation of these contracts to resolve this dispute. *See* Mot. 1. That is because this dispute does not turn on contract interpretations, but on whether Deloitte has provided the information Sagitec seeks. Deloitte has. For example, Sagitec now calls on Deloitte to "delineate, factually, between the materials it came in with and the materials that were particularly requested by and made for Massachusetts." Mot. 2. Deloitte's response to Interrogatory No. 22 already provides that information, by explaining that Deloitte is not asserting ownership over any materials which were particularly made for Massachusetts, and is only asserting portions of the uFACTS solution for which it is the author and owner. For another example, Sagitec calls on Deloitte to "demonstrate which portions of the asserted New Mexico use cases derive from 'Commonwealth Property' versus 'Contractor Property' under the Massachusetts SOW." *Id*. Deloitte's response to Interrogatory No. 23 does so by explaining that none of the asserted use cases, trade secrets, or copyrights derive from Massachusetts. As Deloitte has even responded to Sagitec's new attempt to reword what its interrogatories originally sought, there again is nothing to order.

Finally, Sagitec exaggerates Deloitte's position, claiming that Deloitte "has unilaterally declared it is the sole owner of the entirety of the Massachusetts deliverables based on the SOW standing alone." Mot. 3. Deloitte has never taken that position. Rather, Deloitte has asserted that it owns ***the identified trade secrets and software asserted in this litigation*** and that those portions were not customized for or derived from Massachusetts or New Mexico. D.I. 171-1 Ex. 1 at 23–26. Deloitte has identified the portions of the uFACTS solution that are at issue in this case, as Sagitec acknowledges. Mot. 2–3; D.I. 171-1 Ex. 4 at 20–38; Ex. A (2nd Supp. Resps. to 3rd Interrogs.) at 12–315. If Sagitec *disagrees*, it is free to test those theories by reviewing Deloitte's extensive document productions, deposing Deloitte's witnesses, deposing third party witnesses from Massachusetts and New Mexico (both of which Sagitec has already done), and analyzing that material in expert discovery.

**Requests for Production Nos. 118 and 119.** Sagitec's Request for Production No. 118 asks Deloitte to produce "Documents and communications sufficient to show the extent to which, and which portions of, the deliverables or other works relating to the Massachusetts QUEST Project . . . resulted from or incorporated any (1) works authored by Massachusetts personnel or any third-

---

[1] Sagitec suggests that Massachusetts (and not Deloitte) owns not only nearly all of the uFACTS solution for Massachusetts, but also portions of the uFACTS solution implemented for other states, such as New Mexico. Mot. 2. That approach is inconsistent with the Massachusetts contract for the reasons explained in Deloitte's supplemental responses to Interrogatory No. 6, and ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ That makes no sense.

party; (2) works authored by Deloitte in connection with any prior project(s); and/or (3) works specifically authored for the Massachusetts QUEST Project." D.I. 171-1 Ex. 3 at 12. Subject to Deloitte's objections, Deloitte responded that it would not produce documents beyond those already produced, but that Deloitte would be willing to meet and confer to determine which additional documents Sagitec believed were relevant. *Id.* at 13. Request for Production No. 119 and Deloitte's response is parallel for the New Mexico project. *Id.* at 13–15.

Sagitec's document requests suffer from the same problems as the interrogatories discussed above. **First**, Deloitte already has produced thousands of documents and communications regarding the creation, design, planning, and implementation of both the Massachusetts and New Mexico projects. These include project plans, change logs, design documents detailing the relevant features, and more—all of which Sagitec can review to determine whether portions of the asserted trade secrets and portions of the uFACTS computer program were or were not customized for a particular project or derived from previous projects. These documents were sought with the parties agreed-upon search terms and custodians, so to the extent responsive documents were found for these other requests, they have been produced. **Second**, despite Deloitte's offer to discuss what additional documentation Sagitec thinks it needs, Sagitec has not done so. Indeed, Sagitec gives short shrift to the document requests in its Motion, and so it remains unclear what additional documents Sagitec is seeking. **Third**, like the interrogatories above, these requests seek documents beyond the asserted intellectual property in this action. Deloitte should not have to undertake the burden of searching for additional documents beyond the thousands produced, when those documents are not related to the claims and defenses in this case. Thus, this Court should also deny Sagitec's motion as to these document requests.

**Requests for Production Nos. 108 and 112.** Sagitec has requested that Deloitte produce cost and revenue data for Deloitte's uFACTS projects. Mot. 3; D.I. 171-1 Ex. 2 at 9–10, 13–14. Deloitte has produced responsive documents that exist in the ordinary course of business. Yet, Sagitec wants more. Deloitte has consistently, in good faith, worked with Sagitec to search for and provide the additional information Sagitec seeks in an effort to avoid motion practice. Although Sagitec seems to envision a simplistic database that contains this information in one centralized place, ▓▓▓▓ .I. 171-1 Ex. 13–16. These spreadsheets are outputs from a Deloitte database, as Sagitec requested.

Sagitec now asks for Deloitte to produce "the database from which the four spreadsheets were produced" or "reports from that database that include enough information for Sagitec to assess costs." Mot. 3. ▓▓▓▓ and producing the entirety of the various database would be unduly burdensome and would include significant sums of information about irrelevant business units and projects at Deloitte. Second, as Deloitte indicated to Sagitec last week, Deloitte continues to investigate ▓▓▓▓ which Deloitte believes moots this issue. Ex. B. Deloitte respectfully requests that the Court deny Sagitec's motion and allow the parties to continue to discuss what, if any, additional information Sagitec requires and whether such information is reasonably accessible to Deloitte.

3

                                                                       Respectfully Submitted,

                                                                       */s/ Andrew E. Russell*

                                                                       Andrew Russell (No. 5382)

cc:     Clerk of Court (by CM/ECF)
          All Counsel of Record (by CM/ECF & Email)

# Exhibits A - B
## Redacted in their Entirety