IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DELOITTE CONSULTING LLP and <br> DELOITTE DEVELOPMENT LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> SAGITEC SOLUTIONS LLC, <br><br> *Defendant*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 23-325-WCB <br><br> **FILED UNDER SEAL** |

**MEMORANDUM OPINION AND ORDER**

The parties have brought yet another pre-trial discovery dispute to me for resolution. Deloitte complains that the witness Sagitec designated to testify on behalf of the company under Rule 30(b)(6), Fed. R. Civ. P., failed to conduct a sufficient investigation to provide complete answers to many of the questions asked of him. As a result, Deloitte seeks sanctions in the form of either an order directing Sagitec to properly prepare its Rule 30(b)(6) witness, Ranjith Kotcherlakota, and pay the costs of a second deposition of Mr. Kotcherlakota, or an order creating an adverse inference that Sagitec used, copied, and relied on Deloitte's uFACTS source code, data model, and design assets.

The Rule 30(b)(6) issue in this case arises in an unusual setting. Deloitte brought this case while criminal charges were pending against two of Sagitec's employees, David Minkkinen and Sivaraman Sambasivam, for conduct related to the subject matter of Deloitte's civil claims against

1

Sagitec. The impact of the criminal case has complicated this civil case, and the discovery process in particular.

Deloitte has been aware of the problem with obtaining information in this case from the outset. The two indicted Sagitec employees, who would appear to have the most knowledge of the pertinent facts, have been predictably unwilling to testify in the civil case or otherwise to cooperate with the civil discovery proceedings. At the outset of this case, Sagitec moved to stay this action pending the disposition of the criminal proceedings against the individuals, but Deloitte opposed Sagitec's motion. In light of Deloitte's position, I agreed not to stay the action, notwithstanding the predictable difficulties that the pendency of the criminal proceedings would have on the development of facts in the civil case. Having elected to proceed under these circumstances, Deloitte is going to have to live with the fact that discovery will not be as readily accessible as it would be in the absence of ongoing criminal proceedings or following the conclusion of such proceedings.

With that said, I have three general observations regarding Deloitte's current request for relief: First, after studying the portions of the transcript of Mr. Kotcherlakota's deposition that have been provided to me, I am satisfied that Deloitte's complaints about Mr. Kotcherlakota's preparation are focused specifically on the issue of Sagitec's acquisition, retention, and disposition of information from Deloitte referred to as the uFACTS materials; Deloitte's complaints do not seem to be directed to Mr. Kotcherlakota's preparation on other matters. Second, Deloitte listed 52 different topics on which it sought testimony from Sagitec's Rule 30(b)(6) witness, while supplying no supplemental specificity as to precisely what questions it would ask within each of those topics. That strategy was likely to produce unresponsive or general answers in some instances, particularly where the questioning at Mr. Kotcherlakota's deposition was very specific.

Third, regarding whether Sagitec is, or has been, in possession of materials that originated with Deloitte and what has become of those materials, it appears that Mr. Kotcherlakota has taken a deliberately "hands-off" approach, stating, for example, that he has been advised (presumably by counsel) not to inquire of others in the company regarding those subjects.

I have reviewed the letter briefs submitted to me, and I have studied the accompanying exhibits with care. From examining those materials, I conclude that Deloitte has not shown that Mr. Kotcherlakota failed to prepare adequately to respond to most of the subjects on which he was questioned. For example, certain questions were asked that were very specific and that Mr. Kotcherlakota was unable to answer, such as the date on which certain materials were removed from a particular company computer site. Tr. 128:19–132:13. That question, and other similarly detailed ones, are subjects that further investigation by Mr. Kotcherlakota would likely be able to discover. The question, however, was more specific than the topic to which it related (seemingly, topic 12 of the topics designated for the Rule 30(b)(6) deposition). For that reason, it was not unreasonable that Mr. Kotcherlakota was unprepared to answer.

With respect to the acquisition, retention, use, and possible destruction of the uFACTS materials by Sagitec employees, however, it appears that Mr. Kotcherlakota has not taken all the steps necessary to inform himself, to the extent possible, of the circumstances surrounding Sagitec's involvement with certain files associated with Deloitte, which were at one time, and in some cases may still be, in Sagitec's possession. From Mr. Kotcherlakota's testimony, it appears that he has largely deferred to the findings of an internal investigation and an outside computer forensics expert on those subjects. For his own inquiries on that matter, Mr. Kotcherlakota appears to have relied mainly on his examination of various documents, such as internal emails, rather than

seeking to obtain information from individuals within the company who may have knowledge on that subject.

