IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DELOITTE CONSULTING LLP and )
DELOITTE DEVELOPMENT LLC, )
)
    Plaintiffs, )    **Redacted - Public Version**
)
    v. )    C.A. No. 23-325-WCB
)
SAGITEC SOLUTIONS, LLC, )
)
    Defendant. )

## LETTER TO THE HONORABLE WILLIAM C. BRYSON
## FROM ANDREW E. RUSSELL

                                John W. Shaw (No. 3362)
                                Andrew E. Russell (No. 5382)
                                SHAW KELLER LLP
OF COUNSEL:                     I.M. Pei Building
Joshua L. Simmons              1105 North Market Street, 12th Floor
Stephany S. Kim                Wilmington, DE 19801
Dana DeVlieger                 (302) 298-0700
KIRKLAND & ELLIS LLP           jshaw@shawkeller.com
601 Lexington Avenue           arussell@shawkeller.com
New York, NY 10022             *Attorneys for Plaintiffs Deloitte Consulting LLP*
(212) 446-4800                 *and Deloitte Development LLC*

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
(202) 389-5000

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Dated: August 22, 2024

Dear Judge Bryson:

Internal Sagitec communications produced in discovery make clear that ███████████ ███████████████████████████████████████████████████████████████████████ ██████████████████████████ Nevertheless, Sagitec repeatedly represented for years that it did not have Deloitte's uFACTS source code—until April 2024, when it suddenly reversed course and revealed months after the start of discovery that ██████████████████████████ ███████████████████████████████████ Deloitte noticed a 30(b)(6) deposition to investigate these alarming discoveries, among other topics. Sagitec designated cofounder Ranjith Kotcherlakota as the company's 30(b)(6) witness on these topics, but Mr. Kotcherlakota was unprepared. Throughout his deposition, Mr. Kotcherlakota testified he had no additional information or did not know answers to questions because he himself did not have personal knowledge. Mr. Kotcherlakota's testimony then revealed he made no efforts to speak to Sagitec employees he knew had relevant information in preparation. For example, when asked about ██████████████████████████████████████████████████████████, Mr. Kotcherlakota testified that ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ Mr. Kotcherlakota could not answer basic questions about ███████████████████████ ██████████████████████████████████████████ Mr. Kotcherlakota's testimony is antithetical to the obligations of a 30(b)(6) witness who is not testifying on his own behalf, but on behalf of the company. A corporate representative may not stick his head in the sand and refuse to make efforts to inform himself before his deposition, and then hide behind his lack of knowledge. Deloitte thus respectfully asks this Court to issue an order imposing sanctions under Rule 37(d), including an adverse inference that Sagitec used, copied, and relied on uFACTS source code, data model, and design assets, to develop Neosurance, and a preclusion of contrary testimony. In the alternative, Deloitte requests the Court order Sagitec to properly prepare its witness, and to reimburse Deloitte's fees and costs associated with having to take a second deposition.

**Standard.** Designated corporate representatives "must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6); *see Oy v. Verizon Servs. Corp.*, No. 12 Civ. 715, 2013 WL 5675516, at *2 (D. Del. Oct. 15, 2013) (explaining 30(b)(6) witness "must use documents, past employees or other resources to obtain responsive information"). Under Rule 37(d), a failure to prepare its 30(b)(6) witness is "tantamount to a failure to appear" and warrants sanctions. *Black Horse Lane Assoc., L.P. v. Dow Chem Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) ("producing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)"). Available sanctions include "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(i); *see Black Horse*, 228 F.3d at 304 (affirming sanctions precluding party from introducing evidence contrary to positions asserted during deposition); *see also EEOC v. Grace Episcopal Church of Whitestone, Inc.*, No. 6 Civ. 5302, 2012 WL 13085406, at *14 (E.D.N.Y. Mar. 7, 2012) (recommending adverse inference sanctions for inadequate preparation); *United States v. Hovnanian*, No. 18 Civ. 15099, 2022 WL 279835 (D.N.J. Jan. 31, 2022) (imposing sanctions for same). Sagitec's actions warrant such sanctions.

**Not Prepared on Possession and Destruction of uFACTS Materials.** Sagitec designated Mr. Kotcherlakota to testify about Topics 11, 12, 13, and 14, which cover Sagitec's past and present possession of uFACTS, including "[e]ach Sagitec server location" that stored uFACTS at any time. Ex. 1 at 11 (Deloitte 30(b)(6) Notice). These topics are critical, especially because of Sagitec's repeated attestations that it did not possess the uFACTS source code, only to reveal over six months after discovery opened that ███████. *See, e.g.*, Ex. 2 (Def.'s 2d Suppl. Resp. to Pl.'s 1st Set of Rogs, No. 3) at 18–21. But Sagitec's designated witness was grossly unprepared. *First*, Mr. Kotcherlakota testified ████████████████████████████████████ Ex. 3 (Kotcherlakota Dep. Tr.) at 69:12–15, 72:1–20. *Next*, Mr. Kotcherlakota claimed he didn't know this information because Sagitec no longer had access to the server with ████████████ testifying it had been handed over to a Sagitec's third-party forensic analyst, ████████████ *Id.* at 70:11–20. That is no excuse; Mr. Kotcherlakota was designated to discuss ***Sagitec's*** servers, ████████████████████████████████ *Id.* at 78:4–82:18. Worse still, Mr. Kotcherlakota did not even ***attempt*** to speak to Sagitec's analyst in advance of his deposition. *Id.* at 70:8–71:8. Sagitec cannot shirk its responsibility to prepare its 30(b)(6) witness because a discovery vendor has the relevant information. *See Ethypharm S.A. France v. Abbott Labs*, 271 F.R.D. 82, 92 (D. Del. 2010) (explaining Rule 30(b)(6) is meant to "curb the bandying by which officers or managing agents of a corporation are deposed in turn but each disclaim knowledge of fact that are clearly known to persons in the organization and thereby to it").

Mr. Kotcherlakota similarly could not offer any testimony about ████████████████████████████ ████████ Internal Sagitec communications make clear that ████████████ *See, e.g.,* Ex. 4 (Dep. Ex. 30) ████████████████████████████ Ex. 3 at 243:12–246:16 ████████ 122:17–132:13 ████████ 152:14–153:1 ████████ 277:18–278:18 ████████ But Mr. Kotcherlakota was unable to offer testimony about ████████ *See, e.g., Id.* at 130:13–132:13 ████████████████████████████████████ Nor was he able to offer testimony about ████████████████████████████ *Id.* at 287:1–289:8. Not surprisingly, Mr. Kotcherlakota also could not offer any testimony about ████████ ████████ *See, e.g.,* Ex. 4 (Dep. Ex. 30) *and* Ex. 3 at 248:2-13 Sagitec's destruction of this evidence and lack of preparation to discuss that destruction at deposition severely prejudices Deloitte's ability to discover what Sagitec did with ████████ ████████.[1]

---

[1] Deloitte expects to request an additional adverse inference related to spoliation under Rule 37(d) in relation to the destruction of this material once discovery closes.

**Not Prepared on Use, Copying, and Reliance on uFACTS Materials.** Sagitec also designated Mr. Kotcherlakota on Topics 4, 5, 6, 7, 8, 9, 10,and 13, which relate to Sagitec's use, copying, and reliance on uFACTS to develop Neosurance. Ex. 1 at 10–11. Sagitec's document productions, including internal Sagitec communications, reveal that ███████████████████████████████████ ███████████████████████████████████. Indeed, Mr. Kotcherlakota *admitted* ████████████████████████████████████████████████████████████████ ████████████████████████████. *See, e.g.*, Ex. 3 (Dep. Tr.) at 27:21–24; 29:17–21; 30:8–33:9; 40:15–44:11; 53:4–54:5. But when asked to provide Sagitec's corporate testimony about ████████████████████ Mr. Kotcherlakota similarly hid behind his personal lack of knowledge and the fact that he did not even try to speak to Sagitec's own employees. As just one example, when shown correspondence among Sagitec employees discussing ████████████████████████████, Mr. Kotcherlakota testified ███████████████████ because he did not speak to Sagitec's developers. Ex. 5 (Dep. Ex. 11) *and* Ex. 3 at 155:9–15. Mr. Kotcherlakota's testimony is full of similar examples. *See also, e.g.*, Ex. 6 (Dep. Ex. 18); Ex. 7 (Dep. Ex. 15) *and* Ex. 3 at 178:25–182:10 ████████████████████ Ex. 8 (Dep. Ex. 19) *and* Ex. 3 at 205:3–20, 212:9–16 █████████████████████████████████████████████████████████████████████. Ex. 9 (Dep. Ex. 27) *and* Ex. 3 at 229:21–234:18 ████████████████████████████████████████; Ex. 10 (Dep. Ex. 28) █████████████████████████████ *and* at Ex. 3 at 236:3–237:3 ████████████████████████████████████████████████ Ex. 3 at 203:4–204:21. Mr. Kotcherlakota insisted he prepared by reviewing documents, but this is meaningless when he could not substantively answer any questions about those documents. *See OpenGate*, 2015 WL 5222544, at *3 (reviewing documents not sufficient preparation when witness failed to talk to individuals with responsive information); *see also Harris v. New Jersey*, 259 F.R.D. 89, 92–93 (D.N.J. 2007) (granting motion to compel where deponent could not answer questions about documents clearly relevant to his designated topics).

Sagitec may incorrectly argue that Mr. Kotcherlakota does not have *access* to these individuals because of the ongoing criminal investigation, but his testimony revealed that he, in fact, *did not* even *ask* to speak to them. *See, e.g.*, Ex. 3 28:22–29:6; 42:1–8; 44:7–11. Further, as this Court counseled, Sagitec is a global company that has access to its unindicted employees. D.I. 50 at 9. Indeed, deposition exhibits reveal many Sagitec employees with relevant knowledge Mr. Kotcherlakota lacks to whom he failed to speak in preparation for his depositions. *See, e.g.*, Exs. 4, 5, 6, 8, 9, 10, 11 (Dep. Exs. 11, 18, 19, 27, 28, 30, 34). Nor does a parallel criminal case prevent Sagitec from accessing its own employees and affiliates. *Cf. United States v. Kordel*, 397 U.S. 1, 8, 1970) (corporation must demonstrate that there is "no authorized person who could answer [a discovery request] without the possibility of compulsory self-incrimination"); *In re 650 Fifth Avenue*, No. 8 Civ. 10934, 2011 WL 3586169, at *7, 12 (S.D.N.Y. Aug. 12, 2011).

Sagitec's numerous, willful failures have prejudiced Deloitte's ability to press its case and discover the full extent of Sagitec's possession and use of uFACTS, and its destruction of evidence of the same. Sanctions are warranted. Deloitte therefore respectfully asks this Court to issue an order imposing sanctions under Rule 37(d), including an adverse inference that Sagitec used, copied, and relied on uFACTS to develop Neosurance and a preclusion of contrary testimony.

Respectfully Submitted,

*/s/ Andrew E. Russell*

Andrew E. Russell (No. 5382)

cc:    Clerk of the Court (by CM/ECF)
        All counsel of record (by CM/ECF and Email)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DELOITTE CONSULTING LLP and DELOITTE DEVELOPMENT LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 23-325-WCB |
| SAGITEC SOLUTIONS, LLC, | ) ) | |
| Defendant. | ) | |

**[PROPOSED] ORDER GRANTING DELOITTE'S MOTION FOR RULE 37(D) SANCTIONS**

On this _____ day of _____, 20____, the Court having considered Deloitte's letter brief in support of its motion to impose sanctions under Rule 37(d), and all papers and argument submitted therewith,

IT IS ORDERED that the motion for sanctions is GRANTED and the following sanctions imposed:

(1) that Sagitec be deemed to have possessed, stored, and distributed copies of Deloitte's uFACTS materials, including source code, databases, and related artifacts, while developing its Neosurance solution.

(2) that Sagitec be deemed to have acquired, possessed, distributed, and used uFACTS materials, including the uFACTS source code, data dictionaries, database tables, and design assets, to develop Sagitec's Neosurance solution.

Sagitec is moreover PRECLUDED from offering evidence or testimony to the contrary.

_____
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DELOITTE CONSULTING LLP and | ) | |
| DELOITTE DEVELOPMENT LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-325-WCB |
| | ) | |
| SAGITEC SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**[ALTERNATIVE PROPOSED] ORDER GRANTING DELOITTE'S MOTION FOR RULE 37(D) SANCTIONS**

On this _____ day of _____, 20____, the Court having considered Deloitte's letter brief in support of its motion to impose sanctions under Rule 37(d), and all papers and argument submitted therewith,

IT IS ORDERED that the motion for sanctions is GRANTED and that Sagitec must prepare a second Rule 30(b)(6) corporate representative for deposition on Deloitte's Noticed Topics 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 28, 29, 30, and 32, and that Sagitec reimburse Deloitte's fees and costs associated with taking a second deposition on these topics.

_____
United States District Judge

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| DELOITTE CONSULTING LLP and DELOITTE DEVELOPMENT LLC,<br><br>       Plaintiffs,<br><br>   v.<br><br>SAGITEC SOLUTIONS LLC,<br><br>       Defendant. | C.A. No. 23-325-WCB<br><br>**DEMAND FOR JURY TRIAL** |

**DELOITTE'S NOTICE OF DEPOSITION OF
DEFENDANT SAGITEC SOLUTIONS LLC PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)</u>**

PLEASE TAKE NOTICE that commencing on a date and at a location to be agreed upon by the parties, and following a good faith conference concerning the matters for examination, Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC ("Plaintiffs" or "Deloitte"), will take the deposition of the corporate designee(s) of Defendant Sagitec Solutions LLC ("Defendant" or "Sagitec") by oral examination, pursuant to Federal Rule of Civil Procedure 30(b)(6).  Sagitec must designate one or more persons as Sagitec's representative(s) to testify on its behalf as to each of the topics identified in **Attachment A**.

The deposition will take place before a Notary Public or other officer authorized by law to administer oaths and will continue from day to day until completed, with such adjournments as to time and place as may be necessary.  The deposition testimony shall be recorded by both audiovisual and stenographic means.

Dated: April 18, 2024

|  | /s/ Patrick Arnett |
|---|---|

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

Patrick Arnett

OF COUNSEL:
Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Gregg F. LoCascio
Patrick Arnett
Nick Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
(202) 389-5000

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

*Attorneys for Plaintiffs Deloitte Consulting LLP,
and Deloitte Development LLC*

**ATTACHMENT A**

**DEFINITIONS**

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.  These Requests incorporate the following Definitions, which shall apply throughout these Definitions, Instructions, and Requests wherever a defined term is used, without regard to its capitalization:

1.      "And" and "or" shall each be construed conjunctively and disjunctively, so as to give the broadest meaning possible.

2.      "Any" and "all" are interchangeable and shall each be construed to mean "each and every," so as to give the broadest meaning possible.

3.      "Client" or "Customer" means any past, present, or prospective customer to whom software or a solution has been marketed, offered, licensed, delivered, or sold, including without limitation any State government, government agency, or regional or multi-State consortium of such States or agencies.

4.      "Communication" means any exchange of information by any method of transmission, sending, or receipt of information of any kind by or through any means including without limitation speech, writings, Documents, language (machine, foreign, or otherwise) of any kind, computer electronics or electronic data, email, text message, instant message, sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all types or other media of any kind, and includes all Documents and ESI containing, summarizing, or memorializing any Communication.

5.      "Complaint" means the Complaint filed by Deloitte in this Litigation on March 23, 2023, and any amendments thereto.

6.      "Concerning," "concerns," "referring to," "regarding," "related to" and "relating to" mean discussing, describing, evidencing, constituting, reflecting, incorporating, effecting, including, pertaining to, relating to, or in any way connected with the subject matter of the Topic and should be construed in the broadest possible sense.

7.      "Criminal Proceeding" means the case captioned *United States v. Minkkinen*, No. 2:22-cr-163, filed August 23, 2022, in the Southern District of West Virginia, and any related proceedings or appeals.

8.      "Deloitte" or "Plaintiffs" refers to Deloitte Consulting LLP and Deloitte Development LLC and any of their former or current parents, subsidiaries, predecessors, successors, affiliated Entities, controlled Entities, joint ventures, related Entities, agents, attorneys, Employees, interns, representatives, assigns, directors, or officers, including without limitation BearingPoint, Inc.

9.      "Deloitte Agreement" means any agreement between Deloitte, on the one hand, and any Deloitte Customer or Deloitte Employee, on the other hand, including without limitation the confidentiality and intellectual property ownership agreements described in the Complaint.

10.      "Deloitte Employee" means any Employee of Deloitte's, including without limitation Deepak Ahuja, Rick Deshler, Julie Fett, Venkat Kakula, Harish Kumar Kanchanapally, Ranjith Kotcherlakota, Srinivas Kurra, Swamynathan Manikandan, Marcel Mascarenhas, David Minkkinen, Sindhu Nair, Bernt Peterson, Revathy Rajaraman, Praveen Rengaraj, Karthik Sadasivam, Sivaraman Sambasivam, Pankaj Sharma, Kathryn Sibbet, Patrik Svensson, Philip Tackett, Adam Taylor, Prabhu Tegur, Bala Venkat, and Regina Waldrep.

11.      "Deloitte Property" means any copyrighted works or trade secrets asserted in this Litigation, including without limitation the uFACTS Computer Program, the uFACTS Trade Secrets, and Documents that relate to or refer to uFACTS or bear indications that Deloitte

authored, contributed to, created, developed, or possessed the Document prior to Sagitec's possession of it.

12.    "Document" and "Thing" shall each be given the fullest meaning under the Federal Rules of Civil Procedure.  Documents include all material of every kind, source, and authorship in Your possession or known by You to exist, irrespective of whether the Document is one intended for or transmitted internally by You, or intended for or transmitted to any other Person.  Documents include ESI, writings, publications, printed matter, drawings, graphical materials, graphs, charts, photographs, audiovisual or sound recordings, images, and other data or data compilations that are stored in any medium whatsoever from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, as well as any tangible Things.  The term also includes all appendices, schedules, exhibits, and other attachments, as well as related and relevant metadata for all ESI, including without limitation information about the Document's author, creation date, revision dates, tracked changes, and electronic comments.  A draft or non-identical copy of a Document is a separate Document within the meaning of this term.  Any Document with any part thereof bearing any annotations, comments, markings, notations, notes, "redlines," signatures or initials, stamps, or any textual or graphical information (whether handwritten, printed, or electronic) that is not part of the original electronic or physical copy is non-identical and therefore should be considered a separate Document.  A Document is in Your possession, custody, or control if You have either actual physical possession of a Document or constructive possession of the Document.  For the avoidance of doubt, the following are Documents: abstracts, advertisements, agreements, appointments, audits, booklets, books, brochures, calendars, calendar entries, charts, Communications (including without limitation those made via real-time collaboration tools, *e.g.*, Skype, Slack, Teams, and other chat or instant messaging platforms), correspondence, contracts,

data, database contents, database schemas, diagrams, diaries, document management systems (*e.g.*, Confluence, Google Docs, Google Drive, or SharePoint), drawings, emails, email attachments, expense reports, files, films, graphics, graphs, Internet or Intranet media or postings (*e.g.*, forum posts, comments, and wiki entries), invoices, journals, ledgers, logs (*e.g.*, access, call, change, error, event, server, telephone, and system logs), maps, meeting invitations and responses, memoranda, minutes, mockups, newspapers, notes, organizational charts, photographs, posters, presentations, printouts, project management artifacts (*e.g.*, Project or Visio files, Gantt charts, and Jira entries), recordings (including without limitation recorded meetings or presentations conducted via platforms such as Zoom or Blue Jeans), receipts, recitals, records, reports, research, resumes, schedules, server contents (*e.g.*, FTP, HTTP, NFS, SMB, or WebDAV); Source Code, spreadsheets, statements, storyboards, summaries (including without limitation those of conversations, data, interviews, negotiations, and financial or statistical information), tasks, text messages or their equivalent (*e.g.*, SMS, WhatsApp, and iMessage), time entries, to-do lists, voicemails, websites, whiteboards, working papers, and worksheets.  An excerpt or portion of any of the foregoing is a separate Document.

13.    "Employee" means any Person who acted or purported to act on behalf of another Person, including without limitation all past and present directors, officers, executives, principals, partners, agents, representatives, attorneys, accountants, independent contractors, advisors, and consultants of such other Person or Persons.

14.    "Entity" means any business, proprietorship, firm, corporation, company, partnership, group, association, trade or industry association, non-profit, or governmental body or agency.

15.    "Functionality" or "Functioning" means the technological and business processes that maintain, power, or otherwise enable a computer program or web-based service, including

without limitation all underlying software, Source Code, databases, servers, and other technology.

16.    "Include" and "including" shall be construed to mean include or including "but not limited to" or "without limitation," such that any list preceded by "include" or "including" should be read as a list of non-limiting examples within a broader category.

17.    "Internal Investigation" means Sagitec's investigation with respect to the subject matter of the Criminal Proceeding, as reflected in the report filed as Docket No. 146-6 in the Criminal Proceeding and any prior drafts or subsequent revisions thereto.

18.    "Investigator Testimony" means the May 31, 2023, grand jury testimony of Jim Powers, filed in the Criminal Proceeding as Docket No. 277-1.

19.    "Minkkinen Hard Drive" means the hard drive retained by David Minkkinen containing software and use cases from the Massachusetts project among other data from his computer at Deloitte, as referenced on pages 16–17 of the Investigator Testimony.

20.    "Neosurance" means all versions of any software, including without limitation web-based and software-as-a-service solutions, that Sagitec has developed, tested, implemented, marketed, offered, licensed, delivered, or sold under the "Neosurance" name or that include or relate to Unemployment Insurance ("UI") tax, benefits, or appeals administration Functionality, including without limitation components or modules thereof, as embodied in client-facing applications, Source Code, design documentation, use cases, database schemas, requirements specifications, change orders, interface documentation, application programming interfaces, development frameworks, developer guides, business rules, algorithms, architectures, demos, mockups, user flows, product documentation, manuals, data sheets, and user guides.  For the avoidance of doubt, Neosurance means any software You offer or offered that includes UI or related Functionality, including without limitation Pandemic Unemployment Assistance

("PUA"), whether or not the software comprises a complete UI solution and whether the software is called "Neosurance" or any other name.

21.    "Person" means any natural person or Entity.

22.    "Sagitec," "Defendant," "You," and "Your" refer to Defendant Sagitec Solutions LLC, and any former or current parents, subsidiaries, predecessors, predecessors-in-interest, successors, affiliated Entities, controlled Entities, companies in which Sagitec owns stock or otherwise maintains an ownership interest, joint ventures, related Entities, agents, attorneys, Employees, interns, representatives, assigns, directors, or officers and all other Persons acting or purporting to act on their behalf, including without limitation any Deloitte Employee who also was an employee of Sagitec.

23.    "Sagitec Server Location" means any server which Sagitec owns, manages, or otherwise controls, including without limitation Sagitec SharePoint sites and servers, Sagitec servers hosted in foreign countries, and server locations found at any URL or location referenced in any Deloitte Interrogatory or Request for Production (including without limitation those identified in Deloitte Request for Production Nos. 36, 37, 40, 41, and 127–154).

24.    "Source Code" means the human-readable programming language text that defines software, firmware, or electronic hardware description, including without limitation files containing code in any programming or scripting language, such as C, C++, C#, Java, JavaScript, Perl, PHP, Python, or Ruby; any markup or presentation language, such as HTML, XML, or CSS; and any database language or commands, such as SQL.  Source Code also includes without limitation configuration files, include files, header files, make files, link files, log files, settings files, generated output files, and other human-readable text files used in the generation and/or building of software and/or hardware.

25.    "State" means any administrative division of the United States, including without limitation the 50 states, the District of Columbia, and inhabited territories.

26.    "This Case" or "This Litigation" refers to the above-captioned proceeding.

27.    "uFACTS Computer Program" means Deloitte's uFACTS software, including without limitation the versions registered with the U.S. Copyright Office as Registration Nos. TX 8-559-593, TX 8-559-594, and TX 8-559-595.

28.    "uFACTS Trade Secrets" means the uFACTS application software, design assets, and development framework described in the Complaint.

29.    The singular includes the plural and vice versa.

30.    The past tense includes the present tense and vice versa.

31.    Any pronoun shall be construed to refer to the masculine, feminine, or neutral gender as in each case is most appropriate.

## **TOPICS**

1.      The process through which Neosurance was designed, created, developed, implemented, enhanced, and tested, including without limitation the identities of all Persons involved and any use of Deloitte Property to do so.

2.      The Sagitec Entities responsible for or involved in the conception, research, creation, design, development, testing, launch, enhancement, maintenance, and distribution of any and all versions of Neosurance, and their corporate relationship.

3.      The Functionality of Neosurance, including without limitation any differences in Functionality between each version Sagitec developed for each of Sagitec's Clients.

4.      Technical Documents concerning Neosurance, including without limitation Source Code for Neosurance.

5.      The design, development, creation, implementation, enhancement, and testing of Neosurance's data model, including as embodied in data dictionaries, schemas, database tables, or entity relationship diagrams.

6.      The use or copying of any uFACTS Source Code in the development or implementation of Neosurance.

7.      The use or copying of the uFACTS data model in the development or implementation of Neosurance.

8.      The creation of use cases and requirements specifications for Neosurance, including the source of any and all information contained within each use case or requirements specification.

9.      The use or copying of any uFACTS design assets, including use cases and requirements specifications, in the development, implementation, marketing, or sale of Neosurance.

10.    The means by which Sagitec obtained Deloitte Property, including without limitation the uFACTS Computer Program and uFACTS Trade Secrets.

11.    The Minkkinen Hard Drive, including any use or possession by Sagitec of its contents and any efforts by Sagitec or others acting at its direction to locate, collect and preserve its contents.

12.    The current disposition of any Deloitte Property formerly within Sagitec's possession, custody, or control at any time, including without limitation any Deloitte Property that was destroyed or interfered with by Sagitec's officers, directors, or employees.

13.    Copies of Deloitte Property in Sagitec's possession, custody, or control, including without limitation the uFACTS Computer Program and uFACTS Trade Secrets, source code, object code, compile code or classes, or portions thereof.

14.    Each Sagitec Server Location, including any Deloitte Property stored therein at any time and the reasons any Sagitec Server Location and/or Deloitte Property contained therein are no longer available.

15.    Sagitec's use, study, analysis, reliance, or copying of any Deloitte Property, in whole or in part, including without limitation the uFACTS Computer Program or uFACTS Trade Secrets, in the conception, research, creation, design, development, testing, launch, enhancement, or maintenance of Neosurance, including Sagitec's reason, purpose, motivation, or decision for doing so, the means by which Sagitec obtained such Deloitte Property, and Sagitec's knowledge thereof.

16.    Sagitec's process of marketing and selling Neosurance to potential or actual customers, including without limitations all bids, offers, proposals, quotes, or responses to requests for information, requests for offers, requests for proposals, and requests for quotes.

17.    All contracts between Sagitec and any of its customers regarding Neosurance, including without limitation statements of work, addenda, and change orders.

18.    Documents given to actual or potential Sagitec customers concerning Deloitte Property, including any Documents based on or containing Deloitte Property.

19.    Sagitec's efforts to compete with Deloitte in the market for unemployment insurance software solutions, including without limitation Sagitec's pursuit of actual or potential customers of Deloitte.

20.    Sagitec's revenues, expenses, and profits (both gross and net), including without limitation those attributable to, associated with, or concerning Neosurance.

21.    All funds invested by Sagitec in the conception, research, design, development, testing, launch, enhancement, or maintenance of Neosurance.

22.    Any payments between Sagitec and any other Person, including other Sagitec Entities, relating to the creation, design, development, testing, launch, enhancement, or maintenance of any and all versions of Neosurance.

23.    The value of any Deloitte Property that Sagitec used or relied upon to create, design, develop, test, launch, enhance, or maintain Neosurance.

24.    Sagitec's projected future earnings relating to Neosurance, including without limitation earnings, revenues, expenses, and gross and net profits attributable to, associated with, or concerning Neosurance.

25.    The market for Neosurance, uFACTS, and unemployment insurance software solutions.

26.    Sagitec's recruitment or hiring of Deloitte Employees.

27.    Sagitec's knowledge of Deloitte Agreements.

28.     Sagitec's knowledge of or investigation into its possession, copying, or use of Deloitte Property, including without limitation the uFACTS Computer Program and uFACTS Trade Secrets.

29.     Sagitec's clearance efforts for Neosurance, including without limitation efforts to confirm that Neosurance did not include proprietary material belonging to any Person other than Sagitec or violate the intellectual property rights of any Person.

30.     Sagitec's efforts or considerations, if any, to modify any aspect of Neosurance to remove, revise, or conceal Deloitte Property, material based on uFACTS, or any other material originating from Deloitte.

31.     Communications between Sagitec and any Person concerning the conception, research, design, development, testing, launch, enhancement, or maintenance of Neosurance, including without limitation any Communications in which Sagitec or any other Person indicated that Sagitec was or was not in possession of, using, copying, or relying on Deloitte Property, including without limitation the uFACTS Computer Program or the uFACTS Trade Secrets, and including without limitation any Communications in which Sagitec or any other Person expressed a view as to whether or not such possession, use, copying, or reliance was authorized or permissible.

32.     Sagitec's Internal Investigation.

33.     The factual basis for Sagitec's affirmative defenses.

34.     The purpose and character of Neosurance.

35.     Sagitec's competition with Deloitte in the market for UI software solutions.

36.     Any and all information that Sagitec contends dictated, informed, or impacted the design of uFACTS, the uFACTS Computer Program, or the uFACTS Trade Secrets, or other Deloitte Property Sagitec used or relied upon.

- 13 -

37.     Any and all aspects of uFACTS, the uFACTS Computer Program, or the uFACTS Trade Secrets that Sagitec contends are elements taken from the public domain.

38.     Any and all aspects of the uFACTS Computer Program that Sagitec contends are not copyrightable, including any and all aspects that Sagitec contends are standard or stock or constitute *scenes a faire*.

39.     Any copying of the uFACTS Computer Program that Sagitec contends constitutes fair use.

40.     Any and all aspects of the uFACTS Trade Secrets that Sagitec contends are not protectable, including without limitation because Sagitec contends that such aspects do not derive independent economic value from not being generally known to or readily ascertainable by proper means by others or that such aspects were not subject to reasonable efforts to maintain their secrecy.

41.     Any and all aspects of the uFACTS Computer Program or uFACTS Trade Secrets that Sagitec contends are not owned by Deloitte.

42.     Any and all aspects of the uFACTS Computer Program or uFACTS Trade Secrets that Sagitec contends it did not acquire or use.

43.     Sagitec's agreements relating to Neosurance, including any provisions concerning Sagitec's ownership or other intellectual property rights in Neosurance.

44.     Meetings of Sagitec's board of directors, board of managers, or equivalent corporate governing bodies, including without limitation any minutes thereof, regarding Deloitte, Deloitte Property, uFACTS, the uFACTS Computer Program, the uFACTS Trade Secrets, the Criminal Proceeding, or Neosurance.

- 14 -

45.    Public statements or comments made by Sagitec regarding Deloitte, Deloitte Property, uFACTS, the uFACTS Computer Program, the uFACTS Trade Secrets, the Criminal Proceeding, or Neosurance.

46.    Communications between Sagitec and potential or actual customers referring or relating to Deloitte, uFACTS, Deloitte Property, the uFACTS Computer Program, or the uFACTS Trade Secrets.

47.    Sagitec's communications concerning this Litigation, both internally and with other Persons.

48.    The topics, subjects, witnesses, and Documents relied on by Sagitec in responding to Deloitte's discovery requests.

49.    The topics, subjects, witnesses, and Documents relied on by Sagitec to file its Answer, including without limitation each of Sagitec's responses and allegations in its Answer, the factual basis for each of Sagitec's admissions and denials, and the assertions in Sagitec's Counterclaims.

50.    The topics, subjects, witnesses, Documents, and damages referenced in Sagitec's Initial Disclosures.

51.    Sagitec's Document retention policies, including without limitation the retention of emails or other electronic or physical Documents.

52.    When, if at all, Sagitec began preserving Documents concerning this Litigation, Deloitte, Deloitte Property, uFACTS, and Neosurance.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 18, 2024, I caused a true and correct copy of the foregoing

Document to be served on the following counsel of record via electronic mail:


Anne Shea Gaza (No. 4093)
Robert Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
thartzell@ycst.com

Christopher K. Larus
David A. Prange
Rajin S. Olson
Brandon A. Carmack
ROBINS KAPLAN LLP
8000 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500
clarus@robinskaplan.com
dprange@robinskaplan.com
rolson@robinskaplan.com
bcarmack@robinskaplan.com


                    */s/ Patrick Arnett*
                     Patrick Arnett

# EXHIBITS 2 - 11

## Redacted in their Entirety