IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DELOITTE CONSULTING LLP and )
DELOITTE DEVELOPMENT LLC, )
                                  )
         Plaintiffs, )
                                  )
         v. )   C.A. No. 23-325-WCB
                                  )
SAGITEC SOLUTIONS, LLC, )   **FILED UNDER SEAL**
                                  )
         Defendant. )

## JOINT LETTER TO THE HONORABLE WILLIAM C. BRYSON

Dear Judge Bryson:

Deloitte respectfully moves to amend the deadlines in the Scheduling Order (D.I. 205) by extending all case deadlines by four weeks, as set forth in the table below, and subject to the same restrictions in the parties' previous extensions.[1]  Sagitec opposes that proposal and does not believe any extension of all case deadlines is justified.  The parties explain their respective positions, below.

| Event | Current Deadline | Deloitte's Proposal |
|---|---|---|
| Fact Discovery Closes | February 28, 2025 | March 28, 2025 |
| Opening Expert Reports | April 3, 2025 | May 1, 2025 |
| Rebuttal Expert Reports | May 8, 2025 | June 5, 2025 |
| Expert Depositions Complete | May 30, 2025 | June 27, 2025 |
| Summary Judgment and Daubert Motions Due | June 26, 2025 | July 24, 2025 |
| Summary Judgment and Daubert Oppositions Due | July 24, 2025 | August 21, 2025 |
| Summary Judgment and Daubert Replies Due | August 7, 2025 | September 4, 2025 |
| Pretrial Conference | TBD | TBD |
| 5-Day Trial | TBD | TBD |

**Deloitte's Position:**

Modifications to a scheduling order are allowed "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b).  Courts "have broad discretion in managing discovery." *Siemens Med. Sols. v. Humedica Inc.*, C.A. No. 14-880-LPS-CJB, 2015 WL 1738186, at *1 (D. Del. Apr. 8, 2015) (granting "modest" and "relatively short" 30-day extension of deadlines).  Good cause exists to amend the case schedule by four weeks to accommodate the orderly completion of fact discovery, which includes the issues discussed by the parties and the Court during the February 24, 2025, hearing, before the parties turn to expert discovery.  *See Liqwd, Inc. v. L'Oreal USA, Inc.*, No. 17 Civ. 14, 2019 WL 188534, at *1 (D. Del. Jan. 14, 2019) (granting request to modify scheduling order to address open issues prior to engaging in expert discovery).  Indeed, despite Deloitte's attempt to resolve all outstanding fact discovery issues before the February 28, 2025, deadline, a range of open fact discovery tasks, including those ordered by the Court on February 24, 2025, remain to be completed within the next four weeks, rendering the now-already-past

---

[1] The parties' previous schedule extensions were "solely for the parties to (1) continue to supplement responses to discovery requests already served; (2) address identified deficiencies, including deficiencies raised during the extension; and (3) take depositions," such that "no party shall [be permitted to] serve new Interrogatories, Requests for Production of Documents, or Requests for Admission absent further agreement of the parties or leave of the Court."  D.I. 205 at 2.

discovery deadline impossible to meet.  These open tasks include:

1.    Deloitte's two depositions of Mark Lanterman (scheduled for March 12) and Chris Madel (March 17),[2] which the Court granted Deloitte leave to take in its order dated February 24, 2025, D.I. 231.  As the Court observed at the February 24 hearing, just these two additional depositions would require an extension of fact discovery.  Ex. 1 (Feb. 24, 2025 Hearing Tr.) at 15:11–16:3 ("[W]hat I'm going to do is . . . order that the depositions of Lanterman and Madel be permitted . . . .  ***Now, that would involve an extension of the period for fact discovery, but I think it's justified in this case.***") (emphasis added).  *Cf. Evonik Degussa GMBH v. Materia Inc.*, No. 9 Civ. 636, 2011 WL 13152274, at *4 (D. Del. Dec. 13, 2011) (on motion to amend counterclaim, finding good cause to amend scheduling order under Rule 16 where the movant did not delay in taking depositions because "the "depositions could not reasonably be taken earlier because the parties' document production was not complete and because of other scheduling difficulties").

2.    Sagitec's two additional depositions[3] of Deloitte's former counsel Fish & Richardson (scheduled for March 13);[4] and Sagitec's continued 30(b)(6) deposition of Deloitte for the additional topics the Court allowed Sagitec to pursue.  D.I. 231.  Sagitec has also sought additional time with three other Deloitte 30(b)(6) representatives (which Sagitec raised on February 17, 28, and March 5)on February 28), an issue the parties are currently negotiating.[5]

3.    Sagitec's contention that it believes certain Deloitte interrogatories are deficient, raised for the first time during the February 24 hearing, and Deloitte's agreed-to supplementation of those interrogatories, which it will provide to Sagitec on March 21. D.I. 232.

4.    Additional document productions from third-party Computer Forensic Services, Mark Lanterman's forensic consulting company, received by Deloitte on February 3 and February 28, 2025, totaling over 800 GB, which Deloitte is still diligently reviewing in

---

[2] Sagitec claims that Mr. Lanterman and Mr. Madel were made available at earlier dates on which Deloitte "declined to proceed."  In fact, both depositions were originally scheduled to happen prior to the close of the original fact discovery period and had to be rescheduled due to Sagitec's attempt to prevent Deloitte from seeking those depositions.  Sagitec's further argument that Deloitte could have taken these depositions "before Deloitte had used its original ten depositions" also ignores that Sagitec was going to oppose Deloitte's request for additional depositions anyway, which would put the parties in the same position.  *See* D.I. 223 at 1 (citing D.I. 219-3, 7/10/24 Olson email to Teleky).  In any event, these depositions will now happen on the first available time that the parties are mutually available.

[3] Sagitec informed Deloitte on March 4, 2025 that it would withdraw its deposition subpoena to former Deloitte employee Susan Shuler, which until then was scheduled for March 14, 2025.

[4] Deloitte originally agreed to allow Sagitec's deposition of Fish and Richardson to occur outside the fact discovery period when it was scheduled to occur within one week of the fact discovery period closing, a date which Sagitec unilaterally took off calendar and pushed back.

[5] Sagitec has also indicated it may have ***additional*** concerns it has not yet raised, and purported to reserve its rights to identify more.

preparation for his deposition.[6]  *See Liqwd, Inc.*, 2019 WL 188534, at *2 (D. Del. Jan. 14, 2019) (granting  scheduling order amendment where non-movant "delayed production of over 20,000 pages of document discovery").

A modest four-week extension of fact discovery and all subsequent deadlines will best allow the parties to fully negotiate and resolve these issues, take all remaining depositions, supplement written discovery responses, complete review of any new productions, and thereby complete fact discovery in an orderly process.  Attempting to simultaneously resolve these issues and engage in expert discovery and expert reports, however, would be prejudicial—a reality that Sagitec acknowledged when the discussion was focused on just taking Deloitte's additional depositions.  *Cf.* D.I. 223 at 2 ("Sagitec would be prejudiced by these depositions occurring outside the fact discovery period . . . as it simultaneously works to prepare expert reports.").  It is simply not necessary for the parties to simultaneously juggle the completion of fact discovery while also engaging in expert discovery—especially considering the Court's guidance that trial is unlikely to occur until the beginning of 2026.  Ex. 1 at 50:11–13 ("I think we're really looking to pushing [trial] back to the beginning of 2026, realistically.").

Contrary to Sagitec's argument, these remaining issues (and in particular, those related to the remaining depositions) bear directly on expert reports. ███████████████████████████████████████████████████████████████████████████████████████████—issues that will be discussed at length during the depositions of Mr. Lanterman and Mr. Madel.  *See* D.I. 219 at 1-2 (summarizing the subject matter on which these witnesses will testify).[7]  Especially given ████████████████████████████████████████████████████████████████████████████████████████████████████  *see, e.g.*, D.I. 219 Ex. 1 at 15–16,[8] these depositions are virtually certain to be critical to the analysis required for Deloitte's expert reports on Sagitec's possession, use, and destruction of such materials.

Sagitec does not explain how a modest four-week extension of summary judgment deadlines will prejudice Sagitec such that it weighs against an orderly completion of fact discovery before

---

[6] Sagitec's argument that Deloitte's concerns are "of Deloitte's own making" are not correct. CFS agreed on October 18, 2025 to collect and produce documents responsive to many of Deloitte's requests, but nevertheless did not make those large productions to Deloitte until early February, less than nine days before Mr. Lanterman's then-scheduled deposition, and only after Deloitte sought an update on the status of that production.  In any event, Deloitte diligently sought to meet and confer with CFS on its remaining document requests after it became clear that the parties' efforts to engage in mediation were not fruitful.

[7] Although Sagitec's source code productions are certainly part of Deloitte's expert analysis, Sagitec is wrong to suggest that by producing certain parts of its code, Deloitte "has what it needs to prepare expert reports."  Expert reports will also rely on the documents produced by the parties and third parties and deposition testimony, which will help the experts understand how to best analyze that evidence.

[8] Sagitec's last minute supplementation of this interrogatory response does not change its prior representations, nor does it change the fact that the upcoming deposition testimony about Sagitec's knowledge, possession, use, and destruction of these materials will likely weigh on Deloitte's expert reports.

moving to expert discovery.  Sagitec's self-serving confidence that "this case will be resolved at summary judgment" does not equate to prejudice; indeed, as the Court may expect, Deloitte does not share Sagitec's belief that Sagitec's prospective summary judgment arguments are meritorious or that they will entirely resolve this case before trial.  And in any event, ██████████ ████████████████████████████████████████████████████████████ by a four-week extension of these deadlines.  Thus, any hypothetical prejudice to Sagitec does not outweigh the good cause to modify the scheduling order.

Sagitec characterizes Deloitte's request as a "sweeping four-week extension," but the discovery period in this case has extended over more than 76 weeks. *See* D.I. 51 (scheduling order entered September 15, 2023). An addition of four weeks to the period in order to complete agreed-to depositions and other discovery constitutes an extension of about 5%. It is not a significant revision to the schedule. Moreover, Deloitte was diligent in pursuing its current discovery, and that discovery has already been agreed to or permitted by the Court. Sagitec's alternative position is that the parties essentially ignore the fact discovery deadline and proceed outside of the schedule, rather than conforming the schedule to the status of the case as it has developed. The most practical solution for both parties is to allow the orderly completion of fact discovery, and then allow the parties to begin expert discovery.

Thus, for the foregoing reasons, Deloitte requests that this Court grant its motion for a general four-week extension of the case deadlines as set forth in the table above, and subject to the same restrictions in the parties' previous schedule extensions.  *See* D.I. 205 at 2.

**Sagitec's Position:**

Deloitte has failed to show good cause to again extend all remaining deadlines in this case. "A party seeking to modify a Scheduling Order must show 'good cause' for the change." *Dow Chem. Canada Inc. v. HRD Corp.*, 287 F.R.D. 268, 270 (D. Del. 2012); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). "To establish good cause, [the moving party] must show that a more diligent pursuit of discovery was ***impossible*.**" *Id.* (emphasis added) (citation omitted). "To demonstrate the good cause necessary to allow for modification of a scheduling order, the moving party must demonstrate that, despite its own diligent efforts, scheduling deadlines ***cannot*** be met." *Siemens Med. Sols. v. Humedica Inc.*, C.A. No. 14-880-LPS-CJB, 2015 WL 1738186, at *1 (emphasis added) (citations omitted). Deloitte does not assert it ***cannot*** meet the opening expert report deadline of April 3, 2025 or that it would be ***impossible*** to do so. It merely suggests that a sweeping four-week extension would be more convenient for Deloitte. That is not good cause.

The limited "open fact discovery tasks" that Deloitte identifies are of Deloitte's own making and will not prevent Deloitte from meeting the remaining deadlines in the current Scheduling Order. In granting Deloitte's belated request to take additional depositions, the Court expressly advised the parties that the limited remaining fact discovery should not "interfere with other scheduled events in the case." Ex. 1 (Feb. 24, 2025 Hearing Tr.) at 15:16-16:3. The handful of remaining depositions and limited interrogatory supplementation by Deloitte will not interfere with the other scheduled events in this case, including the April 3, 2025 opening expert report deadline. As Deloitte's requested fact discovery extension of March 28, 2025 reveals, both parties expect

that the specific outstanding discovery tasks will all be accomplished in advance of that deadline:

1. **Deloitte's depositions of Messrs. Lanterman and Madel will be done by March 17.** Consistent with the Court's direction to promptly complete the additional depositions Deloitte sought in its recent motion (*Id.*), Mr. Lanterman's deposition is scheduled for March 12, and Mr. Madel's deposition is scheduled for March 17. Both of these witnesses were available for their depositions on earlier dates (February 26 and March 10, respectively), but Deloitte declined to proceed at those times. To the extent Deloitte believes testimony of Messrs. Lanterman or Madel is relevant to its expert reports, Deloitte will have ample time to incorporate that testimony into its opening expert reports due April 3, 2025.[9] If Deloitte wished to take their depositions earlier, it should have done so when Messrs. Lanterman and Madel were offered for deposition in July and August of 2024, before Deloitte had used its original ten depositions. Deloitte's choice to wait until February 2025 to seek leave for additional depositions, rather than proceeding with Messrs. Lanterman and Madel's depositions in July or August 2024, does not show the diligence that Deloitte claims.

2. **Sagitec will complete the depositions of Deloitte-affiliated witnesses by March 13 unless Deloitte delays its depositions further**. At this time, only two Sagitec-noticed depositions remain: Fish & Richardson (Deloitte's legal counsel responsible for certain pre-suit communications with Sagitec and alleged Deloitte copyright registrations), and additional Deloitte 30(b)(6) testimony on Topics 60 and 119 ordered by the Court.[10] Sagitec previously noticed the deposition of Deloitte's counsel to take place during the discovery period, but agreed to take the deposition outside of the scheduled fact discovery period as an accommodation to Fish & Richardson. This deposition is scheduled for March 13.

   Deloitte's testimony on two remaining Rule 30(b)(6) topics ordered by the Court has no bearing on the opening expert report deadline. Deloitte has thus far not provided availability for Topics 60 or 119, despite Sagitec's requests, but presumably Deloitte will make its witness(es) available before opening expert reports are due. Moreover, Deloitte already designated Annica Jin-Hendel for Court-ordered Topics 126 and 127, and she

---

[9] Sagitec disputes Deloitte's assertion that Sagitec has asserted that "these witnesses and their investigation represent ***all*** of Sagitec's knowledge on the topics of ███████████ ███████████." *See supra*, at 3 (emphasis original). For this proposition, Deloitte cites Sagitec's interrogatory responses that Deloitte submitted with letter briefing on February 19, 2025. *Id.* (citing D.I. 219, Ex. 1, at 15-16). Deloitte ignores that Sagitec supplemented this response on May 31, 2024, identifying additional material Sagitec had identified and additional searches that Sagitec had run. D.I. 219, Ex. 1, at 18-21. Sagitec also supplemented this response on February 28, 2025 to account for (1) Mr. Kotcherlakota's interviews of 17 Sagitec employees and his continued deposition on February 21, 2025, per the Court's Order at D.I. 193, and (2) Sagitec's investigation, keyword searches, and production of documents in this case. *See* Ex. 2 (Excerpt of Sagitec's Third Supplemented Objections and Responses to Plaintiffs' First Set of Interrogatories) at 21-22.

[10] Sagitec has withdrawn its deposition subpoena of Susan Shuler.

was deposed February 28. In addition, Sagitec agreed to drop Topics 114-117. D.I. 232.

Sagitec has diligently raised issues regarding Deloitte's failure to properly prepare its Rule 30(b)(6) designees who were deposed February 12, 19, and 28. Although Deloitte has represented that the parties are "currently negotiating" Sagitec's concerns raised on February 18, February 27, and March 5, Deloitte has so far failed to either provide any substantive response or provide the witnesses' availability for deposition.[11] To the extent that Deloitte now contends that resolution of these issues weighs in favor of its motion to extend all case deadlines, those concerns are entirely of Deloitte's own making. Deloitte's own failure to provide deposition availability or respond to discovery deficiencies cannot justify an extension of all case deadlines.

3. **Deloitte's interrogatory supplementation in lieu of testimony on 30(b)(6) Topics 62 and 125 will be complete by March 21**. Pursuant to the Court's Order, D.I. 224, the parties met and conferred on alternative means for Deloitte to provide testimony regarding Topics 62 and 125. The parties agreed that Deloitte would supplement its responses to Interrogatories 13 and 7, respectively, to address only this information. D.I. 232 (joint statement that supplements will be "solely to provide additional information sought by" Topics 62 and 125, and that "Deloitte will not seek to use this supplement to expand the scope of its copyright contentions by identifying new alleged instances of alleged copying"). Deloitte requested a March 21 due date for this narrow supplementation, and Sagitec agreed. Deloitte does not explain how its own supplemented interrogatory responses are relevant to Deloitte's ability to prepare its expert reports due April 3, 2025.

4. **Third-party Computer Forensic Services ("CFS") completed its production**. CFS is Mark Lanterman's company. CFS produced 11 emails on February 28, 2025, totaling 16 pages, and Deloitte does not argue that it has been unable to review this limited production. CFS also produced 383 bates-labeled documents on February 3, 2025, and 800 GB of native data on hard drives shipped to Deloitte on January 31, 2025. As Sagitec advised Deloitte via email on January 31, 2025, this 800GB "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ While the volume of data on these hard drives is large, [Sagitec] understand[s] that it is generally coextensive with material that Sagitec has already produced in this case." Deloitte does not argue otherwise. To the contrary, despite receiving this production weeks before the February 24, 2025, discovery hearing, Deloitte did not argue it needed more time to review this production before conducting Mr. Lanterman's March 12 deposition.

Moreover, Deloitte's purported concerns regarding the timing of CFS's production are largely of Deloitte's own making. CFS provided objections and responses to Deloitte's document subpoena on October 18, 2025, which included an offer to meet and confer on several requests. Deloitte chose not to request any such meet-and-confer at that time, and CFS proceeded to collect and product documents on January 31 and February 3, 2025. It was not until January 29, 2025—more than three months after CFS served its objections

---

[11] The parties previously agreed that Sagitec could raise disputes arising from Ms. Jin-Hendel's February 28 deposition by March 5, 2025.

and nine days before Mr. Lanterman's then-scheduled deposition—that Deloitte first requested a meet and confer. Deloitte has never explained why it waited over three months to follow up on CFS's objections and responses. More importantly, Deloitte has not explained how the CFS production timeline, resulting from Deloitte's inaction, has impeded Deloitte's desired discovery.

While Deloitte states further depositions "bear directly on" its expert reports, it does not argue that it requires any remaining discovery to be completed before it begins preparing its expert reports. Nor could it. Sagitec made its source code available for inspection in November 2023, and Deloitte began inspecting it in December 2023. *See also* Ex. 3 (Excerpt of Sept. 13, 2023 Hearing Tr.) at 31:19-23 ("[W]ouldn't it be useful as a means of moving the civil case along for discovery to be conducted, such that the source code of the Neosurance was made available to the plaintiffs, for example?"). Deloitte's most recent and ongoing inspection began on March 3, 2025, involving three on-site reviewers. Sagitec produced complete financial statements in December 2023. Deloitte completed its Rule 30(b)(6) depositions in the current fact discovery period, including depositions in July and August of 2024. In short, Deloitte already has what it needs to prepare expert reports, so it cannot show good cause to move expert deadlines.

The Court's indication that trial is not likely to occur until December 2025 or January 2026 also does not justify Deloitte's requested extension. If this is a "lack of prejudice" argument, it is not relevant to Deloitte's requirement to show good cause. *See MacQueen v. Union Carbide Corp.*, C.A. No. 13-831-SLR-CJB, 2015 WL 167674, at *3 ("[W]hether Rule 16(b)(4)'s good cause requirement is met depends on the 'diligence of the movant, and not on prejudice to the non-moving party.'") (citation omitted).

Even if Deloitte could meet its burden to show good cause, however, the prejudice to Sagitec weighs against the proposed extension. *See Dow Chem. Canada Inc.*, 287 F.R.D. at 270 ("In deciding whether to modify a scheduling order, the Court may consider any prejudice to the party opposing the modification. . . . Prejudice may include the delay of a trial date.") (citations omitted). There is compelling evidence that Deloitte does not own the alleged intellectual property it asserts in this case and that Deloitte's claims are barred by applicable statutes of limitation. As a result, Sagitec believes that this case will be resolved at summary judgment, as Sagitec adverted in prior motion practice. *See, e.g.*, D.I. 102 (statute of limitations); D.I. 171 (ownership); D.I. 176 (trade secret status). In the meantime, ███████████████████████ ████████████████████████. Sagitec would be prejudiced by further delay in the resolution of this case. Fact discovery was originally set to close in April 2024, with summary judgment to be fully briefed by October 4, 2024, and trial to occur in December 2024. D.I. 51. Instead, Deloitte has had the benefit of several extensions of case deadlines to take extensive discovery of Sagitec and third parties and to work towards preparing its opening expert reports. *See* D.I. 76, 100, 153, 168, 198, 205. Sagitec is eager to resolve Deloitte's allegations on the merits at summary judgment and, if necessary, at trial. Further, as the Court acknowledged, currently-filled trial blocks may become available later. Ex. 1 (Feb. 24, 2025 Hearing Tr.) at 50:22-51:6 ("It's possible, and you never know, but something may open that will allow me to schedule a trial before [the beginning of 2026]. And if so, then I will get back to you and see if that's acceptable, given your schedules. I would like to get these cases disposed of as quickly as possible[.]"). Deloitte's proposal would foreclose the potential use of an earlier trial block should the parties need to try the case, and it would mean that Sagitec would have to wait even longer to

clear its name, further prejudicing Sagitec. Deloitte's suggestion that this four-week extension is "not a significant revision to the schedule" because fact discovery has already extended 76 weeks (well over a year) only underscores the point that this case has gone on long enough.

Sagitec has repeatedly confirmed that it will allow Deloitte the time reasonably necessary to allow for the orderly completion of the limited remaining discovery noted above. According to the dates Deloitte identifies for this limited discovery, it appears that the remaining depositions can be completed by March 17, 2025. This limited discovery should not, however, require moving the remaining case deadlines which Deloitte has known about for months, including the April 3, 2025 deadline for opening expert reports. *See Golo, LLC v. Golo Nutrition, Inc.*, C.A. No. 20-667-RGA-SRF, 2023 WL 183980, at *1-2 (D. Del. Jan. 13, 2023) (granting limited fact discovery extension to conduct five remaining depositions, allowing just three days between close of fact discovery and service of opening expert reports).

Deloitte has not shown good cause to modify the rest of the Court's schedule. Accordingly, Sagitec respectfully requests that the Court deny Deloitte's motion to extend all other case deadlines so that this case may timely proceed to summary judgment and, if necessary, trial.


Respectfully submitted,

*/s/ Andrew E. Russell*

Andrew E. Russell (No. 5382)


cc:    Clerk of Court (by CM/ECF)
       All Counsel of Record (by CM/ECF & Email)

# EXHIBIT 1

Page 1

1                    Discovery Dispute

2      Deloitte Consulting, et al. vs. Sagitec Solutions

3

4               Civil Action No. 23-325-WCB

5

6

7          Moderated by Honorable William Bryson

8               Monday, February 24, 2025

9                     10:00 a.m.

10

11

12               Remote Proceeding

13             Wilmington, DE 19801

14

15

16

17

18

19   Reported by:   Carlo Florio

20   JOB NO:        7187375

21

22

23

24

Page 15

1    list.

2           That does not strike me as this case.

3    And as I say, many of these cases have been reasonably

4    flexible about allowing additional depositions.

5           Now, the ones that have not, by and

6    large look quite different from this case.  They have

7    involved one case in which the party sought 75

8    additional depositions, another one I think 26

9    additional depositions, and many of them looked

10   conspicuously cumulative.

11          This does not strike me that that way.

12   So I think I'm going to -- what I'm going to do is

13   argue, or rather order, that the depositions of

14   Lanterman and Madell be permitted, not Minkkinen and

15   Sambasivam, and that they should be held promptly.

16          Now, I don't know what the schedule is

17   that they could necessarily meet, but "promptly" to me

18   means in the next couple of weeks.  Now, that would

19   involve an extension of the period for fact discovery,

20   but I think it's justified in this case.

21          And rather than putting an artificial

22   date out there, I will rely on the parties to work

23   together in light of the witnesses' schedules to come

24   up with dates for this testimony.

1    I don't want it to be put off for a

2    long period of time, which would interfere with other

3    scheduled events in the case.

4            So that, as far as I'm concerned, is

5    what all that needs to be said about the Deloitte

6    request.

7            Now, with respect to Sagitec's

8    requests, these are more difficult in the sense that

9    they are more technical.  And I would like to hear

10   from the parties on these.

11           And particularly, let me start by

12   asking Deloitte.  How many 30(b)(6) topics did you

13   request testimony on, Deloitte?

14           MR. TELEKY:  I'd have to go back and

15   check to get the exact number, but I believe it was in

16   the ballpark of around 50.

17           THE COURT:  Fifty.  Okay.  Well, these

18   kinds of numbers are to me, 50, and in the case of

19   Sagitec, 127, are mighty large.  I don't know what

20   your experience is, but I've been sitting by

21   designation for now, I guess, 14 years.

22           And I've seen a lot of disputes over

23   30(b)(6) topics and so forth.  I've never seen 127

24   topics.  So this has, I have to confess, affected my

Page 49

```
 1                THE COURT:  Right.
 2                MR. OLSON:  -- without needing to come
 3     back before Your Honor.
 4                THE COURT:  Right.  I would hope you
 5     will do your very best.
 6                MR. OLSON:  Absolutely.
 7                THE COURT:  I enjoy the opportunity to
 8     get to know the lawyers, but I don't enjoy having to
 9     spend a weekend preparing for one of these sessions
10     and then having to make the decisions on the fly.
11                So resolution of these things in house
12     is, as far as I'm concerned, very much preferred.  But
13     if you can't, then you know where to reach me.
14                MR. OLSON:  We'll do our best, Your
15     Honor.
16                THE COURT:  All right.
17                MR. OLSON:  And one -- sorry, one other
18     housekeeping point.
19                THE COURT:  Oh, yes, go ahead.
20                MR. OLSON:  When we had spoke last
21     year, I think Your Honor indicated that trial might
22     take place late fall at the earliest.  We were just
23     wondering if Your Honor had any updates or if you
24     anticipated trial occurring at a different time?
```

Page 50

```
 1            THE COURT:  Well, I don't think that
 2   there's any chance of having a trial before fall.  I
 3   have -- not to trouble you with my schedule, but I
 4   will trouble you with my schedule anyway.
 5            But I have a trial some every month
 6   between April and October, November, and December
 7   scheduled.  And with sitting in the Court of Appeals
 8   every month, I really can't do more than one, or in
 9   the case of very short trials, maybe two trials in a
10   month.
11            So I'm not expecting that there will be
12   able to be a trial before probably maybe December, but
13   probably not until January or later.
14            Now, you all had a -- there was a
15   mediation stay as I recall, and that kind of threw
16   things a little bit off-kilter for timing.
17            In the meantime, not knowing what would
18   happen with the mediation, I was filling slots for
19   trials.  But now, I think we're really looking to
20   pushing it back to the beginning of 2026,
21   realistically.
22            It's possible, and you never know, but
23   something may open that will allow me to schedule a
24   trial before then.  And if so, then I will get back to
```

Page 51

1    you and see if that's acceptable, given your

2    schedules.

3                    I would like to get these cases

4    disposed of as quickly as possible, but I haven't had

5    a whole lot of settlements in cases recently for

6    whatever reason.  And as a result, I'm pretty much

7    booked through the end of the year.  Okay?

8                    All right.  If no one has anything

9    further, we'll be adjourned.  I'll stay on the line

10   with the court reporter for any questions that he may

11   have that I can help with names, or I don't know that

12   we cited any cases, but any information that he needs

13   that I can help with.

14                    But for everyone else, we're adjourned

15   and I hope that you can work the remaining issues out.

16                    I think in light of what we've agreed

17   to today or what I've ordered and you've agreed to do,

18   I think there's nothing that I need to put in an order

19   at this point.

20                    If one of you would like an order, I'm

21   happy to do it.  If you'd feel more comfortable with a

22   written order, I'm happy to do that.  But if you think

23   that you've got the information you need going forward

24   without an order, I'm happy not to enter an order on

# EXHIBIT 2

# REDACTED IN ITS ENTIRETY

# EXHIBIT 3

Page 1

1           IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF DELAWARE

3    _____

4    DELOITTE CONSULTING LLP,

5            Plaintiff,

6       v.                              Case No.

7    SAGITEC SOLUTIONS LLC,             23CV325WCB

8            Defendant.

9    _____

10                 TELEPHONIC HEARING

11   DATE:         Wednesday, September 13, 2023

12   TIME:         2:00 p.m.

13   BEFORE:       Honorable William C. Bryson

14   LOCATION:     Remote Proceeding

15                 Wilmington, DE 19801

16   REPORTED BY:  Ciarra Armstrong, Notary Public

17   JOB NO.:      6101336

18

19

20

21

22

23

24

Page 2

1      A P P E A R A N C E S
2  ON BEHALF OF PLAINTIFF DELOITTE CONSULTING LLP:
3     JOHN W. SHAW, ESQUIRE (by telephone)
4     Shaw Keller LLP
5     1105 North Market Street, 12th Floor
6     Wilmington, DE 19801
7     jshaw@shawkeller.com
8     (302) 298-0700
9
10    JOSHUA L. SIMMONS, ESQUIRE (by telephone)
11    Kirkland & Ellis LLP
12    601 Lexington Avenue, Floor 50
13    New York, NY 10022
14    joshua.simmons@kirkland.com
15    (212) 446-4989
16
17    PATRICK ARNETT, ESQUIRE (by telephone)
18    Kirkland & Ellis LLP
19    1301 Pennsylvania Avenue Northwest
20    Washington, DC 20004
21    patrick.arnett@kirkland.com
22    (202) 389-5160
23
24

Page 4

1            E X H I B I T S
2  NO.       DESCRIPTION          ID/EVD
3            (None marked.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 3

1      A P P E A R A N C E S (Cont'd)
2  ON BEHALF OF DEFENDANT SAGITEC SOLUTIONS LLC:
3     ANNE SHEA GAZA, ESQUIRE (by telephone)
4     ROBERT VRANA, ESQUIRE (by telephone)
5     Young Conaway Stargatt & Taylor LLP
6     1000 North King Street, Rodney Square
7     Wilmington, DE 19801
8     agaza@ycst.com
9     rvrana@ycst.com
10    (302) 571-6600
11
12    CHRISTOPHER LARUS, ESQUIRE (by telephone)
13    DAVID PRANGE, ESQUIRE (by telephone)
14    BRANDON A. CARMACK, ESQUIRE (by telephone)
15    Robins Kaplan LLP
16    800 LaSalle Avenue, Suite 2800
17    Minneapolis, MN 55402
18    clarus@robinskaplan.com
19    dprange@robinskaplan.com
20    bcarmack@robinskaplan.com
21    (612) 349-8500
22
23
24

Page 5

1            P R O C E E D I N G S
2       MR. SHAW:  Good afternoon, Your Honor.
3  This is John Shaw from Shaw Keller LLP, and joining me
4  are Josh Simmons and Patrick Arnett from Kirkland &
5  Ellis.
6       THE COURT:  Okay.  And who is going to
7  be speaking today?
8       MR. SIMMONS:  Your Honor, this is Mr.
9  Simmons.  I'll be addressing the motion to stay and
10 motion for more definite statement.  Mr. Arnett will
11 address any questions on the motion with regard to
12 personal jurisdiction and venue.
13      THE COURT:  Okay.  Now who do we have
14 for the defendant?
15      MS. GAZA:  Good afternoon, Your Honor.
16 It's Anne Gaza and Rob Vrana from Young Conaway on
17 behalf of Defendant Sagitec Solutions.  And we are
18 joined by Chris Larus, David Prange, and Brandon
19 Carmack of Robins Kaplan.
20      THE COURT:  Okay.  And who will be
21 speaking today?
22      MR. LARUS:  Good afternoon, Your Honor.
23 This is Chris Larus, and I will be addressing the
24 motion to stay, and my partner, David Prange, will be

2 (Pages 2 - 5)

Page 30

1 bit from deciding whether to seek a preliminary
2 injunction is we don't have the documents, and it's a
3 little hard to bring a preliminary injunction to Your
4 Honor without having those.
5        You know, we have sort of seen the
6 indictment, obviously. We'd like to actually know
7 what's going on, but we're not taking a preliminary
8 injunction off the table.
9        But certainly a permanent injunction is
10 certainly something that Deloitte is seeking.
11        THE COURT: Okay. If that is all you
12 have, I have read the briefs and I'm aware of the
13 factors, so I think you have covered the areas other
14 than simply walking through the factors, which I think
15 would not be all that useful.
16        So let's move on. Actually, I tell you
17 what. I will give, if he wants it, Mr. Larus an
18 opportunity to rebut on this if there's anything that
19 he would like to say. Keeping in mind that the time
20 is moving along. Mr. Larus?
21        MR. LARUS: Thank you, Your Honor.
22 Very briefly, and I will be cognizant of time.
23        Counsel for Deloitte has said that it
24 was unclear to him what facts would be at issue, or we

Page 31

1 would be obstructed from knowing in terms of if we
2 were forced to respond now to the complaint and engage
3 in discovery.
4        We would start with exactly what's
5 reflected in paragraph 43 of Deloitte's complaint,
6 which contains specific factual allegations regarding
7 the conduct of Mr. Sambasivam and Mr. Minkkinen that
8 forms the very underlying basis of this entire trade
9 secret claim.
10        That's the information that we don't
11 have access to during the limited period of time in
12 which these two individuals are subject to criminal
13 jeopardy --
14        THE COURT: Let me ask you this
15 question. Let me ask you this question.
16        In the nature of things that could be
17 done in the civil case without tramping on the rights
18 of any indicted individuals or otherwise of getting in
19 the way of the criminal proceedings, wouldn't it be
20 useful as a means of moving the civil case along for
21 discovery to be conducted, such that the source code
22 of the Neosurance was made available to the
23 plaintiffs, for example?
24        MR. LARUS: Well, Your Honor, I think

Page 32

1 that this question bridges into the next motion or one
2 of the sub -- future motions about our request for a
3 more definite statement, but --
4        THE COURT: Okay. Well, I'm throwing
5 this out because it seems to me that there are some
6 things that could be done in the civil case, and this
7 is one that comes immediately to mind, and it was
8 alluded to, I think, by Mr. Simmons.
9        But I would think that that would be
10 very revealing. If it turns out that the source code
11 doesn't look anything like Deloitte's product, then
12 who knows? Maybe the case is over.
13        If it looks exactly like what
14 Deloitte's product is, then that would be pretty
15 significant.
16        Why isn't that something that could
17 advance the civil case without creating the kinds of
18 risks that you've been emphasizing or presented by
19 having two criminal defendants who are, I think we can
20 all agree, more or less in the middle of the civil as
21 well as the criminal case?
22        MR. LARUS: Your Honor, if we had a
23 sufficient identification of Deloitte's purported
24 claimed secrets, that type of comparison might well be

Page 33

1 something that could move forward.
2        There would be some inefficiencies,
3 perhaps, of a bifurcated discovery like that, but we
4 would agree that that would be something that could
5 potentially move forward. We're quite confident of
6 what we understand the outcome of that to be.
7        We believe it would be appropriate only
8 after there was a clear identification of the claimed
9 trade secrets so that we don't have a situation in
10 which Deloitte is obtaining discovery regarding
11 Sagitec's perhaps most confidential information.
12        Poking around and then trying to
13 identify what it contends might support a trade secret
14 claim. But if there were a proper identification, I
15 don't disagree that that's a limited scope that might
16 be appropriate.
17        THE COURT: All right. Okay. let's
18 move on now. I think that logically now, we've
19 already crossed over the logical threshold, but let's
20 move to the motion to dismiss and the motion to
21 transfer.
22        Who is going to speak on that from the
23 defendant's point of view? Is that Mr. Prange?
24        MR. PRANGE: Yes, Your Honor. David

9 (Pages 30 - 33)

Page 82

1  what their trade secrets are, rather than describing
2  generalized categories, which the cases that we have
3  cited in our brief have said that is not enough.
4          But really it gets to the practical
5  point of the problem, which is, from what I have heard
6  today, is that Deloitte wants to go on a fishing
7  expedition.
8          What they want to do, and the concern
9  that we have, is they want to get to discovery in
10  order to have a disclosure of our source code, in
11  order to look at that, and tailor their identification
12  based on what our source code does.
13         That's not appropriate.  What is
14  appropriate is that right now Deloitte should be able
15  to identify exactly what their trade secrets are
16  because that is what it means when they sign the
17  complaint; is that they have done their due diligence
18  to say they have trade secrets.
19         If that's the case, then they can
20  disclose them now.
21         And so that we don't have this issue,
22  so we can understand the plausibility of their
23  complaint and figure out whether they are actually
24  stating something that we can then go either to

Page 83

1  challenge on a 12C motion or proceed into discovery.
2  Thank you, Your Honor.
3          THE COURT:  All right.  I tell you
4  what?  I would like to hear from Mr. Summers briefly
5  on one point that was raised in rebuttal that I think
6  had not come up before or at least had not come up
7  with specificity, and that is the reference to the
8  specific document in Oakwood that Mr. Prange alluded
9  to.
10         Mr. Simmons, do you have any response
11  on that point?
12         MR. SIMMONS:  Yes, Your Honor.  So I
13  think the document was just one of the allegations.
14         There were other -- you know, the court
15  actually describes in page 907 a variety of things
16  that it said are sufficient, including the description
17  and the document.
18         But as I said in my opening remarks, we
19  did reference a document.  We referenced the uFACTS
20  solution framework documentation at paragraph 48 of
21  the complaint.
22         And that document is hundreds of pages
23  of detailed descriptions of the functionality of the
24  uFACTS framework, and we allege that Sagitec took it,

Page 84

1  and used it to build Neosurance.
2          And what I would say about that is, you
3  know, we think our other allegations are sufficient,
4  but even that, you know, is in line with Oakwood.
5          And I would just direct the court back
6  to the You Map vs. Snap case that we cited in our --
7  in our briefing, which said that if you find that
8  there is sufficient trade secret identification for
9  anything, then the better course is deny the Rule 12E
10  motion because we're going to end up in discovery
11  anyway.
12         And it sort of is putting the cart
13  before the horse and delaying the case, which is
14  exactly why the case is like Shadler, "Hey.  You
15  shouldn't be spending the courts time on a motion for
16  more definite statement if it's just going to delay
17  the case."
18         THE COURT:  Okay.  All right.  I think
19  we've exhausted the subject matter, if not all of us
20  and the court reporter, but thank you for your
21  arguments.  And I thank the court reporter for hanging
22  with us on this.
23         It was a long session, but I think one
24  that had a lot of substance in it, and I appreciate

Page 85

1  the attorney's presentations.
2          What I'm going to do is I will adjourn
3  the session, and then I will stay on the line for a
4  couple of minutes with the court reporter to help out
5  if there were any case names or names of parties or
6  other things that the court reporter may not have
7  caught and try to assist.  So for now, we're
8  adjourned, and off the record.
9          (Whereupon, at 3:44 p.m., the
10         proceeding was concluded.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24

22 (Pages 82 - 85)

Page 86

```
1       CERTIFICATE OF DEPOSITION OFFICER
2          I, CIARRA ARMSTRONG, the officer before whom
3    the foregoing proceedings were taken, do hereby
4    certify that any witness(es) in the foregoing
5    proceedings, prior to testifying, were duly sworn;
6    that the proceedings were recorded by me and
7    thereafter reduced to typewriting by a qualified
8    transcriptionist; that said digital audio recording of
9    said proceedings are a true and accurate record to the
10   best of my knowledge, skills, and ability; that I am
11   neither counsel for, related to, nor employed by any
12   of the parties to the action in which this was taken;
13   and, further, that I am not a relative or employee of
14   any counsel or attorney employed by the parties
15   hereto, nor financially or ot
16   outcome of this action.
17
18              CIARRA ARMSTRONG
19            Notary Public in and for the
20              State of New Jersey
21
22
23
24
```

Page 87

```
1       CERTIFICATE OF TRANSCRIBER
2          I, EBELIN MORALES, do hereby certify that
3    this transcript was prepared from the digital audio
4    recording of the foregoing proceeding, that said
5    transcript is a true and accurate record of the
6    proceedings to the best of my knowledge, skills, and
7    ability; that I am neither counsel for, related to,
8    nor employed by any of the parties to the action in
9    which this was taken; and, further, that I am not a
10   relative or employee of any counsel or attorney
11   employed by the parties hereto, nor financially or
12   otherwise interested in the outcome of this action.
13
14
15              EBELIN MORALES
16
17
18
19
20
21
22
23
24
```

23 (Pages 86 - 87)