IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

<table>
<tr><td>DELOITTE CONSULTING LLP and<br>DELOITTE DEVELOPMENT LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SAGITEC SOLUTIONS, LLC,<br><br>Defendant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>C.A. No. 23-325-WCB<br><br>**REDACTED VERSION**<br>**Filed: July 31, 2025**</td></tr>
</table>

## SAGITEC'S MEMORANDUM OF LAW IN OPPOSITION TO DELOITTE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

OF COUNSEL:

Christopher K. Larus
William E. Manske
Rajin S. Olson
THOMPSON HINE LLP
800 Nicollet Avenue, Suite 2925
Minneapolis, MN 55402
(612) 605-5900
Chris.Larus@ThompsonHine.com
William.Manske@ThompsonHine.com
Rajin.Olson@ThompsonHine.com

Dated: July 24, 2025

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Defendant*
*Sagitec Solutions, LLC*

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

SUMMARY OF ARGUMENT ................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 2

I.     The Parties' Unemployment Insurance Software. ............................................ 2

II.    Deloitte's Copyright Registrations and Claims in This Case. ........................... 3

ARGUMENT ....................................................................................................... 4

I.     Fact Issues Preclude Summary Judgment on Sagitec's Fair Use Defense. ......... 4

     A.    Fair use Factors 2 and 3 weigh in favor of Sagitec. .............................. 5

          1.    Deloitte has failed to demonstrate that the allegedly copied material is Copyright Protectable Expression (Factor 2) ............................ 6

          2.    The allegedly copied material is extremely limited quantitatively, and there is little evidence of qualitative importance (Factor 3). ..................... 9

     B.    There are numerous issues of material fact regarding the remaining fair use factors (1 and 4) that preclude summary judgment. ............................ 10

          1.    Neosurance software implementations are transformative, and at a minimum, questions of fact preclude a contrary finding (Factor 1). ........ 10

          2.    There are several unresolved questions of fact about the impact on the potential market (Factor 4) ....................................................... 13

II.    Material Facts Preclude Summary Judgment on Sagitec's Unclean Hands Defense. ....... 14

     A.    There are at least genuine issues of material fact as to whether Deloitte has unclean hands from its efforts to register and assert its claimed copyrights. ....... 15

     B.    There are at least genuine issues of material fact as to whether Deloitte has unclean hands from its efforts to enforce its alleged trade secrets. ..................... 16

III.   Sagitec's Interrogatory Responses Do Not Bar or Limit Its Defenses. ............................. 18

CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Airframe Sys. v. L-3 Commc'ns Corp.*,
   658 F.3d 100 (1st Cir. 2011)..................................................................5

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
   166 F.3d 772 (5th Cir. 1999) ..........................................................15, 16

*Am. Geophysical Union v. Texaco Inc.*,
   60 F.3d 913 (2d Cir. 1994).................................................................12

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,
   598 U.S. 508 (2023)..........................................................................11

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994)..................................................................9, 10, 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................4

*Charpentier v. Godsil*,
   937 F.2d 859 (3d Cir. 1991)..............................................................20

*Feist Pub., Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)............................................................................6

*Google LLC v. Oracle Am., Inc.*,
   593 U.S. 1 (2021).......................................................................*passim*

*Ins. Co. of N. Am. v. Misch*,
   C.A. No. 88-3669, 1989 U.S. Dist. LEXIS 7414 (E.D. Pa. July 5, 1989)........................18, 19

*Kipp Flores Architects, LLC v. Pradera SFR, LLC*,
   Civil Action No. SA-21-CV-00673-XR, 2023 U.S. Dist. LEXIS 92 (W.D. Tex. Jan. 2, 2023)..................................................................5

*Mifflinburg Tel., Inc. v. Criswell*,
   80 F. Supp. 3d 566 (M.D. Pa. 2015) ...............................................2, 18

*Monsanto Co. v. Rohm & Haas Co.*,
   456 F.2d 592 (3d Cir. 1972)..............................................................16

*In re New Valley Corp.*,
   181 F.3d 517 (3d Cir. 1999)..............................................................14

*Qad, Inc. v. ALN Assocs.*,
   770 F. Supp. 1261 (N.D. Ill. 1991) .............................................1, 15, 16

ii

*SAS Inst., Inc. v. World Programming Ltd.*,
　　64 F.4th 1319 (Fed. Cir. 2023) ...................................................................1, 5, 6

*Scherer Design Grp., LLC v. Ahead Eng'g LLC*,
　　764 F. App'x 147 (3d Cir. 2019) ......................................................................1, 14

*Singleton v. Singleton,*
　　No. 23 Civ. 5525, 2024 U.S. Dist. LEXIS 204854 (N.D. Ga. Nov. 8, 2024) ..........................18

*Solid 21, Inc. v. Richemont N. Am., Inc.*,
　　No. 19 Civ. 1262 (LGS), 2023 U.S. Dist. LEXIS 103613 (S.D.N.Y. June 14, 2023) .........................................................................................................13

*Sony Comp. Entm't, Inc. v. Connectix Corp.*,
　　203 F.3d 596 (9th Cir. 2000) ..................................................................10, 11, 13

*United States v. Acorn Tech. Fund, L.P.*,
　　C.A. No. 03-0070, 2006 U.S. Dist. LEXIS 3507 (E.D. Pa. Jan. 31, 2006) ...........................17

*Worldwide Church of God v. Phila. Church of God, Inc.*,
　　227 F.3d 1110 (9th Cir. 2000) ..............................................................................12

**Other Authorities**

Fed. R. Civ. P. 12(f) ..............................................................................................17

Fed. R. Civ. P. 56(a) ..............................................................................................4

## NATURE AND STAGE OF PROCEEDINGS

Deloitte seeks summary judgment on Sagitec's affirmative defenses of fair use and unclean hands. D.I. 269. The Court should grant *Sagitec's* motion for summary judgment on all of Deloitte's claims for the reasons set forth in Sagitec's Motion for Summary Judgment and deny Deloitte's motion as moot. D.I. 278. Even if any of Deloitte's claims were to survive summary judgment, however, Deloitte's motion should be denied.

## SUMMARY OF ARGUMENT

1.      Issues of material fact preclude summary judgment on Sagitec's fair use defense. Deloitte has failed to present *any* evidence demonstrating that the portions of its registered works that Deloitte contends were copied by Sagitec constitute copyright protectable expression. Sagitec has presented expert opinions and analysis demonstrating that much of the allegedly copied material identified in Deloitte's expert report is not copyright protectable expression. If Deloitte's copyright claim survives summary judgment—which it should not—then the Court will need to evaluate whether the specific materials Deloitte contends were copied are copyrightable. *See SAS Inst., Inc. v. World Programming Ltd.*, 64 F.4th 1319, 1332 (Fed. Cir. 2023). Summary judgment on Sagitec's fair use defense before resolving copyrightability would be premature, and Sagitec has presented evidence more than sufficient to preclude summary judgment at this stage.

2.      Numerous issues of material fact also preclude summary judgment on Sagitec's unclean hands defense. Deloitte's knowing misrepresentations to the copyright office, including falsely claiming ownership of the copyrights for the QUEST Project software, constituted fraudulent, unconscionable, and/or bad faith acts sufficient to demonstrate unclean hands. *See Scherer Design Grp., LLC v. Ahead Eng'g LLC*, 764 F. App'x 147, 150 (3d Cir. 2019); *Qad, Inc. v. ALN Assocs.*, 770 F. Supp. 1261, 1267 (N.D. Ill. 1991). Deloitte's false claims over purported trade secrets it does not own and/or that are public records similarly demonstrate its unclean hands.

3.    The Court should reject Deloitte's claim that Sagitec waived either of these affirmative defenses. Under Rule 8, defendants are required only to "affirmatively *state* any avoidance or affirmative defense." *Mifflinburg Tel., Inc. v. Criswell*, 80 F. Supp. 3d 566, 573 (M.D. Pa. 2015) (emphasis in original). Sagitec met this burden and the factual bases for Sagitec's defenses were properly disclosed in discovery.

## FACTUAL BACKGROUND

### I.    The Parties' Unemployment Insurance Software.

At various times, Deloitte and Sagitec have each provided unemployment insurance ("UI") software to state and other governmental agencies. D.I. 1 ¶¶ 19, 40. Although states administer separate UI programs, states follow the same guidelines established by federal law. Ex. 1 (*Unemployment Insurance Fact Sheet*, U.S. Department of Labor ("DOL"), [1] *available at* https://oui.doleta.gov/unemploy/docs/factsheet/UI_Program_FactSheet.pdf); *see also* Ex. 2 (SAGITEC-DEL_00044113 (D.C. Tax UI RFP)) at '126.

UI software systems must be integrated with other systems, including the Interstate Connectivity Network ("ICON") and State Information Data Exchange System ("SIDES") systems administered by the National Association for State Workforce Agencies ("NASWA"). Ex. 3 (https://www.naswa.org/icon); Ex. 4 (https://www.naswa.org/uisides). To assist states in implementing ICON functionality, the DOL, NASWA, or NASWA's subcontractor Conduent have provided states with a host of technical information including schema, guides, .wsdl files, and more recently, actual source code. Ex. 5 (NASWA Dep. Tr.) at 49:10-52:18. All state UI software systems must interface with ICON, and they must use the same data formats, data schema, requirements, and business rules to communicate with the ICON interface. *Id.* at 38:17-39:23,

---

[1] Exhibits are attached to the declaration of Christopher K. Larus filed concurrently herewith.

43:17-48:22, 169:22-171:25. Many states hire outside vendors to assist them in UI modernization efforts. These vendors have access to certain common material, including DOL regulations and requirements, federal and state laws, materials from NASWA (including materials related to ICON and SIDES interfaces), RFPs and RFQs, SOWs and contracts, as well as ongoing input from state clients, public records, and general industry knowledge. *See, e.g.*, *id.* at 49:10-52:18, 53:10-54:20; Ex. 6 (SAGITEC-DEL_07114368); Ex. 7 (SAGITEC-DEL_07114452); Ex. 8 (SAGITEC-DEL_07114514); Ex. 9 (SAGITEC-DEL_03120345); Ex. 10 (DEL00000086).

## II.    Deloitte's Copyright Registrations and Claims in This Case.

On June 29, 2018, Deloitte filed applications to register three specific versions of the "uFACTS" computer program. *See* Exs. 11-13 (DEL00000001, DEL00000026, DEL00000052). Deloitte's copyright applications contained numerous false statements. Each of Deloitte's applications falsely claimed ownership of the works, when in fact the works were owned by the Commonwealth of Massachusetts. *Compare* Exs. 11-13 *with* Ex. 14 (SOW section 6.7 and Appendix F) (all "works of authorship … shall be the sole property of . . . the Commonwealth"). Deloitte also falsely claimed that the works developed in connection with the Massachusetts QUEST Project were "works for hire" authored by Deloitte Consulting LLC, and that the authors' rights had been assigned to Deloitte Development LLC. *See* Exs. 11-13. Deloitte's applications also failed to disclose that the work titled "uFACTS (NM: Tax and Benefits)" was derivative of works owned by the Commonwealth of Massachusetts. Ex. 12. Deloitte compounded these false statements by concealing from the Copyright Office the fact that ████████████████

████████████████████████████████████████████████

████████████████████████    *Id.*; *see also* Ex. 15 (DEL-SC-000625-630) (████████████████

████████████████████████████████████████████████

███████ ); Declaration of Monty Myers ("Myers Decl.") ¶ 13 (███████████

███ ). In March 2023, Deloitte filed suit against Sagitec asserting these very same copyrights. D.I. 1. Deloitte also accused Sagitec of misappropriating trade secrets, unfair competition, and unjust enrichment, contending that it owned the asserted trade secrets. *Id.* Many of the asserted trade secrets were in fact public records. *See* Ex. 16 (SAGITEC-DEL_02374683) at 47:21-24; Ex. 17 (SAGITEC-DEL_06920267); Ex. 18 (SAGITEC-DEL_07352835); Ex. 19 (SAGITEC-DEL_07352837).

## ARGUMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Deloitte has failed to make such a showing with respect to either of Sagitec's fair use or unclean hands defenses.

## I.    Fact Issues Preclude Summary Judgment on Sagitec's Fair Use Defense.

Sagitec has moved for summary judgment on Deloitte's copyright claim, which, if granted, would render Sagitec's fair use defense moot. *See* D.I. 278 at 7, 14-19. But if any part of that claim were to survive summary judgment—and it should not—there are numerous questions of fact precluding summary judgment on Sagitec's fair use defense.

Fair use is an "'equitable rule of reason' that 'permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.'" *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18 (2021) (citation omitted). Statutory fair use is examined in the context of four factors: (1) the purpose and character of the use, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion used,

and (4) market effects. *See id.* at 19, 26, 29, 33, 35 (citing 17 U.S.C. § 107). These factors are "not exhaustive," and "some factors may prove more important in some contexts than in others." *Id.* at 19 (citations omitted). The concept of fair use is "flexible," and "courts must apply it in light of the sometimes conflicting aims of copyright law." *Id.* at 20. This is especially true "where copyrightable material is bound up with uncopyrightable material, [and] copyright protection is 'thin.'" *Id.* at 21 (citation omitted). "[F]air use can play an important role in determining the lawful scope of a computer program copyright, where "[i]t can distinguish between expressive and functional features of computer code where those features are mixed." *Id.*

### A.    Fair use Factors 2 and 3 weigh in favor of Sagitec.

To assess factors 2 and 3 of statutory fair use, the Court must *necessarily* address whether the material Deloitte contends was copied by Sagitec is (1) covered by Deloitte's copyright registrations; and (2) constitutes copyrightable expression. *SAS Inst., Inc.*, 64 F.4th at 1326 ("[T]he court is tasked with determining the scope of copyright protection."); *see also Kipp Flores Architects, LLC v. Pradera SFR, LLC*, Civil Action No. SA-21-CV-00673-XR, 2023 U.S. Dist. LEXIS 92, at *26 (W.D. Tex. Jan. 2, 2023) (Plaintiff's motion for partial summary judgment on fair use "fails because at this time, a genuine dispute of material fact exists regarding whether [the defendant's] conduct infringed on [the plaintiff's] copyright.").

As detailed in Sagitec's motion for summary judgment, Deloitte cannot prove the allegedly infringing code is covered by Deloitte's registrations because it failed to produce a copy of the versions of uFACTS registered with the Copyright Office. *E.g., Airframe Sys. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 105-08 (1st Cir. 2011) (affirming summary judgment where plaintiff "presented no evidence sufficient to prove the content of its registered source code versions"); *see also* D.I. 278 at 5-9. Even if Deloitte could demonstrate that the specific material it contends was

copied falls within its registrations, Factors 2 and 3 favor fair use because Deloitte has not put forth *any* evidence that the allegedly copied material constitutes copyright protectable expression.

### 1.    Deloitte has failed to demonstrate that the allegedly copied material is Copyright Protectable Expression (Factor 2).

The "nature of the copyrighted work" factor is inherently bound up in the question of copyright protectability. Significantly, "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected." *Feist Pub., Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 348 (1991); *SAS Inst., Inc.*, 64 F.4th at 1326 ("[t]he scope of protection . . . is []not necessarily constant across all elements in a single work"). When the material "is, if copyrightable at all, further than are most computer programs . . . from the core of copyright," this factor "points in the direction of fair use." *Google*, 593 U.S. at 29. For example, when allegedly copied material "is inherently bound together with uncopyrightable ideas . . . and new creative expression," copying of that material may be fair use. *Id.* at 28. Importantly, in assessing this factor, courts examine the portions of the copyrighted work that were allegedly used. *Id.* at 26-27. "[I]t is not enough to simply point to asserted elements and declare them protectable because they are creative or because other choices exist." *SAS Inst., Inc.*, 64 F.4th at 1333 (citation omitted).

Deloitte has failed to put forth *any* specific evidence to demonstrate that the content Deloitte contends was copied into Sagitec's accused Neosurance software constitutes copyright protectable expression. Deloitte initially objected to Sagitec's discovery on this issue, claiming that it "prematurely calls for expert discovery." Ex. 20 (Deloitte's Third Supplemental Objections and Responses to Sagitec's Third Set of Interrogatories) at 319. Then Deloitte provided no expert analysis of the issue. Indeed, Deloitte's proffered expert, Dr. Krein, provided *no opinions* that any specific copied material was copyright protectable expression. *See generally* D.I. 270-8 (Krein Report); *see also* Myers Decl. ¶ 14 (observing Dr. Krein's failure to offer such opinions).

In contrast, Sagitec produced detailed expert opinions and analysis addressing the two groups of source code files Dr. Krein asserts were copied into Sagitec's Neosurance software: ███ ████████████████████████████████ *See* Myers Decl. ¶ 16; D.I. 270-8 at Apps. A-B (████████████████████████████████), App. C (████████████████); *see also* Ex. 20 at 318-319 (██████████████████████).

There also remain disputes as to the ICON interface files copyrightability and authorship. Many of the files were "autogenerated" from third-party files using third-party tools. *See, e.g.*, D.I. 270-8 (Krein Report) ¶¶ 346-47. Sagitec's expert, Mr. Myers, explained that he was able to prepare nearly identical autogenerated source code files from software files provided by third parties using publicly available tools. Myers Decl. ¶ 16. When questioned on the alleged copyright protectable expression in the autogenerated files, Deloitte's 30(b)(6) fact witness, Anil Gosu, testified ███ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████ Ex. 21 (Gosu Vol. II Dep. Tr.) at 313:17-336:8. According to Mr. Gosu, ████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████ *Id.* at 331:22-332:22. Mr. Gosu conceded that ████████████████████████████████ *Id.* at 322:8-21.

Deloitte's ICON interface files are not *per se* protectable simply because they exist in source code. In *Google v. Oracle*, the Supreme Court distinguished the plaintiff's allegedly-copied "declaring code" from its unasserted "implementing code" and "method call" commands. *Google*, 593 U.S. at 26-27. The allegedly-copied "declaring code" was "inextricably bound up with the idea of organizing tasks into what we have called cabinets, drawers, and files, an idea that is also not copyrightable." *Id.* at 27. The "declaring code" was "functional in nature" and "inherently

bound together with uncopyrightable ideas . . . and new creative expression." *Id.* at 28. Likewise, the ███████████████████████████████████ relied upon by Deloitte are akin to the cabinet/drawer/file analogy in *Google*, because they are simply directed to where and how the autogenerated files are located. These configurations are thus not protectable expression.

As to the allegedly-copied database tables, Mr. Myers explained how the subject content was clearly dictated by handbooks from the DOL. Myers Decl. ¶ 16. Mr. Myers provided side-by-side comparisons showing the origin of specific asserted database table components in the DOL handbooks. *Id.* This analysis establishes the database tables as "functional in nature" and "inherently bound together with uncopyrightable ideas" directed to organization of data like the "declaring code" in *Google*. At the very least, there are questions regarding whether the handbook authors and not Deloitte are true authors of the limited content Deloitte contends was copied.

In its motion, Deloitte argues that courts in other Circuits addressing the "nature of the copyrighted work" fair use factor have considered "whether the copyrighted work represents 'substantial investment of time and labor . . . in anticipation of a financial return.'" D.I. 269 at 12 (citing *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 780 (9th Cir. 2006) (quoting *MCA, Inc. v. Wilson*, 677 F.2d 180, 182 (2d Cir. 1981)). But "[i]n light of the Supreme Court's subsequent rejection of any copyright subsistence for the product of 'industrious compilation,' it is questionable whether that ruling survives." Ex. 22 (4 Nimmer on Copyright § 13F.06 Factor Two: Nature of the Copyrighted Work) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)). Deloitte cites no Third Circuit authority adopting this "questionable" requirement. Even if the "investment of time and labor" were an appropriate consideration for this factor, however, Deloitte has presented no evidence of the time spent developing the specific code Deloitte contends was copied into Sagitec's Neosurance software. The functional nature of the

specific asserted files, and the absence of any showing of copyright protectable expression, precludes resolution of this factor in Deloitte's favor.

### 2. The allegedly copied material is extremely limited quantitatively, and there is little evidence of qualitative importance (Factor 3).

"[T]he extent of permissible copying varies with the purpose and character of the use." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586-87 (1994). Copying even a large amount of material "can fall within the scope of fair use where the material copied captures little of the material's creative expression[.]" *Google*, 593 U.S. at 33 (citation omitted). If so, "the better way to look at the numbers is to take into account the several million lines that [a defendant] did not copy." *Id.* at 34.

There has been no determination that any of the allegedly copied material identified by Deloitte is protectable. But even if the content Deloitte's expert claims was copied into Sagitec's Neosurance product were protectable, the record shows that the extent of alleged copying was minimal. Deloitte's expert identified fewer than ███ of Neosurance files as allegedly containing copied content. *See* Myers Decl. ¶ 17. Even if *all* lines of *all* identified Neosurance files were copied this would amount to only ███ of the total lines of Neosurance source code. Myers Decl. ¶ 18. Deloitte's own expert alleges that only ███ of the files in Deloitte's combined "uFACTS 2013 – MA" productions were copied into Sagitec's Neosurance software. Myers Decl. ¶ 19.

Moreover, Deloitte has provided no evidence of the qualitative value of the allegedly copied material. *See* Ex. 23 (Malm Vol. I Dep. Tr.) at 298:4-9, 298:22-300:17, 302:12-305:6. Although Deloitte's brief contends the allegedly copied files were "critical portions of uFACTS," citing Deloitte's expert report, the cited portions of Deloitte's expert report do not include any opinions whatsoever to support this proposition. *See* D.I. 269 at 13 (citing D.I. 270-8 ¶¶ 52, 214, 235, 334-436, 534-35). Certain allegedly copied ICON files are no longer in use. Ex. 5 at 67:20-

70:9; Ex. 24 (DEL00353054). Further, Deloitte's marketing materials omit references to ICON and database tables altogether.  Ex. 25 (DEL00361917).

Given the limited nature of allegedly copied content in Sagitec's Neosurance software, Deloitte attempts to shift the Court's focus away from Sagitec's accused product by arguing that █ ███████████████████████████████████████████████████████████████████████████████ ██████████ D.I. 270-4 at 18-21 (Sagitec's Third Supplemented Objections and Responses to Deloitte's First Set of Interrogatories). ██████████████████████████████████████████ ████████████████████ *Id.* at 19. ████████████████████ ███████████████████████ Courts have put "very little weight" on wholesale copying in cases of "intermediate infringement when the final product does not itself contain infringing material." *Sony Comp. Entm't, Inc. v. Connectix Corp.,* 203 F.3d 596, 606 (9th Cir. 2000). The proper analysis for fair use is of the final product, not an "intermediate" copy stored on a server. *Id.*

Given the very limited scope material Deloitte alleges was copied into Sagitec's Neosurance software, and the lack of any evidence demonstrating that material was qualitatively important, this factor weighs in favor of Sagitec's fair use defense.

**B.      There are numerous issues of material fact regarding the remaining fair use factors (1 and 4) that preclude summary judgment.**

**1.      Neosurance software implementations are transformative, and at a minimum, questions of fact preclude a contrary finding (Factor 1).**

The primary consideration in assessing this factor is whether the alleged use is "transformative." *Google*, 593 U.S. at 29. This means that the work "'adds something new, with a further purpose or different character, altering' the copyrighted work 'with new expression, meaning or message.'" *Id.* (citations omitted). But "transformative use is not absolutely necessary for a finding of fair use." *Campbell*, 510 U.S. at 579. Where the work is software and creates a "new platform" or "wholly new product, *notwithstanding the similarity of uses and functions,*" it

can be transformative. *Sony*, 203 F.3d at 606 (emphasis added). The question is whether the "allegedly infringing use has a further purpose or different character" from the original. *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith* ("*Warhol II*"), 598 U.S. 508, 525 (2023).

The evidence of record reflects that Sagitec's Neosurance software implementations are transformative, comprising a "new product" built on a different platform (Sagitec's proprietary framework) rife with new expression far beyond the asserted "uFACTS" software. Sagitec's expert, Mr. Myers, testified that "[t]here are some fundamental differences" between Neosurance and uFACTS despite the fact that there are "some similarities in terms of the business problems they try to solve." D.I. 270-3 (Myers Dep. Tr.) at 233:9-234:3. Numerous fact witnesses testified to extensive differences between the two systems. Ex. 26 (Kotcherlakota Dep. Tr.) at 194:2-195:14; Ex. 27 (Adcox Dep. Tr.) at 324:3-325:9; Ex. 28 (Nair Dep. Tr.) at 316:23-317:19, 323:22-324:13; Ex. 29 (Sharma Dep. Tr.) at 125:10-126:1; Ex. 30 (Peretto Dep. Tr.) at 48:11-53:22, 65:3-12, 67:13-68:18. Deloitte's internal documents demonstrate ███████████████ ██████████████████████████████████████. Ex. 31 (DEL00082789 (Oct. 9, 2019 internal Deloitte emails regarding competitive analysis of Sagitec)); Ex. 32 (DEL00082802 (███████████████████████████████████████ ████████████)); Ex. 33 (DEL00082831 (███████████████████████ ██████████); Ex. 34 ((DEL01074553) ██████████████████████████) at '567, '588 (██████████████████████████████████). According to Deloitte's Rule 30(b)(6) designee, ████████████████████████████████████████ ████████████████████████ Ex. 35 (Jin-Hendel Vol. I Dep. Tr.) at 248:14-250:24, 257:24-261:12; *see also* Ex. 36 (Madel Dep. Tr.) at 220:7-221:19 (same).

Consistent with the large-scale differences between these systems, Deloitte accuses fewer than ████ of Neosurance source code lines. Myers Decl. ¶ 18. This limited alleged copying stands

in sharp contrast to cases Deloitte cites where substantial portions of original works were used verbatim. *See Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1113 (9th Cir. 2000) (book distributed copied verbatim with only minor deletions); *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 925 (2d Cir. 1994) (entirety of the eight articles at issue copied).

Although there are two other considerations sometimes subsumed in this factor—commerciality and good faith—the Supreme Court has provided important guidance limiting these considerations. As to commerciality, "[t]here is no doubt that a finding that copying was not commercial in nature tips the scales in favor of fair use. But the inverse is not necessarily true, as many common fair uses are indisputably commercial." *Google*, 593 U.S. at 32. As to bad faith, the Supreme Court has "expressed some skepticism about whether bad faith has any role in a fair use analysis." *Google*, 593 U.S. at 32 (noting "[c]opyright is not a privilege reserved for the well-behaved") (citation omitted). Even if it were appropriate to consider bad faith, however, the evidence contradicts Deloitte's conclusory allegations of bad faith. Sagitec management gave clear direction to former Deloitte employees not to copy or take any materials from their previous employment, and to instead develop a completely different competing software. *See* Ex. 26 at 44:13-48:14; Ex. 37 (Jain Dep. Tr.) at 52:4-55:2, 164:2-168:9. While Deloitte offers conclusory attorney argument about intent, the record reflects that Mr. Minkkinen believed that the material at issue was in the public domain.[2] *See* Ex. 26 at 44:13-48:14. Moreover, contrary to Deloitte's aspersions otherwise, the record reflects that Sagitec consistently cooperated and was extremely forthcoming with the government. *Id.* at 191:13-20; Ex. 38 (Deshler Dep. Tr.) at 10:25-13:7, 88:1-

---

[2] Unfortunately, Mr. Minkkinen and Mr. Sambasivam are not currently available to the parties due to the pending criminal proceeding. *See, e.g.*, D.I. 224 (Oral Order denying depositions).

13, 108:21-109:25, 111:12-22, 233:1-21; Ex. 36 at 194:17-195:2, 237:13-244:18, 298:22-300:17; *see also, e.g.*, Ex. 39 (SAGITEC-DEL_07112227).

Because a party's good or bad faith is a "factbound consideration," *Google*, 593 U.S. at 33, and there is substantial evidence contradicting Deloitte's conclusory aspersions, summary judgment on this issue is inappropriate. *Solid 21, Inc. v. Richemont N. Am., Inc.*, No. 19 Civ. 1262 (LGS), 2023 U.S. Dist. LEXIS 103613, at *21 (S.D.N.Y. June 14, 2023) (finding that "subjective issues such as good faith are singularly inappropriate for determination on summary judgment").

### 2. There are several unresolved questions of fact about the impact on the potential market (Factor 4).

Material disputes of facts likewise remain on the last fair use factor—the impact of Sagitec's product on Deloitte's potential market. "Consideration of this factor, at least where computer programs are at issue, can prove more complex than at first it may seem." *Google*, 593 U.S. at 35. "It can require a court to consider the amount of money that the copyright owner might lose." *Id.* "But a potential loss of revenue is not the whole story"; courts "must consider not just the amount but also the source of the loss" and "take into account the public benefits the [alleged] copying will likely produce." *Id.* This analysis may also implicate the analysis of other fair use factors. For example, in considering the effect upon the potential market, the extent to which the work is transformative (Factor 1) cuts against evidence of revenue loss and may render the new product a "legitimate competitor in the market." *Sony*, 203 F.3d at 607.

Deloitte has produced no evidence that it suffered any loss as a result of the alleged copying at issue. Deloitte has not produced any evidence that any of the allegedly copied material impacted any customer purchasing decision. The record reflects that the allegedly-copied ICON interface files and database tables do not drive sales of Sagitec's Neosurance-branded software implementations. Ex. 31 (████████████████████████████████████████████

██████████ ); Ex. 32 ( ████████████████████████████

████████████████ ); Ex. 33 ( ████████████████████████

████████ ); Ex. 34 ( ███████████████████████ ) at '567, '588.

Taken together, the evidence strongly supports Sagitec's fair use defense at this stage, particularly given that Deloitte has not identified any copyright protectable expression. At the very least, there are material issues of fact that preclude summary judgment for Deloitte.

## II.    Material Facts Preclude Summary Judgment on Sagitec's Unclean Hands Defense.

The doctrine of unclean hands "applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Scherer*, 764 F. App'x at 150 (citation omitted). "[A] party seeking to invoke the doctrine must show: (1) the party seeking equitable relief committed an unconscionable act; and (2) the act is related to the claim upon which equitable relief is sought." *Id.* "[P]roof of injury is not required." *Id.* at 150 n.5 (citation omitted). The first element requires "fraud, unconscionability, or bad faith on the part of the plaintiff." *Id.* at 150 n.6. "The misconduct, however, 'need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim." *Id.* (citation omitted). Overall, "when assessing whether to invoke the doctrine of unclean hands, courts of equity must not be bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999) (citation omitted).

14

**A.    There are at least genuine issues of material fact as to whether Deloitte has unclean hands from its efforts to register and assert its claimed copyrights.**

Deloitte's false statements to the copyright office regarding its purported ownership of the registered works are unconscionable and/or bad faith acts sufficient for unclean hands. *See Qad, Inc. v. ALN Assocs.*, 770 F. Supp. 1261, 1267 (N.D. Ill. 1991) ("Here qad's misuse was even more egregious: It used its copyright to sue ALN and to restrain it from the use of material over which qad itself had no rights. That is a misuse of both the judicial process and the copyright laws."); *see also Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 794 (5th Cir. 1999) ("By misusing its software copyright, DSC sullied its hands, barring itself from obtaining the equitable reward of injunction on grounds of copyright infringement.").

As set forth in Sagitec's Motion for Summary Judgment, Deloitte does not own copyrights in the QUEST Project software that it asserts in this case. *See* D.I. 278 (Sagitec's opening summary judgment brief) at 14-18; Myers Decl. ¶ 12. Nevertheless, when Deloitte filed its applications to register its copyrights, Deloitte (1) falsely claimed that Deloitte Consulting LLC was the author of the works; (2) falsely claimed that Deloitte Development, LLC was the organization to which the copyright initially belonging to the author had been transferred; (3) failed to disclose the true author and owner of the works; and/or (4) failed to disclose that the works were derivative of works owned by the Commonwealth of Massachusetts and/or other state entities. *See* Exs. 11-13. Tellingly, ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████. Exs. 11-13. Because Deloitte's applications were procured through misrepresentations, unclean hands bars or limits Deloitte's

claims. *Monsanto Co. v. Rohm & Haas Co.*, 456 F.2d 592, 598 (3d Cir. 1972) (applying unclean hands where patents at issue were procured through misrepresentations in patent application).

The record also demonstrates that Deloitte was aware of its lack of ownership when it filed its copyright applications and later sought to assert these fraudulently obtained copyrights in this case. Ex. 23 at 260:4-261:6. Both Deloitte and Massachusetts acted consistently with Massachusetts' ownership of all rights in the QUEST Project deliverables, including IP rights. Ex. 40 (MADUA00001257) at '258; Ex. 15 (DEL-SC-000625-630) ███████████████████ ████████████████.[3] Deloitte's assertion of material not covered by its copyright registrations also constitutes unconscionable and/or bad faith acts sufficient for unclean hands. *See Qad, Inc.*, F. Supp. at 1267; *Alcatel USA, Inc.*, 166 F.3d at 794. Deloitte failed to produce the June 2010 or October 2013 versions of the uFACTS computer program that it registered. *See* D.I. 278 at 5-9. Deloitte instead accuses Sagitec of infringing a separate unregistered work last modified as late as February 14, 2019. *Id.* Deloitte's attempt to claim the benefit of registration for indisputably unregistered works supports invocation of unclean hands to bar relief.

**B.    There are at least genuine issues of material fact as to whether Deloitte has unclean hands from its efforts to enforce its alleged trade secrets.**

Like the issues regarding Deloitte's misrepresentations to the copyright office in Section II.A, *supra*, Deloitte similarly committed unconscionable and/or bad faith acts in its assertion of alleged trade secrets it does not own. *See* D.I. 278 at 14-19.

---

[3] Even after Deloitte filed suit, ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████ Ex. 41 (DEL01053171) ████████████████████████████.

Deloitte's assertion of trade secret rights in various public records also constitutes unconscionable and/or bad faith acts sufficient for unclean hands. In response to public records requests, Massachusetts and New Mexico each produced numerous use cases and specification documents that they determined were public records.[4] Exs. 17-19. These same public documents would be available to any person or entity filing a similar public records request. Ex. 42 (MA (Amoakuh) Dep. Tr.) at 82:4-16; Ex. 43 (NM (Athens Dep. Tr.)) at 225:10-20. Deloitte admits that these alleged use cases and supplemental requirements specification trade secrets are not labeled confidential or trade secret. Ex. 44 (Deloitte's Objections and Responses to Sagitec's Requests for Admission) at 15-17. Unsurprisingly, then, those use cases and supplemental requirement specifications still available were produced by the states in response to public records requests. *E.g., compare*, Ex. 45 (DEL00012382); Ex. 46 (DEL00012463); Ex. 47 (DEL00027907); Ex. 48 (DEL00037205), *with* Ex. 49 (MADUA00012738); Ex. 50 (MADUA00010628); Ex. 51 (NMDWS_00010790); Ex. 52 (NMDWS_00005920). Deloitte's choice to continue asserting trade secret misappropriation based on public records demonstrates Deloitte's unclean hands.[5]

---

[4] Deloitte has known the documents are public records, and it has not taken any corrective action. In May 2023, counsel for Mr. Sambasivam asserted in court: "The Massachusetts stuff, Your Honor, is public. We subpoenaed Massachusetts. Massachusetts told us that had we done FOIA, they would have given us this—public information. Public information." Ex. 16 at 47:21-24.

[5] The Court should defer on Deloitte's suggestion that Sagitec's unclean hands defense should be heard "outside the presence of a jury." D.I. 269 at 18. There should be no triable issues following Sagitec's summary judgment motion. Regardless, Deloitte identifies no evidence relevant to its unclean hands that could not be heard by the jury in assessing Deloitte's claims. The Court should defer any evidentiary rulings until the scope of trial, if any, is determined.

### III.    Sagitec's Interrogatory Responses Do Not Bar or Limit Its Defenses.

Although framed solely as a motion for summary judgment, Deloitte's filing includes an untimely and improper motion to strike Sagitec's affirmative defenses. The "primary procedure for objecting to an insufficient affirmative defense" is a motion to strike under Federal Rules of Civil Procedure 12(f). *United States v. Acorn Tech. Fund, L.P.*, C.A. No. 03-0070, 2006 U.S. Dist. LEXIS 3507, at *11 (E.D. Pa. Jan. 31, 2006) (citation omitted). Deloitte never moved to strike.

Deloitte essentially contends, incorrectly, that Sagitec waived its affirmative defenses because Sagitec failed to disclose a *theory* in support of them. But there is no waiver because Sagitec complied with its obligations under the rules and Deloitte had notice of the nature of the affirmative defenses. Sagitec timely answered the complaint and raised the two affirmative defenses at issue. D.I. 59 ¶¶ 113, 121. Under Rule 8, defendants are required only to "affirmatively *state* any avoidance or affirmative defense." *Mifflinburg Tel., Inc. v. Criswell*, 80 F. Supp. 3d 566, 573 (M.D. Pa. 2015) (emphasis in original). Although Deloitte argues that Sagitec's answers to interrogatories "failed to disclose any theor[ies]" to support its affirmative defenses (D.I. 269 at 2, 8-9, 15-17), Sagitec was under no obligation to disclose its "theories," and Sagitec timely objected to any request to identify the "legal basis" for its affirmative defenses. Deloitte was on fair notice of the factual basis for Sagitec's defenses. *Mifflinburg*, 80 F. Supp. 3d at 574 (denying a motion to strike because the plaintiff was able to infer why the affirmative defense was "germane to the litigation based on some general allegations in the pleadings."). The pleadings and discovery below provided Deloitte with sufficient notice as to Sagitec's defenses of fair use and unclean hands.

Neither of Deloitte's cited cases support its assertion that Sagitec is *precluded* from raising its defenses due to alleged failures to disclose "theories" in discovery responses. Rather, in each case, the court granted summary judgment because the party asserting the defense had failed to come forth with facts *at summary judgment*. In *Singleton v. Singleton*, the court granted summary

judgment because the plaintiff had "not presented any evidence or responded to interrogatories supporting the[] defenses, shifting the burden to the Plaintiff to rebut the Defendant's evidence" and "[t]he Plaintiff's only response to the Motion as to this issue was that the Defendant is not entitled to summary judgment on his Counterclaim." No. 23 Civ. 5525, 2024 U.S. Dist. LEXIS 204854, at *8 (N.D. Ga. Nov. 8, 2024). Likewise, in *Insurance Company of North American v. Misch*, the court granted summary judgment because the party asserting the defense failed to provide the court "with any factual support for the affirmative defenses". C.A. No. 88-3669, 1989 U.S. Dist. LEXIS 7414, at *8-9 (E.D. Pa. July 5, 1989). These cases merely stand for the summary judgment standard: without *any* material facts to support a defense, the defense fails.

Deloitte's argument also ignores Sagitec's objections and responses to Deloitte's Interrogatory Nos. 9 and 10 that Deloitte's contention interrogatories were premature due to Deloitte's failure to put forth elements necessary to prove its trade secret or copyright claims. D.I. 270-4 (Excerpt of Sagitec's Third Supp. Responses and Objections to Deloitte's First Set of Interrogatories) at 39, 42. This is consistent with Sagitec's answer itself, which asserted that "[t]o the extent there is copying of ***copyrightable expression***, that copying constitutes fair use." D.I. 59 ¶ 121 (emphasis added). Sagitec further objected to these Interrogatories as using unclear and poorly defined terms, namely, "uFACTS Computer Program" and "uFACTS Trade Secrets." D.I. 270-4 at 39-40, 42-43. Sagitec also expressly stated that "[a] lack of mention of any affirmative defense or other theory of no liability is not a withdrawal of any unmentioned theory by Sagitec at this stage." *Id.* at 40; *see also id.* at 43. Additionally, although Deloitte noticed a 30(b)(6) topic on Sagitec's affirmative defenses and deposed Sagitec's designated witness, Deloitte chose not to ask any questions about any of Sagitec's affirmative defenses. Ex. 53 (Jain Dep. Ex. 1) at 13 (identifying Topic 33 as "[t]he factual basis for Sagitec's affirmative defenses"); Ex. 37 at 41:11-42:8 (acknowledging designation to testify on Topic 33).

19

Finally, Deloitte's argument ignores the fact that Deloitte chose not to provide clarity on its allegations in fact discovery. It was not until Deloitte's proffered technical expert, Dr. Krein, submitted his report that Deloitte disclosed specific portions of source code or other documents it contended had been copied or misappropriated. *See, e.g.*, D.I. 270-8 (Krein Report) ¶¶ 346-47, 365-73, 374-380, 385-87, App. C.[6] Deloitte did not disclose this extent of information in its interrogatory responses. *See* D.I. 270-6 at 38-63; Ex. 20 at 13-320. In fact, Deloitte *still* has not disclosed what exactly it contends is copyright protectable expression or the basis for that contention, other than a blanket assertion that everything is protectable. Ex. 20 at 316-319.

Against the backdrop of Deloitte's strategic choice not to fully disclose the factual basis for its copyright and trade secret claims, Sagitec's timely discovery responses and expert reports expressly referenced the facts underlying Sagitec's affirmative defenses. D.I. 270-4 at 38-41 (referring to responses to Interrogatory Nos. 19, 24, and 25). Additionally, waiver is only justified if there is prejudice to the plaintiff, which Deloitte has not shown. *See Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991). Given the nature of Sagitec's fair use and unclean hands defenses, and the full extent of discovery into Deloitte's claims, Deloitte is in no way prejudiced by the Court's consideration of this evidence in opposition to Deloitte's motion.

## **CONCLUSION**

Sagitec respectfully requests the Court deny Deloitte's motion for partial summary judgment on Sagitec's fair use and unclean hands defenses.

---

[6] Deloitte's disclosures in Dr. Krein's report are insufficient to support the broad-scale copying Deloitte implies. *See* D.I. 269 at 3, 13. Dr. Krein failed to disclose how much (and what portions) of the Neosurance files in his report are allegedly copied. *See* D.I. 275 at 8-9. And Dr. Krein offers no opinion of what portions of the asserted "uFACTS" files are protectable expression. *Id.*

Dated: July 24, 2025

Of Counsel:

Christopher K. Larus
William E. Manske
Rajin S. Olson
THOMPSON HINE LLP
800 Nicollet Avenue, Suite 2925
Minneapolis, Minnesota 55402
(612) 605-5900
(612) 605-5901
Chris.Larus@ThompsonHine.com
William.Manske@ThompsonHine.com
Rajin.Olson@ThompsonHine.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Sagitec Solutions, LLC*

21

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 24, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Joshua L. Simmons
Dana DeVlieger
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

Ariel Deitchman
KIRKLAN & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th Street, Suite 700
Miami, FL 33131

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116

*Deloitte-Sagitec@kirkland.com*

John W. Shaw
Andrew E. Russell
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*jshaw@shawkeller.com*
*arussell@shawkeller.com*

*Attorneys for Plaintiffs Deloitte Consulting*
*LLPand Deloitte Development LLC*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street

Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Sagitec Solutions, LLC*