IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DELOITTE CONSULTING LLP AND DELOITTE DEVELOPMENT LLC, ) ) ) ) | |
| Plaintiffs, ) | **Redacted - Public Version** |
| ) | C.A. No. 23-325-WCB |
| v. ) | |
| ) | ███████████████ |
| SAGITEC SOLUTIONS LLC, ) | |
| Defendant. ) ) ) ) | |

**PLAINTIFFS' OPPOSITION TO SAGITEC SOLUTIONS LLC'S
*DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS
OF DELOITTE'S PROFFERED EXPERTS
<u>DR. JONATHAN KREIN AND MR. THOMAS BRITVEN</u>**

OF COUNSEL:
Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
(202) 389-5000

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Andrew E. Russell (No. 5382)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
lgellar@shawkeller.com

*Attorneys for Plaintiffs Deloitte Consulting
LLP and Deloitte Development LLC*

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7419

Ariel Deitchman
KIRKLAND & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th Street, Suite 700
Miami, FL 33131
(305) 432-5676

Dated: July 24, 2025

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

ARGUMENT .................................................................................................................................. 4

I.    DR. KREIN'S OPINIONS ARE ADMISSIBLE ............................................................ 4

      A.    Dr. Krein's Opinions as to the Accuracy of Sagitec's Statements Are
            Proper .................................................................................................................... 4

      B.    Dr. Krein's Opinions That He Cannot Rule Out Additional Copying
            Based on Sagitec's Produced Code Are Admissible ............................................ 5

      C.    Dr. Krein's Opinions on Actual Copying Are Admissible ................................. 8

      D.    Dr. Krein's "Head Start" Opinion Is Reliable .................................................... 9

II.   Mr. Britven's Opinions Should Not Be Excluded ........................................................ 11

      A.    As Conceded by Sagitec, Mr. Britven Does Not Intend to Offer State
            of Mind Opinions ............................................................................................... 11

      B.    Mr. Britven's Opinions that Damages Are Owed for the ESSP Project
            Have Ample Support in the Record .................................................................... 12

      C.    Deloitte Is Not Required to Establish Through Mr. Britven that
            Deloitte Bid Head-to-Head Against Sagitec to Recover Lost Profits ............. 14

      D.    Mr. Britven's Opinions Do Not Rely on "Undisclosed Opinions" of
            Dr. Krein ............................................................................................................ 16

      E.    Mr. Britven's Lost Profits and Disgorgement Opinions "Fit" this Case ......... 18

CONCLUSION ............................................................................................................................ 20

All Exhibits cited herein are attached to the concurrently filed declaration of Nick Teleky.

Emphasis has been added unless expressly stated otherwise.

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*10X Genomics, Inc v. Vizgen, Inc.*,
    2025 WL 625684 (D. Del. Jan. 27, 2025)...............................................................................15

*Aamco Transmissions, Inc. v. Baker*,
    2008 WL 5245768 (E.D. Pa. Dec. 16, 2008)............................................................................6

*In re Ahern Rentals, Inc., Trade Secret Litig.*,
    2023 WL 9895103 (W.D. Mo. Nov. 14, 2023)........................................................................19

*Alifax Holding Spa v. Alcor Sci., Inc.*,
    2019 WL 1579503 (D.R.I Apr. 12, 2019)...............................................................................14

*Amerisure Ins. Co. v. Auchter Co.*,
    2017 WL 11629919 (M.D. Fla. Sept. 28, 2017).................................................................10, 11

*AstraZeneca LP v. Tap Pharm. Prods., Inc.*,
    444 F. Supp. 2d 278 (D. Del. 2006).........................................................................................5

*AU New Haven, LLC, v. YKK Corp.*,
    2019 WL 1254763 (S.D.N.Y. Mar. 19, 2019) ..........................................................................5

*Baker v. City of Chicago*,
    2024 WL 5112495 (N.D. Ill. Oct. 21, 2024)..........................................................................5, 6

*Benezra v. Holland Am. Line-Westours, Inc.*,
    215 F.3d 1332 (9th Cir. 2000) ................................................................................................7

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
    807 F.3d 1283 (Fed. Cir. 2015)..............................................................................................16

*Epic Sys. Corp. v. Tata Consultancy Servs., Ltd.*,
    2016 WL 1466579 (W.D. Wis. Apr. 14, 2016) ......................................................................14

*Ericsson, Inc. v. Harris Corp.*,
    352 F.3d 1369 (Fed. Cir. 2003)..............................................................................................16

*First Union Nat'l Bank v. Benham*,
    423 F.3d 855 (8th Cir. 2005) .................................................................................................11

*Ford Motor Co v. Versata Software, Inc.*,
    2018 WL 10733561 (E.D. Mich. July 9, 2018) ......................................................................19

*GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*,
  2017 WL 11685723 (D. Del. May 2, 2017)................................................................2

*Goldberg v. 401 N. Wabash Venture LLC*,
  2013 WL 1624989 (N.D. Ill. Apr. 15, 2013) ...........................................................4

*Harbor Compliance Corp. v. Firstbase.io, Inc.*,
  2024 WL 1442165 (E.D. Pa. Apr. 3, 2024) ............................................................20

*Healthestate, LLC v. United States*,
  168 Fed. Cl. 624 (Ct. Cl. Nov. 20, 2023).................................................................9

*Huawei Tech. Co., Ltd. v. Yiren Huang*,
  2019 WL 2077821 (E.D. Tex. May 9, 2019)...........................................................10

*I-Mab Biopharma v. Inhibrx, Inc.*,
  2024 WL 4581539 (D. Del. Oct. 21, 2024) ..............................................................5

*i4i Ltd. P'Ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010)............................................................................4, 14

*Iconics, Inc. v. Massaro*,
  266 F. Supp. 3d 461 (D. Mass. 2017) .....................................................................18

*INVISTA N.Am. S.A.R.L. v. M & G USA Corp.*,
  2013 WL 3216109 (D. Del. June 25, 2013).....................................................4, 10, 16

*Kannankeril v. Terminix Int'l, Inc.*,
  128 F.3d 802 (3d Cir. 1997).....................................................................................4

*Leonard v. Stemtech Health Scis., Inc.*,
  2013 WL 5311295 (D. Del. Sept. 23, 2013) ...........................................................15

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
  2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015).........................................................15

*Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*,
  2013 WL 12140417 (S.D. Tex. Dec. 18, 2013) .........................................................7

*Marcum v. Columbia Gas Transmission*,
  LLC, 549 F. Supp. 3d 408 (E.D. Pa. 2021)..............................................................15

*McCullock v. H.B. Fuller Co.*,
  61 F.3d 1038 (2d Cir. 1995).....................................................................................4

*Medidata Sols., Inc. v. Veeva Sys., Inc.*,
  2021 WL 3773464 (S.D.N.Y. Aug. 25, 2021) .........................................................11

*Microchip Tech. Inc. v. Aptiv Servs. US LLC*,
  2020 WL 10503006 (D. Del. Aug. 24, 2020) ......................................................................4, 14

*Mon Cheri Bridals, Inc. v. Wen Wu*,
  383 F. App'x 228 (3d Cir. 2010) ......................................................................................20

*Nat'l Conf. of Bar Exam'rs v. Multistate Legal Stud., Inc.*,
  458 F. Supp. 2d 252 (E.D. Pa. 2006) ......................................................................................20

*nCube Corp. v. SeaChange Int'l, Inc.*,
  809 F. Supp. 2d 337 (D. Del. 2011)......................................................................................18

*Norman v. Leonard's Express, Inc.*,
  2023 WL 3244002 (W.D. Va. May 4, 2023) ......................................................................6

*Numatics, Inc. v. Balluff, Inc.*,
  66 F. Supp. 3d 934 (E.D. Mich. 2014)......................................................................................16

*Oakwood Lab'ys LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021)......................................................................................12, 13

*Ortega v. United States*,
  2021 WL 4477896 (N.D. Ill. Sept. 30, 2021) ......................................................................6

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  585 F. Supp. 2d 568 (D. Del. 2008)......................................................................................18

*Qorvo, Inc. v. Akoustis Techs., Inc.*,
  2024 WL 5165152 (D. Del. Oct. 31, 2024) ......................................................................10

*Rhoads Indus., Inc. v. Shoreline Found., Inc.*,
  2021 WL 2778562 (E.D. Pa. July 2, 2021)......................................................................................15

*Sci. Applications Int'l Corp. v. United States*,
  169 Fed. Cl. 346 (2024) ......................................................................................18

*Shire Viropharma Inc. v. CSL Behring LLC*,
  2021 WL 1227097 (D. Del. Mar. 31, 2021) ......................................................................16

*Silipena v. Am. Pulverizer Co.*,
  2024 WL 3219226 (D.N.J. June 28, 2024) ......................................................................15

*In re Suboxone Antitrust Litig.*,
  2020 WL 6887885 (E.D. Pa. Nov. 24, 2020) ......................................................................10

*Trask v. Olin Corp.*,
  2016 WL 1181428 (W.D. Pa. Mar. 28, 2016) ......................................................................4

*Travelers Prop. Cas. Co. of Am. v. Hallam Eng'g & Constr. Corp.*,
2012 WL 13029519 (D.N.J. Aug. 16, 2012) ..........................................................19

*United States v. Ford*,
481 F.3d 215 (3d Cir. 2007) .................................................................................19

*Valvetech, Inc. v. Aerojet Rocketdyne, Inc.*,
2023 WL 3558214 (W.D.N.Y. May 19, 2023) .......................................................11

*Vertellus Holdings LLC v. W.R. Grace & Co.-Conn.*,
2021 WL 3883597 (D. Md. Aug. 12, 2021) ..........................................................19

*Walsh/Granite, JV v. HDR Eng'g, Inc.*,
2020 WL 13876895 (W.D. Pa. June 15, 2020)...............................................14, 15

*Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*,
797 F.2d 1222 (3d Cir. 1986)................................................................................8

**Statutes**

17 U.S.C.A. § 504..................................................................................................20

**Rules**

Fed. R. Evid. 702 ...............................................................................................4, 15

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Dr. Jonathan Krein is a respected computer scientist with extensive experience performing hundreds of source code and software process reviews, including in industry, academia, and litigation settings. Thomas Britven is a leading damages expert, who has spent his career advising and consulting on hundreds of matters across a host of industries. In this case, both experts provided opinions that will assist the jury in deciding critical and complicated issues relating to liability and damages respectively. Sagitec tellingly does not challenge the credentials of either expert, nor could it. Instead, Sagitec puts forward a hodgepodge of criticisms that mischaracterize these expert's reports and are legally insufficient for exclusion under *Daubert*. At best, Sagitec identifies issues that can be explored on cross examination. Thus, Deloitte requests that the Court deny Sagitec's motion. D.I. 275 ("Br.").

With respect to **<u>Dr. Krein</u>**, Sagitec makes four arguments, none of which have merit.

***First***, Sagitec argues that Dr. Krein's opinions on the "intent, motivation, and state of mind" of the parties should be excluded. Br. 5–6. But Dr. Krein does not offer state of mind opinions. Instead, he opines, as a factual matter, that Sagitec made false statements in 2016 and 2018 that it did not possess any "uFACTS-related material." He reached that conclusion based on a comparison of Sagitec's statements to Sagitec's extensive possession and use of uFACTS. This is well within his purview and helps the jury understand issues such as Sagitec's fraudulent concealment, which is relevant to its statute of limitations defense. It is not speculation.

***Second***, Sagitec seeks to exclude Dr. Krein's opinion that Sagitec's source code productions have indicia that earlier versions contained additional copying. It does so based on an argument that Dr. Krein may not testify about the "state of discovery" or speculate about what the absence of evidence could mean. But experts may draw conclusions from the absence of evidence, and Dr. Krein does not opine about the "state of discovery." Moreover, Dr. Krein

draws his conclusions not from the *absence* of evidence, but from the evidence itself: Sagitec's produced code contains indicia that earlier versions had additional copying.

**Third**, Sagitec argues that two of Dr. Krein's appendices, which identify the uFACTS source code files and Neosurance source code files that he compared to identify Sagitec's copying, do not provide a "meaningful analysis" and are "unhelpful" to the jury. That is not true. Dr. Krein provided a detailed analysis of Sagitec's copying in his report, describing across over 100 paragraphs examples of the copying he observed, and then providing these two appendices as additional evidence of Sagitec's copying. Given the technical nature of software infringement, these appendices will help the jury understand what was copied and to where.

**Fourth**, Sagitec claims that Dr. Krein's head-start opinions lack a discernable methodology. This is not correct. Dr. Krein concluded, in part by considering how long it took Deloitte to develop its first version of uFACTS, that Sagitec's copying, possession, and use of uFACTS allowed Sagitec to ███████████████████ Br. 11. Sagitec critiques Dr. Krein for not including in his analysis certain facts that Sagitec deems relevant, like "person-hours." *Id.* But criticizing an expert for purportedly not considering a piece of evidence is a textbook example of an issue going to weight, not admissibility. *See GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*, 2017 WL 11685723, at *5 (D. Del. May 2, 2017).

With respect to **Mr. Britven**, Sagitec's arguments fare no better.

**First,** Sagitec asserts that Mr. Britven's "state of mind" opinions should be excluded. But Mr. Britven never opines about "state of mind" and confirmed as much at his deposition; the statements to which Sagitec points from the background section of Mr. Britven's report merely articulate the factual underpinning upon which he bases his opinions.

**Second**, Sagitec criticizes Mr. Britven for including Sagitec's Washington D.C. ESSP

Neosurance project revenues in his damages opinions because it claims that they "lack support." On the contrary, Mr. Britven's inclusion of this project in his damages analysis is based on (1) Sagitec's own discovery responses; (2) Dr. Krein's technical analysis indicating the use and misappropriation of trade secrets before, during, and after the ESSP project; and (3) record evidence from which a jury could conclude that Sagitec used Deloitte's trade secrets. Sagitec's disagreement with Mr. Britven's conclusions does not render his opinion unreliable.

*Third*, Sagitec attempts to shoehorn into its *Daubert* motion what is, in reality, a summary judgment argument. It asserts that Mr. Britven's lost profits analysis should be excluded because Mr. Britven included in his analysis projects that were won by Sagitec where Deloitte did not bid head-to-head. But experts are permitted to ***assume*** causation when assessing damages; Mr. Britven had no obligation to prove up but-for causation on his own. And head-to-head competition is not required to prove causation in any event.

*Fourth*, Sagitec argues that Mr. Britven relied on undisclosed opinions by Dr. Krein. On the contrary, the opinions relied upon by Mr. Britven were disclosed in Dr. Krein's report. Moreover, Sagitec had ample opportunity to explore these opinions through both Mr. Britven and Dr. Krein's depositions, which Sagitec chose not to do.

*Fifth*, Sagitec claims that Mr. Britven's opinions do not "fit" the facts of the case because he did not "apportion" damages between the trade secret and copyright claims here. "Fit" is a relevance question, and Mr. Britven's opinions are highly relevant. Moreover, Mr. Britven explains in his report what damages the jury should award for ***each*** of those causes of action. To the extent these damages flow from the same pool, that is common and completely unsurprising because the trade secrets and the copyrights are related and ***together*** enabled Sagitec to create the same product ***Neosurance***. The losses and revenues analyzed stem from that product.

## ARGUMENT

"Rule 702 . . . has a liberal policy of admissibility." *Trask v. Olin Corp.*, 2016 WL 1181428, at *7 (W.D. Pa. Mar. 28, 2016) (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of attacking supposed methodological faults. *McCulloch v. H.B. Fuller Co.*, 61 F.3d 1038, 1043–44 (2d Cir. 1995); *see also INVISTA N.Am. S.A.R.L. v. M & G USA Corp.*, 2013 WL 3216109, at *4 (D. Del. June 25, 2013) (noting that to the extent a party "disputes the assumptions underlying [an expert's] testimony [ ], such disagreements are more properly reserved for cross-examination"); *Microchip Tech. Inc. v. Aptiv Servs. US LLC*, 2020 WL 10503006, at *1 (D. Del. Aug. 24, 2020) (it is "not the district court's role ... to evaluate the correctness of facts underlying an expert's testimony") (quoting *i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010)).

## I.    DR. KREIN'S OPINIONS ARE ADMISSIBLE

### A.    Dr. Krein's Opinions as to the Accuracy of Sagitec's Statements Are Proper

Sagitec argues that the Court should exclude the ***entirety*** of Section 11 of Dr. Krein's expert report, D.I. 276-1 (Krein Rpt.) ¶¶ 440–457, on the grounds that it contains within it opinions as to the "intent, motivation, and state of mind" of the parties. Br. 5–6. Yet, analysis that applies an expert's experience or knowledge to facts, but stops short of speculating on the "thoughts or impressions" of another, is not a "state of mind" opinion warranting exclusion. *See Goldberg v. 401 N. Wabash Venture LLC*, 2013 WL 1624989, at *3 (N.D. Ill. Apr. 15, 2013).

The section that Sagitec seeks to exclude is not about the parties' state of mind, but rather a technical analysis of correspondence between Deloitte and Sagitec. Specifically, in 2016 and 2018, Sagitec told Deloitte that "Sagitec does not use, and is not in possession of the Deloitte uFACTS Unemployment Insurance Solution, any related documentation, or any Deloitte

intellectual property of any kind." Ex. 1 at '524 (2016 Letter from Sagitec to Deloitte); Ex. 2 at '637 (2018 Letter from Sagitec to Deloitte).  Dr. Krein evaluated the accuracy of these statements based on his expertise and assessment of what Sagitec was doing at the time.  He concluded that Sagitec's statements were false.  Krein Rpt. ¶¶ 440–457.  He also considered whether the correspondence showed Deloitte had a high degree of technical information about Sagitec's conduct.  He concluded that Deloitte possessed ███████████████ *Id*. at ¶ 457. Thus, unlike the cases on which Sagitec relies, Dr. Krein does not speculate as to a party's intent, beliefs, or what they "aimed" to do.  *See AstraZeneca LP v. Tap Pharm. Prods., Inc.,* 444 F. Supp. 2d 278, 293 (D. Del. 2006) (expert concluded what party "was . . . seeking to utilize" or "aimed" to do); *AU New Haven, LLC, v. YKK Corp.*, 2019 WL 1254763, at *13 (S.D.N.Y. Mar. 19, 2019) (expert opined on party's "intent to induce [patent] infringement"); *I-Mab Biopharma v. Inhibrx, Inc.*, 2024 WL 4581539, at *1–2 (D. Del. Oct. 21, 2024) (expert opined on party's "then-present belief").  Dr. Krein's technical analysis is helpful to the jury, because in evaluating Sagitec's statute of limitations defense, the jury will need to decide when Deloitte discovered the infringement and whether Sagitec fraudulently concealed its actions. D.I. 299 at 8–15.  Thus, the Motion should be denied.

### B.    Dr. Krein's Opinions That He Cannot Rule Out Additional Copying Based on Sagitec's Produced Code Are Admissible

Sagitec next argues that Dr. Krein's opinion that he is "unable to rule out" additional use by Sagitec is (1) "prejudicial speculation about the absence of evidence" and (2) constitutes testimony on the "state of discovery." Br. 6–7.  Sagitec is wrong on both counts.

*First*, it is not speculative for a technical expert to offer "hypothetical explanation" grounded in "experience, knowledge, [] training," and a detailed analysis of the record.  *See Baker v. City of Chicago*, 2024 WL 5112495, at *17 (N.D. Ill. Oct. 21, 2024).  In *Baker*, the

court refused to exclude the expert's "various potential reasons for why there is no … documentation" of events, so long as the expert does not testify definitively why that documentation was not provided. *Id.* This is consistent with Sagitec's citation to *Norman v. Leonard's Express, Inc.*, which held that it was unduly prejudicial for an expert to testify that records were "withheld" in discovery, but **could** testify about how the limited records she had made it impossible to determine the cause of injury. 2023 WL 3244002, at *3 (W.D. Va. May 4, 2023).

Here, Dr. Krein observed that certain of Sagitec's source code productions had



Krein Rpt. ¶ 538. He explained that, based on his technical expertise and review, the Neosurance source code he reviewed contained

*See id.* at ¶¶ 539–85. Thus, he found he could not rule out additional use of uFACTS in those earlier versions of Neosurance. *See, e.g.*, *id.* at ¶¶ 432, 538, 586–588. Far from speculation as Sagitec suggests, Br. 6, Dr. Krein's opinion is based on the specific indicia he observed in the source code Sagitec produced and represented was complete and what they mean based on his technical expertise. If Sagitec's disagrees that the evidence supports this conclusion, the appropriate recourse is "vigorous cross-examination" and "presentation of contrary evidence," not exclusion. *See Aamco Transmissions, Inc. v. Baker*, 2008 WL 5245768, at *1 (E.D. Pa. Dec. 16, 2008).[1]

---

[1] Sagitec's other cases are factually distinguishable. *See Ortega v. United States*, 2021 WL 4477896, at *9-10 (N.D. Ill. Sept. 30, 2021) (excluding "conclusory" causation opinion where

***Second***, Sagitec is wrong that Dr. Krein's opinions relate to the "state of discovery." Sagitec alleges that Dr. Krein's opinions are actually because Deloitte "did not serve discovery requests" asking for Sagitec's version control history, or otherwise raise issues regarding "purported deficiencies in Sagitec's source code production."  Br. 7–8.  This is not correct. Dr. Krein's analysis is based on the observations of the presumably complete productions Sagitec made.  Deloitte sought copies of ***each version*** of the Neosurance source code, D.I. 276-4 (1st RFPs to Sagitec) at 42, which are found in version control systems that contain all versions of a program.  *See* Krein Rpt. ¶ 586.  Deloitte also specifically raised concerns similar to Dr. Krein's observations in a letter to Sagitec after Dr. Krein discovered them, which requested any additional source code and Sagitec's version control history. D.I. 276-8 (Letter to Sagitec). Sagitec represented it would produce any missing code.  D.I. 276-9 (Email from Sagitec) at 1. Dr. Krein then reviewed Sagitec's presumably complete production but, as he explained, his concerns remained.  *See* Krein Rpt. ¶¶ 556–63.  Sagitec argues Deloitte should have moved to compel, but Sagitec ***agreed*** to search for and produce the code available to it as requested, so there was nothing to move to compel.  Of course, if Sagitec's position is now that there ***was*** additional code responsive to Deloitte's requests that it nevertheless did not produce, it at a minimum should immediately produce it.  This does not support exclusion.[2]

---

expert admitted not having "genetic information" needed); *Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, 2013 WL 12140417, at *4 (S.D. Tex. Dec. 18, 2013) (excluding opinion testimony where expert admitted to not reaching an opinion due to insufficient interrogatory responses); *Benezra v. Holland Am. Line-Westours, Inc.*, 215 F.3d 1332 (9th Cir. 2000) (expert conclusion properly excluded that "rested on assumptions rather than facts").

[2] Sagitec also seeks to exclude Dr. Krein from referencing "Sagitec's alleged 'unwillingness' and

### C.    Dr. Krein's Opinions on Actual Copying Are Admissible

Sagitec argues that Dr. Krein failed to provide "meaningful analysis" of actual copying in Appendices A and B to his report.  Br. 8.  That makes no sense.  As this Circuit has long held, software is complicated and, thus, juries need experts to help them understand code copying in infringement cases, like this.  *See Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*, 797 F.2d 1222, 1233 (3d Cir. 1986).  Consistent with the important role of experts in software cases, Dr. Krein conducted a thorough analysis of Sagitec's copying of uFACTS and ███████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Krein Rpt. ¶ 337.  He then described, across nearly ***100 paragraphs with side-by-side comparisons***, excerpts, and demonstratives, several of the most ████████████ of Sagitec's copying.  *Id.*  He explained Sagitec's pattern of copying, *id.* at ¶¶ 340–373, provided examples and comparisons of copying and ██████████████████████████████, *id.* at ¶¶ 374–391, and in detail explained copying of over 15 Deloitte source code files into two Sagitec files, *id.* at ¶¶ 392–432.  Dr. Krein provided three appendices ████████████████████████████████ ████████████████████████████████████████████████████████████ ████ *Id.* at ¶ 433.  As explained in the report, in Appendix A, Dr. Krein identified database tables from Deloitte's uFACTS computer program that were copied into files in Sagitec's

---

'refusal' to produce its 'source code repository,'" or that it "declined to produce" or "withheld" certain source code.  Br. 6–7.  Although Sagitec did not seek a compromise during its meet and confer, Deloitte agrees that Dr. Krein will only testify as to his observations of what was and was not present in the source code he reviewed, and will not testify on whether Sagitec "withheld," "refused," "declined," or was "unwilling" to produce evidence.

Neosurance code. *Id*. at ¶ 434. In Appendix B, Dr. Krein identified hundreds of additional file pairings of uFACTS source code files that were copied into Neosurance source code files. *Id*. at ¶ 435.[3] Contrary to Sagitec's arguments, Br. 8, the appendices will help the jury determine **which** Deloitte uFACTS files were copied into **which** Sagitec Neosurance files based on Dr. Krein's technical analysis.[4] Providing the jury this type of framework is particularly important in a case like this with a large quantity of code through which to wade.

Sagitec's other claim that there is no qualitative or quantitative analysis of these appendices is wrong. Br. 8. Dr. Krein explained how he conducted his qualitative and quantitative analysis of Sagitec's copying through his report, using representative examples of the copying he identified throughout this section. Krein Rpt. ¶¶ 337–436. Given the magnitude of Sagitec's copying, he provided the tools to understand the key components of software and source code, *id.* at ¶¶ 49–72, the patterns used by Sagitec when copying Deloitte's code, *id*. at ¶¶ 340–91, and, in the challenged appendices, file pairings matching Deloitte uFACTS source code files with Neosurance files that contained copied code, *id*. at ¶¶ 433–36. Thus, the appendices are helpful to the finder of fact and should not be excluded.

### D.    Dr. Krein's "Head Start" Opinion Is Reliable

---

[3] Dr. Krein also provided an Appendix C, comparing 20 uFACTS database tables that were copied into Neosurance. *Id*. at ¶ 436. Sagitec does not seek to exclude this appendix.

[4] Contrary to Sagitec's assertions, Dr. Krein's methodology, explanations, and opinions are, as discussed, different from and much more rigorous than the expert's in *Healthestate, LLC v. United States*, whose entire analysis was to run search terms through two sets of code and report the "location of hits" without indicating "that she . . . review[ed] and compare[d] the portions of the source code found in each code set." 168 Fed. Cl. 624, 655–58 (Ct. Cl. Nov. 20, 2023).

Sagitec next attempts to exclude Dr. Krein's head-start analysis, alleging his methodology is not "discernable" or reliable.  Br. 9–11.  The standards for assessing reliability are flexible, and an expert's opinions is sufficient where it is based in the expert's experience and grounded in the factual record.  *See In re Suboxone Antitrust Litig.*, 2020 WL 6887885, at *29 (E.D. Pa. Nov. 24, 2020)  (expert experience can be "predominant, if not sole, basis for a great deal of reliable expert testimony"); *Amerisure Ins. Co. v. Auchter Co.*, 2017 WL 11629919, at *9 (M.D. Fla. Sept. 28, 2017).   Disputes relating to the evidence an expert reviewed are appropriately tested through cross-examination, not exclusion.  *INVISTA*, 2013 WL 3216109, at *4.  Head start analyses are frequently helpful and admissible in cases like this one where defendants' misappropriation has unjustly saved development time.  *See Qorvo, Inc. v. Akoustis Techs., Inc.*, 2024 WL 5165152, at *6 (D. Del. Oct. 31, 2024) (refusing to exclude head-start analysis based on facts in the record and expert's experience); *Huawei Tech. Co., Ltd. v. Yiren Huang*, 2019 WL 2077821, at *8–9 (E.D. Tex. May 9, 2019) ("questions or disagreements about the figures and time periods [expert] used can be challenged on cross examination").

Dr. Krein's head-start analysis is reliable and helpful to the jury.  After finding systemic use of Deloitte's trade secrets and copying of Deloitte's computer program, Dr. Krein discussed the benefits to a competitor of misappropriating an existing software solution at each software development stage.  Krein Rpt. ¶¶ 460–476.  He then analyzed how those activities related to Deloitte's timeline for developing the uFACTS solution, which started in 2003.  *Id*. at ¶ 464; *see also id.* at ¶ 93 (timeline of key events).  Dr. Krein explained how, between 2003 and when Sagitec first hired Deloitte uFACTS employees and stole the uFACTS solution in 2013, Deloitte had spent 10 years learning how to effectively create a successful program with all the features incorporated by 2013.  *Id*. at ¶¶ 463–465, 467, 470, 472, 474, 476.  He concluded that, as a result

of its misappropriation, Sagitec had thus benefited from 10 years of Deloitte's own from-scratch development of a modern UI software system. *Id*. at ¶ 478. Against this backdrop, Dr. Krein found that the factual record supported that Sagitec ██████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████ *Id*. at ¶ 479. Dr. Krein explained ██████████████████ ██████████████████████████████████████████████████████████████████ █████████████████████ *Id*. This analysis reflects a sound approach based on the factual record and Dr. Krein's experience, which will help the jury consider the time benefit Sagitec received. *Amerisure*, 2017 WL 111629919, at *9. [5]

Sagitec's complaints about Dr. Krein's methodology—that he did not determine the "person-hours" and did not take into account team size—go to weight, not admissibility. Sagitec will be free, at trial, to raise those points in front of the jury on cross examination. *First Union Nat'l Bank v. Benham*, 423 F.3d 855, 862 (8th Cir. 2005). As Dr. Krein's opinion is not "fundamentally unsupported," it should not be excluded.

## II.    Mr. Britven's Opinions Should Not Be Excluded

### A.    As Conceded by Sagitec, Mr. Britven Does Not Intend to Offer State of Mind Opinions

Sagitec seeks to exclude specific statements in Mr. Britven's report that it claims

---

[5] Sagitec's authority is distinguishable because the expert "articulate[d] no method by which to quantify" the head start, and instead only "note[d] the difference between [defendant's] development timelines and various [] products." *Medidata Sols., Inc. v. Veeva Sys., Inc.* 2021 WL 3773464, at *2 (S.D.N.Y. Aug. 25, 2021); *Valvetech, Inc. v. Aerojet Rocketdyne, Inc.*, 2023 WL 3558214, at *3 (W.D.N.Y. May 19, 2023) (excluding opinions based "solely" on experience, but allowing evidence based "on an objective . . . comparison, like real-world delays.")

reference Deloitte's "state of mind" in the "Case Background" section of Mr. Britven's report. Br. 12 (citing D.I. 276-2 at ¶¶ 62, 63, 65 ("Britven Rpt.")).  A plain reading of Mr. Britven's report makes clear that these statements are used only as context for Mr. Britven's understanding of the limitations period and to explain the date range for which he calculated damages, rather than offering opinions thereupon.  As Sagitec concedes in its motion, Mr. Britven confirmed at his deposition that he is not offering any opinions regarding state-of-mind or the applicable statute of limitations period.  Br. 12; D.I. 276-11 (Britven Tr.) at 105:14–18.  Accordingly, Sagitec's Motion should be denied on this basis.

**B.    Mr. Britven's Opinions that Damages Are Owed for the ESSP Project Have Ample Support in the Record**

Sagitec next seeks to exclude Mr. Britven's opinions regarding revenues for one of Sagitec's first Neosurance projects for the Washington D.C. ESSP project, arguing it is not appropriate because Dr. Krein did not identify copying within the ESSP project.  Br. 12–15.  But Sagitec ignores that Mr. Britven's careful analysis assumed liability and that the standard for a jury to find "use" of trade secrets does not require explicit copying.  *See Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 910 (3d Cir. 2021).  Because a jury may well make that finding for the ESSP project based on the record evidence, Mr. Britven's conclusions should not be excluded.

Mr. Britven, in calculating the appropriate damages owed to Deloitte due to Sagitec's misappropriation, analyzed the revenues earned by Sagitec on its Neosurance-branded projects, including the ESSP project, which Sagitec itself identified in a discovery response.  *See, e.g.*, Britven Rpt. ¶¶ 88, 90, Attachment 8; Ex. 3 (Sagitec's 3d Supp. Resps. Deloitte's 1st ROGS) at 9–10 █████████████████  The ESSP project was contracted for on April 4, 2014, and delivered on October 1, 2014.  *Id*.  Dr. Krein discussed evidence that Sagitec was using Deloitte's trade secrets during the same time frame, including to help Sagitec effectively bid on

new projects. *See, e.g.*, Krein Rpt. ¶¶ 243–248. Sagitec began utilizing uFACTS materials as early as July 17, 2013, almost a year before Sagitec contracted for the ESSP project, and, in some internal emails, even specifically referred to the Washington D.C. draft proposal. *See Id.* at ¶¶ 249–50 (referencing Sagitec's internal investigation report); D.I. 270-13 at '688–89 ("Sagitec's Investigation Rpt.") (referencing internal Sagitec email from Dec. 3, 2013 with an attachment titled "Washington DC draft proposal.docx" which had "references to Deloitte still included in the attachment, as well as notes about previous project information."), at '721–722 (Sagitec used uFACTS documents in the "initial days" to "build basic framework, the initial goal was to build demo project, build something quickly, use for other projects"[*sic*]). Against this backdrop of Sagitec's use of Deloitte's uFACTS IP, including to help Sagitec earn bids over its competitors, Mr. Britven's analysis properly included the revenues earned for the ESSP project.

Sagitec's arguments to exclude these revenues fail. **First**, Sagitec argues that the ESSP project should not be included because Dr. Krein does not opine that the ESSP project itself copies uFACTS code and that it is therefore "undisputed" that ESSP does not involve the use of uFACTS material. Sagitec is wrong. Sagitec's argument applies an overly narrow standard for "use" of trade secret material, which goes beyond whether a product incorporated copied content and "encompasses ***all the ways*** one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose, such as assist[ing] or accelerat[ing] research or development." *See Oakwood,* 999 F.3d at 910 (emphasis added). Dr. Krein did not need to find source code copied from uFACTS into the ESSP Neosurance for a jury to conclude, based on record evidence like Sagitec's own internal communications, that Sagitec used Deloitte's trade secrets to obtain a competitive advantage on the ESSP project. Indeed, evidence demonstrates that, at the time

13

Sagitec was bidding on, developing, and delivering the ESSP project, Sagitec was openly referencing stolen uFACTS material.  Sagitec's Investigation Rpt. '688–689.[6]  Sagitec's motion should be denied for this reason alone.

      **Second**, Sagitec cites to its own self-serving statements in its discovery responses and by its own witness that the ESSP project "was not a full-scale implementation of a UI system"  to argue that in fact, the ESSP project did not include a misappropriation of uFACTS.  Br. 13–14.  Not only does this, too, improperly narrow what may be considered for "use,"  but it also goes, at most, to weight and not admissibility.  Sagitec's witnesses may testify that they did not use uFACTS, and Deloitte will present contrary evidence.    But that dispute is not a basis to exclude Mr. Britven's opinion.  *See Walsh/Granite, JV v. HDR Eng'g, Inc.*, 2020 WL 13876895, at *5 (W.D. Pa. June 15, 2020) (objections to the "magnitude of the damages claimed" are for cross examination, "not a basis for exclusion"); *Microchip Tech.*, 2020 WL 10503006, at *1 ("not the district court's role . . . to evaluate the correctness of facts underlying an expert's testimony" (quoting *i4i Ltd. P'Ship*, 598 F.3d at 856)).

### C.    Deloitte Is Not Required to Establish Through Mr. Britven that Deloitte Bid Head-to-Head Against Sagitec to Recover Lost Profits

      Sagitec seeks to exclude Mr. Britven's **entire** lost profits analysis on the basis that "lost profits damages [are] unavailable as a matter of law" where Deloitte did not bid head-to-head against Sagitec for all of the projects linked to the accused profits.  Br. 15–16.  Sagitec's

---

[6] Thus, unlike the testimony excluded in *Alifax Holding Spa v. Alcor Sci., Inc.*, 2019 WL 1579503, at *1 (D.R.I Apr. 12, 2019) or in *Epic Sys. Corp. v. Tata Consultancy Servs., Ltd.*, 2016 WL 1466579, at *3 (W.D. Wis. Apr. 14, 2016) where the "exclusive link" to the opinion was through the technical expert, Mr. Britven's inclusion of ESSP revenues is not exclusively linked by Dr. Krein, and in any event, Mr. Britven permissibly assumed causation.  *See infra* 15.

argument is flawed.

**First**, Sagitec argues that the lost profits analysis does not satisfy the "fit" standard because Deloitte cannot establish causation via head-to-head bidding. "Fit" is a question of relevance, *i.e.*, "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *See Marcum v. Columbia Gas Transmission*, LLC, 549 F. Supp. 3d 408, 418 (E.D. Pa. 2021). The "standard for fit is not a high one, and Rule 702 'embodies a liberal policy of admissibility.'" *Leonard v. Stemtech Health Scis., Inc.*, 2013 WL 5311295, at *7 (D. Del. Sept. 23, 2013). Sagitec cannot credibly argue that Mr. Britven's lost profits opinions— which quantify the profits Deloitte would have realized but-for Sagitec's actions—are not relevant to any issue in the case. And Sagitec's attempt to challenge the causation element of lost profits through a *Daubert* Motion is improper. A *Daubert* Motion "is not the proper place to make a substantive law ruling on liability." *Walsh/Granite, JV,* 2020 WL 13876895, at *7; *10X Genomics, Inc v. Vizgen, Inc.*, 2025 WL 625684, at *2 (D. Del. Jan. 27, 2025).

**Second**, Mr. Britven is not required to prove causation through his opinions. Damages experts very commonly **assume** causation for purposes of their analyses. *See, e.g., Rhoads Indus., Inc. v. Shoreline Found., Inc.*, 2021 WL 2778562, at *32 (E.D. Pa. July 2, 2021); *Silipena v. Am. Pulverizer Co.*, 2024 WL 3219226, at *19 (D.N.J. June 28, 2024); *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 2015 WL 5459662, at *10 (S.D.N.Y. Sept. 16, 2015) ("[A] damages expert does not need to perform her own causation analysis to offer useful expert testimony."). That is precisely what Mr. Britven did here. Britven Rpt. ¶72. Sagitec may challenge causation at trial, but that is not a basis to exclude Mr. Britven's opinions now. *Rhoads,* 2021 WL 2778562, at *32 ("[I]t is the role of a damages expert to calculate hypothetical damages given an assumed set of facts").

**Third**, contrary to Sagitec's assertion, Deloitte is not required to establish that it bid head-to-head against Sagitec to establish but-for causation.  Causation can be established in other ways.  *See, e.g., Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003) ("We have affirmed lost profits awards based on 'a wide variety of reconstruction theories in which the patentee has presented reliable economic evidence of "but for" causation.'"); *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 951 (E.D. Mich. 2014) (plaintiffs "not restricted [to] any one particular method of proving but for causation").  None of Sagitec's cases, Br. 16, stand for the proposition that but-for causation can **only** be established by head-to-head bidding.  Here, Sagitec's representative, own expert, and own admissions establish a causal link by confirming Sagitec competes with Deloitte in the UI space.  Britven Rpt. ¶¶ 77–81; Ex. 4 (Myers Dep. Tr.) at 10:10–19, 233:9–234:3; Ex. 5 (Sagitec's Resps. 1st RFAs) at 24–25.  And in any event, there is evidence that Sagitec did in fact bid head-to-head on at least one project which Sagitec won: the DC Tax Project.  Britven Rpt. ¶ 79.  Sagitec's argument about Mr. Britven's underlying assumptions is for cross-examination, not exclusion.  *INVISTA*, 2013 WL 3216109, at *4.

### D.    Mr. Britven's Opinions Do Not Rely on "Undisclosed Opinions" of Dr. Krein

Sagitec wrongly seeks to exclude Mr. Britven's opinions that rely on a conversation he had with Dr. Krein.  It is a well-settled principle that experts are permitted to rely on the analysis of other experts in formulating their own opinions.  *See, e.g., Shire Viropharma Inc. v. CSL Behring LLC*, 2021 WL 1227097, at *25 (D. Del. Mar. 31, 2021); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1303 (Fed. Cir. 2015).  Mr. Britven appropriately relied on Dr. Krein's opinions, and, contrary to Sagitec's arguments, they were disclosed in Dr. Krein's report:

| Sagitec's Claimed "Undisclosed Opinions" | Example of Related Krein Opinions |
| --- | --- |



To the extent Sagitec suggests that Mr. Britven's report must match Dr. Krein's verbatim, Sagitec is wrong. *See, e.g.*, *Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 461, 474-475 (D. Mass. 2017); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F. Supp. 2d 568, 581 (D. Del. 2008). Mr. Britven's statements must only be "consistent with" or a "reasonable synthesis and/or elaboration of" Dr. Krein's report. *Id.* The "key consideration" is whether Sagitec was put on notice of the general subject matter of the testimony based upon the contents of the report and the elaborations made during expert discovery and deposition." *nCube Corp. v. SeaChange Int'l, Inc.*, 809 F. Supp. 2d 337, 347 (D. Del. 2011).

Further, Sagitec had an opportunity to depose both Dr. Krein and Mr. Britven about the claimed "undisclosed opinions" but chose not to take it—a situation where courts refuse to strike the relying expert's opinion. *See Sci. Applications Int'l Corp. v. United States*, 169 Fed. Cl. 346, 365 (2024) (finding argument that "[technical expert's] conversations with [damages expert] may go beyond what he addressed in his report" unconvincing because party "**had the opportunity to depose both [experts] on the nature of their conversations**."). Sagitec was not truly concerned about lack of notice or prejudice as it relates to the "undisclosed opinions," but rather, strategically chose not to explore them, so it could feign surprise for purposes of this Daubert Motion. That is not a basis to strike Mr. Britven's opinions.

### E.    Mr. Britven's Lost Profits and Disgorgement Opinions "Fit" this Case

Sagitec contends Mr. Britven's damages analysis should be excluded because he does not apportion between the trade secret and copyright claims. Br. 19–20. Sagitec is again shoehorning this argument into its *Daubert* motion by asserting that Mr. Britven's opinions do not "fit" the facts of the case. Br. 19. The fit requirement "is not high" and is one of

"relevance." *United States v. Ford*, 481 F.3d 215, 220 n.6 (3d Cir. 2007). Mr. Britven's opinions on disgorgement and lost profits are relevant to help the jury quantify damages, and therefore satisfy the "fit" requirement. *See Travelers Prop. Cas. Co. of Am. v. Hallam Eng'g & Constr. Corp.*, 2012 WL 13029519, at *6 (D.N.J. Aug. 16, 2012) (opinion that helped the jury quantify damages met the "fit" requirement).

Moreover, contrary to Sagitec's assertions, Mr. Britven gave specific opinions on what damages the jury should award for ***each*** cause of action, explicitly breaking copyright and trade secret out separately and explaining their relationship throughout. Britven Rpt. ¶ 12 (█████ ██████████████████████████. Sagitec's insistence that Mr. Britven did not apportion and its citation to *Vertellus Holdings LLC v. W.R. Grace & Co.-Conn.* for this point is therefore inapposite, because unlike in that case, Mr. Britven did not present a "lump sum for all claims." 2021 WL 3883597, at *16 (D. Md. Aug. 12, 2021).[7]

To the extent that Mr. Britven's damages calculations overlap, it is because they relate to the same pool of lost profits and disgorged revenues. That makes sense because the damages for these interrelated claims were all caused by the sale of the same product: Neosurance. *See In re Ahern Rentals, Inc., Trade Secret Litig.*, 2023 WL 9895103, at *5 (W.D. Mo. Nov. 14, 2023) (not excluding expert who did not apportion between causes of action). ***Both*** copyrighted works and trade secrets were used to develop Neosurance, which Sagitec sold as a market substitute for Deloitte's uFACTS software solution. Britven Rpt. ¶¶ 73–84. With respect to ***lost profits***, "but for" either the copyright infringement or the trade secret misappropriation, Deloitte contends it

---

[7] *Ford Motor Co v. Versata Software, Inc.* is inapposite because it involved cost savings associated with trade secrets different from those associated with copyrights, and the calculation included non-trade secret information. 2018 WL 10733561, at *10 (E.D. Mich. July 9, 2018).

would not have lost projects and market share that Sagitec was able to win due to Neosurance's existence on the market.  This is discussed in Mr. Britven's report, where he explains how each damages figure stands independently.  *Id.* at ¶¶ 91, 262. Other than conclusory statements, Sagitec does not actually explain why this was the wrong approach.

With respect to **disgorgement of profits**, by insisting that Deloitte must apportion the disgorgement award between the two causes of action, Sagitec seeks to impose a burden beyond what is required.  The Copyright Act makes clear that Deloitte was "required to present proof only of [Sagitec's] gross revenue, and [Sagitec] is required to prove [its] deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  17 U.S.C.A. § 504; *see also*, *e.g.*, *Mon Cheri Bridals, Inc. v. Wen Wu*, 383 F. App'x 228, 239 (3d Cir. 2010); *Nat'l Conf. of Bar Exam'rs v. Multistate Legal Stud., Inc.*, 458 F. Supp. 2d 252, 261 (E.D. Pa. 2006).  Deloitte's burden for trade secret misappropriation is similar.  *See Harbor Compliance Corp. v. Firstbase.io, Inc.*, 2024 WL 1442165, at *8 (E.D. Pa. Apr. 3, 2024). ("Whether there were 'alternative explanations' for these profits that are not based on the alleged misappropriation [is Defendant's burden] to prove.").  Deloitte put in evidence of the revenues and thus met its burden.  If Sagitec believes that any of those revenues are attributable solely to trade secrets and not to copyright, or vice versa, then it is **Sagitec**'s burden to show.  Otherwise, if the jury finds for Deloitte on **either** trade secret **or** copyright, then it should award the full revenues for the relevant time period.[8]

## CONCLUSION

For the foregoing reasons, Deloitte respectfully request that Sagitec's Motion be denied.

---

[8] As is common in cases involving multiple types of intellectual property claims, the jury instructions can make clear that the jury should reach a verdict that avoids a double recovery.

/s/ Andrew E. Russell

Andrew E. Russell (No. 5382)

Lindsey M. Gellar (No. 7202)

SHAW KELLER LLP

OF COUNSEL:

I.M. Pei Building

Joshua L. Simmons

1105 North Market Street, 12th Floor

KIRKLAND & ELLIS LLP

Wilmington, DE 19801

601 Lexington Avenue

(302) 298-0700

New York, NY 10022

arussell@shawkeller.com

(212) 446-4800

lgellar@shawkeller.com

Gregg F. LoCascio

*Attorneys for Plaintiffs Deloitte Consulting*

Patrick Arnett

*LLP and Deloitte Development LLC*

Nicholas Teleky

KIRKLAND & ELLIS LLP

1301 Pennsylvania Ave NW

Washington, DC 20004

(202) 389-5000

John F. Hartmann

KIRKLAND & ELLIS LLP

300 North LaSalle

Chicago, IL 60654

(312) 862-2000

Miranda D. Means

KIRKLAND & ELLIS LLP

200 Clarendon Street

Boston, MA 02116

(617) 385-7419

Ariel Deitchman

KIRKLAND & ELLIS LLP

Three Brickell City Centre

98 S.E. 7th Street, Suite 700

Miami, FL 33131

(305) 432-5676

Dated: July 24, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2025, this document was served on the persons listed below in the manner indicated:

**BY EMAIL:**

| | |
|---|---|
| Anne Shea Gaza | Christopher K. Larus |
| Robert M. Vrana | Rajin S. Olson |
| YOUNG CONAWAY STARGATT | William E. Manske |
| & TAYLOR, LLP | THOMPSON HINE LLP |
| Rodney Square | 800 Nicollet Ave., Suite 2925 |
| 1000 North King Street | Minneapolis, MN 55402 |
| Wilmington, DE 19801 | (877) 628-5500 |
| (302) 571-6600 | christopher.larus@thompsonhine.com |
| agaza@ycst.com | rajin.olson@thompsonhine.com |
| rvrana@ycst.com | william.manske@thompsonhine.com |

*/s/ Andrew E. Russell*
Andrew E. Russell (No. 5382)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
lgellar@shawkeller.com

*Attorneys for Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC*