IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DELOITTE CONSULTING LLP AND DELOITTE DEVELOPMENT LLC, ) ) ) ) ) | |
| Plaintiffs, ) ) | **Redacted - Public Version** |
| ) | C.A. No. 23-325-WCB |
| v. ) ) | ███████████████████ |
| SAGITEC SOLUTIONS LLC, ) ) | |
| Defendant. ) ) ) ) ) | |

**PLAINTIFFS' OPPOSITION TO SAGITEC SOLUTIONS LLC'S
MOTION TO STRIKE LATE-DISCLOSED THEORIES AND
RELATED PORTIONS OF THE REPORT OF DELOITTE'S
PROFFERED EXPERT DR. JONATHAN KREIN**

OF COUNSEL:
Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
(202) 389-5000

Andrew E. Russell (No. 5382)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
lgellar@shawkeller.com

*Attorneys for Plaintiffs Deloitte Consulting
LLP and Deloitte Development LLC*

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7419

Ariel Deitchman
KIRKLAND & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th Street, Suite 700
Miami, FL 33131
(305) 432-5676

Dated: July 24, 2025

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

STATEMENT OF FACTS ............................................................................................. 5

I.    Deloitte Provides Fulsome Responses to Sagitec's Contention Interrogatories During Fact Discovery ........................................................................................ 5

II.   Deloitte's Technical Expert Further Analyzes Sagitec's Trade Secret Misappropriation and Copyright Infringement ..................................................... 7

III.  Sagitec's Technical Expert Responds to Dr. Krein's Report and SAGITEC Deposes Him ..................................................................................................... 8

ARGUMENT ............................................................................................................. 9

I.    Delotte Satisfied Its Discovery Obligations ...................................................... 10

II.   The *Pennypack* Factors Do Not Weigh In Favor of Exclusion ......................... 12

CONCLUSION ........................................................................................................ 15

All Exhibits cited herein are attached to the concurrently filed declaration of Miranda Means.

Emphasis has been added unless expressly stated otherwise.

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brown v. Robert Packer Hosp.*,
    341 F.R.D. 570 (M.D. Penn. 2022)........................................................................14

*Callwave Commc'ns, L.L.C. v. AT&T Mobility LLC*,
    No. 12 Civ 1701, 2015 WL 13730253 (D. Del. Dec. 17, 2015).......................................10, 15

*Hoffman v. Hammerhead Constr. LLC*,
    No. 3:21 Civ. 46, 2023 WL 5346071 (D.V.I. Aug. 21, 2023)................................................14

*Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*,
    No. 15 Civ. 819, 2018 WL 3814614 (D. Del. Mar. 23, 2018)..............................................14

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
    559 F.2d 894 (3d Cir. 1977).......................................................................... *passim*

*Tracinda Corp. v. DaimlerChrysler AG*,
    362 F. Supp. 2d 487 (D. Del. 2005)..................................................................5, 10, 14, 15

*Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*,
    797 F.2d 1222 (3d Cir. 1986)...........................................................................3, 12

**Rules**

Fed. R. Civ. P. 26..........................................................................................10, 12, 16

Fed. R. Civ. P. 37............................................................................................4, 10, 16

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Deloitte respectfully submits this opposition to Sagitec's motion to strike portions of Dr. Jonathan Krein's report.  D.I. 272 ("Br.").  Fact discovery closed on March 28, 2025.  D.I. 237. Expert discovery closed on June 20, 2025.  *Id*.  Dispositive and *Daubert* motions were due on July 3, 2025.  *Id*.

Throughout fact and expert discovery, Deloitte compiled extensive evidence that Sagitec, without authorization, stole Deloitte's unemployment insurance software solution, uFACTS, stored it on internal Sagitec servers accessible to Sagitec's developers, and used it to assist in the development of Sagitec's competing software solution, Neosurance.  Sagitec's theft, misappropriation, and infringement were laid bare in discovery through (i) multiple examples of direct source code copying from the uFACTS computer program to the Neosurance computer program; (ii) internal Sagitec emails between Neosurance developers discussing the pilfered uFACTS technical documentation and source code to assist with development; and (iii) examples of copying from Deloitte's technical documentation directly into Neosurance's technical documentation.  Remarkably, as Deloitte learned in discovery, Sagitec knew full well about much of this evidence and even proffered some—but not all—of it to criminal prosecutors in the form of a 2020 internal investigation report.  Ultimately, two of Sagitec's senior partners were criminally charged with, among other things, misappropriating Deloitte's intellectual property.

In short, the record is replete with examples of Sagitec stealing, misusing, and profiting from Deloitte's uFACTS software.  Unable to refute this evidence on its merits, Sagitec, through this motion and its concurrently-filed *Daubert* motion, now tries to limit what the finder of fact will be permitted to hear about its misappropriation and infringement.  In this motion, Sagitec seeks to exclude evidence of its theft of a piece of technical documentation and copying of Deloitte code into two source code files:

- **The uFACTS Overview Document:**  Dr. Krein identified a uFACTS technical document called the uFACTS Overview that describes, at a high level, portions of the underlying uFACTS technology.  In his report, he explained that the document maps out certain of Deloitte's identified enumerated trade secrets.  He further found that Sagitec had copied descriptions in the document, often verbatim, into its Neosurance technical documents.  He concluded that, although neither Deloitte nor Dr. Krein identified the uFACTS Overview itself as a trade secret, Sagitec's copying further supported his conclusion that Sagitec had misappropriated the underlying technology.  Indeed, the only plausible explanation for Deloitte's description of its technology to be used by Sagitec to describe its own Neosurance technology is that Sagitec misappropriated the underlying trade secrets from Deloitte.

- **The** ███████████████ **and** ██████████████ **Neosurance Source Code Files:** Dr. Krein also identified—among literally hundreds of instances of copying— two Sagitec source code files that copied code *verbatim* from a variety of Deloitte's uFACTS source code files.  One Neosurance file, ██████████, included identical name/value pairs for a specific type of code called a constant, that were defined identically throughout Deloitte's uFACTS source code.  The other file, ████████████, included code copied from no fewer than 15 of Deloitte's uFACTS source code files.  As shown below, Dr. Krein mapped this "Frankenstein" Neosurance source code file to the Deloitte files that contained verbatim code:



Hoping to keep this devastating evidence from this Court and the jury, Sagitec now argues that Deloitte did not disclose the uFACTS Overview document or these source code files in interrogatory responses and, thus, should not be allowed to rely on them.

Sagitec is wrong. For the uFACTS Overview document, Sagitec *admits* that this document was cited in its own 2020 investigation report—and has thus been on notice of this document for years. Furthermore, Deloitte, in its interrogatory responses regarding Sagitec's misappropriation, incorporated the report by reference, and explicitly included all of the documents cited therein.

For the source code files, Sagitec served an interrogatory seeking an identification of all of the evidence of copying of which Deloitte was aware. During fact discovery, Deloitte responded to that interrogatory with pages of evidence setting forth Sagitec's brazen copying. Deloitte, however, also repeatedly and plainly explained in its responses that the interrogatory prematurely sought expert discovery, which might reveal more evidence of copying. Indeed, this Circuit long has recognized the central role of expert testimony in copyright cases involving computer programs. *See Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*, 797 F.2d 1222, 1233 (3d Cir. 1986) (emphasizing importance of expert testimony to "copyright cases involving exceptionally difficult materials, like computer programs"). Deloitte also incorporated by reference Dr. Krein's then-forthcoming expert report. Sagitec did not object to Deloitte's reservation of its right to

3

incorporate Dr. Krein's report. Given Dr. Krein's considerable experience in cases such as these, he in fact discovered additional evidence of copying. Specifically, he was able to determine, despite Sagitec's complex attempt to conceal it, that Sagitec copied multiple uFACTS files into two Neosurance files. That analysis was contained in his opening report, to which Sagitec's expert responded and on which Sagitec asked questions at Dr. Krein's deposition.

Sagitec's efforts to exclude this evidence is not supported by the law. Courts weighing whether to exclude evidence under Fed. R. Civ. P. 37 consider four factors. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905–06 (3d Cir. 1977). Each factor weighs against Sagitec's motion. ***First***, with regard to the prejudice to Sagitec, there has been none. Deloitte put Sagitec on notice of these files during discovery, and Sagitec had a full and fair opportunity to both serve a rebuttal expert report and depose Deloitte's expert. All of the evidence was uniquely in Sagitec's possession, as were the witnesses who copied from Deloitte's uFACTS materials. Sagitec's investigative report, compiled years earlier in 2020, even expressly discussed, excerpted, and screenshotted the uFACTS Overview document. Sagitec can hardly claim to be caught by surprise that Deloitte's expert identified this copying as support for his misappropriation and infringement opinions.

***Second***, with regard to the ability to cure the prejudice, Sagitec had numerous opportunities to cure, including by deposing Dr. Krein and serving a rebuttal report by its own technical expert. Sagitec did both. Sagitec's vague and belated claims that it could have further developed a defense with more fact discovery are belied by the fact that Sagitec made no efforts to request additional discovery or otherwise object to Deloitte's disclosures in its interrogatories, nor after Dr. Krein served his report. Excluding highly probative evidence after discovery and many months before trial is hardly an appropriate remedy here.

*Third*, with regard to the disruption of the case schedule, Sagitec could have raised an objection to Deloitte's interrogatory responses during fact discovery.  It did not.  It could have raised an objection to Dr. Krein's expert report before it deposed him.  It did not.  It could have raised an objection at Dr. Krein's deposition.  It did not.  At this point, it cannot say with a straight face that there were no opportunities to cure any supposed prejudice without disrupting the schedule.  Indeed, this case has not yet been given a trial date.

*Fourth*, there is no evidence at all of bad faith.  Deloitte provided disclosures to Sagitec as requested and made clear the terms under which it was providing those disclosures.  Deloitte did not and has not attempted to deceive or mislead Sagitec about its trade secret identifications, the evidence it would rely on to prove misappropriation, or its copyright infringement allegations.  Any argument to the contrary is patently and demonstrably false.

*Finally*, with regard to the importance of this evidence, as shown above, the evidence Sagitec seeks to exclude is highly probative of Deloitte's claims.  It demonstrates the pervasiveness, seriousness, and gravity of Sagitec's misappropriation and copying.  A jury should be permitted to hear it.

Exclusion of evidence is an "extreme sanction" that is not warranted here.  *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 506 (D. Del. 2005).  Sagitec knew about the evidence on which Deloitte intended to rely, and none of the *Pennypack* factors favor exclusion.  Accordingly, Deloitte respectfully requests that Sagitec's motion be denied.

## <u>STATEMENT OF FACTS</u>

## I.    DELOITTE PROVIDES FULSOME RESPONSES TO SAGITEC'S CONTENTION INTERROGATORIES DURING FACT DISCOVERY

During fact discovery, Sagitec issued three interrogatories related to Sagitec's motion.

**Interrogatory No. 1.**  Sagitec requested that Deloitte:

"Identify and describe with specificity . . . any and all of Your relevant alleged trade secrets . . . sufficient to allow a meaningful comparison of the asserted trade secret(s) to information that is generally known or readily ascertainable, and identify the three individuals most knowledgeable of the alleged trade secret(s). If in Your answer You choose to rely on documents, identify what within each document identified (whether a portion or in total) constitutes the alleged trade secret."

D.I. 273-01 (Deloitte's 6th Supp. Resps. Sagitec's 1st ROGS) at 6. Deloitte's first response described its trade secrets and identified knowledgeable Deloitte personnel, *id*. at 6–20, and its February 6, 2024 supplemental response identified 74 specific, enumerated trade secrets, *id*. at 20–38, 116–178 (Appendices A and B). Deloitte's specific identifications included methods, frameworks, source code, database schemas, use cases, and design assets. *Id*. When particular documents or portions of documents themselves constituted the alleged trade secrets, Deloitte identified them in either the body of the response, or in two attached appendices. *Id*. Following Deloitte's February 6, 2024 response, Sagitec did not request, and has never requested, further specificity.

**Interrogatory No. 2.** Sagitec requested that Deloitte "[i]dentify and describe with specificity the Sagitec conduct that You allege constitutes trade secret misappropriation . . . and identify any . . . documents . . . that Deloitte intends to rely on to prove the same." D.I. 273-01 (Deloitte's 6th Supp. Resps. Sagitec's 1st ROGS) at 38–39. Deloitte's responses described Sagitec's possession and systemic use of Deloitte's uFACTS material during the development of Neosurance, and identified a plethora of internal Sagitec communications, Sagitec documentation, and other documents that demonstrated that possession and use. *Id*. at 39–63. In particular, Deloitte identified Sagitec's 2020 investigation report and "the documents and communications cited therein" (which itself cited the "uFACTS Overview" document) as providing more evidence of Sagitec's misappropriation. *Id*. at 44 (citing D.I. 270-13, SAGITEC-DEL_00063591).

**Interrogatory No. 13.**  Sagitec requested that Deloitte "identify each and every instance of copyright infringement," including where the copying occurred in Sagitec's material and where it is found in Deloitte's registered uFACTS computer program.  D.I. 273-03 (Deloitte's 3rd Supp. Resps. Sagitec's 3rd ROGs) at 13.  In its initial response, Deloitte objected to the Interrogatory as prematurely seeking expert discovery.  *Id*.  Deloitte then explained in its April 26, 2024 first supplemental response that expert discovery was "necessary given the scale and breadth of Sagitec's copying."  *Id*. at 260.  Deloitte further noted in its June 28, 2024 supplemental response that due to the need for expert analysis, "Deloitte expressly reserves the right to identify any and all additional examples and evidence of substantial similarity consistent with the expert deadlines in this matter." *Id*. at 314–315.  Deloitte reiterated its objection in its March 21, 2025 supplemental response that the interrogatory prematurely sought expert discovery.  *Id*. at 319.  Finally, Deloitte explained in its final March 28, 2025 supplementation that Deloitte's "forthcoming expert reports" would contain information responsive to the interrogatory.  *Id*. at 320.  Sagitec did not respond to, object to, or move to strike any of these indications that Deloitte would further rely on its expert analysis, which would be disclosed according to the scheduling order.

## II.    DELOITTE'S TECHNICAL EXPERT FURTHER ANALYZES SAGITEC'S TRADE SECRET MISAPPROPRIATION AND COPYRIGHT INFRINGEMENT

Deloitte's technical expert, Dr. Jonathan Krein, issued an opening expert report consistent with the parties' agreed-to expert disclosure deadlines.  D.I. 273-05 (Krein Rpt.).  Among the numerous issues that Dr. Krein analyzed, he considered Deloitte's uFACTS materials and interrogatory responses and opined that Deloitte possessed trade secrets in uFACTS.  *Id.* at ¶¶ 100–160.  In particular, for several trade secrets identified in Deloitte's response to Interrogatory No. 1, he used the uFACTS Overview document to assist him in describing the trade secrets.  Although he did not opine that the uFACTS Overview document itself was a trade secret, Dr. Krein explained

that Sagitec used the uFACTS Overview document to build out its documentation for Neosurance. *Id.* at ¶¶ 215–233. He then stepped through certain asserted trade secrets and identified evidence that demonstrated Sagitec possessed and was using those trade secrets, including by identifying copying between the uFACTS Overview document and Neosurance's own technical documentation. *Id.* at ¶¶ 251–331 Since independently developed technology could not possibly correspond so closely to another company's documentation, Dr. Krein concluded that Sagitec's copying of the descriptions from the uFACTS Overview into its Neosurance documentation was additional evidence that Sagitec had misappropriated the technology described therein from Deloitte. *See id.*

Dr. Krein also analyzed Deloitte's uFACTS computer program, and identified instances of direct copying between Deloitte's source code and Sagitec's source code. D.I. 273-05 (Krein Rpt.) ¶¶ 334–436, Appendices A, B, and C. During his analysis, in addition to the copying identified by Deloitte in its responses to Interrogatory No. 13, Dr. Krein identified two files in Neosurance— ███████████████████████████████████████—that reflected ████████████████ copying, including material copied from fifteen different Deloitte uFACTS files. *Id.* ¶¶ 392–420 ██████████████████████████, 421–432 ████████████████.

## III.    SAGITEC'S TECHNICAL EXPERT RESPONDS TO DR. KREIN'S REPORT AND SAGITEC DEPOSES HIM

One month later, Sagitec served a rebuttal report from its technical expert, Mr. Monty Myers. Ex. 1 (Myers Rpt.) Mr. Myers did not provide an opening report. Instead, he sought to rebut certain of Dr. Krein's opinions. Sagitec then deposed Dr. Krein about his opinions on June 13, 2025.

**On Deloitte's trade secret misappropriation claims and the uFACTS Overview document:** Mr. Myers purported to respond to Dr. Krein's opinions about Deloitte's trade secrets

throughout his report.  In particular, Mr. Myers specifically discussed and provided rebuttal opinions and analysis concerning the uFACTS Overview document. *Id.* ¶¶ 190–200.  Sagitec then questioned Dr. Krein about the uFACTS Overview document at his deposition.  *See, e.g.*, Ex. 2 (Krein Dep. Tr.) at 242:10–244:25.

**On Deloitte's copyright infringement claims and the at-issue source code files:** Mr. Myers also purported to respond to Dr. Krein's opinions about copyright infringement. Mr. Myers acknowledges that Dr. Krein referenced both as "accused Neosurance file[s]" during his own rebuttal head-start analysis, *id.* Ex. 1 (Myers Rpt.) ¶ 412, and notes in a footnote that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* ¶ 414 n.381.  But tellingly, nowhere in his report does Mr. Myers address Dr. Krein's contentions that these files contained copying, or provide any rebuttal to Dr. Krein's detailed analysis of copying. At Dr. Krein's deposition, Sagitec briefly questioned him about the ▮▮▮▮▮▮▮▮▮ source code file, Ex. 2 (Krein Dep. Tr.) at 175:19–176:25, but asked no questions about the ▮▮▮▮▮▮▮ source code file.

## ARGUMENT

"[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Tracinda*, 362 F. Supp. 2d at 506 (overruling objections to expert testimony and supplementation).  In determining whether to exclude evidence under Rule 37 due to a failure to provide required disclosures under Rule 26, courts consider "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case . . ., and (4) bad faith or willfulness in failing to comply with the court's order." *Id.* (citing *Pennypack*, 559 F.2d at 904–05).  "In utilizing

the *Pennypack* analysis, Courts favor the resolution of disputes on their merits." *Callwave Commc'ns, L.L.C. v. AT&T Mobility LLC*, No. 12 Civ 1701, 2015 WL 13730253, at *2 (D. Del. Dec. 17, 2015) (cleaned up).

As discussed below, Sagitec has not demonstrated that this extreme sanction is warranted in this circumstance both because Deloitte did not violate Rule 26 and because none of the *Pennypack* factors support exclusion.

## I.    DELOTTE SATISFIED ITS DISCOVERY OBLIGATIONS

Sagitec's motion can be denied solely on the basis that Deloitte did not violate Rule 26 because Deloitte provided the disclosure required by Sagitec's interrogatories.

**The uFACTS Overview document was disclosed as evidence of Sagitec's misappropriation of Deloitte's trade secrets.** Sagitec knew about the uFACTS Overview document. Indeed, it admits that it "was expressly cited" in its 2020 investigation report. Br. 7. In response to Sagitec's interrogatory, Deloitte expressly incorporated by reference the "documents and communications cited" within the report as evidence of Sagitec's misappropriation of Deloitte's trade secrets. D.I. 273-01 (Deloitte's 6th Supp. Resps. Sagitec's 1st ROGS) at 44 ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ (citing, D.I. 270-13 SAGITEC-DEL_00063591)); D.I. 270-13 (SAGITEC-DEL_00063591) (Sagitec's Internal Investigation Report) at 721–722 (explicit screenshot and excerpt of the uFACTS Overview document, and interview from Sagitec employee confirming that this document would provide "'help for someone who doesn't have any knowledge' to understand").

10

Moreover, Sagitec's claim that Deloitte "did not identify the 'uFACTS Overview' document as comprising alleged trade secrets until it served Dr. Krein's expert report," Br. 6, misses the point of Dr. Krein's analysis. Deloitte has not contended that the uFACTS Overview document itself is a trade secret in this lawsuit and, thus, it was not required to list it when asked to cite to documents only if "[Deloitte] chose to rely on documents" to identify Deloitte's trade secrets, and to identify the portions of those documents "constituting" the trade secret. D.I. 273-01 (Deloitte's 6th Supp. Resps. Sagitec's 1st ROGS) at 6. Instead, Dr. Krein used Sagitec's pervasive copying of the uFACTS Overview document into its Neosurance documentation as evidence corroborating his conclusion that Sagitec misappropriated the technology described therein. Consistent with that use, Deloitte identified the document, and the documents into which Sagitec copied this material, in its response to Interrogatory No. 2. Thus, Sagitec is wrong when it repeatedly insists that Deloitte "untimely disclos[ed] [] new alleged trade secrets." Br. 8. The simple fact is that Sagitec has been on notice of this document for years.

**█████████████████████ and ████████████ were disclosed according to the expert discovery deadlines.** In response to Interrogatory No. 13, Deloitte provided its theories regarding Sagitec's copying of the uFACTS computer program. As is typical in complex cases, however, Deloitte made clear that its discussion necessarily required expert discovery due to the complex and technical nature of the copying at issue. *See* D.I. 273-03 (Deloitte's 3rd Supp. Resps. to Sagitec's 3rd ROGs) at 13, 260 (citing *Whelan*, 797 F.2d at 1233), 314–15, 319. Deloitte made its position on this objection clear to Sagitec even after Deloitte's agreement to provide a "near-final" identification of elements copied from uFACTS to Neosurance. *See* D.I. 273-04 at 2. Deloitte's final supplementation on March 28, 2025 further incorporated by reference its then-forthcoming expert reports. Dr. Krein's report then discussed these two "Frankenstein" source code files in

11

Sagitec's Neosurance computer program, created with elements copied from no fewer than 15 different Deloitte source code files.  D.I. 273-05 (Krein Rpt.) at ¶¶ 392–432.

As Sagitec received the disclosures required by Rule 26, its motion fails for this reason alone.

## II.    THE *PENNYPACK* FACTORS DO NOT WEIGH IN FAVOR OF EXCLUSION

In addition to Sagitec failing to identify a failure to comply with Rule 26, it has not established that this situation warrants the "extreme" sanction of excluding this critical evidence of Sagitec's misappropriation and infringement.  None of the *Pennypack* factors weighs in its favor.

**Factor 1 (Prejudice):** Sagitec has suffered no prejudice.  With respect to the uFACTS Overview document, as discussed above, Sagitec was on notice of the document well before this lawsuit even began, as it was included in its own internal investigative report.  D.I. 270-13 (SAGITEC-DEL_00063591) (Sagitec's Internal Investigation Report) at 721–722.  It also knew by March 22, 2024 that Deloitte would rely on it because Deloitte explicitly referenced the documents and communications cited throughout Sagitec's report as providing evidence of Sagitec's misappropriation of Deloitte's uFACTS trade secrets.  Sagitec at no point told Deloitte that it did not understand Deloitte's citation or that it had some other objection to it.  Moreover, by February 6, 2024, Deloitte described and enumerated its asserted trade secrets, which provided Sagitec its requested specificity about Deloitte's claims.  Deloitte has not and did not seek to add additional asserted trade secrets through Dr. Krein's report, and his report does not claim that the uFACTS Overview document is an additional or new trade secret.  Instead, Dr. Krein points to pieces of this documentation that help describe the underlying functionality and technology.  With respect to the ███████████████████████████ source code files, Deloitte identified throughout discovery the source code copying of which it was aware at that time, objected to the

interrogatory to the extent it called for expert discovery (even after Deloitte agreed to provide a "near final" identification of copying), and incorporated its forthcoming expert reports into its interrogatory response.

Sagitec's only claim of prejudice is that the "late disclosure prevents the opposing party from deposing fact witnesses about the new material."  Br. 8.  Sagitec, however, never sought additional discovery or depositions—not after its interrogatory responses indicated expert discovery would be required and incorporated Dr. Krein's forthcoming report by reference, not after Dr. Krein's expert report was served with the purported "late disclosures," and not after Dr. Krein was deposed.  Moreover, Sagitec's expert, Mr. Myers, did not opine that he was unable to analyze Dr. Krein's contentions about the uFACTS Overview or these two source code files due to a lack of fact discovery—and in fact, Mr. Myers did provide opinions about Dr. Krein's misappropriation and copyright infringement opinions.  As Sagitec was able to rebut the material in Dr. Krein's report, it is particularly hard to see how Sagitec was prejudiced.  *See Tracinda*, 362 F. Supp. 2d at 508 (finding that the moving parties rebuttal points "demonstrates that [movant] was not prejudiced by [the purportedly new evidence and related testimony].").  Given Sagitec's lack of prejudice, this factor weighs against exclusion.

**Factors 2 (Ability to Cure Prejudice) and 3 (Disruption to the Schedule):**  Sagitec had the ability to cure any purported prejudice without disruption.  Courts have held that purported prejudice due to claimed late-disclosed evidence can be cured in a variety of ways, including expert depositions and rebuttal expert reports.  *See Hoffman v. Hammerhead Constr. LLC*, No. 3:21 Civ. 46, 2023 WL 5346071, at *5 (D.V.I. Aug. 21, 2023) ("The Court finds that any possible prejudice to Defendants may be cured by permitting them an opportunity to provide a rebuttal expert of their own and to conduct a deposition of Plaintiffs' expert.").  Sagitec had, and took, the opportunity to

do both.  And Sagitec's expert, Mr. Myers, did in fact address the uFACTS Overview document and, in general, Dr. Krein's source code copying opinions.  Moreover, if Sagitec had attempted to cure its purported prejudice by timely requesting additional fact discovery after receiving Dr. Krein's report two months ago, that would not have caused significant disruption at that time because, then, rebuttal reports had not been filed, summary judgment motions had not been briefed, and a trial date had not been (and still has not been) set.[1]  *See Brown v. Robert Packer Hosp.*, 341 F.R.D. 570, 574 (M.D. Penn. 2022) ("[E]xclusion of an expert's testimony and report based on an untimely disclosure is generally unwarranted if the prejudice to the opposing party is slight and curable—particularly in the absence of a firm, impending trial date.").  Given Sagitec had repeated opportunities to cure any of its purported prejudice, these factors, too, weigh against exclusion.

**Factor 4 (Bad Faith):**  There is simply no evidence at all of bad faith.  Evidence is not normally excluded under *Pennypack* "absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence."  *Pennypack*, 559 F.2d at 905; *Tracinda* 362 F. Supp. 2d at 506.  Sagitec has not come close to showing either.  Indeed, as discussed above, Deloitte's conduct in discovery was clear, above-board, and fully supported by facts known at the time.  Tacitly acknowledging the lack of evidence of bad faith, Sagitec plays down this requirement, arguing that exclusion can be appropriate when an "oversight is not rationally explained and is surely prejudicial."  Br. 9.  But that doesn't exist here either because Deloitte was

---

[1] Sagitec's authority is not to the contrary; there, the late disclosure—a shift in the asserted priority date of a patent—occurred less than a month before trial was set to begin and frustrated defendant's "entire invalidity case" against a patent claim.  *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, No. 15 Civ. 819, 2018 WL 3814614, at *3 (D. Del. Mar. 23, 2018).

clear throughout discovery what it was providing to Sagitec. It disclosed as evidence of misappropriation the uFACTS Overview document as cited in Sagitec's own internal investigation. It explained it was providing "near-final" responses to interrogatories regarding copying, and even in those responses made clear that it would also incorporate its forthcoming expert reports due to the need for expert analysis. As discussed above, Sagitec is not prejudiced. *See supra* at 12 (Factor 1). As a result, this factor also weighs against exclusion.

Factor 5 (Importance of the Evidence): When considering whether to exclude evidence, courts routinely indicate a preference to rule on the merits. *See Callwave*, 2015 WL 13730253 at *2 (collecting cases). Here, the evidence and paragraphs Sagitec requests to strike are highly probative of Deloitte's misappropriation and infringement claims. Indeed, even Sagitec admits that Dr. Krein's "reliance on [the uFACTS Overview] document is extensive." Br. 6. That is because the document appears to have been the roadmap that Sagitec used to misappropriate the trade secrets that Deloitte identified as being taken. Likewise, the two at-issue source code files— on which Sagitec again admits "Dr. Krein relies extensively," *id.*—exemplify the extensive copying in which Sagitec engaged, as well as the lengths that it took to hide that copying. To exclude that evidence would deprive the finder of fact of highly probative evidence showing that Sagitec copied and pasted information from Deloitte uFACTS material directly into Sagitec Neosurance material. The finder of fact deserves to hear that evidence and to decide the matter on the merits. As a result, this factor also weighs against exclusion.

## CONCLUSION

As Deloitte did not violate Rule 26 and each *Pennypack* factor weighs against exclusion of this evidence, Sagitec's motion to strike the evidence under Rule 37(c)(1) should be denied.

/s/ Andrew E. Russell
Andrew E. Russell (No. 5382)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
lgellar@shawkeller.com

OF COUNSEL:
Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

*Attorneys for Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC*

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
(202) 389-5000

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7419

Ariel Deitchman
KIRKLAND & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th Street, Suite 700
Miami, FL 33131
(305) 432-5676

Dated: July 24, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2025, this document was served on the persons listed below in the manner indicated:

**BY EMAIL:**

Anne Shea Gaza
Robert M. Vrana
YOUNG CONAWAY STARGATT
 & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

Christopher K. Larus
Rajin S. Olson
William E. Manske
THOMPSON HINE LLP
800 Nicollet Ave., Suite 2925
Minneapolis, MN 55402
(877) 628-5500
christopher.larus@thompsonhine.com
rajin.olson@thompsonhine.com
william.manske@thompsonhine.com

*/s/ Andrew E. Russell*
Andrew E. Russell (No. 5382)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
lgellar@shawkeller.com

*Attorneys for Plaintiffs Deloitte Consulting LLP*
*and Deloitte Development LLC*