IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DELOITTE CONSULTING LLP and<br>DELOITTE DEVELOPMENT LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | **Redacted - Public Version** |
| | ) | |
| v. | ) | C.A. No. 23-325-WCB |
| | ) | |
| SAGITEC SOLUTIONS LLC, | ) | █████████████████████ |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS**

OF COUNSEL:
Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
(202) 389-5000

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Andrew E. Russell (No. 5382)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
lgellar@shawkeller.com

*Attorneys for Plaintiffs Deloitte Consulting
LLP and Deloitte Development LLC*

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7419

Ariel Deitchman
KIRKLAND & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th Street, Suite 700
Miami, FL 33131
(305) 432-5676

Dated: July 24, 2025

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS .............................................................................. 1

SUMMARY OF THE ARGUMENT ......................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 3

I.     DELOITTE'S UFACTS SOLUTION ............................................................................. 3

II.    SAGITEC TAKES UFACTS, STORING ITS MATERIALS ON SHAREPOINT .......................................................................................................... 4

III.   SAGITEC MISDIRECTS LEGAL INVESTIGATIONS INTO ITS USE ................... 7

      A.      Sagitec Misleads Government Investigators ............................................... 7

      B.      Sagitec Misleads Deloitte ........................................................................... 9

IV.   SAGITEC DELETES UFACTS DOCUMENTS FROM SHAREPOINT ................. 10

ARGUMENT ............................................................................................................................ 13

I.     SAGITEC SPOLIATED EVIDENCE ........................................................................ 13

      A.      Sagitec Was Under a Duty to Preserve When the Loss Occurred ........... 14

      B.      The Lost Documents Were Within The Scope of Sagitec's Preservation Duty .......................................................................................................... 15

      C.      Sagitec Did Not Undertake Reasonable Steps to Preserve the Documents ......... 16

      D.      The Lost Documents Are Not Recoverable Elsewhere ........................... 17

II.    THE COURT SHOULD SANCTION SAGITEC ....................................................... 18

CONCLUSION ........................................................................................................................ 20

All Exhibits cited herein are attached to the concurrently filed declaration of Miranda Means.

Emphasis has been added unless expressly stated otherwise.

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baxter v. Palmigiano*,
    425 U.S. 308 (1976)............................................................................................................13

*Beaven v. U.S. Dep't. of Justice*,
    622 F.3d 540 (6th Cir. 2010) .........................................................................................18

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)..........................................................................................................18

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
    803 F. Supp. 2d 469 (E.D. Va. 2011) ...........................................................................16

*In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*,
    299 F.R.D. 502 (S.D.W. Va. 2014)................................................................................15

*GN Netcom, Inc. v. Plantronics, Inc.*,
    No. 12 Civ. 1318, 2016 WL 3792833 (D. Del. July 12, 2016)......................................16

*Lexpath Techs. Holdings, Inc. v. Welch*,
    No. 13 Civ. 5379, 2016 WL 4544344 (D.N.J. Aug. 30, 2016)......................................14

*Major Tours, Inc. v. Colorel*,
    No. 05 Civ. 3091, 2009 WL 2413631 (D.N.J. Aug. 4, 2009)........................................14

*Micron Tech., Inc. v. Rambus, Inc.*,
    645 F.3d 1311 (Fed. Cir. 2011)......................................................................................14

*Orion Drilling Co., LLC v. EQT Prod. Co.*,
    826 F. App'x 204 (3d Cir. 2020) ...................................................................................16

*Painadath v. Good Shepherd Penn Partners*,
    348 F.R.D. 16 (E.D. Pa. 2024)...........................................................................13, 14, 16

*S.E.C. v. Graystone Nash, Inc.*,
    25 F.3d 187 (3d. Cir. 1994)......................................................................................13, 17

*Sampson v. City of Cambridge, Md.*,
    251 F.R.D. 172 (D. Md. 2008)........................................................................................15

*Schmid v. Milwaukee Elec. Tool Corp.*,
    13 F.3d 76 (3d Cir. 1994).........................................................................................16, 19

*Silvestri v. Gen. Motors Corp.*,
    271 F.3d 583 (4th Cir. 2001) ...................................................................................19

*Triton Const. Co. v. E. Shore Elec. Servs., Inc.*,
    No. 3290, 2009 WL 1387115 (Del. Ch. May 18, 2009)........................................19

*Turner v. United States*,
    736 F.3d 274 (4th Cir. 2013) ...................................................................................15

*United States v. Barnes*,
    411 Fed. App'x 365 (2d Cir. 2011)...........................................................................14

*Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc.*,
    593 F. Supp. 1443 (C.D. Cal. 1984) ........................................................................16

**Rules**

Fed. R. Civ. P. 37 ....................................................................................................... *passim*

## NATURE AND STAGE OF PROCEEDINGS

With fact and expert discovery closed, Deloitte now moves the Court for sanctions related to Sagitec's spoliation of evidence under Federal Rule of Civil Procedure 37(e).

## SUMMARY OF THE ARGUMENT

1.  As discovery has shown, Deloitte spent decades, millions of dollars, and thousands of person-hours to develop its Unemployment Framework for Automated Claim & Tax ("uFACTS") computer program and associated trade secrets. Sagitec chose to hire away Deloitte's uFACTS development team. It also chose to steal Deloitte's uFACTS source code, its database schemas, and its technical documentation and to use those improperly obtained materials to develop its directly competing software solution, Neosurance, building demos, software modules, and entire technological systems to rush to market and get clients. Emails obtained through discovery reveal that, in order to develop Neosurance by misusing uFACTS, Sagitec employees shared, stored, and circulated uFACTS materials via Sagitec's SharePoint file-sharing site, in folders explicitly labeled "uFACTS" (the "uFACTS SharePoint Folders"). These include, for example, a folder called: ███████████████████████████████████.[1] Despite their obvious potential relevance to Deloitte's claims and the likelihood they will reveal further misconduct by Sagitec, the uFACTS SharePoint Folders were never produced in this case. The reason is that they were willfully deleted by Sagitec. Deloitte now moves for spoliation sanctions commensurate with Sagitec's culpability and the prejudice to Deloitte.

2.  Each of the elements of spoliation is met here. Sagitec had a duty to start preserving any and all documents related to uFACTS when it learned of the government's investigation into

---

[1] The specific uFACTS SharePoint Folders at issue are identified in Exs. 6, 7, 22, and 31.

1

Sagitec's misuse of uFACTS because Sagitec knew that it was subject to government scrutiny and that litigation by Deloitte was reasonably foreseeable in the future. Indeed, Sagitec's own outside counsel told Sagitec personnel that the government's investigation likely signaled the start of legal action. Given their apparent contents, it's hard to imagine any scenario in which the uFACTS SharePoint Folders would not be requested both by the government and by Deloitte. **Yet, Sagitec not only failed to preserve them, a senior executive ordered their deletion**. The uFACTS SharePoint Folders have not been recovered from any other source and their absence means that Deloitte is severely prejudiced because, although the uFACTS SharePoint Folders appear on their face to have contained the very Deloitte intellectual property at issue in this case, Sagitec's willful deletion of them means there is no way for Deloitte to obtain the contents of the folders or to conduct a comparison to Deloitte's asserted and produced source code and documentation. In other words, Deloitte is irreparably hindered in its ability to present the full scope of the misappropriation and copyright infringement to a jury.

3. This is textbook spoliation. Indeed, it is an egregious case given the willful destruction of what appears to be highly relevant and probative evidence. It is also part of a pattern of obfuscation, deception, concealment, and prevarication by Sagitec that made discovery by Deloitte of its claims exceedingly difficult. This pattern included, among other things, "cleansing" Deloitte documents of references to Deloitte to make detection more difficult, tampering with the contents of a hard drive before it could be recovered by investigators, lying repeatedly to both government investigators and Deloitte about Sagitec's use of uFACTS, and attempting to avoid production of a key computer server by claiming falsely that production was not possible because the server had been "decommissioned."

4. Sagitec's willful spoliation, part of its concerted effort to avoid detection, warrants

appropriate sanctions under Federal Rule of Civil Procedure 37(e). Deloitte seeks two sanctions designed to remedy the prejudice, deprive Sagitec of undue benefit it repeated, and deter litigations from engaging in similar tactics in the future. ***First***, Deloitte asks that the Court sanction Sagitec by instructing the jury to draw a mandatory adverse inference that Sagitec's internal SharePoint server, and the deleted uFACTS SharePoint Folders in particular, contained the uFACTS solution, including the asserted uFACTS Application as delivered to Massachusetts and produced by Deloitte, as well as the uFACTS use cases asserted by Deloitte. This is an appropriate sanction under Rule 37(e) due to the evidence that Sagitec deleted this evidence with intent to prevent its use in litigation. ***Second***, Deloitte asks that the Court sanction Sagitec by striking Sagitec's statute of limitations defense. To be clear, the applicability of the statute of limitations defense, including whether it is equitably tolled due to Sagitec's fraudulent concealment, is a factually disputed question for the jury. But striking this defense is nonetheless appropriate as a sanction under Rule 37(e) both because the folder was deleted intentionally and because the evidence was destroyed as part of a broader effort to conceal Sagitec's misconduct from and delay legal action by Deloitte and the government, who were investigating Sagitec at the time the material was destroyed. The sanction is particularly appropriate with respect to Deloitte's New York trade secret claim, because New York common law applies a claim accrual approach to its statute of limitations, such that *each* misappropriation is considered separately. Thus, Sagitec's destruction of the uFACTS SharePoint Folders has prevented Deloitte from presenting the full scope of Sagitec's continuing misappropriation and inhibited Deloitte's capacity to fully respond to Sagitec's statute of limitations defense.

## **FACTUAL BACKGROUND**

## I.    **DELOITTE'S UFACTS SOLUTION**

In order to assist state governments with the complex task of managing unemployment

insurance ("UI") claims, Deloitte and its predecessor in interest, BearingPoint Inc., developed the "Unemployment Framework for Automated Claim & Tax Services," or "uFACTS," solution and delivered the first implementation to the State of Minnesota in 2007. D.I. 270-02 (Malm Dep. Tr) at 34:15–35:9. Since acquiring BearingPoint, Deloitte continued to develop and refine uFACTS and implemented uFACTS solutions in the following states: Massachusetts, New Mexico, California, Florida, Colorado, Illinois, Ohio, Kentucky, and Michigan. D.I. 270-06 (Deloitte's 6th Supp. Rsps. to Sagitec's 1st ROGs) at 110–111.

## II.    SAGITEC TAKES UFACTS, STORING ITS MATERIALS ON SHAREPOINT

Sagitec was founded in 2004 by Ranjith Kotcherlakota, Piyush Jain, Derek ("Rick") Deshler, Deepak Ahuja, Rod Sheppard, and Bala Venkat. D.I. 270-04 (Sagitec's 3d Supp. Rsps. Deloitte's 1st ROGs) at 7–8; D.I. 270-13 (Sagitec's Investigation Rpt.) at '609–10. Three of the founders—Mr. Kotcherlakota, Mr. Deshler, and Mr. Ahuja— previously were employed at BearingPoint and knew many of the employees that moved to Deloitte with the acquisition, including the former leader of Deloitte's UI business unit, Mr. David Minkkinen. *Id.* at '610, '615. Sagitec began exploring adding a UI solution to its list of offerings, which included having conversations with Mr. Minkkinen, who was employed by Deloitte at that time, about coming to work at Sagitec. *Id.*; *see, e.g.*, D.I. 270-14 (discussing negotiations with Minkkinen re working at Sagitec). Internal Sagitec emails show that ██████████████████████████████████████████████████████████████████████████████████████████████. *See, e.g.*, D.I. 270-15 (████████████████████████████████████████████████████████████████████████████████████), Ex. 25 at '546 (████████████████████████████████████████████████████████████████████████) *see also* Ex. 26 (███████████████████████████████████████████████████). Sagitec hired Mr. Minkkinen in 2013 and began work on its competing

4

UI solution shortly thereafter. Sagitec's Investigation Rpt. '610, '620–21. ███████████

████████████████████████ Ex. 27 at '247 (█████████████████

██████████████████████████████████████████████).

Just two days after signing his employment agreement with Sagitec, Mr. Minkkinen started sharing Deloitte uFACTS materials with Sagitec employees to jump start their development of a competing unemployment insurance software solution. D.I. 270-08 ("Krein Rpt.") ¶ 213. In the months and years that followed, Sagitec's Labor and Employment group, which houses its UI practice, hired at least 12 additional UI employees away from Deloitte. Sagitec's Investigation Rpt. '618; Ex. 2 (Sagitec's 3d Supp. Rsps. Deloitte's 1st ROGs) at 35–36. Mr. Minkkinen and these additional employees brought Deloitte confidential material to Sagitec, including the copyrighted computer program and the trade secrets at issue in this litigation. *See, e.g.* Krein Rpt. ¶¶ 211–250; Sagitec's Investigation Rpt. at '615–621, '665–726; D.I. 270-06 (Deloitte's 6th Supp. Rsps. Sagitec's ROGs) at 38–63 (citing internal Sagitec emails discussing possession and use of Deloitte's uFACTS materials); D.I. 270-04 (Sagitec's 3d Supp. Rsps. Deloitte's 1st ROGs) at 13–22.

Emails show that Sagitec used uFACTS code and documentation continuously starting in 2013. D.I. 270-04 (Sagitec's 3d Supp. Rsps. Deloitte's 1st ROGs) at 13–22; D.I. 270-11 (████████████████████████); D.I. 270-10 at '257 (████████████████ █████████████████████); D.I. 270-21 (██████████████████████ ████); D.I. 270-20 (████████████████); D.I. 270-19 (████████████ ████████████████████████); D.I. 270-09 (████████████ ████████); D.I. 270-18 (████████████████████████ ████████████████). In fact, Dr. Krein found that products delivered in 2017 and 2020

████████████████, showing the misappropriation persisted for four to seven years.  Krein Rpt. ¶ 344.  Accordingly, Sagitec now admits ████████████████████████████ ████████████████████████████████.  *See, e.g.*, D.I. 270-01 (Kotcherlakota Dep. Tr.) at 27:8–24, 30:6–34:21, 36:18–37:22; D.I. 270-04 (Sagitec's 3d Supp. Rsps. Deloitte's 1st ROGs) at 13–22; Krein Rpt. ¶¶ 211–250; 270-17 (████████████████████████ ████████); 270-16 (same).

During this time of widescale misappropriation, the evidence shows that documents related to uFACTS were stored by Sagitec employees in folders on Sagitec's SharePoint site.  On August 20, 2013, a Sagitec employee sent an email ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████.  Ex. 6; *see also* Exs. 21 (████████████████████████████████████ ████████); 22 (████████████████████████████████████ ████████████████████████).  DDLs are "data definition language," and are part of the computer program at issue in this case.  Ex. 4 (Kotcherlakota Dep. Tr.) at 153:3–8; Krein Rpt. ¶ 69.  Sagitec's 30(b)(6) designee testified ████████████████████████████████ ████████████████████████████████████████████████████ (the "uFACTS SharePoint Folders").  Ex. 4 (Kotcherlakota Dep. Tr.) 150:11–24.  He also confirmed that ████████████████████████████████████████ ████████████████████.  *Id.* at 152:5–153:1.

Other documents confirm that uFACTS materials were stored in the uFACTS SharePoint Folders for years.  For example, a February 20, 2015 email ████████████████████████

6



Ex. 23 at '427 ( ████████ ).

On October 27, 2015, Sagitec employees email ████████

████████

████████

████████ D.I. 270-19; *see also* Ex. 24 at '827 (████████

████████ ).  Likewise, on

January 20, 2016, a Sagitec employee ████████

████████ Ex. 7 (████████

████████

████████

████████ ).

## III.     SAGITEC MISDIRECTS LEGAL INVESTIGATIONS INTO ITS USE

### A.     Sagitec Misleads Government Investigators

In 2015, Sagitec was awarded a contract to develop its UI solution for the states of West Virginia and Maryland. *See, e.g.*, Ex. 8 at 303, 325; Sagitec's Investigation Rpt. at '609.  In May 2016, a Workforce West Virginia employee made contact with an agent with the West Virginia Commission on Special Investigations alleging possible wrongdoing by Sagitec, including possible misappropriation of Deloitte intellectual property.  Ex. 30 (United States vs Minkkinen and Sambasivam. (2023) (Case 2:22-cr-00163)) ¶ 32.  On July 25 2016, Sagitec received correspondence from the Maryland Assistant Attorney General ("AAG") relaying a whistleblower's concerns that Sagitec had used documentation from Deloitte related to UI software. *See* Sagitec's Investigation Rpt. '632–633; Ex. 12.  Mr. Minkkinen drafted a response to the Maryland AAG letter, which he sent to Sagitec's outside counsel Timothy Keller for review on August 15, 2016.  Ex. 17. That same day, Mr. Keller told Mr. Minkkinen that "[t]he

allegations are certainly serious" and noted "[t]hey might be the first step in legal action by Maryland." Sagitec's Investigation Rpt. at '635; Ex. 18 at '100.  When Mr. Minkkinen expressed doubt about the seriousness, Mr. Keller insisted that "Particularly since the letter came from the Assistant Attorney General.  We need to keep that in mind as a possible indication of where they might be going with this" and separately stressed, "This one is harder than it looks."  Sagitec's Investigation Rpt. at '637–678, 679; Ex. 19.  On August 23, 2016, despite the fact that they had uFACTS, *supra* 4–5, Sagitec responded to the Maryland AAG, stating "We ask that the Department accept Sagitec's assurance that Sagitec has not provided the Department any software improperly obtained from another company."  Sagitec's Investigation Rpt. at '643; Ex. 11 at '340.

On November 10, 2016, Mr. Minkkinen met with officials from Workforce West Virginia (a state government agency funded through the United States Department of Labor) and Maryland's Department of Labor, Licensing, and Regulation to discuss Deloitte's allegations of misappropriation and "an inquiry by an investigator in West Virginia."  Ex. 30 at ¶30; Sagitec's Investigation Rpt. '646; Ex. 20 at '547 (referencing November 10, 2016 meeting).  That meeting was followed by a request asking for additional information and documents to resolve their concerns.  *Id.*  Again, despite the fact that Sagitec *was* in fact using uFACTS, *supra* 4–5, Mr. Minkkinen worked with Mr. Keller on a response to that letter, in which they called the allegations "baseless" and said, "There is no reason to think any Sagitec employee has done anything wrong, and it is unreasonable to suggest otherwise."  Sagitec's Investigation Rpt. '652; Ex. 20 at '559.  That letter also stated that individuals Sagitec identified who had previously worked at Deloitte had not "retained any software, source code, or any other tangible artifacts authored by Deloitte, a Deloitte subcontractor or consultant, or a Deloitte client after leaving

8

Deloitte's employment." Ex. 20 at '553. That was false. *Supra* 4–5. In fact, after that statement was made, Mr. Minkkinen emailed other employees at Sagitec with a report produced by Deloitte for the Massachusetts UI project and said, "I would like a similar report created for both projects." Sagitec's Investigation Rpt. '699; Ex. 10. Based on those assurances, the Maryland AAG closed the investigation into Sagitec on January 25, 2017. Ex. 28 (letter from AAG stating "[w]e consider this matter closed").

After learning of the criminal investigation into the matter, Mr. Minkkinen sent an email on or about September 14, 2017 to investigators in West Virginia and Virginia trying to quell the investigation there too. Sagitec's Investigation Rpt. '738–739. But the West Virginia investigation continued. In 2020 and 2021, the investigating agent for West Virginia conducted a recorded interview with Sagitec partners Mr. Minkkinen and Mr. Sambasivam, in which both made more false misrepresentations about Sagitec's acquisition, possession, and use of Deloitte intellectual property. On May 31, 2023, Mr. Minkkinen and Mr. Sambasivam were indicted on charges related to their material misrepresentations.

### B.    Sagitec Misleads Deloitte

On October 3, 2016, Deloitte wrote to Sagitec asserting "possible use" by Sagitec of Deloitte's intellectual property. Sagitec's Investigation Rpt. '653; Ex. 13. On October 7, 2016, Sagitec responded to Deloitte's letter stating unequivocally: "Sagitec does not use, and is not in possession of the Deloitte [uFACTS] Unemployment Insurance Solution, any related documentation, or any Deloitte intellectual property of any kind." Ex. 14 at '524. On September 12, 2018, Deloitte again reached out to Sagitec about use of Deloitte's data models. D.I. 280-15. And Sagitec responded that it "ha[d] no reason to deviate from the conclusion stated in our October 7, 2016 letter." Ex. 15 at '637. Indeed, Sagitec implied that such knowledge would require access to **Sagitec**'s technology. *Id.* ("Have you had access to the Sagitec technology so

that you can make a detailed comparison to the Deloitte products?").  Sagitec subsequently refused demands for code review or an affidavit because "Sagitec has already stated that there has been no infringement or misappropriation of IP."  Ex. 16 at '674.  Despite Deloitte's concerns about Sagitec's rapid development timeline for Neosurance, these concerns were explained away by Sagitec's specific misrepresentations about its development timeline: on October 9, 2019, Sagitec told Deloitte's counsel that there were misunderstandings that had led to their initial concerns, stating that there was a "mistaken assumption about the nature of the Sagitec product" and asserting that the framework for the product "pre-exist[s]" Neosurance, which would explain the shorter development timeline.  Ex. 29.

## IV.    SAGITEC DELETES UFACTS DOCUMENTS FROM SHAREPOINT

Beyond misleading both the government and Deloitte, Sagitec prevented Deloitte from learning of the full scope of the misappropriation by deleting and tampering with evidence. There is evidence that Mr. Minkkinen's hard drive was tampered with before it was turned over for forensic collection.    Krein Rpt. ¶ 455; Sagitec's Investigation Rpt. '603 ("Minkkinen confirmed that he was able to, and did, access the hard drive to make sure it was the right one prior to submitting it to Computer Forensic Services.  Mark Lanterman of Computer Forensic Services was unable to access the drive, and Lanterman said that someone tampered with it."). And Deloitte's expert, Jonathan Krein, found extensive evidence that Sagitec employees removed references to Deloitte and uFACTS from documents.  Krein Rpt. ¶ 455 ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ ); Sagitec's Investigation Rpt. '698, '706, '713 (discussing "cleansing" of documents in a way that referenced removing references to Deloitte and giving examples of references to Deloitte being deleted from Deloitte documents

and passed off as Sagitec's); D.I. 270-12 (Sagitec employees instructed to remove references to Deloitte and uFACTS in Sagitec documents).  Sagitec also used a server called "Little Canada," which Sagitec initially told Deloitte was ***decommissioned*** and refused to produce until Deloitte threatened to move to compel—that server ended up containing a copy of uFACTS source code that closely matches the Massachusetts copy and nearly subsumes the New Mexico copy.  Krein Rpt. ¶ 534.

Although Sagitec eventually identified the supposedly decommissioned Little Canada server, the uFACTS SharePoint Folders have never been produced in this case.  There is no question the uFACTS SharePoint Folders no longer exist—Ranjith Kotcherlakota, the person Sagitec identified as the most knowledgeable on Sagitec's server locations and Sagitec's 30(b)(6) designee, ***admitted*** that ███████████████████████████.  Ex. 4 (Kotcherlakota Dep. Tr.) 152:5–153:1 ███████████████████████; 128:7–130:6 ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████; 274:6–8 ████████████ ████████████████████████████████████████████████████ ████████████████████.  Sagitec was asked to detail the circumstances of all Deloitte documents stored at any time on any Sagitec's server locations, and responded by stating that it is ████████████████████████████████████████████████████████ █████████████████████████████████ Ex. 3 (Sagitec's Supp. Rsps. 2d ROGs) at 18.  When pressed on whether Sagitec had investigated these missing materials, Mr. Kotcherlakota testified that ██████████████████████████.  Ex. 4 (Kotcherlakota Dep. Tr.) at 286:8–15, 129:7–130:6 ██████████████████████████████████ ████████████████████████████████████████████████████

11

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████ .

The reason the uFACTS SharePoint Folders no longer exist is clear: **they were purposefully deleted** prior to Sagitec's highly belated preservation of SharePoint, which did not take place until February and March of 2020. Sagitec's Investigation Rpt. '606–607. An email from the Department of Justice to Sagitec in 2022 states that Mr. Sadasivam, told investigators that Mr. Minkkinen instructed him to delete materials after the investigation was already underway in mid to late 2018. D.I. 270-22 ████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████ ; Ex. 4 (Kotcherlakota Dep. Tr.) 285:19–286:15 ██████████████

██████████████████████████████████████████████

███████████████ . This is further supported by ███████████████████████

██████████████████████████████████████ . Ex. 9 at '804 █████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████ .

Although Mr. Sadasivam was not indicted, he invoked his Fifth Amendment right against self-incrimination when asked during a deposition in this case, during which he was still employed by Sagitec: "Did you delete uFACTS material from Sagitec's SharePoint portfolio?"

"Has anyone at Sagitec ever instructed you to delete uFACTS material from Sagitec's SharePoint portfolio?" and "Are you aware of anyone else at Sagitec deleting uFACTS material?"  D.I. 270-23 (Sadasivam Dep. Tr.) 46:12–47:19.  When a witness in a civil matter asserts the Fifth Amendment privilege in response to questioning, the court may allow an adverse inference to be drawn from the answer—that is, an inference that if the witness had answered, the answer would be unfavorable to the witness.  *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190-91 (3d. Cir. 1994).

## ARGUMENT

### I.    SAGITEC SPOLIATED EVIDENCE

Federal Rule of Civil Procedure 37(e) provides that spoliation occurs where documents "that should have been preserved in anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery."  *Painadath v. Good Shepherd Penn Partners*, 348 F.R.D. 16, 26-27 (E.D. Pa. 2024) (sanctioning plaintiff who deleted potentially relevant information from smart phone).  In particular, spoliation requires a showing that "(1) the spoliating party was under a duty to preserve when the loss occurred, (2) the lost [documents were] within the scope of the duty to preserve, (3) the party's failure to take reasonable steps to preserve the information caused its loss, and (4) the information is not recoverable elsewhere."  *Id.*  The court may impose sanctions as "necessary to cure the prejudice."  *Id.* (quoting Rule 37(e)(1)).  Upon a finding that the party acted with intent to deprive another party of the information's use in the litigation, the court may "presume that the lost information was unfavorable to the party, provide an adverse jury instruction, or dismiss the suit." *Id.* (quoting Rule 37(e)(2); cleaned up).

Sagitec spoliated evidence by deleting SharePoint files related to uFACTS because every element of spoliation is met here.

A.    **Sagitec Was Under a Duty to Preserve When the Loss Occurred**

The duty to preserve arises "when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *United States v. Barnes*, 411 Fed. App'x 365, 368 (2d Cir. 2011). Accordingly, this duty arises "not only during litigation but also extends to that period before litigation." *Major Tours, Inc. v. Colorel*, No. 05 Civ. 3091, 2009 WL 2413631, at *4 (D.N.J. Aug. 4, 2009) (duty to preserve arose in 2003 even though lawsuit was not filed until 2005). "This is a flexible, fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Lexpath Techs. Holdings, Inc. v. Welch,* No. 13 Civ. 5379, 2016 WL 4544344, at *3 (D.N.J. Aug. 30, 2016), *aff'd*, 744 F. App'x 74 (3d Cir. 2018) (quoting *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011) and finding defendant was on notice due to cease-and-desist letter).

Applying this law, Sagitec's duty to preserve arose at least as early as July 2016, when Sagitec received the first correspondence from the Maryland AAG relaying a whistleblower's concerns that Sagitec had used documentation from Deloitte related to its Unemployment Insurance software. *See* Sagitec's Investigation Rpt. '633. Although Deloitte had not yet discovered the misappropriation at that point,[2] litigation was reasonably foreseeable ***to Sagitec*** at that point; indeed, Sagitec's outside counsel told Sagitec that "the allegations are certainly serious" and noted "They might be the first step in legal action by Maryland." *Id*. at '635. And Sagitec knew that litigation with Deloitte specifically was foreseeable; in October 2016, Deloitte sent Sagitec a letter demanding that Sagitec immediately cease and desist from using all Deloitte

---

[2] Unlike a statute of limitations, which depends on what ***Deloitte*** knew and when, this standard focuses on whether ***Sagitec*** should have known the evidence may be relevant in future litigation.

unemployment insurance intellectual property, giving Sagitec even more reason to anticipate litigation. *Id.* at '653; *supra* 9. This was more than sufficient to trigger the duty to preserve. *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 512 (S.D.W. Va. 2014) (duty can arise before litigation begins upon "receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim").

The reasons for Sagitec to anticipate legal action only stack up from there. Sagitec knew there was a criminal investigation into its copying of uFACTS by investigators in West Virginia, and Sagitec even sent an email on or about September 14, 2017 trying to quell the investigation—clearly indicating he understood it was ongoing and serious. *Supra* 9. Sagitec's receipt of a second letter from Deloitte on the matter on September 12, 2018, reconfirmed that litigation was foreseeable. *Supra* 9. Indeed, on a September 18, 2018 phone call, Deloitte explicitly asked Sagitec to confirm it was complying with its obligation to preserve relevant evidence. Sagitec's Investigation Rpt. '662. This too triggers the duty to preserve. *See Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) (document preservation letter or letter threatening litigation triggers a duty to preserve evidence); *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 181 (D. Md. 2008) (duty to preserve arose when plaintiff's counsel made a written request that defendant preserve evidence).

### B.    The Lost Documents Were Within The Scope of Sagitec's Preservation Duty

The scope of preservation extends to what a litigant "knows, or reasonably should [have] know[n] is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc.*, 593 F. Supp. 1443, 1445 (C.D. Cal. 1984). The standard is readily met because here because, as described in detail above, the uFACTS SharePoint Folders appear to have been a collection of the information about

Sagitec's misappropriation.  *Supra* 6–7.

### C.   Sagitec Did Not Undertake Reasonable Steps to Preserve the Documents

"Intentionally deleting [documents] is the opposite of taking reasonable steps to preserve [the documents]."  *Painadath*, 348 F.R.D. at 27 (quoting *GN Netcom, Inc. v. Plantronics, Inc.*, No. 12 Civ. 1318, 2016 WL 3792833, at *6 (D. Del. July 12, 2016)).  Moreover, spoliation by a senior executive may be imputed to the company.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 506–507 (E.D. Va. 2011) (rejecting argument that conduct of defendant's executives and employees in spoliating evidence should not be imputed to company, noting that "[s]tandard principles of agency law govern the attribution of employees' spoilation to the company").  That duty to preserve documents includes ensuring that key employees do not delete them.  *See, e.g.*, The Sedona Conference, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production A Project of the Sedona Conference Working Group on Electronic Document Retention and, 19 Sedona Conf. J. 1 (2018); *Orion Drilling Co., LLC v. EQT Prod. Co.*, 826 F. App'x 204, 217 (3d Cir. 2020) (party violated its duty to preserve evidence by failing to preserve documents from a "key employee"); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994) ("[T]he evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy the document.").

The evidence is that the uFACTS SharePoint Folders were intentionally deleted. Mr. Minkkinen—the same executive who was ***personally*** on notice of the government's investigation and who was corresponding with Sagitec's outside counsel about that investigation—directed that uFACTS materials be deleted from Sagitec's SharePoint files

16

sometime in mid to late 2018. D.I. 270-22 ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ ; Ex. 9 ████████████████████████

████████ . At his deposition, Mr. Sadasivam took the Fifth Amendment when asked whether he "delete[d] uFACTS material from Sagitec's SharePoint portfolio" and whether "anyone at Sagitec ever instructed" him to do so. D.I. 270-23 (Sadasivam Dep. Tr.) 46:12–47:19. This is further evidence that the material was deleted. *See Graystone Nash,* 25 F.3d 187.

In addition, there is no evidence that Sagitec took *any* steps to ensure that key employees would not delete the uFACTS SharePoint Folders, nor did it do anything to preserve these folders for future litigation. Indeed, ████████████████████████████████

████████ so Sagitec did not even preserve records of what had been *deleted* from SharePoint, let alone the files themselves. Ex. 4 (Kotcherlakota Dep. Tr.) 286:8–15. When the government asked Sagitec for these folders in 2020, Sagitec could not find them and had "no logs" of their deletion because such logs were only kept for "a month." *Id.* at 129:21–130:6.

D. **The Lost Documents Are Not Recoverable Elsewhere**

Despite Deloitte directly asking for the information in these SharePoint folders in discovery, Sagitec has been unable to provide them. *See* Ex. 1 at 16 (Deloitte's 2d RFPs to Sagitec). There is no indication that the files in the uFACTS SharePoint Folders exist elsewhere. Ex. 4 (Kotcherlakota Dep. Tr.) 286:8–15, 129:7–130:6 ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████. Sagitec's investigative counsel, who conducted an internal investigation into Sagitec's use of uFACTS, did not process or search files from Sagitec's internal SharePoint preservation copy prior to issuing the report, and admittedly did not process or search all the documents to which it had access. *See, e.g.*, Ex. 5 (Madel Dep. Tr.) at 191:6–195:2 ███████

███████████████████████████████████████████████████████

████████████████. Accordingly, all four elements of spoliation are met here.

## II.     THE COURT SHOULD SANCTION SAGITEC

The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (recognizing the inherent power of the courts to fashion appropriate sanctions for conduct that disrupts the judicial process); Fed. R. Civ. P. 37. District courts have "broad discretion" to craft appropriate kinds of sanctions for spoliated evidence and "a district court could impose many different kinds of sanctions," including "dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Beaven v. U.S. Dep't. of Justice*, 622 F.3d 540, 544, 554 (6th Cir. 2010). Under Rule 37(e), if a party "acted with the intent to deprive another party of the information's use in the litigation," the district court may draw an adverse inference or grant a default judgment. Fed. R. Civ. P. 37(e). In considering the sanctions to impose, courts consider: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schmid*, 13 F.3d at 78. "[T]he applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri v.*

*Gen. Motors Corp.*, 271 F.3d 583, 590—92 (4th Cir. 2001).

Deloitte asks the Court to impose two sanctions here. ***First***, Deloitte asks the Court to draw (and instruct the jury to draw) an adverse inference that the uFACTS SharePoint Folders contained the uFACTS solution, including the instance asserted by Deloitte in this case, and the associated uFACTS use cases.[3]   This is appropriate because, as described above, the deletion was intentional and designed to deprive Deloitte of documents in litigation. *Supra* 10–13; *Triton Const. Co. v. E. Shore Elec. Servs., Inc.*, No. 3290, 2009 WL 1387115, at *7–9 (Del. Ch. May 18, 2009) (where former employee intentionally deleted emails, finding, "to the extent there [were] any significant gaps, . . . it [was] appropriate to infer that the missing information would have supported [plaintiff's] position on any issue to which that information was relevant"), *aff'd*, 988 A.2d 938 (Del. 2010).   Such a sanction is also appropriate given the prejudice suffered. Sagitec's deletion of the uFACTS SharePoint folders effectively ensured that Deloitte would ***never*** be able to discover or recover damages for ***all*** of the trade secret misappropriation and copyright infringement. This has materially affected Deloitte's presentation of the case.  Sagitec refused to provide discovery except as limited to the trade secrets Deloitte could identify, making scope critical to Deloitte's development of the evidence during discovery.  And Sagitec's own expert claims that the nature and number of trade secrets is critical to analyzing head start damages, meaning that recovery is also hamstringed by Sagitec's deletion.

***Second***, Deloitte asks the Court to sanction Sagitec by striking Sagitec's statute of

---

[3] Alternatively, Deloitte proposes that a permissive inference be given to the jury.

limitations defense.[4]  As detailed above, the deletion of the uFACTS SharePoint Folders was not a one-off incident, but part of a *history* of concealment aimed at hiding Sagitec's misappropriation and delaying legal action by both the government and Deloitte.  *Supra* 7–13. Sagitec's false assurances to Deloitte and the government that it did not have any uFACTS material in its possession threw Deloitte and the government off of Sagitec's trail.  Had Sagitec not lied about its misappropriation in 2016 and 2017, Deloitte and/or the government may have been able to bring cases and recover these documents before their ultimate deletion in 2018.  By the time criminal indictment in 2022, Sagitec no longer had its deletion logs from back in 2018, making it even harder to show what happened.  *Supra* 11.  In other words, striking Sagitec's statute of limitations defense prevents Sagitec from further benefiting from a delay Sagitec caused and has already worked to its benefit, and thus serves the deterrence rationale behind sanctions.

In addition, the statute of limitations for the New York trade secret claims runs from ***each*** misappropriation, as explained in Deloitte's concurrently-filed opposition to Sagitec's motion for summary judgment.  Deloitte is thus unable to present the full scope of Sagitec's continued use of the trade secrets, including its use from 2016-2018, which in turn inhibits its ability to counter Sagitec's statute of limitations defense.

## CONCLUSION

Accordingly, Deloitte requests that the Court grant Deloitte's motion for sanctions.

---

[4] If the Court does not issue this sanction, Deloitte respectfully requests an instruction directing the jury that it should draw a negative inference from the destruction of this evidence in deciding whether the statutes of limitations have run on Deloitte's claims.

OF COUNSEL:

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
(202) 389-5000

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7419

Ariel Deitchman
KIRKLAND & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th Street, Suite 700
Miami, FL 33131
(305) 432-5676

Dated: July 24, 2025

/s/ Andrew E. Russell
Andrew E. Russell (No. 5382)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
lgellar@shawkeller.com

*Attorneys for Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC*

21

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2025, this document was served on the persons listed below in the manner indicated:

**BY EMAIL:**

Anne Shea Gaza
Robert M. Vrana
YOUNG CONAWAY STARGATT
 & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

Christopher K. Larus
Rajin S. Olson
William E. Manske
THOMPSON HINE LLP
800 Nicollet Ave., Suite 2925
Minneapolis, MN 55402
(877) 628-5500
christopher.larus@thompsonhine.com
rajin.olson@thompsonhine.com
william.manske@thompsonhine.com

*/s/ Andrew E. Russell*
Andrew E. Russell (No. 5382)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
lgellar@shawkeller.com

*Attorneys for Plaintiffs Deloitte Consulting LLP
and Deloitte Development LLC*