IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DELOITTE CONSULTING LLP and )
DELOITTE DEVELOPMENT LLC, )
                                   )
      Plaintiffs,            )  **Redacted – Public Version**
                                   )
     v.                   )  C.A. No. 23-325-WCB
                                   )
SAGITEC SOLUTIONS LLC, )
                                   )
      Defendant.          )

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO SAGITEC SOLUTIONS LLC'S MOTION FOR SUMMARY JUDGMENT

OF COUNSEL:
Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
(202) 389-5000

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Andrew E. Russell (No. 5382)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
lgellar@shawkeller.com

*Attorneys for Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC*

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7419

Ariel Deitchman
KIRKLAND & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th Street, Suite 700
Miami, FL 33131
(305) 432-5676

Dated: July 24, 2025

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

RESPONSE TO SAGITEC'S STATEMENT OF THE FACTS ............................................... 3

ARGUMENT ............................................................................................................................ 5

    A.    Deloitte Has Met the Registration Requirement, and the Scope of Deloitte's Registrations is, at Best, a Question for the Jury ................................. 5

    B.    Factual Disputes Preclude Judgment on the Statutes of Limitations ............. 8

        1.    Deloitte's Defend Trade Secrets Act Claim is Timely .............................. 8

        2.    Deloitte's New York State Claims Are Timely ......................................... 13

        3.    Both Statutes of Limitations Should be Equitably Tolled ........................ 14

    C.    Sagitec Is Not Entitled to Summary Judgment on Deloitte's Ownership of the Asserted Intellectual Property ............................................. 15

    D.    Deloitte's Trade Secrets Have Independent Economic Value ........................ 18

    E.    Deloitte's Other State Law Claims Are Not Duplicative or Preempted ........ 20

CONCLUSION ....................................................................................................................... 20

All Exhibits cited herein are attached to the concurrently filed declaration of Miranda Means.

Emphasis has been added unless expressly stated otherwise.

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*,
    691 F. Supp. 2d 577 (D. Del. 2010)..................................................................12

*Accusoft Corp. v. Quest Diagnostics, Inc.*,
    2015 WL 10718481 (D. Mass. Oct. 1, 2015).......................................................6

*Affiliated FM Ins. Co. v. Const. Reinsurance Corp.*,
    626 N.E.2d 878 (1994)....................................................................................16

*Airframe Sys. Inc. v. L-3 Commc'ns. Corp.*,
    658 F.3d 100 (1st Cir. 2011)..............................................................................6

*Aman v. Cort Furniture Rental Corp.*,
    85 F.3d 1074 (3d Cir. 1996)...............................................................................5

*Amphenol Corp. v. Paul*,
    2013 WL 12251356 (D. Conn. Mar. 28, 2013) ................................................20

*Andrew Greenberg, Inc. v. Svane, Inc.*,
    830 N.Y.S.2d 358 (2007)..................................................................................13

*Apparel Bus. Sys., LLC v. Tom James Co.*,
    2008 WL 858754 (E.D. Pa. Mar. 28, 2008)........................................................6

*Architectronics, Inc. v. Control Sys., Inc.*,
    935 F. Supp. 425 (S.D.N.Y. 1996) ...................................................................13

*B&P Littleford, LLC v. Prescott Mach., LLC*,
    2021 WL 3732313 (6th Cir. Aug. 24, 2021).....................................................10

*Baxter v. Palmigiano*,
    425 U.S. 308 (1976)...........................................................................................5

*Cardone v. Bos. Reg'l Med. Ctr., Inc.*,
    800 N.E.2d 335 (2003)....................................................................................16

*In re Cmty. Bank of N. Va.*,
    622 F.3d 275 (3d Cir. 2010).............................................................................10

*Cmty. for Creative Non-Violence v. Reid*,
    490 U.S. 730 (1989).........................................................................................15

*Contour Data Sols. LLC v. Gridgorce Energy Mgmt. LLC*,
  2024 WL 3970455 (E.D. Pa. Aug. 28, 2024) ........................................................................19

*DiBartolo v. Battery Place Assocs.*,
  84 A.D.3d 474 (2011) ...........................................................................................................13

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
  307 F.3d 197 (3d Cir. 2002) .................................................................................................20

*ECB USA, Inc. v. Savencia, S.A.*,
  2025 WL 417738 (D. Del. Feb. 6, 2025) ..............................................................................14

*Elmagin Cap., LLC v. Chen*,
  555 F.Supp.3d 170 (E.D. Pa. 2021) ......................................................................................19

*Enter. Mgmt. Ltd. Inc. v. Construx Software Builders, Inc.*,
  2023 WL 4554536 (9th Cir. 2023) ..........................................................................................7

*Gallup, Inc. v. Kenexa Corp.*,
  149 F. App'x 94 (3d Cir. 2005) ...............................................................................................8

*Geoscan, Inc. of Texas v. Geotrace Techs., Inc.*,
  226 F.3d 387 (5th Cir. 2000) ..................................................................................................6

*Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc.*,
  680 F. Supp. 2d 830 (E.D. Mich. 2010) ...............................................................................19

*Granger v. Acme Abstract Co.*,
  900 F. Supp. 2d 419 (D.N.J. 2012) .........................................................................................6

*Hayden v. Int'l Bus. Machines Corp.*,
  2025 WL 1697021 (S.D.N.Y. June 17, 2025) .......................................................................20

*Health Care Facilities Partners, LLC v. Diamond*,
  2023 WL 3847289 (N.D. Ohio June 5, 2023) .......................................................................19

*Homapour v. Harounian*,
  182 A.D.3d 426 (2020) .........................................................................................................13

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
  12 N.Y.3d 132 (2009) ......................................................................................................13, 14

*Insulet Corp. v. EOFlow Co.*,
  755 F. Supp. 3d 70 (D. Mass. 2024) .......................................................................................9

*Int'l Med. Devices v. Cornell*,
  2025 WL 825211 (C.D. Cal. Mar. 14, 2025) ........................................................................19

*Kunycia v. Melville Realty Co.*,
    755 F. Supp. 566 (S.D.N.Y. 1990) .................................................................8

*Lincoln Nat'l Life Ins. Co. v. Snyder*,
    722 F. Supp. 2d 546 (D. Del. 2010)............................................................14

*Lish v. Harper's Mag. Found.*,
    807 F. Supp. 1090 (S.D.N.Y. 1992)............................................................8

*M&T Chems. Inc. v. IBM Corp.*,
    403 F. Supp. 1145, 1149-50 (S.D.N.Y. 1975) ...........................................13

*Mason v. Jamie Music Pub. Co.*,
    658 F. Supp. 2d. 571 (S.D.N.Y. 2009).......................................................15

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)................................................................................2, 9

*Pauwels v. Deloitte LLP*,
    83 F.4th 171 (2d Cir. 2023) ......................................................................20

*PaySys Int'l, Inc. v. Atos SE*,
    2016 WL 10651919 (S.D.N.Y. July 14, 2016) ...........................................14

*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*,
    730 F.3d 263 (3d Cir. 2013)...........................................................8, 9, 12

*RoboticVISIONTech, Inc. v. ABB Inc.*,
    726 F. Supp. 3d 364 (D. Del. 2024)..........................................................9

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*,
    181 F.3d 410 (3d Cir. 1999).....................................................................10

*S.E.C. v. Graystone Nash, Inc.*,
    25 F.3d 187 (3d. Cir. 1994).......................................................................5

*Synopsys, Inc v. Risk Based Sec., Inc.*,
    70 F. 4th 759 (4th Cir. 2023) ..............................................................19, 20

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,
    2020 WL 1442915 (S.D.N.Y. Jan. 27, 2020) .............................................6

*Talon Indus., LLC v. Rolled Metal Prods., Inc.*,
    2022 WL 3754800 (D.N.J. Aug. 30, 2022) ...............................................19

*Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*,
    924 F.3d 32 (2d Cir. 2019).......................................................................14

*Veritas Operating Corp. v. Microsoft Corp.*,
    2008 WL 474248 (W.D. Wash. Feb. 4, 2008) ........................................................................11

*W. Bay Builders, Inc. v. United States*,
    85 Fed. Cl. 1 (2008) ........................................................................17

**Statutes**

17 U.S.C. § 102 ........................................................................5, 15

17 U.S.C. § 201(a) ........................................................................15

17 U.S.C. § 410(c) ........................................................................5, 15

17 U.S.C. § 411 ........................................................................5

18 U.S.C. § 1836(d) ........................................................................8, 9

28 U.S.C. § 1658 ........................................................................9

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................5

N.Y. C.P.L.R. § 213(1) ........................................................................13

**Other Authorities**

2 *Nimmer on Copyright* § 7.16[B][5][c] (2023) ........................................................................7

## INTRODUCTION AND SUMMARY OF ARGUMENT

Sagitec's misappropriation and infringement is substantial and admitted in depositions and Sagitec's own investigative report. Deloitte and its predecessor-in-interest, BearingPoint, spent years creating the Unemployment Framework for Automated Claim & Tax ("uFACTS") solution. Sagitec stole it, lied about possessing it, and concealed its theft. Discovery, including *years* of emails, has revealed that Sagitec repeatedly used Deloitte's source code, database schemas, and technical databases to create Neosurance, a competing program. Ex. 45 ███████ ████████████████████████; D.I. 270-10 at '257 ████████████████ ████████████████. As Deloitte's technical expert, Dr. Jonathan Krein, determined, ████████████████████████████████████████████████████████████ ████████████. D.I. 270-8 ("Krein Rpt.") ¶ 333. This systematic and surreptitious theft allowed Sagitec to undercut Deloitte in the market, reaping tens-of-millions of dollars.

Instead of taking responsibility, Sagitec now moves this Court for summary judgment in a misguided effort to avoid facing a jury. But Sagitec's motion only highlights the factual disputes that preclude granting it. *First*, although Sagitec tacitly concedes that the uFACTS computer program was copyrighted when created and that it was registered with the Copyright Office, it questions the scope of Deloitte's registrations. Sagitec is wrong. It asserts that Deloitte did not produce registered versions of uFACTS code, but that code *was* produced as explained in the concurrently-filed declaration of Anil Gosu, a managing director at Deloitte, and Dr. Krein's report. Sagitec also argues that Deloitte cannot show what material is covered by one of its three registrations—uFACTS (Mass: Benefits)—supposedly because the registered version is a derivative of a previously published but unregistered version. Yet, the prior version Sagitec identifies was not published and, thus, is irrelevant. Moreover, it is black-letter law that, when a derivative work includes copyrightable elements of the unregistered original work, registering

1

the derivative registers copyrightable elements of the original.

**Second**, Sagitec insists that the statutes of limitations have run on Deloitte's trade secret and state law claims. That is not true. As to the Defend Trade Secrets Act, contrary to Sagitec's claim that the inquiry rule applies, after the Supreme Court's *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) decision, it is clear that statutes like the DTSA apply the discovery rule. The discovery rule is a fact-intensive inquiry, and the record is replete with facts showing that Deloitte did not discover the trade secret misappropriation sufficient to plead it in a complaint until well into the applicable limitations period. As to the New York claims, each new use or continuation of the misconduct separately accrues. As Sagitec continued to use the uFACTS trade secrets and perpetuate its fraud, the claims are comfortably within the statute of limitations. Regardless, Sagitec fraudulently concealed its misappropriation through repeated misrepresentations to Deloitte, hiding of its use and, critically, destroying evidence. Thus, a reasonable jury could find that the statutes of limitations were tolled.

**Third**, Sagitec argues that Deloitte assigned its IP to Massachusetts. Yet, in its agreement with Deloitte, Massachusetts "acknowledges and agrees that the uFACTS Unemployment Insurance Solution . . . is ***BearingPoint's proprietary technology*** . . . and its source code are considered ***a trade secret of BearingPoint***." That is hardly surprising and is consistent with the fact that Deloitte spent decades developing uFACTS, and is licensing it to others beyond Massachusetts. ██████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ By contrast, Sagitec's misreading would suggest that, despite uFACTS pre-dating the contract with Massachusetts and being licensed to numerous other states, Deloitte assigned ownership in uFACTS to Massachusetts in standard terms and conditions that

relate to only "deliverables" (*i.e.*, material solely created for Massachusetts). Sagitec asks this Court to ignore the significant evidence of Deloitte's ███████████████████████ ████████████████—and improperly draw inferences against Deloitte. It cannot do so.

**Fourth**, Sagitec argues Deloitte has no evidence that its trade secrets have independent economic value. But Deloitte has a mass of evidence: the resources Deloitte invested, its security measures, the benefits to competitors that the trade secrets would provide, and willingness to pay therefor. Sagitec's narrow emphasis on whether Deloitte could provide a specific value for each individual trade secret is not only highly self-serving but legally and factually wrong.

**Finally**, although Sagitec asserts that Deloitte's other state claims are preempted, they are based on Sagitec's fraudulent conduct. This goes beyond trade secret and copyright law and, thus, is not preempted. Accordingly, Deloitte asks this Court to deny Sagitec's motion.

## RESPONSE TO SAGITEC'S STATEMENT OF THE FACTS

**uFACTS**. Deloitte developed uFACTS and delivered the first implementation to Minnesota in 2007. D.I. 270-2 (Malm Dep. Tr) at 34:15–35:9. Deloitte continued to develop uFACTS and implemented it in eight more states. D.I. 270-6 (Deloitte's 6th Supp. Rsps. Sagitec's 1st ROGs) at 110–111. Deloitte registered uFACTS with the Copyright Office as Registration Nos. TX 8-559-593 (uFACTS (NM: Tax and Benefits)), TX 8-559-594 (uFACTS (Mass: Tax)), and TX 8-559-595 (uFACTS (Mass: Benefits)). Ex. 33 (Deloitte's 6th Supp. Rsps. Sagitec's 1st ROGs) at 92–97. In this litigation, Deloitte identified 74 trade secrets that Sagitec misappropriated related to two trade secret categories: (1) the uFACTS Application; and (2) the uFACTS Design. D.I. 270-6 (Deloitte's 6th Supp. Rsps. Sagitec's 1st ROGs) at 20–38.

**Sagitec's Misappropriation**. In 2013, Sagitec hired David Minkkinen to work on a competing UI solution. D.I. 270-13 ("Sagitec Investigation Rpt.") '610, '620–621. Two days later, Sagitec began acquiring Deloitte uFACTS materials from him. Krein Rpt. ¶ 213.

Mr. Minkkinen and employees hired from Deloitte after him brought Deloitte confidential material to Sagitec, including its copyrighted computer program and trade secrets. *See, e.g.*, Krein Rpt. ¶¶ 211–250; Sagitec Investigation Rpt. '615–621, '665–726; D.I. 270-6 (Deloitte's Rsps. Sagitec's 1st ROGs) at 45–46 (█████████████████████████).

As discussed in Deloitte's motion for sanctions, starting in 2013, Sagitec used uFACTS continuously. D.I. 297. Dr. Krein also found that products delivered in 2017 and 2020 contained uFACTS code, meaning uFACTS was used for at least four to seven years. Krein Rpt. ¶ 344. Sagitec now admits ██████████████████████████████████████. *See, e.g.*, D.I. 270-1 (Kotcherlakota Tr.) at 27:8–24, 30:6–34:21, 36:18–37:22; D.I. 270-4 (Sagitec's 3d Supp. Rsps. Deloitte's 1st ROGs) at 13–22; Krein Rpt. ¶¶ 211–250.

**Sagitec's Concealment**. Sagitec hid its misappropriation by lying to both investigators and Deloitte and tampering with evidence. D.I. 297. For example, in response to government inquiries Sagitec falsely assured the government that it had not provided "any software improperly obtained from another company." Sagitec's Investigation Rpt. at '643. After Deloitte wrote to Sagitec in 2016 asserting Sagitec's "possible use" of Deloitte's IP, Sagitec falsely denied having Deloitte documentation "of any kind." Exs. 39, 40. In 2017, Sagitec again represented to the government that it did not have Deloitte documentation. Sagitec Investigation Rpt. '636–652; Ex. 44. On September 12, 2018, Deloitte again reached out about possible use of its IP. Ex. 41. Sagitec denied it and refused demands for code review or an affidavit because "Sagitec has already stated that there was no infringement or misappropriation of IP." Exs. 41; 42 at '674. Meanwhile, Sagitec deleted SharePoint files containing uFACTS material. Krein Rpt. ¶ 455; Sagitec Investigation Rpt. '603; Ex. 36 ████████████████████; D.I. 270-23 (Sadasivam Tr.) at 46:12–47:19 (employee invoking Fifth Amendment when asked whether he

4

"delete[d] uFACTS material from Sagitec's SharePoint portfolio" and whether "anyone at Sagitec ever instructed" him to do so).[1] It also tampered with a hard-drive and modified Deloitte documents to hide that they came from Deloitte. *See* Sagitec Investigation Rpt. '603, '698.[2]

## ARGUMENT

Sagitec bears the burden of showing there is "no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (collecting cases). If "there is any evidence in the record . . . from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.* at 1081 (cleaned up).

### A.    Deloitte Has Met the Registration Requirement, and the Scope of Deloitte's Registrations is, at Best, a Question for the Jury

Deloitte's copyright registrations are valid and cover the asserted material. Copyright subsists from when a work is created, 17 U.S.C. § 102(a), and is independent from registration. The registration is just required to enforce the copyright. *Id.* § 411(a). Further, a certificate of registration made within five years of the date of first publication is *prima facie* evidence of "the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

Deloitte owns multiple registrations, and its registration of uFACTS (Mass:Benefits) is *prima facie* evidence of validity. *Supra* 3. As Mr. Gosu explained, to receive its copyright registrations, Deloitte deposited with the Copyright Office a subset of code for the uFACTS instances being registered. ("Gosu Decl.") ¶¶ 9–10. He collected the code to register it and to produce it in this case. *Id.* The code was produced to Sagitec at the directories on the source code

---

[1] The Court may infer that his answers would be unfavorable. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 191 (3d. Cir. 1994).

[2] Deloitte incorporates its summary judgment and sanctions briefs' facts. D.I. 269; D.I. 297.

computer identified in Mr. Gosu's declaration. *Id.*; Ex. 33 (Deloitte's 6th Supp. Resps. Sagitec's 1st ROGs), 96–97. Dr. Krein analyzed that code in assessing Sagitec's infringement. Krein Rpt. ¶ 204. He also compared it to the deposited code to confirm that they were the same. Ex. 27 (Krein Tr.) at 128:8–133:1; Krein Rpt. ¶ 205.

Sagitec's arguments relate to the ***scope*** of these registrations. They lack merit. ***First***, Sagitec argues that Deloitte failed to produce and rely on the uFACTS versions it registered. D.I. 278 ("Br.") 7–8. Yet, that is a question of fact typically inappropriate for summary judgment. *See Accusoft Corp. v. Quest Diagnostics, Inc.*, 2015 WL 10718481, at *20–21 (D. Mass. Oct. 1, 2015) (factual dispute over produced and registered code precludes summary judgment); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 2020 WL 1442915, at *24 (S.D.N.Y. Jan. 27, 2020), *R&R adopted*, 2020 WL 1435645, at *1 (S.D.N.Y. Mar. 24, 2020) (scope disputes preclude summary judgment). Here, Deloitte produced the registered versions of uFACTS, and a jury is entitled to credit the testimony of Deloitte's witnesses about it. *See supra* 3.[3]

Unlike Dr. Krein's comparison of the code to confirm it is the same, Sagitec points to "last modified" dates in the produced code's metadata to assert that they might be different. Br. 7–8. Yet, Mr. Gosu confirmed that the metadata dates do not reflect changes to the code; they were caused by maintenance checks, compiling, and system backups. Gosu Decl. ¶ 11. When

---

[3] The cases Sagitec cites (at 6) are inapposite. *See Airframe Sys. Inc. v. L-3 Commc'ns. Corp.*, 658 F.3d 100, 106-107 (1st Cir. 2011) ("admit[ed]" version relied upon "not the same" as registered version); *Geoscan, Inc. of Texas v. Geotrace Techs., Inc.*, 226 F.3d 387, 393 (5th Cir. 2000) (owner "had not fulfilled all the statutory formalities"); *Apparel Bus. Sys., LLC v. Tom James Co.*, 2008 WL 858754, at *14 (E.D. Pa. Mar. 28, 2008) (plaintiff did not have deposits copies); *Granger v. Acme Abstract Co.*, 900 F. Supp. 2d 419, 426 (D.N.J. 2012) (similar).

Sagitec asked Dr. Krein about those dates, he also explained that they do not reflect changes to the code but rather indicate common technical adjustments when code sits in a repository system. Ex. 27 (Krein Tr.) at 128:8–133:1.[4] As a reasonable jury could find Deloitte produced and relied on the registered versions to demonstrate infringement, summary judgment should be denied.[5]

**Second**, Sagitec argues that Deloitte cannot assert the uFACTS (Mass: Benefits) program because the registration disclaims "prior published code," and a prior version of the work was supposedly published on July 1, 2013 (the "go-live" version), before the October 17, 2013 "date of first publication" on the registration. Br. 7–9. Sagitec misunderstands copyright law. As the owner of a copyright can register the original work "at any time" and the registration applies to all "the material deposited," when a derivative work includes copyrightable elements of an unregistered original work, "the owner's registration of the derivative work also registers the included elements of the original work." *Enter. Mgmt. Ltd. Inc. v. Construx Software Builders, Inc.*, 2023 WL 4554536, at *5-6 (9th Cir. 2023) ("All circuits that have addressed this issue agree with this conclusion."); 2 *Nimmer on Copyright* § 7.16[B][5][c] (2023). Thus, **all** of the previously unregistered code in the registration, derivative or not, can be asserted here.[6]

---

[4] Sagitec claims (at 7–8) that ███████████████████████████████████ but in the testimony Sagitec's cites (D.I. 279-9 at 135:15–138:14), ████████████████ ███████████████████████████████████████.

[5] Sagitec's argument (at 8) that Deloitte continued to work on uFACTS after October 2013 and did not produce documentation "showing the nature of the specific modifications made" has no bearing as Deloitte registered the code as it was published in October 2013—not afterwards.

[6] Sagitec cites (at 8) the Copyright Office Compendium but it is not binding and lacks "the force and effect of law." D.I. 282, Ex. 41 (Compendium) at 2. If Sagitec is claiming there was an

Sagitec's argument also depends on the July 1, 2013 version being published. Yet, providing copies to a limited group is not publication. *See Lish v. Harper's Mag. Found.*, 807 F. Supp. 1090, 1101–02 (S.D.N.Y. 1992) (distribution to a limited group for specific purposes not "publication"); *Kunycia v. Melville Realty Co.*, 755 F. Supp. 566, 574 (S.D.N.Y. 1990) (similar). Here, a reasonable juror could find that the July 2013 code was not published as Massachusetts was a business partner and the code was considered a draft until the warranty expired in October 2013. Gosu Decl. ¶ 12; *see also* D.I. 279-8 at '077 (Massachusetts could "seek[] changes at no additional cost" until October). Thus, Sagitec's motion on this issue should be denied.

### B.    Factual Disputes Preclude Judgment on the Statutes of Limitations

Sagitec's assertion that the statute of limitations has run on Deloitte's federal and New York state claims is meritless and precluded by Sagitec's fraudulent concealment.

#### 1.    Deloitte's Defend Trade Secrets Act Claim is Timely

With respect to the DTSA claim, (1) Sagitec asks the Court to apply the wrong legal standard; but (2) under either standard, there are factual disputes precluding summary judgment.

##### a.    *Sagitec Asks the Court to Apply the Wrong Legal Standard*

Claims under the DTSA are subject to a three-year statute of limitations after the misappropriation is "discovered" or "by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). A fact is not "discovered" until a reasonably diligent plaintiff "would have sufficient information . . . to adequately plead it in a complaint . . . to survive a 12(b)(6) motion to dismiss." *See Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 275 (3d Cir. 2013).

---

"error" in the publication date, such an immaterial error does not render the registration invalid. *Gallup, Inc. v. Kenexa Corp.*, 149 F. App'x 94, 96 (3d Cir. 2005).

Contrary to Sagitec's contention, a claim under the DTSA does not accrue when a party merely had "red flag[s]" prompting it to investigate a claim further, *i.e.*, "inquiry notice."  Br. 9. Sagitec cites *RoboticVISIONTech, Inc. v. ABB Inc.*, but the court's analysis there was limited, and it simply applied **state** law on statute of limitations to determine the federal accrual standard. 726 F. Supp. 3d 364, 368 (D. Del. 2024). In *Merck*, however, the Supreme Court found a highly similar statute, 28 U.S.C. § 1658, to apply the discovery rule:

| 28 U.S.C. § 1658(b) | DTSA, 18 U.S.C. § 1836(d) |
|---|---|
| an action "may be brought not later than" | an action "may not be commenced later than" |
| "2 years after" | "3 years after" |
| "the ***discovery*** of the facts constituting the violation" | "the misappropriation with respect to which the action would relate is ***discovered***" |
| [as interpreted in *Merck*]: "or when a reasonably diligent plaintiff would have ***discovered*** [those facts]" | "or by the exercise of reasonable diligence [the misappropriation] should have been ***discovered***" |

The Court held that § 1658(b)'s statute of limitations period begins when the plaintiff in fact ***discovered*** the facts constituting the violation or when a reasonably diligent plaintiff ***would have discovered*** those facts. It rejected the "inquiry notice" standard because the statute's text did not suggest the period could "begin before discovery can take place."  559 U.S. at 650. *Merck* requires the same result here. It predates the DTSA and, "when Congress enacts statutes, it is aware of relevant judicial precedent," *id.* at 634, making Congress's choice to include highly similar language in the DTSA determinative. Indeed, the only other court to consider *Merck* in the context of the DTSA agreed, *Insulet Corp. v. EOFlow Co.*, 755 F. Supp. 3d 70, 84–88 (D. Mass. 2024), and the Third Circuit's application of *Merck* to other statutes mirrors it. *See Pension Tr.*, 730 F.3d at 274 (discovery rule, not inquiry rule, applies to Securities Act as it includes the word "discovery" and does not include language indicating period runs earlier).[7]

---

[7] Sagitec's cases (at 10), are inapposite as they involved state law, not the DTSA.

In addition, the burden of establishing an affirmative defense rests with the defendant, *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 292 (3d Cir. 2010), and must be met as to each trade secret, *B&P Littleford, LLC v. Prescott Mach., LLC*, 2021 WL 3732313, at \*6 (6th Cir. Aug. 24, 2021) ("discoverable misappropriation of '*a* trade secret' . . . commences the limitation period for a claim based on misappropriation of *that* trade secret"). Sagitec fails to meet its burden here.

*b. Factual Disputes Preclude Summary Judgment Under Either Standard*

"When the applicability of the statute of limitations is in dispute, there are usually factual questions as to when a plaintiff discovered or should have discovered the elements of its cause of action." *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 425 (3d Cir. 1999). That is true here. Here, prior to the unsealing of the August 23, 2022 indictment, Deloitte did not have access to Neosurance source code or documentation, and thus did not and **could not** know that its source code and documentation had been misappropriated. Ex. 32 (Deloitte's 1st Supp. Rsps. Sagitec's 4th ROGs) at 13–19.

Although Sagitec asserts that Deloitte was on notice of the claim earlier, in September 2018, that contention is heavily fact-bound and hotly disputed. Most of Sagitec's purported evidence comes from Deloitte's speculation in 2016, but Sagitec omits contemporaneous evidence showing Deloitte had not discovered the misappropriation by then. Sagitec cites documents provided to Deloitte in July 2016 consisting of ███████████████████████ ████████████████████████████████████████████████████ ████████████████████ Br. 10–11 (citing D.I. 280-1); *see also* D.I. 280-5 (Malm Tr.) at 341:15–342:9. These data tables, however, relate to only one trade secret, and the gravamen of the misappropriation claims in this case is use of uFACTS **source code** and **documentation**—data tables are neither. Krein Rpt. ¶ 456. Moreover, Mr. Malm testified that "████████████████ ████████████████████████████████████" D.I. 280-5 (Malm Tr.) at 326:24–327:20.

And a call log from August 2016 shows he asked an investigator whether Sagitec had taken code or documentation, to which the investigator replied "***I'm speculating some***." *Id.* Ex. 43 at '302–304 (Deloitte lacked "information"). Mr. Malm asked whether Deloitte could compare the Sagitec and Deloitte products, and was told no: "Well Sagitec has ***flat-out said they will not supply us with source-code, ever***." *Id.* at '303. Even if the government had Sagitec's code, it could not share it. *Id.* at '304. Thus, Deloitte did not have enough to support a cause of action, and said so on that call. *Id.* at '305 ("Yeah at this point we still just don't have enough proof here."). Sagitec points to investigator notes describing supposed statements Mr. Malm made indicating it was "clear" Sagitec was using Deloitte's product, but Mr. Malm disputed saying that. *Compare* Br. 11 (citing D.I. 280-10) *with* D.I. 280-5 (Malm Tr.) at 337:1–10.

Other than the 2016 speculation, Sagitec has not shown that the misappropriation either was discovered or should have been discovered by September 2018. None of its evidence is sufficient. ***First***, it points to ███████████████████████████████████████

███████████████████████████████████████████████████████████

██████ Br. 11 (citing D.I. 280-10). ███████████████████████████████

██████████ Sagitec points to no evidence that, by that point, Deloitte knew how (if at all) it was being used, how it was obtained, or by whom. *See* D.I. 280-10. This is insufficient. *See Veritas Operating Corp. v. Microsoft Corp.*, 2008 WL 474248, at *12 (W.D. Wash. Feb. 4, 2008). ***Second***, Sagitec points to Deloitte retaining counsel and registering its copyrights in anticipation of litigation. Br. 11–13. But a reasonable jury could view these steps as precautions, not knowledge of the claims sufficient to plead them. Sagitec argues Deloitte's request that Sagitec agree to a tolling agreement in March 2019 evinces a "strategic choice" to delay suit. Br. 12. This makes no sense—at most, this shows Deloitte suspected Sagitec was intentionally

11

preventing Deloitte from discovering the claims so that it could later try to hide behind statute of limitations, which is precisely what Sagitec did. *Infra* 14-15.

**Third**, Sagitec points to a cease and desist letter that Deloitte sent to Sagitec in September 2018 in which Deloitte makes general assertions of possible misappropriation. The letter does not show Deloitte had actually **discovered** the misappropriation by this point—instead, as Sagitec's own expert acknowledged, it shows that Deloitte was engaging in a diligent investigation to **try** to discover the misappropriation. Ex. 28 (Myers Tr.) at 208:25–209:5 (███████████████████████████). That investigation turned up cold: Sagitec made vehement and repeated denials of having any Deloitte source code or documentation, and refused to permit review of its code or provide affidavits on the issue. D.I. 280-5 (Malm Tr.) at 345:23–346:7 (███████████████████); *see also* Ex. 26 (Jin-Hendel Tr.) at 44:12–17; *supra* 4. Indeed, these same denials led the Maryland government to close its investigation into Sagitec. D.I. 297, Ex. 28. A reasonable jury could conclude that, armed with only vague suspicions and vehement denials from Sagitec, Deloitte could not have pled its DTSA claim by September 2018. *See Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*, 691 F. Supp. 2d 577, 594 (D. Del. 2010) (denying summary judgment where unclear that plaintiffs had more than "concerns and suspicions," without access to technical documentation).

Even under the inapplicable "inquiry notice" rule, once there are "storm warnings," the plaintiffs need show only that they exercised reasonable diligence and were unable to discover their injuries. *Pension Tr.*, 730 F.3d at 272–73. Sagitec's assertion that Deloitte had a "multi-year" investigation, Br. 10, that led to sending the kind of letter Sagitec's own expert said was evidence of a reasonable investigation, shows that Deloitte **did** undertake such an investigation, and failed to discover the injury. As the motion fails under either standard, it should be denied.

2.    <u>Deloitte's New York State Claims Are Timely</u>

The New York statute of limitations has not run. ***First***, although Sagitec does not address it, New York uses a ***separate accrual*** approach. For trade secret, this means a new limitations period is set in motion each time a trade secret is ***used***, so long as it was kept confidential. *Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 433 (S.D.N.Y. 1996); *Andrew Greenberg, Inc. v. Svane, Inc.*, 830 N.Y.S.2d 358, 362 (2007);[8] Sagitec admitted that it did not disclose Deloitte's trade secrets or otherwise destroy their secrecy. Ex. 30 (Sagitec's 2d Supp. Resps. Deloitte's 3d ROGs) at 42–45. And Sagitec continued to use Deloitte's trade secrets through 2020. *Supra* 4.  Likewise, it continued perpetuating its fraud. *Express Gold Cash, Inc. v. Beyond 79, LLC*, 2019 WL 4394567 at *4 (W.D.N.Y. Sept. 13, 2019) (separate accrual applied to continuing unfair competition). Thus, the claims are timely.

***Second***, Deloitte can bring claims based on older conduct, as New York claims seeking equitable relief are governed by a six-year statute of limitations. N.Y. C.P.L.R. § 213(1); *Homapour v. Harounian*, 182 A.D.3d 426, 427 (2020) (*citing DiBartolo v. Battery Place Assocs.,* 84 A.D.3d 474, 476 (2011)); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009). Sagitec says equitable relief here is merely "incidental," citing *IDT*. Br. 13. But there, ***most*** of the relief sought was damages. Here, Deloitte seeks multiple forms of

---

[8] In reply, Sagitec may cite a line of cases stemming from a misreading of *M&T Chemicals Inc. v. IBM Corp.* to argue that separate accrual is not available where the plaintiff had "knowledge" of the misappropriation. 403 F. Supp. 1145, 1149–50 (S.D.N.Y. 1975). But in *M&T Chemicals*, it was not knowledge that deprived the plaintiff of this rule, but that defendant effectively published the trade secret in a patent application, which was equivalent to ***destroying*** it so subsequent activities did not constitute a new misappropriation. *Id.* Not so here.

equitable relief: (1) a permanent injunction; (2) return of uFACTS; (3) impoundment/destruction of infringing articles; and (4) disgorgement. D.I. 1 ("Compl.") ¶¶ A–P.[9]

### 3.    Both Statutes of Limitations Should be Equitably Tolled

Sagitec's Motion separately fails because fraudulent concealment equitably tolls the DTSA and New York statutes of limitations.[10] Fraudulent concealment tolls a statute of limitations if "a defendant 'knowingly acted to prevent plaintiff from learning facts or otherwise made misrepresentations intended to put [] plaintiff off the trail of inquiry.'"  *Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 563 (D. Del. 2010); *PaySys Int'l, Inc. v. Atos SE*, 2016 WL 10651919, at *6 (S.D.N.Y. July 14, 2016). Where the evidence may indicate to a reasonable juror that the defendant took an affirmative action to conceal the truth, and/or that the defendant made misrepresentations to prevent the plaintiff from gaining knowledge of the facts, such a genuine dispute of material fact precludes summary judgment on the statute of limitations. *ECB USA, Inc. v. Savencia, S.A.*, 2025 WL 417738, at *29 (D. Del. Feb. 6, 2025).

A reasonable jury here could do the same. ***First***, despite Deloitte's diligent investigation, Sagitec actively misled Deloitte to prevent it from learning of its claim against Sagitec. *Supra* 4. Namely, Sagitec repeatedly represented that it was not using any uFACTS or Deloitte materials, when it in fact was, and Deloitte relied on those representations. *Supra* 4. Although Sagitec emphasizes Deloitte's coordination with government investigators, Sagitec was lying to them

---

[9] Sagitec cites *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, but as in *IDT*, in that case actual damages were the "main remedy."  924 F.3d 32, 50 (2d Cir. 2019).

[10] Additionally, Deloitte and Sagitec entered into a tolling agreement on March 28, 2022, which Deloitte extended on September 15, 2022 and withdrew on February 17, 2023 before filing suit on March 23, 2023. Ex. 29 (Britven Rpt.), ¶ 66 (citing Exs. 31, 35, 38).

too, including in letters to the Maryland AAG. D.I. 297; *supra* 4. **Second**, Sagitec took other steps to cover up and conceal its misappropriation, including deleting files containing documents related to uFACTS. D.I. 297 at 10-13, 16-17. Such conduct included: (1) deleting SharePoint folders containing uFACTS documents; (2) removing references to Deloitte and uFACTS from Deloitte documentation that Sagitec was using; and (3) tampering with a hard drive prior to its forensic collection. *Id.* These facts preclude summary judgment for Sagitec.

### C.    Sagitec Is Not Entitled to Summary Judgment on Deloitte's Ownership of the Asserted Intellectual Property

Sagitec claims Deloitte cannot prove ownership of its IP because it assigned its rights to Massachusetts. Br. 14–19. Sagitec cites *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) for its claim that ownership of IP is determined by a parties' "contract." Br. 15. But as *Reid* holds, the default rule is that copyright ownership vests in "authors of the work." 17 U.S.C. § 201(a). The author is generally the party who creates the work. 17 U.S.C. § 102. Ownership can be assigned in writing, but "[a]ny ambiguities or doubts concerning the scope of rights assigned" are construed in favor of the author. *Mason v. Jamie Music Pub. Co.*, 658 F. Supp. 2d. 571, 581 (S.D.N.Y. 2009) (collecting cases). Moreover, a certificate of registration within five years of publication, as exists for uFACTS (Mass: Benefits), is *prima facie* evidence of ownership. 17 U.S.C. § 410(c). As Sagitec does not argue that Deloitte did not author uFACTS, nor contend with this *prima facie* evidence of ownership, it has a heavy burden to show Deloitte assigned all of its rights to Massachusetts. Br. 16. Sagitec failed to do so for two reasons.

**First**, the contract to which Sagitec points is unambiguous that BearingPoint (now Deloitte) owns uFACTS because Massachusetts explicitly "acknowledge[d] and agree[d] that ***the uFACTS Unemployment Insurance Solution*** . . . ***is BearingPoint's proprietary technology*** . . . and its source code are considered ***a trade secret of BearingPoint***." D.I. 279-2 ("Massachusetts

15

uFACTS Contract") at '755. If that was not clear enough, the contract also provides that "**derivative works** created for [Massachusetts] based on the BearingPoint owned . . . preexisting or proprietary software, solutions or other proprietary material and information" **constitute "Contractor Property**," *i.e.*, the property of BearingPoint. *Id.* at '755. Contractor Property includes "all Developments and Property associated with the migration of the uFACTS Solution Framework to a .NET architecture/application including but not limited to all core unemployment insurance functions." *Id.* The contract further states that BearingPoint "*will retain all right, title and interest in and to all Contractor Propert*y" and "*[n]othing in this SOW shall be deemed to transfer or assign BearingPoint's rights in or concerning the uFACTS framework and solution*." *Id.* at '755, '757. The contract even acknowledges that uFACTS and Contractor Property "contains or constitutes commercially valuable and proprietary trade secrets of the Contractor or other third parties, the development of which involved the expenditure of substantial time and money and the use of skilled development experts." *Id.* at '756.

**Second**, Sagitec's arguments that despite this clear language, the contract assigns uFACTS IP to Massachusetts are meritless, and at best show the contract is ambiguous. Where a contract "'has terms that are ambiguous, uncertain, or equivocal in meaning,' the intent of the parties may depend on disputed facts requiring a trial." *Cardone v. Bos. Reg'l Med. Ctr., Inc*., 800 N.E.2d 335, 341 (2003); *Affiliated FM Ins. Co. v. Const. Reinsurance Corp*., 626 N.E.2d 878, 881–882 (1994). Here, Sagitec argues that the Terms and Conditions of the contract state that Massachusetts owns "all **deliverables** purchased or developed with State funds." Br. 15–18. But the contract nowhere defines uFACTS as a deliverable and instead explicitly carves uFACTS out by making it retained property of BearingPoint, as explained above. *Supra* 15. Sagitec is thus wrong that, due to the order of "precedence," the Court should ignore the contract

16

language that directly addresses ownership of uFACTS and just rely on the deliverables provision. Br. 15. Precedence clauses resolve conflicting provisions. *See W. Bay Builders, Inc. v. United States*, 85 Fed. Cl. 1, 28 (2008). These provisions do not conflict: one sets a default rule applying to "deliverables," but that provision does not apply to uFACTS and the other provisions made that explicit. It would be illogical for BearingPoint to painstakingly negotiate its retention of rights in uFACTS if this other provision rendered that null and void. ███████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████ Ex. 37 at '247; *see also* D.I. 280-5 (Malm Tr.) at 190:9–22.[11]

Unable to the ignore that the contract clearly states that Deloitte owns Contractor Property, *i.e.,* derivative works created for Massachusetts based on BearingPoint-owned preexisting or proprietary software, Sagitec argues that Deloitte cannot show that the material asserted in this case constitutes Contractor Property at all. Br. 17–18. To do this, Sagitec cherry-picks language from BearingPoint's proposal stating it ██████████████████████████

████████████████████████████████████████████████████████████████

██████████████████ Br. 15. This is highly misleading: ██████████████████████████

████████████████████████████████████████████████████████████████

D.I. 279-7 at '403. Mr. Malm also explained that ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ D.I. 280-5 (Malm Tr.) at

---

[11] Likewise, Sagitec's argument (at 18) that Deloitte lacks standing to assert its New York state law claims because the contract assigns to Massachusetts "any causes of action relating to or based upon such work" fails as uFACTS and the trade secrets are Deloitte's property.

132:11–134:11; *see also* Ex. 46 (Gosu Tr.) at 96:6-18. This is consistent with the contract repeatedly calling the software solution being provided to Massachusetts "uFACTS." D.I. 279-2.

Sagitec argues "there is no evidence that any specific asserted source code files or design documents were created before the QUEST SOW was signed in May 2007," Br. 17, but that is both irrelevant and wrong. The contract defines Contractor Property to include both uFACTS and derivatives of *either* pre-existing *or* proprietary software. *Supra* 16. uFACTS is proprietary, and so this provision covers works based on uFACTS. D.I. 279-2 at '755–756. Regardless, Deloitte witnesses confirmed that development of uFACTS began years before QUEST. D.I. 280-5 (Malm Tr.) at 55:21–57:22, 87:7–15; Ex. 46 (Gosu Tr.) at 96:6–18.[12]

Sagitec's claim that Deloitte assigned to Massachusetts its IP related to the New Mexico project is based on the same flawed reading of the QUEST contract. Br. 18–19. Sagitec cites Deloitte's interrogatory response to claim "Deloitte concedes" the New Mexico project is derived from QUEST, Br. 18; Deloitte's complete response states it is derived from uFACTS, *not* material owned by Massachusetts. D.I. 282, Ex. 51 at 28. Whether the Court agrees that Deloitte owns the IP or finds there are factual disputes, Sagitec's Motion should be denied.

### D. Deloitte's Trade Secrets Have Independent Economic Value

Sagitec is wrong that "there is no evidence of [independent economic value ("IEV")]" for

---

[12] Sagitec argues (at 18) that "Deloitte and Massachusetts acted consistently with Massachusetts' ownership of all rights in the QUEST Project deliverable" but none of the cited evidence demonstrates Massachusetts' ownership of *uFACTS* or related trade secrets. D.I. 282, Ex. 53 at '258 (not a legal opinion (*see* Ex. 47 (Kottcamp Dep. Tr.) 70:23–72:23)); D.I. 282, Ex. 54 (Deloitte is not asserting others' copyrights as its own protectable expression); D.I. 282, Ex. 55 (does not indicate Massachusetts is asserting ownership over uFACTS); D.I. 282, Ex. 56 (same).

the trade secrets. Br. 19–20. IEV is "not a high standard." *Int'l Med. Devices v. Cornell*, 2025 WL 825211, at *3 (C.D. Cal. Mar. 14, 2025). Courts consider evidence like "the **resources invested** in producing the information, the **precautions taken** to protect its secrecy, and the **willingness of others to pay** for its access" in assessing IEV. *Id.*; *Talon Indus., LLC v. Rolled Metal Prods., Inc.*, 2022 WL 3754800, at *12 (D.N.J. Aug. 30, 2022); *Elmagin Cap., LLC v. Chen*, 555 F.Supp.3d 170, 180 (E.D. Pa. 2021); *Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc.*, 680 F. Supp. 2d 830, 843–44 (E.D. Mich. 2010).

There is extensive evidence of IEV here. **First**, Deloitte invested substantial resources to build uFACTS and its trade secrets. Ex. 29 (Britven Rpt.) at ¶¶ 109-120; D.I. 280-5 (Malm Tr.) 42:10-44:14, 286:21-287:13; Ex. 46 (Gosu Tr.) 33:20-35:18 (confirming personnel resources staffed across the country). **Second**, Deloitte took substantial precautions to protect the secrecy of its trade secrets. Krein Rpt. ¶¶ 161–203; Ex. 33 (Deloitte's 6th Supp. Resps. Sagitec's 1st ROGs) at 63–70, 75–83; Ex. 37 (contracts drafted to prevent access to trade secrets). **Third**, uFACTS trade secrets would enable a competitor to better compete. Gosu Decl. ¶¶ 4–8; Krein Rpt. ¶¶ 72, 460–476; D.I. 270-6 (Deloitte's 6th Supp. Resps. Sagitec's 1st ROGs) at 11, 19. **Fourth**, uFACTS trade secrets provided advancements to then-existing solutions. Gosu Decl. ¶¶4-8. **Fifth**, Deloitte profits from licensing uFACTS trade secrets. Ex. 29 (Britven Rpt.) ¶207; D.I. 280-5 (Malm Tr.) at 295:23–296:2 (uFACTS adds value to Deloitte market position); Ex. 33 (Deloitte's 6th Supp. Resps. Sagitec's 1st ROGs) at 98–113; D.I. 279-2 at '755–756; Ex. 34.[13]

---

[13] Sagitec relies on cases (at 19) involving far less evidence. *See Health Care Facilities Partners, LLC v. Diamond*, 2023 WL 3847289, at *11–12 (N.D. Ohio June 5, 2023) (conclusory affidavit); *Synopsys, Inc v. Risk Based Sec., Inc.*, 70 F. 4th 759, 774 (4th Cir. 2023) (value of unaccused database); *Contour Data Sols. LLC v. Gridgorce Energy Mgmt. LLC*, 2024 WL 3970455, at *16–

Sagitec's arguments on IEV are meritless. ***First***, Sagitec claims that Deloitte must show IEV for each trade secret individually, Br. 19–20, but trade secrets may be considered in "groups so long as the same evidence related to more than one of the alleged trade secrets and permitted a conclusion to be drawn with respect to each individual trade secret's value." *Synopsys*, 70 F.4th at 773. Here, the evidence applies equally to all of the trade secrets. Gosu Decl. ¶¶ 4-8; Krein Rpt. ¶¶ 458–482. ***Second***, Sagitec's citations to Mr. Malm's and Mr. Britven's depositions confirm only that Deloitte has not "tried to independently value" any uFACTS feature ***in isolation***, Br. 20, not that each trade secret has ***no*** value. D.I. 280-5 (Malm Tr.) at 294:15–305:6; D.I. 276-11 (Britven Tr.) at 118:12–119:15. Further, providing a numerical dollar amount is not necessary. *See supra* 19; *cf. Synopsys*, 70 F.4th at 773. Thus, Sagitec's motion should be denied.

### E.    Deloitte's Other State Law Claims Are Not Duplicative or Preempted

Claims are not duplicative when the theory of liability is "distinct," even when they are based on similar acts. *See Hayden v. Int'l Bus. Machines Corp.*, 2025 WL 1697021, *20-21 (S.D.N.Y. June 17, 2025) (citing *Pauwels v. Deloitte LLP*, 83 F.4th 171, 186-187 (2d Cir. 2023)); *Amphenol Corp. v. Paul*, 2013 WL 12251356, *5-6 (D. Conn. Mar. 28, 2013). The Copyright Act does not preempt a state law claim if there is an "extra element." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 217–18 (3d Cir. 2002). Deloitte's unfair competition and unjust enrichment claims include Sagitec's fraudulent conduct and affirmative steps to conceal misappropriation (Compl. ¶¶ 54–55; *supra* 4) and therefore, misconduct beyond the elements of trade secret misappropriation and copyright infringement.

### CONCLUSION

Accordingly, Deloitte requests that the Court deny Sagitec's motion in its entirety.

---

17 (E.D. Pa. Aug. 28, 2024) (no evidence of competitive advantage).

/s/ Andrew E. Russell
Andrew E. Russell (No. 5382)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
lgellar@shawkeller.com

OF COUNSEL:
Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

*Attorneys for Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC*

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
(202) 389-5000

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7419

Ariel Deitchman
KIRKLAND & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th Street, Suite 700
Miami, FL 33131
(305) 432-5676

Dated: July 24, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2025, this document was served on the persons listed below in the manner indicated:

**BY EMAIL:**

Anne Shea Gaza
Robert M. Vrana
YOUNG CONAWAY STARGATT
 & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

Christopher K. Larus
Rajin S. Olson
William E. Manske
THOMPSON HINE LLP
800 Nicollet Ave., Suite 2925
Minneapolis, MN 55402
(877) 628-5500
christopher.larus@thompsonhine.com
rajin.olson@thompsonhine.com
william.manske@thompsonhine.com

*/s/ Andrew E. Russell*
Andrew E. Russell (No. 5382)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
lgellar@shawkeller.com

*Attorneys for Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC*