IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| DELOITTE CONSULTING LLP and DELOITTE DEVELOPMENT LLC, | ) ) ) ) | C.A. No. 23-325-WCB |
| Plaintiffs, | ) ) | **REDACTED VERSION** |
| v. | ) ) ) | **Filed: August 14, 2025** |
| SAGITEC SOLUTIONS, LLC, | ) ) ) | |
| Defendant. | ) ) | |

**SAGITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
*DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS OF DELOITTE'S
PROFFERED EXPERTS DR. JONATHAN KREIN AND MR. THOMAS BRITVEN**

OF COUNSEL:

Christopher K. Larus
William E. Manske
Rajin S. Olson
THOMPSON HINE LLP
800 Nicollet Avenue, Suite 2925
Minneapolis, MN 55402
(612) 605-5900
Chris.Larus@ThompsonHine.com
William.Manske@ThompsonHine.com
Rajin.Olson@ThompsonHine.com

Dated: August 7, 2025

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Defendant
Sagitec Solutions, LLC*

## TABLE OF CONTENTS

ARGUMENT .................................................................................................................................. 1

I.    Dr. Jonathan Krein's Identified Opinions Should Be Excluded. .......................................... 1

A.    Dr. Krein's Opinions Regarding the Parties' Intent, Motivation, and State of Mind Are Improper. ................................................................................................................................... 1

B.    Dr. Krein's Speculative Opinions Regarding What He is "Unable to Rule Out" Are Improper. ................................................................................................................................... 2

C.    Dr. Krein's Conclusory Opinions Regarding His Appendices A and B Fail to Disclose Any Analysis of Qualitative or Quantitative Similarity Between the Identified Files, So They Should Be Excluded. ................................................................................................................ 3

D.    Dr. Krein's "Head Start" Opinion Lacks Any Reliable Methodology and Should Be Excluded. ................................................................................................................................... 4

II.    Mr. Britven's Identified Opinions Should Be Excluded. ....................................................... 5

A.    Mr. Britven's Improper State-of-Mind Opinions Should Be Excluded. ............................ 5

B.    Mr. Britven's Opinions that Any Damages Are Owed for the ESSP Project Should be Excluded. ................................................................................................................................... 6

C.    Mr. Britven's Lost Profit Opinions Are Unreliable Because Deloitte Did Not Compete for Any Projects that Sagitec Won. ................................................................................................ 6

D.    Mr. Britven's Opinions Relying on Undisclosed Opinions of Dr. Krein Lack Support and Should Be Excluded. ................................................................................................................ 7

E.    Mr. Britven's Disgorgement and Lost Profits Opinions Should Be Excluded for Failure to Apportion Between Deloitte's Trade Secret and Copyright Claims. ....................................... 9

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AgroFresh Inc. v. Essentiv LLC*,
C.A. No. 16-662 (MN), 2019 U.S. Dist. LEXIS 232522 (D. Del. Oct. 7, 2019) ......................6

*Goldberg v. 401 Wabash Venture LLC*,
Case No. 09 C 6455, 2013 U.S. Dist. LEXIS 54509 (N.D. Ill. Apr. 15, 2013).....................1, 2

*Huawei Techs. Co. v. Huang*,
Civil Action No. 4:17-CV-00893, 2019 U.S. Dist. LEXIS 78765 (E.D. Tex.
May 9, 2019)..........................................................................................................................5

*Medidata Solutions, Inc., v. Veeva Systems, Inc.*,
C.A. No. 17-589, 2021 U.S. Dist. LEXIS 160926 (S.D.N.Y. Aug. 25, 2021) .........................5

*Norman v. Leonard's Express, Inc.*,
No. 7:22cv00096, 2023 U.S. Dist. LEXIS 78115 (W.D. Va. May 4, 2023) ........................2, 3

*Oddi v. Ford Motor Co.*,
234 F.3d 136 (3d Cir. 2000).....................................................................................................1

*Qorvo, Inc. v. Akoustis Techs., Inc.*,
No. 1:21-cv-01417-JPM, 2024 U.S. Dist. LEXIS 230207 (D. Del. Oct. 31,
2024) .......................................................................................................................................5

*Target Mkt. Publ., Inc. v. ADVO, Inc.*,
136 F.3d 1139 (7th Cir. 1998) .................................................................................................7

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)................................................................................................6

*Valvetech, Inc. v. Aerojet Rocketdyne, Inc.*,
C.A. No. 17-CV-6788-FPG, 2023 U.S. Dist. LEXIS 88159, (W.D.N.Y. May
19, 2023) .................................................................................................................................5

**Statutes**

17 U.S.C. § 504(b) ........................................................................................................................10

18 U.S.C § 1836.............................................................................................................................10

ii

## ARGUMENT

Deloitte must demonstrate that its proffered expert opinions are reliable and fit the fact disputes at issue. *Oddi v. Ford Motor Co.,* 234 F.3d 136, 144 (3d Cir. 2000). Deloitte has not met that burden for the opinions identified in Sagitec's *Daubert* motion. These opinions should be excluded, and Deloitte's experts should be precluded from offering testimony at trial about them.

### I.    Dr. Jonathan Krein's Identified Opinions Should Be Excluded.

#### A.    Dr. Krein's Opinions Regarding the Parties' Intent, Motivation, and State of Mind Are Improper.

Deloitte characterizes Dr. Krein's state-of-mind opinions (contained in Section 11 of his report) as "technical analysis of correspondence between" the parties. D.I. 307 at 4. They are not. Section 11 of Dr. Krein's report is titled "Sagitec Misled Deloitte and Others About its Use." Ex. 1 ¶¶ 440-57.[1] In Section 11, based solely on his review of the written record, Dr. Krein offers several express opinions as to what the parties allegedly knew and intended. *Id.* ¶¶ 442, 456, 457. These opinions extend far beyond the factual accuracy or inaccuracy of statements in the parties' correspondence. Dr. Krein does not, as Deloitte argues, "stop[] short of speculating on the "thoughts or impressions" of another. D.I. 307 at 4 (quoting *Goldberg v. 401 Wabash Venture LLC,* Case No. 09 C 6455, 2013 U.S. Dist. LEXIS 54509, at *9 (N.D. Ill. Apr. 15, 2013)).

Deloitte's only cited case is inapposite. In *Goldberg,* the plaintiff sought to exclude expert opinions concerning "common industry practice" for certain types of real estate developers. 2013 U.S. Dist. LEXIS 54509, at *9. The subject opinion did not require the expert to "speculate regarding the thoughts or impressions [the defendants] held at any time." *Id.* And the "industry practice" opinions "directly respond[ed]" to the defendant's expert's opinion regarding "common

---

[1] Unless otherwise stated, exhibit numbers refer to exhibits filed at D.I. 276.

industry practice" for certain types of real estate developers. *Id.* Here, as in the cases cited in Sagitec's memorandum (D.I. 275 at 5-6), Dr. Krein improperly offers opinions about the parties' state of mind. These opinions should be excluded and Dr. Krein precluded from testifying on them.

**B.    Dr. Krein's Speculative Opinions Regarding What He is "Unable to Rule Out" Are Improper.**

Deloitte now confirms that Dr. Krein will not testify regarding whether Sagitec "withheld," "refused," "declined," or was "unwilling to produce evidence." D.I. 307 at 7 n.2. But Dr. Krein's opinions as to speculative circumstances he is purportedly "unable to rule out" are nonetheless improper. These opinions are just another flavor of the testimony Deloitte now agrees not to present. By speculating as to circumstances he is "unable to rule out," Dr. Krein suggests that Sagitec failed to produce some evidence it should have, offering his "strong suspicion" for what that evidence would show. *See e.g.*, Ex. 1 ¶¶ 341 n.546, 342 n.547, 432, 565, 584, 585. These opinions are an improper attempt to suggest that Sagitec "is hiding something damaging when [Deloitte] had procedural avenues to rectify any perceived discovery abuses, and the records at issue simply do not support such a claim." *Norman v. Leonard's Express, Inc.*, No. 7:22cv00096, 2023 U.S. Dist. LEXIS 78115, at *6-7 (W.D. Va. May 4, 2023). The opinions are unfairly prejudicial and invite serial mini trials on the discovery record in this case—an outcome that Deloitte's mistaken recitation of the discovery record (D.I. 307 at 7) only confirms.

Deloitte's reading of the case law is also incorrect. *Baker v. City of Chicago* is inapposite. No. 19-cv-1717; 16-cv-8940, 2024 U.S. Dist. LEXIS 229903 (N.D. Ill. Aug. 22, 2024). There, the court allowed a retired FBI agent to offer "hypothetical" testimony based on the agent's "experience, knowledge, and training" for why a report may not have been authored to document a law enforcement meeting. *Id.* at *59-60. The court, however, precluded the retired agent from opining as to "why a report was not written" for the specific meeting in question. *Id.* Here, Dr.

2

Krein offers no "hypothetical" opinions; he directly speculates as to what allegedly missing evidence would demonstrate in this case. In *Norman*, the court did allow a medical expert to testify that it was "impossible for her to determine" the cause of the subject medical conduction. *Norman*, 2023 U.S. Dist. LEXIS 78115, at \*11. Importantly, however, she was not permitted to "testify or imply that there were (or are) relevant medical records, deposition transcripts, or the like that were not made available to her or [the party that retained her]." *Norman*, 2023 U.S. Dist. LEXIS 78115, at \*6. Here, too, Dr. Krein should not be permitted to testify or imply the existence of evidence not made available to him—evidence of circumstances he claims he is "unable to rule out."

### C.   Dr. Krein's Conclusory Opinions Regarding His Appendices A and B Fail to Disclose Any Analysis of Qualitative or Quantitative Similarity Between the Identified Files, So They Should Be Excluded.

Deloitte does not contest the fact that Appendices A and B themselves contain no quantitative or qualitative analysis. Nor could it. Appendices A and B are merely lists of files. Ex. 1 ¶¶ 433-435, App. A, App. B; Ex. 10 (Krein Dep. Tr.) at 8:16-10:12.

Tellingly, Deloitte does not dispute the content of Appendix A and B in its opposition. Rather, Deloitte advances attorney argument that purports to make the missing connection between Appendices A and B and Dr. Krein's "copying" analysis (Section 10 of his report). If Dr. Krein intends to now supply that missing connection—providing the jury a "framework" or the "tools to understand" Appendices A and B, as Deloitte argues—that connection was not disclosed anywhere in Dr. Krein's report and he should be precluded from testifying about them.

Deloitte's attempt to distinguish *Healthestate, LLC v. United States* is without merit. 168 Fed. Cl. 624 (2023). The file list excluded in that case included *more* information than Appendices A and B in Dr. Krein's report. In *Healthestate,* the expert's file list purported to show where a given feature appeared in both the plaintiff's and the defendant's code. *Healthestate*, 168 Fed. Cl. at 656-58. Files were shown side-by-side. *Id.* But even this analysis did not go far enough because it "does

3

not indicate that [the expert] took the next step to review and compare the portions of the source code found in each code set to determine literal copying or substantial similarity." *Id.* at 657. Appendices A and B have the same deficiency, and they are even weaker. They are mere lists of files that Deloitte evidently intends to someday (and somehow) present as evidence of "copying." Appendix A and B contain no information to discern how much or which parts of the identified files were allegedly copied, or whether the allegedly copied portions were derived from third party sources. And they are extremely prejudicial because they suggest more "copying" than Dr. Krein's report actually shows. They should be excluded and testimony regarding them precluded.

### D.    Dr. Krein's "Head Start" Opinion Lacks Any Reliable Methodology and Should Be Excluded.

Dr. Krein's opinion that "Sagitec's copying, use, and possession saved [Sagitec] development time" of ▮▮▮▮▮▮▮▮▮▮ should be excluded because he fails to provide any reliable methodology as to how his ▮▮▮▮▮ "head start" period was calculated. Ex. 1 ¶¶ 458-479. The unreliability of Dr. Krein's "head start" analysis stems from his failure to apply any discernable methodology to arrive at his calculation, and not a dispute over his choice of methodology. Deloitte's opposition points to the same portions of Dr. Krein's report identified in Sagitec's opening brief. *Compare* D.I. 275 at 10-11 (citing Ex. 1 ¶¶ 460-76, 78-79), *with* D.I. 307 at 11 (citing Ex. 1 ¶¶ 460-76, 78-79). Missing from these portions—and Dr. Krein's report overall—is *how* specifically Dr. Krein calculated that "Sagitec saved at least ▮▮▮▮▮▮▮ through its alleged "possession and use of Deloitte's uFACTS solution trade secrets and copyrights." *Id.* ¶¶ 478, 479; *see also id.* ¶¶ 465, 467, 470, 474, 476. While the identified portions of Dr. Krein's report may well be a "backdrop," as Deloitte argues, D.I. 307 at 11, this does not give Dr. Krein license to present to the jury a "head start" opinion "shorn of any demonstrable, reliable methodology."

*Medidata Solutions, Inc. v. Veeva Systems, Inc.*, C.A. No. 17-589, 2021 U.S. Dist. LEXIS 160926, at *6 (S.D.N.Y. Aug. 25, 2021).

Sagitec's cited cases are on all fours. In *Medidata*, the plaintiff's expert compared development times for purportedly relevant products and derived a head start period from the delta between them. 2021 U.S. Dist. LEXIS 160926, at *6. But like Dr. Krein, the expert provided "no sound methodological basis" to tie this period to the alleged misappropriation. *Id.* In *Valvetech, Inc. v. Aerojet Rocketdyne, Inc.*, the plaintiff's expert calculated "avoided delays" based on "objectively unverifiable conclusions." C.A. No. 17-CV-6788-FPG, 2023 U.S. Dist. LEXIS 88159, at *7 (W.D.N.Y. May 19, 2023). The same is true here; the specific facts (or inputs) upon which Dr. Krein relies to "discount" Deloitte's development time on uFACTS and arrive at Sagitec's alleged head start are not identified. The cases cited by Deloitte are therefore inapposite. D.I. 307 at 10. This is not a case where an expert merely fails, during testimony, to "identify specific documents and sources from a five hundred page report" that explain his head start calculation. *Qorvo, Inc. v. Akoustis Techs., Inc.,* No. 1:21-cv-01417-JPM, 2024 U.S. Dist. LEXIS 230207, at *21 (D. Del. Oct. 31, 2024). Nor is this a case where Sagitec merely disagrees with Dr. Krein's "figures and time periods." *Huawei Techs. Co. v. Huang*, Civil Action No. 4:17-CV-00893, 2019 U.S. Dist. LEXIS 78765, at *26 (E.D. Tex. May 9, 2019). Preclusion is warranted.

## II.    Mr. Britven's Identified Opinions Should Be Excluded.

### A.    Mr. Britven's Improper State-of-Mind Opinions Should Be Excluded.

Based solely on his review of the written record, Mr. Britven opines that Deloitte "believed" or "learned" certain things at certain times. Ex. 2 ¶¶ 62, 63, 65. "A plain reading" of Mr. Britven's report does not "make[] clear" that these opinions are intended only to relay "Mr. Britven's understanding of the limitations period." D.I. 307 at 12. Deloitte offers no defense of these state-of-mind opinions. They should be excluded and testimony regarding them precluded.

**B.      Mr. Britven's Opinions that Any Damages Are Owed for the ESSP Project Should be Excluded.**

Deloitte's defense of Mr. Britven's inclusion of the ESSP-DOES project in his damages calculations is without merit. The impropriety of Mr. Britven's inclusion of the ESSP-DOES project is not derived from "an overly narrow standard for use of trade secrets," as Deloitte argues. D.I. 307 at 13. "Use" can take different forms, but that does not absolve Deloitte from its burden to connect the damages it seeks to the alleged misappropriation. *See* D.I. 275 at 13 (citing cases). Regardless, Mr. Britven did not perform a technical analysis of the extent of Sagitec's "use" of the alleged trade secrets. Ex. 11 at 124:25-126:9. He relied on Dr. Krein's input that ███████████ ███████████████" *Id.* And Dr. Krein presents no opinions regarding "use" of allegedly infringing or misappropriated content for the ESSP-DOES project. Quite the opposite—█ ████████████████████████████████████████████████████ ███████████████ *See* Ex. 1 ¶ 493 ("███████████████████████████████ ████████████████████████████████████████████████████ ██████"); Sections 9-10 ███████████████████████████████ ███████████████); Appendices A-C (█████████████████████████████).

**C.      Mr. Britven's Lost Profit Opinions Are Unreliable Because Deloitte Did Not Compete for Any Projects that Sagitec Won.**

The undisputed facts render Mr. Britven's lost profits analysis unreliable and not relevant because there is no actual overlap between the nine projects Sagitec won between January 1, 2014 and December 31, 2024, and any lost profits by Deloitte. Ex. 2 ¶¶ 90, 126-153.

Contrary to Deloitte's argument, courts do examine how experts "tie [damages] to the facts of the case at issue" under *Daubert*. *See, e.g., Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011) (discussing *Daubert's* application to expert testimony on damages); *AgroFresh Inc. v. Essentiv LLC,* C.A. No. 16-662 (MN), 2019 U.S. Dist. LEXIS 232522, at *5 (D.

6

Case 1:23-cv-00325-WCB    Document 343    Filed 08/14/25    Page 10 of 16 PageID #: 22374

Del. Oct. 7, 2019) (excluding damages opinion in trade secret case on the basis that proffered testimony "does not fit the issues to be tried and is not helpful"). And while damages experts may assume causation for liability purposes, damages experts are not afforded *carte blanche* to assume a causal connection to the economic harm alleged. *See Target Mkt. Publ., Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1144-45 (7th Cir. 1998) (affirming exclusion of lost profits opinion based in part on "implausible assumption" that plaintiff would capture sales for which there was "no sales effort").

Deloitte ignores the undisputed record in this case. There is no actual overlap between the nine projects Sagitec won between January 1, 2014 and December 31, 2024, and any lost profits Deloitte seeks. Ex. 2 ¶¶ 90, 126-153. Deloitte made the affirmative decision (for whatever reason) not to pursue the specific contracts Mr. Britven now claims as the basis for lost profits. D.I. 275 at 16-17. Deloitte's cited cases are therefore inapposite. While *Ericsson, Inc. v. Harris Corp.* supports acceptance of a "wide variety of [market] reconstruction theories," it also makes clear that any such theory must be supported by "reliable economic evidence of 'but for' causation." 352 F.3d 1369, 1377 (Fed. Cir. 2003) (citation omitted). *Numatics, Inc. v. Balluff, Inc.* is in accord. 66 F. Supp. 3d 934, 951 (E.D. Mich. 2014) ("A patentee may resort to any method showing, with reasonable probability, entitlement to lost profits 'but for' the infringement.").

### D.    Mr. Britven's Opinions Relying on Undisclosed Opinions of Dr. Krein Lack Support and Should Be Excluded.

Experts may "rely on the analysis of other experts." D.I. 307 at 16. But that reliance must be based on opinions properly disclosed pursuant to the Federal Rules. D.I. 275 at 19. Deloitte's cited cases do not suggest otherwise. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.* concerned whether an expert's trial testimony was consistent with *that expert's* report. 585 F. Supp. 2d 568, 581 (D. Del. 2008) (examining whether expert trial testimony was "consistent with" or a "reasonable synthesis and/or elaboration" of *that* expert's report). *nCube Corp. v. SeaChange*

7

*Int'l* likewise concerned whether an expert's testimony (at a hearing) was consistent with *that expert's* report. 809 F. Supp. 2d 337, 347 (D. Del. 2011). Mr. Britven improperly relies on *Dr. Krein's* opinions that are not disclosed in *Dr. Krein's* report.

Deloitte's identification of portions of Dr. Krein's report that allegedly contain opinions "related" to opinions identified only in Mr. Britven's report only demonstrates the breadth of Dr. Krein's undisclosed opinions in this case. Examination of the cited paragraphs in Dr. Krein's report reveals no support for the *specific* Dr. Krein opinions relayed solely in Mr. Britven's report. For example, Mr. Britven opines (based solely on Dr. Krein) that ███████████████████████ ███████████████████████████████████████████████████████." Ex. 2 ¶ 117. Deloitte cites Paragraphs 458-482 of Dr. Krein's report as containing "related" opinions ███████████████████████████████ ██████████████ D.I. 307 at 17. These paragraphs nowhere identify ████████████ ██████████████████████████████████. *See* Ex. 1 ¶¶ 458-482. Likewise, Deloitte argues that Dr. Krein's opinion (relayed in Mr. Britven's report) that ██████████████████████████████████ ███████████████████████████████████████████ ████████████████ is "related" to some *84* Paragraphs (Paragraphs 100-160 and 458-482) of Dr. Krein's report. D.I. 307 at 17. These paragraphs nowhere identify any opinions or analysis of ██████████████████████████ *See* Ex. 1 ¶¶ 100-160, 458-482.

Mr. Britven's extensive reliance on the undisclosed opinions of Dr. Krein presents a notable contrast to Deloitte's cited cases. In *Sci. Applications Int'l Corp. v. U.S.,* unlike here, "there [was] no indication, other than mere speculation from [the plaintiff], that [the defendant's damages expert] relied on supposedly never-disclosed, first-in-time assertions from [the defendant's]

technical expert." 169 Fed. Cl. 346, 365 (2023). And the assertions for which the defendant's damages expert cited to the defendant's liability expert could "easily be found in [the technical expert's] report." *Id.* Not so here. Unlike in *Sci Applications*, Sagitec documented the myriad *specific* instances where Mr. Britven relies upon Dr. Krein's undisclosed opinions. D.I. 275 at 17-19. In *Iconics, Inc. v. Massaro,* the court allowed a damages expert to opine "as to damages using assumptions based on information provided" by the plaintiff's liability expert that was not in the liability expert's report. 266 F. Supp. 3d 461, 474-475 (D. Mass. 2017). But the issue here is not undisclosed "information" or inputs; it is Dr. Krein's wholly undisclosed *opinions* about the evidence in this case. In this situation, courts have exercised their gatekeeping role under *Daubert.* *See* D.I. 275 at 19 (citing cases).

> **E.    Mr. Britven's Disgorgement and Lost Profits Opinions Should Be Excluded for Failure to Apportion Between Deloitte's Trade Secret and Copyright Claims.**

Deloitte argues that Mr. Britven broke out copyright and trade secret damages in a chart setting forth damages for each claim. D.I. 307 at 19 (citing Ex. 2 ¶ 12). Deloitte ignores the fact that Mr. Britven utilized the *same methodology* to calculate the chart's figures for alleged disgorgement and lost profits for both trade secret misappropriation and copyright infringement—differing only in the applicable period for each. Ex. 2 ¶ 262 ███████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████; *see also id.* ¶¶ 266-273. Mr. Britven himself acknowledges the "tremendous overlap" between the two damages figures. Ex. 11 at 260:3-14. Mr. Britven's disgorgement and lost profits figures are one lump sum. He uses the same revenue base for both disgorgement and lost profits figures—revenue derived from the nine UI projects that Sagitec won from January 1, 2014 to December 31, 2024.

Mr. Britven's failure to apportion is significant. Here, unlike in *In re Ahern Rentals, Inc. Trade Secret Litigation,* the "impropriety" of Mr. Britven's approach is "self-evident." No. 20-02945-MD-C-BP, 2023 U.S. Dist. LEXIS 235823, at *33 (W.D. Mo. Nov. 14, 2023). If the Court grants summary judgment on either of Deloitte's trade secret or copyright claims, Mr. Britven discloses no methodology for the jury to calculate damages fit to the alleged harm. Deloitte suggests this is not an issue because the harm is the same for alleged trade secret misappropriation as it is for copyright infringement. D.I. 307 at 19 ("damages for these interrelated claims were all caused by the sale of the same product: Neosurance"). This assumes a complete overlap of the trade secrets and copyrights in this case. But it is undisputed there is no such overlap, as Deloitte does not assert copyrights in the design documents it asserts as trade secrets. *Compare*, Ex. 2 ¶¶ 35-45 ███████████████████████████████████████), *with id.* ¶ 52 ████████████████ ████████████████). And to be entitled to the damages it seeks, Deloitte must demonstrate a causal relationship between the alleged trade secret misappropriation and alleged copyright infringement and the alleged harm *independently*. 18 U.S.C § 1836; 17 U.S.C. § 504(b). Deloitte's position is also inconsistent with Mr. Britven's analysis. For example, Mr. Britven provides different figures for avoided research and development attributable to just the trade secrets versus the copyrights based on inputs from Deloitte personnel. Ex. 2 ¶¶ 275 n.481, Attachments 10, 10.1.

## CONCLUSION

Sagitec respectfully requests the Court grant its *Daubert* motion to exclude these portions of Deloitte's proffered expert testimony.

Dated: August 7, 2025

Of Counsel:

Christopher K. Larus
William E. Manske
Rajin S. Olson
THOMPSON HINE LLP
800 Nicollet Avenue, Suite 2925
Minneapolis, Minnesota 55402
Telephone:    612.605.5900
Facsimile:    612.605.5901
Chris.Larus@ThompsonHine.com
William.Manske@ThompsonHine.com
Rajin.Olson@ThompsonHine.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Sagitec Solutions, LLC*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 7, 2025, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Joshua L. Simmons
Dana DeVlieger
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

Ariel Deitchman
KIRKLAN & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th Street, Suite 700
Miami, FL 33131

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116

*Deloitte-Sagitec@kirkland.com*

John W. Shaw
Andrew E. Russell
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*jshaw@shawkeller.com*
*arussell@shawkeller.com*

*Attorneys for Plaintiffs Deloitte Consulting LLPand Deloitte Development LLC*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street

Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Sagitec Solutions, LLC*