IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____

DELOITTE CONSULTING LLP and )
DELOITTE DEVELOPMENT LLC, )
                             )
                 Plaintiffs, )
                             )
         v. )
                             )
SAGITEC SOLUTIONS, LLC, )
                             )
                 Defendant. )

C.A. No. 23-325-WCB

**REDACTED VERSION**
**Filed: August 21, 2025**

## SAGITEC'S MEMORANDUM OF LAW IN OPPOSITION TO DELOITTE'S MOTION FOR SANCTIONS

OF COUNSEL:

Christopher K. Larus
William E. Manske
Rajin S. Olson
THOMPSON HINE LLP
800 Nicollet Avenue, Suite 2925
Minneapolis, MN 55402
(612) 605-5900
Chris.Larus@ThompsonHine.com
William.Manske@ThompsonHine.com
Rajin.Olson@ThompsonHine.com

Dated:  August 14, 2025

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Defendant*
*Sagitec Solutions, LLC*

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

SUMMARY OF ARGUMENT ................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 2

I.  Sagitec's UI Business Unit and the SharePoint Server Locations At Issue....................... 2

II.  July 2016 to September 2018 Letter Correspondence to Sagitec. .................................... 3

III.  Sagitec's Internal Investigation and Ongoing Cooperation with the Government. ........... 4

IV.  Sagitec's Upgrading and Migration of SharePoint in the Ordinary Course of Business.... 4

V.  Sagitec Produced ██████████████████████████████████████
    ███████████████████████████████████████████████████ ....................................... 5

VI.  Baseless Inaccuracies in Deloitte's Proffered "Factual" Background. .............................. 6

    A.  There is no evidence of purposeful deletion of files from SharePoint. .................. 6

    B.  There is no evidence of "tampering" relating to the materials at issue. .............. 10

    C.  There is no evidence of "cleansing" relating to the materials at issue................. 11

ARGUMENT ........................................................................................................ 12

I.  Deloitte Has Not Met Its Burden to Prove Spoliation. ................................................. 12

    A.  Deloitte has failed to demonstrate that any documents or data were "truly lost and
    not recoverable elsewhere."................................................................................. 12

    B.  Deloitte has failed to show that any alleged deletion or movement of the
    SharePoint folders occurred *after* Sagitec was under a duty to preserve............. 14

II.  Deloitte Has Failed to Prove by Clear and Convincing Evidence That Sagitec Acted with
    an "Intent to Deprive" or That It Is Entitled to the Extreme Sanctions It Seeks. ............. 16

    A.  An adverse inference sanction is not "available" because Deloitte has failed to
    prove an "intent to deprive" by clear and convincing evidence. .......................... 16

    B.  An adverse inference is also unavailable because Deloitte has failed to prove any
    prejudice........................................................................................................ 18

    C.  Deloitte's request for the extreme sanction of striking Sagitec's statute of
    limitations defense is unsupported by law and should be denied. ........................ 19

CONCLUSION ..................................................................................................... 20

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ali v. Dainese USA, Inc.*,
   577 F. Supp. 3d 205 (S.D.N.Y. 2021) ................................................................................18

*Allscripts Healthcare, LLC v. Andor Health, LLC*,
   C.A. No. 21-704, 2022 U.S. Dist. LEXIS 147747 (D. Del. Apr. 28, 2022) ..........................12

*Aptix Corp. v. Quickturn Design Sys.*,
   269 F.3d 1369 (Fed. Cir. 2001) ..................................................................................17, 19

*Bistrian v. Levi*,
   448 F. Supp. 3d 454 (E.D. Pa. 2020) ......................................................................1, 13, 14

*Delay v. Dollar Energy Fund*,
   C.A. No. 2:21-cv-1037, 2023 U.S. Dist. LEXIS 77470 (W.D. Pa. May 1,
   2023) ........................................................................................................................12, 17

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*,
   5:20-cv-06846, 2024 U.S. Dist. LEXIS 222391 (N.D. Cal. Dec. 9, 2024) ............................13

*Flint Grp. Packaging Inks N. Am. Corp. v. Fox Indus. Inc.*,
   C.A. No. 16-3009, 2023 U.S. Dist. LEXIS 128615 (D.N.J. June 29, 2023) ...................17, 18

*Freidman v. Phila. Parking Auth.*,
   C.A. No. 14-6071, 2016 U.S. Dist. LEXIS 32009 (E.D. Pa. Mar. 10, 2016) .........................14

*Fuhs v. McLachlan Drilling Co.*,
   C.A. No. 16-376, 2018 U.S. Dist. LEXIS 184264 (W.D. Pa. Oct. 26, 2018).........................15

*GN Netcom, Inc. v. Plantronics, Inc.*,
   930 F.3d 76 (3d Cir. 2019).........................................................................................16, 19

*Goldman v. Sol Goldman Invs. LLC*,
   20-CV-06727, 2022 U.S. Dist. LEXIS 105303 (S.D.N.Y. June 13, 2022) ............................13

*Gregory v. Montana*,
   118 F.4th 1069 (9th Cir. 2024) ........................................................................................17

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
   C.A. No. 18-452-WCB, 2022 U.S. Dist. LEXIS 82405 (D. Del. May 3, 2022)............. *passim*

*J.S.T., Corp. v. Robert Bosch, LLC*,
   No. 15-13842, 2019 U.S. Dist. LEXIS 90645 (E.D. Mich. May 29, 2019) ...........................20

*Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*,
    886 F. Supp. 2d 466 (D. Del. 2012) ............................................................ 2, 19

*Manning v. Safelite Fulfillment, Inc.*,
    C.A. No. 17-2824, 2021 U.S. Dist. LEXIS 151591 (D.N.J. Apr. 29, 2021) .......................... 17

*McAdams v. United States*,
    297 F. App'x 183 (3d Cir. 2008) ................................................................ 18

*Monolithic Power Sys. v. Intersil Corp.*,
    C.A. No. 16-1125, 2018 U.S. Dist. LEXIS 201797 (D. Del. Nov. 19, 2018) ........................ 18

*Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*,
    CV 18-1997, 2021 U.S. Dist. LEXIS 124711 (E.D.N.Y. July 2, 2021) ................................ 20

*Nagy v. Outback Steakhouse*,
    C.A. No. 19-18277, 2024 U.S. Dist. LEXIS 29288 (D.N.J. Feb. 21, 2024) ......................... 16

*Painadath v. Good Shepherd Penn Partners*,
    348 F.R.D. 16 (E.D. Pa. 2024) .................................................................. 17

*Schmid v. Milwaukee Elec. Tool Corp.*,
    13 F.3d 76 (3d Cir. 1994) ...................................................................... 19

*SEC v. Graystone Nash, Inc.*,
    25 F.3d 187 (3d Cir. 1994) ...................................................................... 9

## Other Authorities

Fed. R. Civ. P. 37(e) ........................................................................ *passim*

## NATURE AND STAGE OF PROCEEDINGS

Sagitec has moved for summary judgment on all claims, including because Deloitte's non-copyright claims are barred by applicable statutes of limitations. *See* D.I. 278, 332. Unable to mount a successful rebuttal on the merits, Deloitte filed its misguided motion for sanctions seeking to strike Sagitec's statute of limitations defense through Rule 37. D.I. 297. Deloitte has failed to meet its heavy burden to prove spoliation or that it is entitled to any of the extreme sanctions it requests. Deloitte's baseless motion should be denied in its entirety.

## SUMMARY OF ARGUMENT

1.    Deloitte has failed to prove any spoliation occurred. Although certain Sagitec SharePoint *folders* referenced in emails from 2013 to January 2016 are no longer available, ***Sagitec produced the allegedly missing materials from other locations***. This includes ██████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████ that Deloitte contends were deleted. D.I. 297 at 3. Deloitte's unsupported claims of spoliation ignore Sagitec's fulsome productions and instead rest on hearsay, misstatements of the record, and attorney argument. None of Deloitte's inflammatory rhetoric changes the fact that Deloitte has failed to demonstrate that any material is missing, so Deloitte's motion fails. *IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. No. 18-452-WCB, 2022 U.S. Dist. LEXIS 82405, at *11 (D. Del. May 3, 2022) (Rule 37(e) sanctions only available if, *inter alia*, information is "lost" and "cannot be restored or replaced through additional discovery"); *Bistrian v. Levi*, 448 F. Supp. 3d 454, 465 (E.D. Pa. 2020) ("Because ESI often exists in multiple locations[,] spoliation occurs only when the information is truly lost and not recoverable elsewhere.").

2.    Even if Deloitte could demonstrate spoliation—of which there is *no evidence*—Deloitte failed to show that it is entitled to the extreme sanctions it seeks. Specifically, Deloitte

has failed to meet its burden to show by clear and convincing evidence that Sagitec acted with "intent to deprive" or "bad faith"—rendering an adverse inference improper. *IOENGINE*, 2022 U.S. Dist. LEXIS 82405, at *25 (citing Fed. R. Civ. P. 37(e)(2)). Deloitte similarly failed to show that it is entitled to the dispositive relief it requests, both because it failed to show any "intent to deprive" or "bad faith," *id.*, and because it failed to show that "no alternative remedy is available." *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 481 (D. Del. 2012). Deloitte also failed to show any nexus between the SharePoint materials and Sagitec's statute of limitations defense. Its motion must be denied.

## FACTUAL BACKGROUND

### I.    Sagitec's UI Business Unit and the SharePoint Server Locations At Issue.

In 2013, David Minkkinen approached Sagitec with a proposal to expand the use of Sagitec's proprietary framework to support unemployment insurance ("UI") software applications. Ex. 1 (Sagitec's 3rd Supplemented Responses to Deloitte's 1st Set of Interrogatories) at 7-8.[1] Mr. Minkkinen was the former head of Deloitte's UI practice. *See id.* Sagitec hired Mr. Minkkinen to lead Sagitec's new UI business unit, and Sagitec began offering UI-related software under the brand name Neosurance™. Ex. 2 (Jain Dep. Tr.) at 100:25-101:17, 116:11-117:19.

From the start, Sagitec leadership instructed Mr. Minkkinen and other former Deloitte employees not to copy, take, or use any materials from their previous employment, and to develop completely different software. *See* Ex. 3 (Kotcherlakota Vol. I Dep. Tr.) at 44:13-48:14; Ex. 2 at 52:4-55:2, 164:2-168:9. Despite these clear instructions, certain internal Sagitec emails from 2013 to January 2016 appear to refer to ███████████████████████████████████████ ███████████████████████████████████████████████████ These emails refer to Sagitec

---

[1] Exhibits are attached to the Declaration of Rajin S. Olson filed concurrently herewith.

"SharePoint" server locations with "uFACTS" in the file path or folder name. *See* D.I. 298-6, D.I. 298-7, D.I. 270-19, 298-21, 298-22, D.I. 298-23, D.I. 298-24. Microsoft SharePoint is a document depository system involving "SharePoint sites" where documents can be stored. Ex. 3 at 118:6-10. Critically, there are no emails, documents, or testimony after January 2016 referring to these specific SharePoint locations. There is simply no evidence that any of these specific SharePoint locations existed after January 2016.

## II.     July 2016 to September 2018 Letter Correspondence to Sagitec.

Five months after the last of these emails, Sagitec received an inquiry letter from the State of Maryland Attorney General, referencing a discussion between Mr. Minkkinen and Maryland's Deputy Secretary of the Department of Labor regarding Sagitec's UI modernization project for the Maryland-West Virginia Consortium ("MWC"). D.I. 298-12. This letter noted that an individual had "raised concerns regarding Sagitec and its work on the contract" and "general allegations that (1) Sagitec does not possess the source code for the Neosurance framework that is being used for the contract work because Sagitec improperly obtained the framework from another company, and (2) the work on the contract is being performed primarily by programmers located in India and that this is contrary to the contract requirements." *Id.* This letter requested that Sagitec provide a "written response to these allegations." *Id.* The letter did not mention the possibility of legal action and did not request any preservation of documents. *Id.*

Although Deloitte points to Sagitec's counsel's statement via email that the allegations "might be the first step in legal action by Maryland," Sagitec's counsel also advised Sagitec that might "not [be] the case." D.I. 298-18. Sagitec leadership asked Mr. Minkkinen, as head of Sagitec's UI business unit, to work with Sagitec's outside counsel to respond to this inquiry. *Id.*; Ex. 4 at 294:4-11. Mr. Minkkinen advised Sagitec's counsel, and thereby Sagitec, that "[t]he MWC leadership received an email from a 'challenging' employee from West Virginia and they wanted

3

an official response from us on the record. They do not agree with these assertions and are not concerned." D.I. 298-18 at '101; *see also id.* at '100 (similar). Relying on Mr. Minkkinen's representations and the Maryland letter itself, Sagitec had no reason to anticipate litigation.

Approximately two months later, Sagitec received an October 3, 2016 cease and desist letter from Deloitte, which expressly demanded that Sagitec "immediately ***destroy*** or return all Deloitte unemployment insurance intellectual property." D.I. 298-13 (emphasis added).

## III.    Sagitec's Internal Investigation and Ongoing Cooperation with the Government.

After learning of a U.S. grand jury investigation relating to a Sagitec employee, Sagitec engaged counsel to "conduct an independent internal investigation with respect to the U.S. grand jury investigation . . . ." D.I. 270-13 at '595. In connection with the internal investigation, Sagitec, through its counsel, issued a litigation hold memorandum. D.I. 270-13 at '609; Ex. 5 (SAGITEC-DEL_00043930). Sagitec's internal investigation counsel also collected a preservation copy of SharePoint documents and additional email files. D.I. 270-13 at '606. The internal investigation culminated in a draft report that Sagitec voluntarily provided to the government. Ex. 6 (Madel Dep. Tr.) at 142:23-144:4; D.I. 270-13.

Deloitte incorrectly suggests that Sagitec "misled" the government. *See, e.g.*, D.I. 297 at 2-3. The record reflects that Sagitec consistently cooperated and was extremely forthcoming with the government. Ex. 3 at 191:13-20; Ex. 4 at 10:25-13:7, 88:1-13, 108:21-109:25, 111:12-22, 233:1-21; Ex. 6 at 194:17-195:2, 237:13-244:18, 298:22-300:17; *see also, e.g.*, Ex. 7 (SAGITEC-DEL_07112227) (Dec. 9, 2022 email chain between DOJ and Sagitec's counsel). The government chose not to seek an indictment of Sagitec, but did proceed to indict Mr. Minkkinen and another Sagitec employee, Sivaraman Sambasivam. *See* Ex. 8 (SAGITEC-DEL_02376633, indictment).

## IV.    Sagitec's Upgrading and Migration of SharePoint in the Ordinary Course of Business

SharePoint is widely used at Sagitec, and many individuals throughout the company have

access to create sites or folders on SharePoint. Ex. at 151:14-152:4. SharePoint software generates certain activity logs, but in the ordinary course of its business, ██████████████████████ ████████████████████████████ *Id.* at 129:7-130:6.

In the ordinary course of Sagitec's business, it has regularly upgraded or migrated its servers and SharePoint sites to new software versions. *Id.* at 117:21-118:5. At one point, Sagitec conducted an upgrade of SharePoint because Microsoft no longer supported an earlier version of SharePoint software. *Id.* at 118:6-120:4. When SharePoint migrations are conducted, the activity logs for each prior migration are overwritten. *Id.* at 118:15-19. Sagitec also conducted a SharePoint migration ██████. Ex. 9 (Kotcherlakota Vol. II Dep. Tr.) at 37:24-39:2.

## V.    Sagitec Produce ████████████████████████████████ ████████████████████████████████

In this case, Sagitec has produced over 1.1 million documents and made available for inspection dozens of source code versions of its Neosurance-branded software comprising millions of lines of source code. Olson Decl. ¶ 2. Crucially, as Deloitte and its expert Dr. Krein have repeatedly observed, Sagitec located and produced ████████████████████████ ██ on a decommissioned Sagitec server (the "Little Canada Server") in a folder titled ███████ ██████ *See* D.I. 219 at 1 ████████████████████████████████ ████████████████████████; Ex. 10 (Krein Report) ¶ 235 ████████████████████████████████████████ ████████████████; *see also id.* ¶¶ 214, 333, 534; D.I. 269 at 3, 6, 10, 12, 13; D.I. 299 at 1.

Sagitec also produced ████████████████████████ ████████████████████ from the Little Canada Server. *See, e.g.,* Ex. 11 (CFS00000246)██ ████████████████████████████████████████ ████████████████; Ex. 12 (CFS00000247) █████████████████████

████████████████████████ Olson Decl. ¶ 3.

Sagitec itself advised Deloitte that it had located the ████████████ folders and then promptly produced them in discovery. Consistent with its discovery obligations, and in response Deloitte's RFPs identifying specific SharePoint locations, Sagitec diligently searched the Little Canada Server for those locations. D.I. 298-1; Ex. 13 (CFS00000998) at '0998-1002 (Apr. 3, 2024 email chain between Sagitec's counsel and forensics consultant). In connection with that search, upon discovering the ████████████ folder on the Little Canada Server with ████████ ████████████████████████████, Sagitec produced the folder. Ex. 14 (CFS00001016)████████████████████████████████████████ ████; Ex. 15 (CFS0001017) ████████████████████████; Ex. 16 (Apr. 24, 2024 email from R. Olson to Deloitte's counsel). While the parties negotiated additional searches and productions from the Little Canada Server, there is no evidence for Deloitte's assertions that Sagitec "claim[ed] falsely that production was not possible because the server had been 'decommissioned'" or that "Sagitec initially told Deloitte [the Little Canada Server] was decommissioned and refused to produce [it] until Deloitte threatened to move to compel." D.I. 297 at 2, 11. The record reflects that the Little Canada Server was in fact decommissioned, and ████ ████████████████████████████████████████████████████████████████ ████ *See* Ex. 17 (CFS00000367); Ex. 3 at 80:9-81:1; Ex. 9 at 30:17-32:2. Nevertheless, when Sagitec discovered ████████████████ it promptly disclosed and produced it.

## VI.    Baseless Inaccuracies in Deloitte's Proffered "Factual" Background.

In the "Factual Background" section of its opening brief, Deloitte includes numerous statements regarding Sagitec's alleged intent or bad faith that are inaccurate.

### A.    There is no evidence of purposeful deletion of files from SharePoint.

In alleging that the "uFACTS SharePoint Folders" were "purposefully deleted," Deloitte

offers only weak circumstantial evidence that does not support Deloitte's conclusion of purposeful deletion, or indeed any deletion. D.I. 297 at 12-13.

*First*, Deloitte refers to an inadmissible multiple-hearsay statement in an email relating to the government's investigation in which an investigator asserts that Mr. Sadasivam told someone associated with the investigation that Mr. Minkkinen instructed him—at some unidentified point in time—to delete some unidentified materials. D.I. 270-22. The email does not even clearly indicate to whom Mr. Sadasivam made this claim. Significantly, neither the governmental author of the email nor Mr. Sadasivam were available to Sagitec during discovery, and there is no testimony or evidence directly from either Mr. Sadasivam or Mr. Minkkinen about any purported deletion instruction.[2] D.I. 270-22. Notably, this double hearsay email ***does not state*** that Mr. Sadasivam (or anyone, for that matter) complied with this purported deletion instruction, and there is no evidence that anyone did. *Id.* Even if there were a deletion instruction from Mr. Minkkinen, there is no evidence of the scope of any such instruction (including whether it reaches any material subject to Deloitte's asserted claims), the exact timing of it, the intent or purpose behind it, or whether it was followed. *Id.* There is simply no non-hearsay evidence of this alleged instruction, let alone evidence of deletion based on that instruction. *See* Ex. 3 at 285:19-286:15. Tellingly, this alleged statement does not even appear in either indictment. *See* Ex. 8; D.I. 298-30.

*Second*, Deloitte relies on the hearsay notes from the internal investigation interview of ███████████ which, in addition to being inadmissible hearsay, does not support Deloitte's position. D.I. 298-9. The draft internal investigation report expressly states that the notes "are not intended to be verbatim recitations of the interviews." 270-13 at '601 n.2. Moreover, the cited

---

[2] The unavailability of Messrs. Minkkinen and Sadasivam were among the reasons Sagitec sought to stay this matter while the criminal proceeding remained pending. *See* D.I. 35, 43, 106.

notes do not reference any statements ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ Rather, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ D.I. 298-9 at '800. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ *Id.* at '804. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[3] D.I. 298-9 at '803; Ex. 18 (Mar. 24, 2025 email

chain from J. Robbins to A. Russell) at 3. ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 19 (SAGITEC-DEL_00052653)

(emphasis added). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ D.I. 298-9 at '804. That said, the exact statement, context, and meaning of these

interview notes is unclear. Although Deloitte deposed Mr. Madel, it chose not to ask him about

the specific note on which it now bases its request for sanctions.

**Third**, after Deloitte insisted that this case proceed despite Sagitec's motions to stay,

Deloitte now seeks to take advantage of Mr. Sadasivam's unavailability by using his Fifth

Amendment assertions against Sagitec. Although Mr. Sadasivam appears in certain email

correspondence and other evidence in this case, he was not indicted and ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 7 at '230 ▮▮▮▮▮

---

[3] When Sagitec produced documents to the government as part of the internal investigation, it used

the "SS" bates label prefix, and the draft internal investigation report used those bates labels for

citations. When Sagitec produced those same documents to Deloitte in this case, it included the

"SS" bates label assigned to the first page of each document just above the "SAGITEC-DEL" bates

label used in this case, allowing the parties to map these documents to the report citations.

█████████████████████████████████████████████████████████████

████████████ Ex. 20 (SAGITEC-DEL_07112234) at '234 █████████████████. The exact terms of ███████████████████████ are unknown to Sagitec.

Deloitte's gamesmanship is not surprising. Both times that Sagitec moved to stay, it expressly raised the risk that it would be prejudiced by moving forward if Deloitte later sought adverse inferences based on Fifth Amendment invocations. D.I. 35 at 10, D.I. 43 at 9-10; D.I. 106 ("Deloitte has no plan to address this prejudice, apparently intending . . . for Sagitec to be handicapped by potential adverse inferences."). Indeed, during the hearing on Sagitec's first motion to stay, Deloitte's counsel acknowledged that Sagitec faced risk from Fifth Amendment assertions: "You know, as we all know, this whole thing is about the Fifth Amendment, and whether that is going to risk something for the indicted individuals, ***and I guess potentially for Sagitec***." Ex. 21 (Sept. 13, 2023 Hearing Tr.) at 23:15-18 (emphasis added).

The Court acknowledged that certain witnesses would be unavailable because their lawyers would advise them not to talk to anybody while the criminal matter remains unresolved. Ex. 21 at 19:2-7, 24:3-16; D.I. 107 at 5 n.3; D.I. 193 at 9 (holding that "information in the possession of" persons who decline to be interviewed by Sagitec's 30(b)(6) witness "will be regarded as unavailable to the company"); D.I. 224. The Court has also advised about the likely inadmissibility of the criminal prosecution and that it would likely prohibit either side from making use of that fact. Ex. 22 (Feb. 24, 2025 Hearing Tr.) at 5:17-22, 8:3-21.

Having won the right to proceed with this case despite Sagitec's concerns about the co-pending criminal matter, Deloitte now seeks to use a cooperating witness's Fifth Amendment invocation against Sagitec. It would be wholly unfair to attribute an adverse inference to Sagitec based on the Fifth Amendment invocation of a witness who is "unavailable" to Sagitec. D.I. 193 at 9; *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190-91 (3d Cir. 1994) ("The procedural rules,

9

therefore, provide no basis for inflicting sanctions when there is a valid invocation of the Fifth Amendment."). The Court should not reward Deloitte's attempted gamesmanship.

**B.    There is no evidence of "tampering" relating to the materials at issue.**

As supposed evidence of Sagitec's purported bad intent, Deloitte references that in the course of the internal investigation, a hard drive allegedly may have been "tamper[ed]" with. D.I. 297 at 2, 10. This hard drive has nothing to do with the SharePoint folders Deloitte contends were spoliated, and Deloitte did not allege spoliation of the hard drive whatsoever.

As background, the hard drive at issue is one that Deloitte willingly gave Mr. Minkkinen upon his departure from the company at his request. D.I. 270-13 at '598 ("Deloitte gave him the hard drive"); Ex. 23 (DEL00477204); Ex. 24 (Malm Vol. I Dep. Tr.) at 391:4-392:14. The documents Deloitte willingly gave Mr. Minkkinen included ███████████████████████ ██████████████████████████████████████████████████████████████████████████ ████████ Ex. 23; Ex. 24 at 391:4-392:14. Other than email correspondence, Deloitte did not preserve any record of the materials it willingly gave Mr. Minkkinen. Ex. 24 at 391:14-17.

The evidence of alleged "tampering" of the hard drive is mixed at best. In support of its tampering accusation, Deloitte, again cites only hearsay—the draft internal investigation report's statement of what another person, Mark Lanterman, supposedly stated several years ago, and Deloitte's own expert's report citing that same statement. *Id.* at 10 (citing D.I. 270-08 ¶ 455; D.I. 270-13 at '602-03). Deloitte omits that when it deposed Mr. Lanterman, however, Mr. Lanterman *repeatedly* explained in detail that the hard drive was simply malfunctioning, and that he "did not see evidence of intentional tampering." Ex. 25 (Lanterman Dep. Tr.) at 54:20-56:1 ("There were no signs of tampering. I believe whoever wrote this mistook we can't get it because it's damaged."), *see also id.* at 35:6-37:14; 128:14-135:24. The draft internal investigation report likewise includes a screenshot of an email indicating that CFS merely advised the hard drive was

"broken/malfunctioning so they can't get anything off of it." D.I. 270-13 at '602. Further, even if the alleged "tampering" with this hard drive had anything to do with Deloitte's motion for spoliation of SharePoint folders, there is no evidence that Sagitec was responsible for it.

Tellingly, although Sagitec has made this hard drive available for inspection throughout discovery, Deloitte has never made any attempt to inspect it. In any event, Mr. Minkkinen produced a copy of this hard drive in response to a subpoena from Sagitec seeking "data storage devices . . . provided to [Mr. Minkkinen] by Deloitte." Ex. 26 (Sagitec's Feb. 8, 2024 subpoena to D. Minkkinen) at 5; Ex. 27 (MINKKINEN0000001).

### C.    There is no evidence of "cleansing" relating to the materials at issue.

In another effort to support its spoliation motion, Deloitte wrongly accuses Sagitec of "'cleansing' Deloitte documents of references to Deloitte "to make detection more difficult." D.I. 297 at 2, 10. Deloitte again cites only its own expert report and Sagitec's draft internal investigation report. *Id.* at 10 (citing D.I. 270-08 ¶ 455; D.I. 270-13 at '698, '706, '713). None of these documents have anything to do with the SharePoint folders Deloitte contends were spoliated, and Deloitte did not allege that any purportedly "cleansed" document is missing or was spoliated.

Rather, the cited material appears to refer to Mr. Minkkinen's cut-and-paste edits to marketing and pitch documents that Deloitte willingly gave Mr. Minkkinen. D.I. 270-13 at '690, '697. There is no evidence of any "cleansing" effort to remove Deloitte references from documents for the nefarious intent that Deloitte suggests—in order "to make detection more difficult."

Moreover, the draft internal investigation report cites just three documents referencing "cleansing" of data "in such a way that indicates the terms were at times used in reference to removing old data," but these documents do not refer to removing Deloitte from documents. D.I. 270-13 at '698. The three cited documents instead relate to standard data conversion/upgrading as part of UI modernization projects. Ex. 28 (excerpt of SAGITEC-

DEL_00059353) at '415 ███████████████████████████████████████████

███ ; Ex. 29 (SAGITEC-DEL_00052506 at '519 ██████████████████████████

██████████ ; Ex. 30 (excerpt of SAGITEC-DEL_00058964) at '9014 ███████████

███████████████████████ . This type of data cleansing is referenced in numerous Deloitte

documents too. Ex. 31 (DEL00067743) at '805 (QUEST SOW referencing "data cleansing"); Ex.

32 (DEL00863737) at '946-47, '956-57, '959-60 ██████████████████████████ .

## ARGUMENT

### I.    Deloitte Has Not Met Its Burden to Prove Spoliation.

"The spoliation standard applicable to the failure to preserve ESI is set forth in Federal

Rule of Civil Procedure 37(e)." *IOENGINE*, 2022 U.S. Dist. LEXIS 82405, at *11. "Rule 37(e)

provides that '[i]f electronically stored information that should have been preserved in the

anticipation or conduct of litigation is lost because a party failed to take reasonable steps to

preserve it, and it cannot be restored or replaced through additional discovery," the court may take

steps to cure any prejudice from the loss of the evidence." *Id.* at *11-12 (citation omitted).[4] As the

moving party, Deloitte carries the burdens to show that spoliation occurred and what sanctions are

appropriate. *Allscripts Healthcare, LLC v. Andor Health, LLC*, C.A. No. 21-704, 2022 U.S. Dist.

LEXIS 147747, at *14 n.1 (D. Del. Apr. 28, 2022); *Delay v. Dollar Energy Fund*, C.A. No. 2:21-

cv-1037, 2023 U.S. Dist. LEXIS 77470, at *15 (W.D. Pa. May 1, 2023) (citation omitted).

### A.    Deloitte has failed to demonstrate that any documents or data were "truly lost and not recoverable elsewhere."

A finding of spoliation is precluded because Deloitte has failed to prove that any documents

---

[4] Although Deloitte cites a four-factor framing of the test for Rule 37(e) spoliation from another

District, D.I. 297 at 13, Sagitec addresses the framing this Court used in the *IOENGINE* case.

or data were "truly lost and not recoverable elsewhere." *Bistrian*, 448 F. Supp. 3d at 465. To the contrary, Sagitec produced the allegedly missing materials referenced in the 2013-2016 emails: (1) ████████████████████████████████████████████ ████ and (2) ███████████████████████████████████. *See* Fact Section V, *supra*. "Because ESI often exists in multiple locations[,] spoliation occurs only when the information is truly lost and not recoverable elsewhere." *Bistrian*, 448 F. Supp. 3d at 465. Thus, there is no spoliation—and sanctions cannot be imposed under Rule 37(e)—if the evidence allegedly missing was in fact produced. *See Goldman v. Sol Goldman Invs. LLC*, 20-CV-06727, 2022 U.S. Dist. LEXIS 105303, at *8 (S.D.N.Y. June 13, 2022) ("The email was not lost because Dr. Katz produced it at his deposition. Therefore, spoliation sanctions may not be awarded for Plaintiff's failure to produce the May 28 email, and the Court need not inquire into Plaintiff's state of mind."); *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 5:20-cv-06846, 2024 U.S. Dist. LEXIS 222391, at *15 (N.D. Cal. Dec. 9, 2024) ("Zhang's non-email files were backed up and … [Defendants] have produced files from that backup. As such, the Court finds that Zhang's non-email files were not lost and were produced.").

Deloitte misses the mark in arguing that certain SharePoint *folders* were not produced as they may have existed sometime from 2013 to January 2016. D.I. 297 at 17-18. What matters is that **Sagitec preserved, located, and produced** the underlying data and documents that Deloitte alleges was deleted ████████████████████████████████████████ ████████████████████████████████████████████████████ ████ D.I. 297 at 3; Fact Section V, *supra*. Deloitte has failed to identify any materials that were located on specific SharePoint locations referenced in emails from 2013 to January 2016 that were not ultimately produced by Sagitec. *Bistrian*, 448 F. Supp. 3d at 465. At most, the evidence reflects that materials were simply moved in the ordinary course of business over several years. Ex. 3 at

13

117:21-120:4; Ex. 9 at 37:24-39:2. Because Deloitte failed to prove that any evidence was "truly lost and not recoverable elsewhere," there is no spoliation. *Bistrian*, 448 F. Supp. 3d at 465.

**B.    Deloitte has failed to show that any alleged deletion or movement of the SharePoint folders occurred *after* Sagitec was under a duty to preserve.**

Deloitte failed to meet its burden to show that any specific SharePoint folders still existed in July 2016, when Deloitte contends Sagitec's duty to preserve began. To establish that Sagitec failed to take reasonable steps to protect the ESI, Deloitte must show that "a reasonable party in the same factual circumstances would have reasonably foreseen litigation" at the time of the alleged deletion. *Freidman v. Phila. Parking Auth.*, C.A. No. 14-6071, 2016 U.S. Dist. LEXIS 32009, at *19 (E.D. Pa. Mar. 10, 2016). The most recent reference Deloitte identifies to *any* of these SharePoint folders was in an email from ***January 2016***. D.I. 298-7.

The limited evidence of record demonstrates that the specific SharePoint folders at issue were moved or deleted before July 2016, even though their contents were preserved elsewhere and later produced. For example, Deloitte cites the first part of an email chain from August 2013 to suggest that



D.I. 297 (citing D.I. 298-21). But the cited email states

D.I. 298-21 (emphasis added). And later responses in this chain indicate that

Ex. 33 (SAGITEC-DEL_00042427). As another example,

. Ex. 11; Ex. 12.

Moreover, Sagitec's duty to preserve arose much later than July 2016, and Deloitte has failed to show otherwise. The Maryland letter in July 2016 does not reference legal action or

request the preservation of documents, it simply requests a written response. D.I. 298-12. Mr. Minkkinen advised Sagitec's counsel that based on his conversation with Maryland personnel, he understood that the state did not actually "have any concerns" and that they just "wanted a response on the record." D.I. 298-18. And Deloitte's October 2016 cease and desist letter demanded that Sagitec "immediately *destroy* or return all Deloitte unemployment insurance intellectual property." D.I. 298-13 (emphasis added).

Deloitte's claim that the alleged deletion occurred in "mid to late 2018" is unsupported. Deloitte relies on a vague and inadmissible multiple hearsay statement regarding a purported deletion instruction from Mr. Minkkinen. D.I. 297 at 12. As detailed above, even if this assertion could be admitted, it does not support Deloitte's baseless spoliation allegations because there is no evidence anyone complied with this alleged instruction, and there is no evidence of the exact scope of any such instruction indicating that it had anything to do with the SharePoint materials at issue in Deloitte's motion. *See* Fact Section V, *supra*. And critically, there is no evidence that the specific identified SharePoint locations still existed in "mid to late 2018." As noted above, they were likely already moved or modified in the ordinary course of business by that time. Deloitte has failed to show that the identified SharePoint folders were deleted after Sagitec was under a duty to preserve.

Deloitte has also failed to demonstrate that any purported deletion was due to Sagitec's alleged failure to take reasonable steps. Sagitec issued a litigation hold notice and collected a preservation copy of SharePoint documents and additional email files. Ex. 5; D.I. 270-13 at '606. And as noted above, the material Deloitte contends was deleted has in fact been produced. To the extent Deloitte's complaints are focused on Sagitec's regular SharePoint upgrades and migrations, Sagitec's "routine, good-faith operation of [its] electronic information system" weighs against any finding of spoliation. *See Fuhs v. McLachlan Drilling Co.*, C.A. No. 16-376, 2018 U.S. Dist. LEXIS 184264, at *56 (W.D. Pa. Oct. 26, 2018) (quoting Rule 37(e), Advisory Notes to 2015

Amendments); *Nagy v. Outback Steakhouse*, C.A. No. 19-18277, 2024 U.S. Dist. LEXIS 29288, at *10-11 (D.N.J. Feb. 21, 2024) ("Rule 37(e) recognizes that perfection is often impossible given the ever-increasing volume of [ESI].") (internal quotations omitted). Deloitte has failed to show that any "lost" material was lost "***because*** [Sagitec] failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e) (emphasis added).

## II.    Deloitte Has Failed to Prove by Clear and Convincing Evidence That Sagitec Acted with an "Intent to Deprive" or That It Is Entitled to the Extreme Sanctions It Seeks.

Even if Deloitte could establish some limited spoliation, which it has failed to do, it still has failed to show it is entitled to the severe remedies it seeks. Even where spoliation is established, the appropriate sanction depends on: (a) the degree of fault of the nonmovant; (b) the degree of prejudice suffered by the movant; and (c) whether there is a lesser sanction that will avoid substantial unfairness to the movant and—where the nonmovant "is seriously at fault"—the sanctions will sufficiently act as a deterrent for others. *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (citations omitted). "The remedy should fit the wrong[.]" Rule 37(e) (Advisory Notes to the 2015 Amendments). If the spoliation was only negligent, the court may order sanctions "no greater than necessary to cure the prejudice." *See* Rule 37(e)(1). Deloitte has failed to show it is entitled to its requested sanctions under these standards.

### A.    An adverse inference sanction is not "available" because Deloitte has failed to prove an "intent to deprive" by clear and convincing evidence.

Deloitte is not entitled to an adverse inference because it failed to prove by clear and convincing evidence that Sagitec acted with an "intent to deprive." "To be sure, under Rule 37(e) an adverse inference sanction is available 'only upon finding that the party [in possession of the ESI] acted with the intent to deprive another party of the information's use." *IOENGINE*, 2022 U.S. Dist. LEXIS 82405, at *25 (citing Fed. R. Civ. P. 37(e)(2)). "The enactment of Rule 37(e) 'does not appear to have substantively altered the moving party's burden, in this Circuit, of

showing that ESI was destroyed in "bad faith" when requesting an adverse inference.'" *IOENGINE*, 2022 U.S. Dist. LEXIS 82405, at *25 (citation omitted). Rule 37(e)(2) intent must be proven by clear and convincing evidence. *Manning v. Safelite Fulfillment, Inc.*, C.A. No. 17-2824, 2021 U.S. Dist. LEXIS 151591, at *32 n.7 (D.N.J. Apr. 29, 2021) (citation omitted).[5] This is a "demanding specific-intent standard." *Gregory v. Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024).

Deloitte has failed to meet its heavy burden to prove by clear and convincing evidence that Sagitec acted with the "intent to deprive" Deloitte of any evidence. Deloitte's allegations of willful deletion are unsupported attorney argument. There is no *evidence* whatsoever of any bad faith or intent to deprive. At most, the record reflects that ███████████████████████████ ████████████████████████████████ were simply moved from a SharePoint location to a backup server. Ex. 3 at 117:21-120:4; Ex. 9 at 37:24-39:2. As to SharePoint migrations due to software upgrades, there is no intent to deprive if deletion occurs because a product "became obsolete." *See Flint Grp. Packaging Inks N. Am. Corp. v. Fox Indus. Inc.*, C.A. No. 16-3009, 2023 U.S. Dist. LEXIS 128615, at *55 (D.N.J. June 29, 2023). Critically, Deloitte's inability to prove intent precludes sanctions regardless of whether it could show prejudice—which it cannot. *Painadath v. Good Shepherd Penn Partners*, 348 F.R.D. 16, 26-27 (E.D. Pa. 2024) ("[W]here a court finds prejudice, but not intent, it may not impose [Rule 37(e)(2) sanctions].").

---

[5] Because "clear and convincing evidence typically applies in the context of dismissal and monetary sanctions," the remaining elements under Rule 37(e) should likewise be proven by clear and convincing evidence. *See Delay*, 2023 U.S. Dist. LEXIS 77470, at *16; *see also, e.g., Aptix Corp. v. Quickturn Design Sys.*, 269 F.3d 1369, 1374 (Fed. Cir. 2001).

**B.    An adverse inference is also unavailable because Deloitte has failed to prove any prejudice.**

Even where a bad faith intent is shown, sanctions should not be "disproportional to the prejudice." *See Ali v. Dainese USA, Inc.*, 577 F. Supp. 3d 205, 228 (S.D.N.Y. 2021). To establish prejudice, Deloitte must "come forward with plausible, concrete suggestions as to what the lost evidence might have been" and demonstrate that the lost evidence "materially affected [its] substantial rights … and is prejudicial to the presentation of the case." *Monolithic Power Sys. v. Intersil Corp.*, C.A. No. 16-1125, 2018 U.S. Dist. LEXIS 201797, at *3-4 (D. Del. Nov. 19, 2018) (quoting *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 481 (D. Del. 2012), *aff'd sub nom.* 2014 U.S. Dist. LEXIS 15486 (D. Del. Feb. 7, 2014)).

The "extreme remedy" of an adverse inference is neither justified nor necessary here because Deloitte has failed to establish any prejudice from Sagitec's routine upgrading and migration of SharePoint folders. *McAdams v. United States*, 297 F. App'x 183, 187 (3d Cir. 2008) ("An adverse negative inference is an extreme remedy."). Sagitec produced the allegedly "lost" information from different locations. Sagitec produced dozens of source code versions of its actual Neosurance-branded software implementations, allowing Deloitte to directly compare the parties' software, which its expert purported to do. Ex. 10 at, *e.g.*, Appendices A-C. And Sagitec produced email correspondence reflecting Sagitec's development process and indicating what may have been stored in these SharePoint folders at different points in time. *See* D.I. 298-6, D.I. 298-7, D.I. 270-19, 298-21, 298-22, D.I. 298-23, D.I. 298-24. Thus, there is no prejudice because the trier of fact may "fill gaps" based on Sagitec's production of the allegedly missing materials and the email correspondence that Deloitte itself cites. *Flint Grp.*, 2023 U.S. Dist. LEXIS 128615, at *55.

Confirming its lack of prejudice, Deloitte has not even claimed any "lost" evidence that "materially affected" its "substantial rights." Deloitte's requested adverse inference points back to

███████████████████████████████ a complete version of the "uFACTS Application" pertaining to the Massachusetts QUEST Project and the "uFACTS use cases" pertaining to Massachusetts and New Mexico. D.I. 296, D.I. 297 at 19.[6]

### C.    Deloitte's request for the extreme sanction of striking Sagitec's statute of limitations defense is unsupported by law and should be denied.

Deloitte has failed to show it is entitled to any dispositive sanction. As set forth above, Deloitte has failed to demonstrate that Sagitec spoliated any materials or that Sagitec acted with an intent to deprive. And Deloitte has not articulated, let alone proven, any actual prejudice. Dispositive relief under Rule 37(e)(2) is thus not available. Fed. R. Civ. P. 37(e)(2).

Even if Deloitte could prove the specific intent required for Rule 37(e)(2) sanctions, "[a] dispositive sanction is warranted only where 'the non-responsible party's case is severely impaired because it lacked the information that was not produced.'" *GN Netcom, Inc.*, 930 F.3d at 82 (citation omitted). A dispositive sanction "is a last resort and should be imposed if no alternative remedy is available." *Magnetar Techs. Corp*, 886 F. Supp. 2d at 481; *see also Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994) ("[C]ourts select the least onerous sanction

---

[6] Deloitte's requested adverse inference is also inaccurate for the reasons noted above, including statements that any files were actually "destroyed" and that any alleged destruction was done "intentionally." *See* D.I. 296. The proposed adverse inference is also vague as to time and scope of the terms "uFACTS solution," "uFACTS software program," and "uFACTS use cases." *Id.* These "uFACTS" terms are also inconsistent with the undisputed record, which reflects that Deloitte has failed to establish it owns these materials instead of Massachusetts. *See* D.I. 278 at 14-19, D.I. 332 at 8-9. For all of these reasons, Deloitte's requested adverse inference would be highly misleading to the jury and extremely and unfairly prejudicial to Sagitec.

corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.")
(citation omitted). Sanctions should not provide the movant with a "windfall." *See, e.g.*, *J.S.T.,
Corp. v. Robert Bosch, LLC*, No. 15-13842, 2019 U.S. Dist. LEXIS 90645, at *36 (E.D. Mich.
May 29, 2019). Deloitte has failed to show it was "severely impaired" by Sagitec's routine
upgrading and migration of SharePoint systems. Nor can Deloitte show that its requested
dispositive sanction is the "least onerous sanction."

Importantly, Deloitte's requested dispositive sanction—the striking of Sagitec's statute of
limitations defense—bears no nexus to the alleged deletion. Even where defendants act with intent,
courts do not apply dispositive sanctions to claims or defenses "wholly unaffected or mitigated by
the spoliation underlying the instant motion." *Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*, CV 18-
1997, 2021 U.S. Dist. LEXIS 124711, at *54-55 (E.D.N.Y. July 2, 2021) (citation omitted). The
SharePoint folders have nothing to do with the fact that Deloitte's claims are barred by the statute
of limitations. No evidence was deleted or lost pertaining to Deloitte's knowing delay. Deloitte
did not argue that the SharePoint folders contained evidence that would show it did not let the
statute of limitations lapse—nor could it. Deloitte's motion is a transparent attempt to seek a bail-
out for its knowing decision to delay suit despite its "statute of limitations considerations." Ex. 34
(DEL_01080782) at '783. The Court should reject Deloitte's overreach and deny its motion.[7]

## CONCLUSION

Sagitec respectfully requests the Court deny Deloitte's motion for sanctions in its entirety.

---

[7] Deloitte does not seek any "lesser sanctions" under Rule 37(e)(1), but regardless, "lesser
sanctions" are not appropriate either given Sagitec's production of the material at issue.

Dated: August 14, 2025

Of Counsel:

Christopher K. Larus
William E. Manske
Rajin S. Olson
THOMPSON HINE LLP
800 Nicollet Avenue, Suite 2925
Minneapolis, Minnesota 55402
(612) 605-5900
(612) 605-5901
Chris.Larus@ThompsonHine.com
William.Manske@ThompsonHine.com
Rajin.Olson@ThompsonHine.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Sagitec Solutions, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 14, 2025, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Joshua L. Simmons
Dana DeVlieger
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022

Gregg F. LoCascio
Patrick Arnett
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004

John F. Hartmann
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

Ariel Deitchman
KIRKLAN & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th Street, Suite 700
Miami, FL 33131

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116

*Deloitte-Sagitec@kirkland.com*

John W. Shaw
Andrew E. Russell
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*jshaw@shawkeller.com*
*arussell@shawkeller.com*

*Attorneys for Plaintiffs Deloitte Consulting*
*LLPand Deloitte Development LLC*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street

Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Sagitec Solutions, LLC*