IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DELOITTE CONSULTING LLP and
DELOITTE DEVELOPMENT LLC,

    Plaintiffs,

          v.

SAGITEC SOLUTIONS LLC,

    Defendant.

§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 23-325-WCB

**FILED UNDER SEAL**

## MEMORANDUM OPINION AND ORDER

Plaintiffs Deloitte Consulting LLP and Deloitte Development LLC (collectively, "Deloitte") filed this action against defendant Sagitec Solutions LLC ("Sagitec") on March 23, 2023. In its Complaint, Deloitte asserted claims for copyright infringement under federal law, trade secret misappropriation under New York and federal law, unfair competition under New York law, and unjust enrichment under New York law. D.I. 1.

On February 19, 2026, I ruled on the parties' cross-motions for summary judgment, Sagitec's motions to strike, Sagitec's motion to exclude, and Deloitte's motion for sanctions. D.I. 376. Following my ruling, Sagitec filed the instant motion, requesting that I hold a pre-trial "evidentiary copyrightability hearing" to determine which portions, if any, of the material that Deloitte alleges was copied into Sagitec's Neosurance software constitutes copyright protectable expression. D.I. 379 at 1. Deloitte filed a response in opposition, D.I. 383, and Sagitec filed a reply, D.I. 385. Sagitec further filed a request for oral argument on its motion. D.I. 386. I heard argument on the motion on April 23, 2026, during which I permitted the parties to submit additional briefing on certain issues relating to the motion. Sagitec filed its supplemental opening brief on

1

May 14, 2026, D.I. 392, Deloitte filed its supplemental answering brief on June 4, 2026, D.I. 396, and Sagitec filed its supplemental reply brief on June 11, 2026, D.I. 398.

For the reasons below, Sagitec's motion is denied.

## I.    Discussion

Sagitec moves the court to "hold an evidentiary copyrightability hearing to determine which portions, if any, of the material identified by Deloitte as allegedly copied into Sagitec's Neosurance software constitutes copyright protectable expression."  D.I. 379 at 1.  Sagitec characterizes Deloitte's allegations of copying as being directed to two main categories of software: (1) ICON interface files, and (2) database tables.[1]  *Id.*  Sagitec argues that many of the ICON files were autogenerated from third-party files using third-party tools and that much of the content of the database tables files was material required by the Department of Labor, and that it therefore is not copyrightable.  *Id.* at 1–2.  Sagitec argues that the copyrightability of material is a question of law, and that courts commonly hold pre-trial copyrightability hearings after summary judgment to determine whether portions of a work are uncopyrightable as a matter of law.  *Id.* at 2–6.

Deloitte argues that copyrightability is a mixed question of law and fact that should be decided by a jury based on appropriate instructions, and that even when copyrightability hearings are held, they are normally handled before or in conjunction with a defendant's summary judgment motion.  D.I. 383 at 1–2.  Deloitte also disagrees with Sagitec's contention that Deloitte's case is based primarily on the ICON interface files and database tables.  Deloitte alleges that while those

---

[1] D.I. 270-8 at Appx. A (ICON interface files), Appx. B (database tables).

materials represent "significant" instances of copying, Sagitec has copied much more than those two categories of material.  *Id* at 3.

In its reply, Sagitec argues that in the Third Circuit copyrightability is a question of law and that courts routinely hold evidentiary hearings on copyrightability.  D.I. 385.  Sagitec also states that it is not seeking to have the court hold an evidentiary hearing on the copyrightability of "the entirety of the Massachussetts QUEST software code," but rather just on "the specific, very limited portions of source code that Deloitte contends 'were copied into Sagitec's Neosurance software.'"  *Id.* at 6.

### a.  Question of Law or Fact

The first issue is whether copyrightability is a question of law, as opposed to one of fact. "The Supreme Court has not addressed whether copyrightability is a pure question of law or a mixed question of law and fact," and the handful of appellate cases on this issue are split.  *See Oracle America, Inc. v. Google Inc.*, 750 F.3d 1339, 1353 n.3 (Fed. Cir. 2014); *Gaiman v. McFarlane*, 360 F.3d 644, 648 (7th Cir. 2004) (collecting cases).

While Sagitec cites cases from several circuits, the most relevant law is from the Third Circuit.  Sagitec relies primarily on *Whelan Associates v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222 (3d Cir. 1986), to support its argument that copyrightability is solely a question of law. *Whelan*, a software patent case, involved, among other things, a dispute as to whether the "overall structures" of a computer program are copyrightable, or instead whether copyright protection is limited to the "'literal' elements (source and object code) of the programs."  The court characterized that dispute as presenting "solely a question of law."  D.I. 385 at 1, 2–3; *Whelan*, 797 F.2d at 1233, n.25.

3

While *Whelan* stands for the proposition that determination of the copyrightability of an element of a work may be a question of law, it is of limited relevance to the question at issue here. In *Whelan*, the question was not whether a specific literal element or overall structure was copyrightable, but rather whether overall structures of a computer program as a general category are copyrightable under the copyright statutes. That characterization of *Whelan* is clear from the opinion, in which the court stepped through a review of the copyright statutes themselves, the legislative history of the copyright statutes, considerations of historical copyright doctrines, and economic implications of providing copyright protections. From that survey, the court concluded that "copyright protection of computer programs may extend beyond the programs' literal code to their structure, sequence, and organization." *Whelan*, 797 F.2d at 1233–38, 1248.

While Sagitec cites to 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright (2026) in making its arguments that copyrightability is purely a question of law, even Nimmer demonstrates that the issue is less clear than Sagitec suggests. D.I. 379 at 3–4 (quoting Nimmer § 12.10). While Nimmer discusses Judge Easterbrook's opinion that copyrightability "is for the judge alone" and notes that other courts have reached the same conclusion, it further notes that there may be "threshold factual determinations" that "of course, are for the jury" and that "a determination of originality" may be one such factual determination. Nimmer § 12.10, n.34. Similarly, Nimmer notes that whether a plaintiff's work itself "lacked originality" because it was "copied from prior sources" is an inquiry that "almost always involves a triable issue of fact." Nimmer § 12.10.

When analyzing the copyrightability of certain items, the Third Circuit has found that whether a "copyright is valid is a question of law." *Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*, 931 F.3d 215, 219 (3d Cir. 2019). However, copyrightability being a pure question of law in this

4

context appears dependent on there being no undisputed facts. *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663 (3d Cir. 1990).

Sagitec's request here is not for a determination of whether a certain general type of material may be copyrightable as a matter of law under the copyright statutes. Instead, Sagitec requests that the court determine whether certain specific portions of code are copyrightable. D.I.. 379, 385. Many of those determinations rely on characterizations and analyses of the code at issue and ultimately are either pure questions of fact, or require the resolution of threshold factual determinations that must be left to the jury.

### b. The ICON Interface Files

The first category of files as to which Sagitec seeks a copyrightability hearing is what Sagitec terms the "ICON Interface Files." D.I. 379 at 1, 6. Deloitte's expert Jonathan Krein listed these files in Appendix A of his expert report. D.I. 270-8 ¶ 434. A total of fifteen ICON files are at issue in this case. For four of those files, Sagitec argues that the files are "autogenerated" and "[b]ecause the autogenerated files lack a human author, they are ineligible for copyright protection." DI. 392 at 14. For all fifteen ICON files, Sagitec argues that the files were either "directly copied from" or had their creation "rigidly dictated by" the National Association of State Workforce Agencies ("NASWA"), and therefore they lack the "meaningful originality or creativity" necessary to render them copyrightable. D.I. 392 at 15.

The Unemployment Insurance Interstate Connection Network ("ICON") is "a national system that enables communication between states for handling UI [Unemployment Insurance] claims that involve multiple states, federal employees, or military personnel." D.I. 270-8 at 47; National Association of State Workforce Agencies, UI Interstate Connection Network (UI ICON), https://www.naswa.org/services/icon.

Dr. Krein characterized the ICON interface files as "code Deloitte wrote to connect the uFACTS system to auto-generated ICON source code files." D.I. 270-8 at ¶ 374.  Dr. Krein further noted that "when connecting an Unemployment Insurance system to ICON part of the code can be autogenerated based on a schema while part of the code must be written by the developers of the Unemployment Insurance product." *Id.*  While Dr. Krein characterized the files at issue as being primarily the work of Deloitte, Sagitec argues that the files are mostly auto-generated, and that Deloitte had little input regarding their contents other than specifying some limited parameters. *Compare id. with* D.I. 379 at 2.

During his deposition, Deloitte employee Anil Gosu provided more details about how the interface files were created. D.I. 305, Ex. 21 at 307:8–336:8. Deloitte used a publicly available Microsoft program (Microsoft SVC) to generate the files.  Deloitte provided certain configurations (which included items such as a namespace, location, public/private definitions) to the Microsoft SVC tool alongside a WSDL file provided by ICON. *Id.*  Using those inputs, the Microsoft SVC generated a file.  The generated files are the ones that Sagitec contends are not copyrightable, given that they were generated by the Microsoft SVC tool.

As part of its argument, Sagitec points to the declaration of its expert witness Monty Myers. In his declaration, Mr. Myers stated that he was able to prepare "nearly identical auto-generated source code files from WSDL files and XSD schema files provided by third parties using publicly available tools" and that those files "reflected the same variable naming" that is present in Deloitte's source code. D.I. 379 at 2 (citing D.I. 303 § 16).

Deloitte responds that the files at issue in this case are not simply "autogenerated," but instead "include customized code that Deloitte wrote to connect the uFACTS system to ICON." D.I. 383 at 3.  It is unclear exactly how much of the code Deloitte had a hand in authoring, as

6

opposed to what was created by the Microsoft SVC tool.  But Mr. Gosu's testimony seems to show that the "name spaces, the location of the files, the class types, [and] whether they are public or private" are the only things that Deloitte changed.  D.I. 305, Ex. 21 at 316:23–317:22.  Similarly, Deloitte asserts that while NASWA has certain requirements and facilitates implementation of the required code, NASWA does not dictate how any vendor implements those requirements or creates its code.  D.I. 396 at 6.

There is clearly a factual dispute regarding Deloitte's degree of authorship and the amount of creative expression that Deloitte contributed toward the creation of these files. The resolution of that factual dispute will determine whether Deloitte's contribution is sufficient for it to be considered an author, and whether the files contain sufficient creative expression to be entitled to copyright protection.

Other courts have addressed the question of whether a person using a computer program to generate a work is entitled to copyright protection for that work.  As the D.C. Circuit recently ruled, "the human authorship requirement does not prohibit copyrighting work that was made by or with the assistance of artificial intelligence. The rule requires only that the author of that work be a human being—the person who created, operated, or used artificial intelligence—and not the machine itself." *Thaler v. Perlmutter*, 130 F.4th 1039 (D.C. Cir. 2025).  Another court has similarly held that actors and directors using computer software to create computer-generated characters in films may be entitled to copyright protection for those films and characters, even though the software is critical to generating the final product. *Rearden LLC v. Walt Disney Co.*, 293 F. Supp. 3d 963, 969–71 (N.D. Cal. 2018).  However, the user of a program may not be entitled to copyright protection for that program's output if the program itself supplies "the lion's share of the creativity

to create" the work. *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 283 (S.D.N.Y. 2001); *Design Data Corp. v. Unigate Enter., Inc.*, 847 F.3d 1169, 1173 (9th Cir. 2017).

While Sagitec frames its motion as a request to have the court "determine which portions, if any, of the material identified by Deloitte . . . constitutes copyright protectable expression," Sagitec's argument relating to the ICON interface files is directed to the authorship of each file. D.I. 379 at 1, 2 n.1. As such, whether each file is copyrightable depends on whether Deloitte is properly considered to be an "author" of that specific file. Sagitec does not seek in its motion to challenge the copyrightability of specific portions within each file at issue, and its arguments are instead related to the overall copyrightability of the files as a whole.

Determining the proper authorship of a work is a question of fact, including the question whether an asserted author has contributed sufficient creative expression to the final product. *See, e.g.*, *Brownstein v. Lindsay*, 742 F.3d 55, 68 (3d Cir. 2014) ("The extent of [plaintiff's] authorship and ownership of these derivative works is a factual question that must be decided by a jury."); *Andrien v. Southern Ocean Cnty. Chamber of Commerce*, 927 F.2d 132, 134 (3d Cir. 1991) (reversing summary judgment finding a person not to be an author for copyright purposes, and noting that "[g]enerally authorship is a factual question for the jury"); *Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404, 1409 (11th Cir. 2015) ("Whether a work is sufficiently original to merit copyright protection is a question of fact.").

Accordingly, determination of the copyrightability of the ICON interface files is, at minimum, dependent on the resolution of threshold factual questions and cannot be treated solely as a question of law. Deloitte has put forth sufficient evidence from which a reasonable jury could find that Deloitte was the author of the ICON interface files, and it would be inappropriate for this

court to preempt the jury's responsibility by making a determination regarding authorship of the disputed ICON files.

### c.  The Database Tables Files

The second category of files on which Sagitec seeks a copyrightability hearing is what Sagitec terms the "database tables files." D.I. 379 at 1–2. Dr. Krein listed those files in Appendix B of his expert report. D.I. 270-8 ¶ 435.

Sagitec's argument, presented through Mr. Myers, is that the "origin of specific asserted database table components" is "clearly dictated by the Department of Labor." D.I. 379 at 2. Essentially, Sagitec argues that the DOL provided example tables with various fields designated, and that Deloitte's software simply reproduces the table that the DOL specified. Mr. Myers illustrated that argument by directly mapping portions of the code to the sections of the table that the code generates. *See, e.g.*, D.I. 303-1, Exh. D (ETA 581 Schema Comparison); D.I. 303-1, Exh. E (ETA 2112 Schema Comparison).

Sagitec asserts that "Deloitte's predecessor, BearingPoint, was required to follow a set of Database Standards developed with the input, approval, and direction of the Massachusetts [Department of Unemployment Assistance]." D.I. 392 at 9. Sagitec argues that those requirements mean that the field names within the tables "lack the requisite creativity need for the originality requirement" and render the tables uncopyrightable. *Id.* at 19.

Sagitec also argues that the database tables files are uncopyrightable because they are "just blank forms in an electronic format," and that "'blank forms . . . which are designed for recording information and do not in themselves convey information,' are "not subject to copyright.'" D.I. 392 at 23 (quoting 37 C.F.R. § 202.1(c)).

Deloitte responds that its decision as to how to name various fields within the tables shows creativity sufficient to merit copyright protection, and that the "structure, sequence, and organization" of the software is protectable under *Whelan*, 797 F.2d at 1239. D.I. 396 at 18–19. Deloitte also challenges Sagitec's assertions that the DOL dictated the structure of these tables or that the QUEST Database Standards constrained the tables' creation. D.I. 396 at 19–21. In particular, Deloitte argues that the Database Standards that Sagitec points to are actually documents that Deloitte itself created, and therefore they serve to illustrate that Deloitte made creative choices, as opposed to simply conforming to constraints imposed by an external source. *Id.* at 20. Deloitte also argues that blank forms are not inherently uncopyrightable, and that its software itself conveys information and is copyrightable. *Id.* at 21–23.

While it appears that Deloitte's database table code functions to generate a table similar to the one specified by the DOL, that alone is not sufficient to render the code uncopyrightable as a matter of law. The database table code is not simply a reproduction of the DOL table itself; rather, it constitutes code that is designed to generate a table in the same general format and with fields similar to those specified by the DOL. The main question at issue is whether Deloitte has made sufficient contributions for the code to be considered creative expression, even if the code is designed to generate a table similar to the one provided by the DOL. That is a factual question for the jury. *Home Legend,* 784 F.3d at 1409.

As for Sagitec's assertion that a blank form is uncopyrightable, the parties do not appear to dispute that blank forms are uncopyrightable as a matter of law. Rather, their dispute is centered on whether the database tables are in fact uncopyrightable blank forms. The files themselves are not simply blank forms, but rather are programs that store and organize the data specified by the forms. As *Whelan*, makes clear, "a program's copyright could extend beyond its literal elements

10

to its structure and organization," so long as the structure of the program "was not essential to [the] task" that the program accomplishes.  797 F.2d at 1239.  Because there are many ways that these programs could have been created, as discussed in further detail below, it cannot be said that the specific design of the output of the programs is essential to the performance of the designated task and is therefore uncopyrightable.

While Sagitec appears to challenge not only the overall copyrightability of the database tables themselves but also the copyrightability of each "individual field name" within those tables, the issue is not one that the court can decide as a matter of law.  Deloitte asserts that the field names were dictated at least in part by Deloitte itself, and that the Quest Database Standards are "Deloitte's own work product."  D.I. 396 at 4.  Like the issues relating to Deloitte's asserted authorship of these files, the question whether the field names are sufficiently creative or original to merit copyright protection is one of fact that must be put before the jury for resolution.

### d.  Merger and *Scènes à Faire*

Sagitec makes additional arguments that all the challenged ICON files and database tables files are uncopyrightable under the doctrines of merger and *scènes à faire*.

### i.    *Merger*

The doctrine of merger holds that copyright protection should be denied when "a work's underlying idea can effectively be expressed in only one way" and "there are no or few other ways of expressing a particular idea." *Silvertop*, 931 F.3d at 222.  The invocation of merger is a "rare occurrence," and "if copyright does not foreclose 'other methods of expressing [an] idea . . . as a practical matter, then there is no merger.'"  *Id.* at 222–23.  The purpose of the merger doctrine is to prevent a copyright from "effectively monopoliz[ing] an underlying idea, procedure, [or]

11

process." It is most commonly applied when the idea and the expression are found in nature or are found commonly in everyday life.

Sagitec argues that Deloitte's ICON database files are functional and therefore uncopyrightable under the merger doctrine, because they must interface with ICON and must use the "same data formats, data schema, requirements, and business rules." D.I. 392 at 17. Similarly, Sagitec argues that the database tables are uncopyrightable under the merger doctrine because the field name simply describes the field's function, and there are only a few ways to designate that function. D.I. 392 at 24.

In response, Deloitte argues that the ICON files could have been written in multiple different ways, and points to testimony of NASWA's representative that ICON interface functionality could be implemented in a "variety of ways." D.I. 396 at 16. Deloitte further argues that Sagitec has not made a sufficient showing as to why merger should apply to the database tables files, and instead that Sagitec simply mentions a few individual field names. D.I. 396 at 23.

Sagitec has not presented sufficient evidence to justify a hearing on whether the files at issue would be subject to the merger doctrine. Even if much of the content of the files is required by the ICON standards, it is not clear that there was only one way to generate those files. Deloitte specified certain features of the files such as the namespace, location, and public/private designations, and Sagitec does not suggest that Deloitte's manner of identifying those items would have been the only way to create the files in question. Likewise, the fact that Deloitte chose certain descriptive file names in its database table files does not mean that these were the only names that could have been chosen. While some selected field names such as "SSN" may fairly be characterized as primarily, if not wholly, functional, a copyrightable work may contain uncopyrightable components without losing its overall entitlement to copyright protection. *See*

12

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 348 (1991) ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected.").

To the extent that certain portions of the files may contain unprotectable elements, this issue is better addressed through proper jury instructions.

### ii.     Scènes à Faire

The doctrine of *scènes à faire* excludes elements that are "standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting" from copyright protection. *Silvertop*, 931 F.3d at 223 (quoting *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 214 (3d Cir. 2002)). In essence, this "doctrine covers 'those elements of a work that necessarily result[ ] from external factors inherent in the subject matter of the work.'" *Silvertop*, 931 F.3d 215 (quoting *Dun & Bradstreet*, 307 F.3d at 215). "As with merger, the *scènes à faire* doctrine seeks to curb copyright's potential to allow monopolizing an underlying idea—via features that are so common or necessary to that idea's expression that copyrighting them effectively copyrights the idea itself." *Silvertop*, 931 F.3d at 223.

Sagitec's arguments relating to *scènes à faire* largely mirror its arguments relating to merger. Sagitec argues that the ICON files are composed only of elements that are "standard, stock, or common" to all user interface systems, and that they are little more than an implementation of the NASWA-required elements. D.I. 392 at 18. Similarly, Sagitec argues that the database tables represent nothing more than "standard programming techniques." *Id.* at 24–25.

Deloitte's responses are similar to those it raises relating to merger. Deloitte argues that while it chose one way of creating the ICON files, there were many other ways that it could have implemented that functionality. D.I. 396 at 16–17. In particular, Deloitte cites the testimony of

13

NASWA's representative that NASWA does not require a specific implementation of the code, and it argues that much of the material on which Sagitec relies post-dates when Deloitte created its code. *Id.* For the database tables files, Deloitte argues that there are no common or stock software engineering principles that apply to designing such a database structure, and that there is no external guideline that would force a party in Deloitte's position to adopt specific field names for use in its tables.

For the same reasons discussed above relating to its merger arguments, Sagitec has not made a sufficient argument relating to *scènes à faire* to justify a hearing on the issue. Even if Deloitte was constrained to use specific variables or elements in order to properly communicate with ICON, that does not mean that the remainder of the code was predetermined by those requirements. Similarly, there are multiple ways to name variables and store values in a database table, and it does not appear that the nature of the software implementing those tables or the selection of variable names would be externally required or inherent in the nature of the code at issue in this case.

### e. The Copyright Claims Can Be Submitted to a Properly Instructed Jury

Even if Deloitte's code contains uncopyrightable elements, that does not foreclose putting the question of copyright infringement before a properly instructed jury. The Third Circuit has endorsed submitting the question of substantial similarity to a jury, even if the work at issue contains certain unprotectable elements, and even in cases in which the work is "entirely a compilation of unprotectable elements." *Tanksley v. Daniels*, 902 F.3d 165, 175 (3d Cir. 2018).

> There is obvious tension between the imperative to filter out unprotectable elements of a work while keeping sight of the work's total concept and feel (which necessarily includes unprotectable elements). We reconcile these competing considerations by recalling that the basic inquiry remains whether an ordinary observer would perceive that the defendant has copied protected elements of the

plaintiff's work. Other filters, e.g., *scènes à faire*, total concept and feel, etc., while helpful, are merely tools to assist the trier of fact in reaching a proper conclusion. *Id.*

Given the factual disputes at issue, the appropriate resolution of this dispute is to instruct the jury on the legal requirements for copyrightability as part of the jury's overall determination of whether there is substantial similarity between the works.

## II.    Conclusion

Sagitec's motion for a copyrightability hearing is denied.

\* \* \* \* \*

A number of the parties' submissions relating to their pretrial motions have been filed under seal. For that reason, this order is being filed under seal to avoid the inadvertent disclosure of confidential materials. Within five business days of the filing of this order, the parties are directed to file with the court a redacted version of this order, redacting any materials that the parties believe should be sealed because of confidentiality concerns. Any claim that particular material should be sealed must be supported by a compelling showing of particularized need for the designated material to be protected against disclosure.

IT IS SO ORDERED.

SIGNED this 25th day of June, 2026.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

15