A fair summary of Mr. Kotcherlakota's explanation for the restricted scope of his inquiries is (1) that persons with knowledge about that subject have been, or are likely to be, unwilling to speak with him because of the pending criminal case against the two indicted Sagitec employees; (2) that Sagitec's internal investigation has already produced whatever information on that subject matter is known by the company; (3) that information in the possession of the outside computer forensics expert could and should be obtained from that expert directly; and (4) that Mr. Kotcherlakota has been advised not to attempt to speak with company employees about the matter in light of the pending criminal proceedings and this civil lawsuit.

The first two explanations are legitimate; the latter two are not. If particular individuals have knowledge of matters not otherwise in the possession of the company, and those individuals are unwilling to speak with company officials, the company cannot be charged with knowledge of those matters or be expected to produce that information through a Rule 30(b)(6) witness. *See QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012). To be sure, a corporation may not avoid its disclosure obligations simply because corporate officers decide "not to reveal information properly belonging to the corporation to a person who could disclose it" during litigation. *See Nutramax Lab'ys, Inc. v. Twin Lab'ys, Inc.*, 32 F Supp. 2d 331, 337–38 (D. Md. 1999) (citing *In re Anthracite Coal Antitrust Litig.*, 82 F.R.D. 364, 368–69 (M.D. Pa. 1979)). But the independent decision of certain corporate employees not to share information with the corporation's Rule 30(b)(6) witness does not by itself constitute a failure on the part of the corporation to provide required discovery. Mr. Kotcherlakota's failure to interview those employees who have made clear that they will invoke their Fifth Amendment rights against

4

compulsory self-incrimination therefore is not chargeable as non-compliance with the company's obligations under Rule 30(b)(6).[1]

Likewise, if an internal investigation has produced all the information a company has on a particular subject matter, a Rule 30(b)(6) witness is not required to conduct his own investigation duplicating what the internal investigation has disclosed. Absent a suggestion that the internal investigation was incomplete or that it was directed to a different subject matter—and Deloitte has not made such a suggestion here—it was legitimate for Mr. Kotcherlakota to refer to the company's internal investigation in the first instance as setting forth the company's knowledge regarding the Deloitte materials in Sagitec's possession.[2]

On the other hand, with respect to the disposition of the computer hardware and files that pertained to Deloitte's uFACTS software, Mr. Kotcherlakota was obligated to provide answers to questions regarding the company's knowledge, and not simply to defer to the outside computer forensics expert to address those questions. It may be that the company has incomplete information on that subject and that the outside computer forensics expert will provide additional information, by deposition or otherwise. But that does not relieve the company of the duty to provide such information as it has, independently of the information developed by the computer forensics expert.

---

[1] The fact that Mr. Kotecherlakota is not required to engage in the pointless exercise of interviewing witnesses who have made it clear they will invoke their Fifth Amendment privilege against compulsory self-incrimination in response to any questioning by Sagitec representatives does not speak to whether Sagitec may face downstream consequences as a result of the witnesses' refusal to provide evidence regarding their activities and knowledge as corporate representatives. *See City of Chicago v. Reliable Truck Parts Co.*, 768 F. Supp. 642, 646–47 & n.8 (N.D. Ill. 1991).

[2] To the extent that Deloitte's questions go beyond the scope of the internal investigation report, Mr. Kotcherlakota's responsibilities as a Rule 30(b)(6) witness may require him to conduct further inquiries into the corporation's knowledge on such matters.

5

It was also improper for Mr. Kotcherlakota to refuse to provide information based on the advice he was given (presumably by outside counsel) not to speak with any company employees in preparing for his Rule 30(b)(6) deposition because of the pendency of the criminal proceedings and this civil lawsuit. It is no doubt often the preference of counsel that as little information as possible be shared with the opposing party or publicly, especially when criminal proceedings are in the offing. But it is hornbook law that a corporation does not have a Fifth Amendment privilege against compelled self-incrimination, *see Braswell v. United States*, 487 U.S. 99, 102 (1988). The obligation of a Rule 30(b)(6) witness is to provide the company's knowledge on a subject even if that knowledge would be unfavorable—or indeed lead to civil or criminal liability—for the company. And it is indisputable that the pendency of a civil action is no excuse for a party to refuse to produce a Rule 30(b)(6) witness to testify as to the company's knowledge on particular matters. If the rule were otherwise, Rule 30(b)(6) would be available to a party as a discovery device only if the party from whom discovery is sought regarded providing information at the Rule 30(b)(6) deposition as being in its interest. It is for that reason that a witness's failure to conduct a proper investigation of the company's knowledge as part of the witness's obligations under Rule 30(b)(6) can be treated as tantamount to a failure to appear.

Mr. Kotcherlakota explained that with respect to some questions, he was unable to speak with the persons with knowledge because, in light of the pending criminal proceedings, those persons would not speak with company representatives. *See* Tr. 28: 3–8 ("I cannot answer those questions because I do not have means to communicate with the people involved in that particular action as there currently is a federal—there is a federal criminal case going on, and they will not talk to us."); *see also* Tr. 38:16–19 ("[T]he fact of the matter is that we do not have access to Siva [Sambasivam] or Karthik [Sadisivam], plus none of us currently have seen uFACTS."); Tr. 41:2–

6

4 ("I do not have access to [Siva Sambasivam or Karthik Sadisivam], to talk to them."). That explanation, as far as it goes, is legitimate. It does not, however, relieve Mr. Kotcherlakota of his responsibility to seek information through other means, including from other persons within the company who may have information responsive to the subject matter of Deloitte's questions.

Citing *Reichhold, Inc. v. United States Metals Refining Co.*, Civ. No. 03-453, 2007 WL 1428559, *8 (D.N.J. May 10, 2007), Sagitec argues that Mr. Kotcherlakota was not required to "personally conduct interviews" of knowledgeable corporate employees. That is simply to say that Mr. Kotcherlakota was not required to conduct such interviews himself. It is not to say that he did not have an obligation to seek relevant information in the possession of corporate employees, either by interviewing them himself or having the interviews conducted by others. The point is that it was, and is, his obligation to gather information in the possession, custody, and control of the corporation that is responsive to the questions posed to him as a Rule 30(b)(6) witness.

The problem is that Mr. Kotcherlakota's explanation for his failure to conduct a further investigation into the acquisition, retention, and possible destruction of materials obtained from Deloitte was not limited to his inability to question the individuals who have been indicted in the criminal case and who have refused to cooperate with the company's investigative efforts. Rather, he stated that

> in this particular situation it has been advised by my criminal counsel, and not—we cannot—it's best not to talk to any of the individuals with respect to this particular thing, because we have an internal investigation who talks to these people, who have spoken to these people, who have spoken to these people, and after that, we have a civil case going on. So it is not my intention to go ahead and talk to them. But I am well-informed of what went on, based on the communications that I have seen.

7

Tr. 28:22–29:8. In response to the question whether he spoke with Karthik Sadisivam in preparation for his deposition, Mr. Kotcherlakota stated, "Again, it's not my role to go and ask them the questions because these are legal matters and we hired experts to take—to take care of these things, and those experts will ask the questions because as a part of the legal matter I definitely do not want to go in and ask them any questions about it." Tr. 42:1–8. And in response to a question about whether he had spoken to any Sagitec employee in preparation for his deposition "about how the uFACTS code base for a Massachusetts project and all of the use cases were used at Sagitec," Tr. 181:14–18, Mr. Kotcherlakota responded "I didn't need to. I think there was enough amount of communications, material there. We also had the internal investigators who talked quite extensively to the people. You know, they went through a six-month investigation, they talked to multiple people within the L&E practice about this, and so I didn't need to talk to them, any of them." Tr. 181:20–182:5." He then added, "And plus, again, like I mentioned before, we had the federal criminal thing is still on, and then we also have the Deloitte legal suit on, and I didn't want to talk to anybody about this one." Tr. 182:6–10.

During his deposition, Mr. Kotcherlakota referred to several individuals who were parties to emails relating to the Deloitte materials. Mr. Kotcherlakota apparently did not speak with any of those individuals, not because he thought they had no relevant information, but because he did not think it was necessary or appropriate to interview them. It may be that nothing would ultimately have come of Mr. Kotcherlakota's inquiries into those subjects, but his responsibility as a Rule 30(b)(6) witness was to provide what knowledge the corporation has on the subjects identified in the notice of deposition and, if necessary, to conduct inquiries within the corporation to obtain that knowledge.

8

Accordingly, I will direct the parties to engage in the following procedure. First, Deloitte will be required to identify particular questions that were asked during Mr. Kotcherlakota's deposition for which Deloitte regards Mr. Kotcherlakota's responses as insufficient. With respect to those questions that could potentially be answered more completely based on information from others within Sagitec (other than from Mr. Sambasivam and Mr. Minkkinen, the indicted defendants), Mr. Kotcherlakota will be required to seek to obtain such information from others within the company, several of whom were identified by name in Mr. Kotcherlakota's deposition. It will not be a basis for refusing to conduct such interviews that there is a criminal case pending against Mr. Sambasivam and Mr. Minkkinen or any possible criminal proceedings against others. It will also not be a basis for refusing to conduct such interviews that this civil case is pending against Sagitec. As noted, the list of questions to be directed to Mr. Kotcherlakota must be taken from those questions asked during his deposition; this is not an opportunity for Deloitte to expand the array of questions to be put to Mr. Kotcherlakota, but merely an opportunity to discover if Mr. Kotcherlakota's answers would be different if his internal inquiries were conducted without the constraints that (1) there are criminal proceedings still pending; (2) this civil action is pending; and (3) the company's internal investigation has covered many of the matters raised during the deposition. If Mr. Kotcherlakota's knowledge (and thus the company's knowledge) of particular matters is drawn from the internal report, he may say so and relate what that knowledge is. If others within the company decline to be interviewed by Mr. Kotcherlakota, despite a good faith effort to obtain their cooperation, any information in the possession of such persons will be regarded as unavailable to the company. After Mr. Kotcherlakota has conducted a further investigation, he will be required to continue his deposition for up to three additional hours.

In sum, I conclude that in the respects discussed above, Mr. Kotcherlakota did not prepare adequately for this Rule 30(b)(6) deposition and that he will be required to supplement his efforts to inform himself of information relating to Sagitec's knowledge of the circumstances surrounding the acquisition, retention, use, and possible destruction of Deloitte's uFACTS materials. However, I do not consider Mr. Kotcherlakota's conduct to fall so short of his responsibilities as a Rule 30(b)(6) witness to warrant the sanctions requested by Deloitte at this time.

Deloitte invokes the Third Circuit's decision in *Black Horse Lane v. Dow Chem. Corp.*, 228 F.3d 275 (3d Cir. 2000), in which the court sanctioned a party who produced a Rule 30(b)(6) witness who was unprepared for his testimony. The facts of that case were much more extreme than the facts of this one. As the district court explained in language quoted by the Third Circuit,

> I read the record. It is appalling. [The witness] did nothing except show his face only under the threat of court orders. When he showed up, he knew he was a 30(b)(6) witness and, notwithstanding the fact that he knew he was a 30(b)(6) witness, he refused to answer questions in an intelligent way. He refused to prepare, as you are required to prepare under 30(b)(6), to intelligently answer questions and just literally thumbed his nose at the defendants and, frankly, at the Court.

Under those circumstances, the Third Circuit held that the witness's conduct was tantamount to a failure to appear for the deposition and was thus sanctionable. *Id.* at 305.

The facts of the *Black Horse Lane* case differ *toto caelo* from the facts of this one. While Mr. Kotcherlakota was not as well prepared as he should have been, the insufficiencies in his preparation did not approach the level of egregiousness that courts have required before imposing sanctions for a Rule 30(b)(6) witness's lack of preparation. *See, e.g.*, *Catalyst Advisors, LP v. Catalyst Advisors Investors Global Inc.*, No. 21 Civ. 4855, 2024 WL 522751, at *9 (S.D.N.Y. Feb. 9, 2024) ("A party seeking sanctions for an unprepared Rule 30(b)(6) witness bears the burden to show that the deponent's inability to testify was 'egregious and not merely lacking in desired specificity in discrete areas.'" (citing *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 333 F.R.D.

10

302, 308 (S.D.N.Y. 2019)); *New Chapter, Inc. v. Advanced Nutrition by Zahler Corp.*, No. 22-CV-03734, 2024 WL 981055, at *6 (E.D.N.Y. Mar. 7, 2024) (same); *Chaney v. Vermont Bread Co.*, No. 2:21-cv-120, 2023 WL 5367973, at *3 (D. Vt. Aug. 22, 2023) (same).

\* \* \* \* \*

I note that this is the sixth time the parties in this case have come to me with discovery disputes. Several of those requests for court intervention have raised multiple disputes, so that the total number of disputes in which the parties have insisted on court intervention is, by my count, thirteen. That is an unacceptably high number. To date, I have refrained from adopting measures designed to incentivize greater efforts at cooperation from the parties to resolve their discovery disputes without court intervention. I hope this will be the last time I hear from the parties with a request for a court ruling on a discovery dispute in this case. If I do receive any more disputes from the parties in this case, however, I will employ the approach used by the late William Bryant, former Chief Judge of the United States District Court for the District of Columbia, who advised civil litigants that he was willing to entertain discovery disputes in civil cases, but that the parties should know in advance that the expenses incurred by the prevailing party in litigating the dispute would be charged to the losing party.

The letters addressing this dispute were submitted under seal. For that reason, I have filed this opinion under seal. Within three business days of the issuance of this order, the parties are directed to advise the court by letter whether they wish any portions of this order to remain under seal, and if so which portions. Any request that portions of the order remain under seal must be supported by a particularized showing of need to limit public access to those portions of the order.

11

IT IS SO ORDERED.

SIGNED this 27th day of August 2024.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE