**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DELOITTE CONSULTING LLP AND DELOITTE DEVELOPMENT LLC, <br><br> Plaintiffs, <br><br> v. <br><br> SAGITEC SOLUTIONS LLC, <br><br> Defendant. | ) ) ) ) ) ) ) C.A. No. 23-325-WCB ) ) ) ) ) ) |

**DELOITTE'S PROPOSED VERDICT FORM**

**Copyright Claim**

1.      Do you find that Deloitte has proven by a preponderance of the evidence that Sagitec infringed Deloitte's copyrights in the uFACTS computer program? [i,ii]

Yes _____ (finding for Deloitte)

No _____ (finding for Sagitec)

*If you answered "Yes," to Question 1, please proceed to Question 2.  If you answered "No," to Question 1, please proceed to Question 3.*

2.      What is the dollar amount of compensatory damages, if any, Deloitte is entitled to receive for Sagitec's infringement of Deloitte's copyrights, from January 1, 2014, to today?

$_____

*Please proceed to Question 3.*

**Trade Secret Claim**

3.    Do you find that Deloitte has proven by a preponderance of the evidence that Sagitec misappropriated one or more of its trade secrets? [iii] [iv]

Yes _____ (finding for Deloitte)

No _____ (finding for Sagitec)

*If you answered "Yes," to Question 3, please proceed to Question 4.  If you answered "No" to Question 3, please proceed to the end of this Form.*

4.    What is the dollar amount of compensatory damages, if any, Deloitte is entitled to receive for the misappropriation of its trade secrets from Sagitec, from March 28, 2019 to today?

$_____

*Please proceed to Question 5.*

5.    Do you find that Deloitte is entitled to recover punitive damages?

Yes _____ (finding for Deloitte)

No _____ (finding for Sagitec)

*If you answered "Yes" to Question 5, please proceed to Question 6.  If you answered "No" to Question 5, please proceed to the end of the Form.*

6.    What is the dollar amount of punitive damages Deloitte is entitled to receive from Sagitec?

$_____

2

*You have now reached the end of the verdict form and should review it to ensure it accurately reflects your unanimous determinations. Each juror should then sign and date the verdict form in the spaces below and notify the Security Guard that you have reached a verdict.*

I attest that the foregoing accurately reflects the jury's decision.

1. _____
   Presiding Juror Signature

2. _____

3. _____

4. _____

5. _____

6. _____

7. _____

8. _____

9. _____

10. _____

11. _____

12. _____

_____
Date

*You are finished.  Please provide this completed form in a sealed envelope to the Marshal.*

---

i   Deloitte's Position: The term "uFACTS" is properly used to refer to the computer program that is asserted in this lawsuit, which has been the name of the program used through the litigation. Moreover, the law is clear that even where multiple certificates of registration are issued for different versions of a work or even multiple works in a television or literary series, they may be aggregated when analyzing a copyright claim. *See Thomson Reuters Enter. Ctr. gmbH v. Ross Intelligence, Inc.*, 765 F. Supp. 3d 382, 392 (D. Del. 2025) (copyrighted work referred to as Westlaw despite numerous registrations from 1981 to 2019); *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 396–97 (D.N.J. 2012) (discussing different versions of *Tetris* electronic game in the aggregate as *Tetris*); *see also Castle Rock Ent. v. Carol Publ'g Grp.*, 150 F.3d 132, 138 (2d Cir. 1998) (treating 82 separate episodes of *Seinfeld* television series "as a single work"); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1372–73, 1381 (2d Cir. 1993) (comparing infringing book to 8 episodes of *Twin Peaks* that were treated as a whole); *Wainwright Secs. Inc. v. Wall St. Transcript Corp.*, 558 F.2d 91, 94

(2d Cir. 1977), *cert. denied,* 434 U.S. 1014 (1978) (addressing abstracts of research reports cumulatively); *Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 535 (S.D.N.Y. 2008) (discussing infringement of seven *Harry Potter* novels and two companion books in the aggregate). Sagitec's reliance on *TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 51 (1st Cir. 2020), and the Court's Summary Judgment Order D.I. 376, is misplaced. Nothing in those authorities prohibits, much less addresses, the use of a collective term to refer to multiple registered versions of the same work. Moreover, Sagitec's reliance *Ollnova Technologies, Ltd. v. ecobee Technologies ULC* is equally unpersuasive. No. 25 Civ. 1045, 2026 WL 1596936, at *7 (Fed. Cir. June 4, 2026). *Ollnova* was a patent case where the court found the verdict form improperly combined distinct patents—each covering different technologies with different claims—into a single infringement question. *Id.* Unlike *Ollnova*, the three registered versions of uFACTS are successive iterations of a single computer program. There is no risk that a verdict referencing "the uFACTS computer program" will obscure which work the jury found to have been infringed because all three versions are versions of the same computer program.

With respect to date of publication, as the owner of a copyright can register the original work "at any time" and the registration applies to all "the material deposited," when a derivative work includes copyrightable elements of an unregistered original work, "the owner's registration of the derivative work also registers the included elements of the original work." *Enter. Mgmt. Ltd. Inc. v. Construx Software Builders, Inc.*, No. 22 Civ. 35345, 2023 WL 4554536, at *5-6 (9th Cir. 2023) ("All circuits that have addressed this issue agree with this conclusion."); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 741, 746 (2d Cir. 1998); *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1143 (10th Cir. 2009) ("[I]f the same party owns a copyright in both a derivative work . . . and the underlying work that is incorporated in the derivative work, registration of a copyright in the derivative work is sufficient to permit an infringement action on either the preexisting . . . material or on any newly contributed material."); *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 539 (4th Cir. 2007) (holding that a copyright owner's registration of a derivative work also registered the elements of the owner's original work that appeared in the derivative work). This is also consistent with both major treatises on copyright. 2 Nimmer on Copyright § 7.16[B][5][c] (2023); William Patry, 5 Patry on Copyright § 17:89 (March 2010) ("Where the original work is unregistered but the derivative work is registered and the same party owns both the original and the derivative work, registration of the derivative work provides subject-matter jurisdiction to sue for infringement of both works so long as the infringed preexisting material is also contained in the derivative work."). And it is also consistent with the fact that registration does not create the copyright, the copyright inheres when the work is created, and registration is simply required for subject matter jurisdiction – it "does not impose a heavy burden on the copyright owner." *Enter. Mgmt. Ltd. Inc.*, 2023 WL 4554536, at *5 (citing *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (noting that the registration requirement "is akin to an administrative exhaustion requirement" and that the owner has a copyright "immediately upon the work's creation"). As a result, whether Deloitte's registered work incorporated its own unregistered original material, published or not, is irrelevant under the case law. To the extent Sagitec is claiming the publication date in the registration is wrong because the "Go Live" constituted publication, an error in publication date is considered immaterial and does not render the registration invalid. *Gallup, Inc. v. Kenexa Corp*., 149 F. App'x 94, 96 (3d Cir. 2005). Here, all the asserted works are versions of the same uFACTS computer program, and the "express disclaimer of prior published code" to which Sagitec refers describes how each registered version of the work builds on the last. Thus, it is unsurprising that the earlier "uFACTS 2013 – NM" version might contain differences from the later, complete "uFACTS 2013 – MA" version, and whether there are fewer files in an earlier version does not speak to whether the works are appropriately discussed as a whole. Sagitec's effort to distinguish between these different versions of the uFACTS computer program is thus highly misleading and prejudicial.

In any event, Deloitte's proposed verdict form also properly leaves the issue of publication to the jury instructions. This Court already determined at summary judgement that "The question to be resolved is therefore what, if any, [of Deloitte's copyrighted] code was 'published.'" D.I. 376 at 22. In a case this Court found "persuasive," distribution of a copyrighted work to a limited group for specific purposes did not constitute "publication" under the Copyright Act. D.I. 376 at 24; *see Lish v. Harper's Mag. Found.*, 807 F. Supp. 1090, 1101–02 (S.D.N.Y. 1992). The proper method to address the issue of publication is through a jury instruction—not a standalone verdict form question. The legal definition of "publication" is a technical concept that requires contextual explanation to avoid jury confusion. The use of the jury instruction to address publication will allow the Court to define the term, explain its application, and guide the jury's analysis.

4

Accordingly, Deloitte's proposed instruction above addresses this issue appropriately. Deloitte's verdict form questions on copyright and trade secret liability properly do not reference the statute of limitations.

Finally, with regard to the statute of limitations, it is an affirmative defense on which the defendant has the burden of proof. Fed. R. Civ. P. 8(c)(1). It is not an element of Deloitte's copyright or trade secret claim. *See Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."); *Integrated Cash Mgmt. Servs., Inc. v. Digit. Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990). Sagitec's reliance on the Court's summary judgment rulings about the relief available to Deloitte further confirms Deloitte's approach of confining the statute of limitations period to its compensatory damages question, and Sagitec's stated concern about an "undifferentiated verdict" based on purportedly time-barred conduct is fully addressed by specifying the recovery period in those damages questions without recasting the liability question. Deloitte's verdict form thus correctly accounts for the statute of limitations by specifying the relevant period for which damages may accrue in its compensatory damages questions.

ii   <mark>Sagitec's Position</mark>: Deloitte's proposed verdict form improperly refers to "the uFACTS computer program" as a singular work, but Deloitte's copyright infringement claim is limited to the three specific versions of software registered with the United States Copyright Office. 17 U.S.C. § 411(a). The scope of the copyright registration defines the scope of the claim of infringement that the copyright owner can assert in litigation. *TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 51 (1st Cir. 2020) (citing *Fourth Estate Pub. Benefit Corp.*, 139 S. Ct. at 887); *Deloitte Consulting LLP v. Sagitec Sols. LLC*, 2026 U.S. Dist. LEXIS 41028, at *25 (D. Del. Feb. 19, 2026) [[Summary Judgment Order, D.I. 376, at 16]]. Where there are multiple different versions of a particular work, each version constitutes a separate work. *Deloitte Consulting*, 2026 U.S. Dist. LEXIS 41028, at *25. Here, Deloitte asserts three separately registered works—"uFACTS (NM: Tax and Benefits)," "uFACTS (Mass: Tax)," and "uFACTS (Mass: Benefits)." Collapsing these distinct registered works into a single, monolithic "uFACTS" would obscure which registered work was infringed and whether the portions Deloitte claims were copied fall within each registration's coverage and disclaimers. As just one example of this, although Deloitte claims "[t]here is no risk that a verdict referencing 'the uFACTS computer program' will obscure which work the jury found to have been infringed because all three versions are versions of the same computer program," its expert Dr. Krein asserts there are over *17,000* files present in Deloitte's "uFACTS 2013 – MA" source code production that are not present in its "uFACTS 2013 – NM" source code production. *See* D.I. 279, Ex. 1 (Krein Report) ¶ 526 (listing number of files in each production). This failing renders any infringement verdict under Deloitte's proposed verdict form unable to be properly assessed in post-trial motions or on appeal. *See, e.g., Ollnova Techs., Ltd. v. ecobee Techs. ULC, d/b/a ecobee*, C.A. No. 2025-1045, Dkt. No. 78 (Fed. Cir. June 4, 2026) (finding district court's verdict form "improperly combined all Asserted Patents into a single infringement question and permitted the jury to find liability without unanimous agreement that ecobee infringed any particular claim of any patent"). Sagitec's proposed verdict form corrects this issue by questioning the jury about the specific versions at issue rather than Deloitte's vague and inaccurate terminology. Where plaintiffs assert separately registered works, courts permit separate questions on the verdict form. *See Consulnet Computing, Inc. v. Moore*, 2008 U.S. Dist. LEXIS 57545, at *6 (E.D. Pa. July 29, 2008) (verdict form with separate infringement questions for each of multiple copyright registrations); *Healthmate Int'l, LLC v. French*, 2017 U.S. Dist. LEXIS 214506, at *8-9 (W.D. Mo. Oct. 31, 2017) ("In this way, the parties and the Court could be insured that the jury [] considered each copyright separately . . . .").

Deloitte's cited authorities are inapposite because each concerned a single, unified work analyzed as a whole for substantial-similarity purposes, not separate registrations carrying different first-publication dates and different disclaimers of prior published code. *See Thomson Reuters Enter. Ctr. GmbH v. Ross Intelligence, Inc.*, 765 F. Supp. 3d 382, 392 (D. Del. 2025) (Thomson Reuters "docketed registrations from 1981 to 2019," "[s]o it has a valid compilation copyright. But if Thomson Reuters chooses to try this case based on a theory of infringement of individual headnotes as individual works rather than infringement of the compilation as a whole, there is still a factual dispute about which individual headnotes are both within the period covered by Thomson Reuters's registrations and not in the public domain."); *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 399 (D.N.J. 2012) (resolving motion for summary judgment of infringement, noting defendant "acknowledges that Tetris Holding owns the registered copyrights to the various iterations of *Tetris*"); *Castle Rock Entm't v. Carol Publ'g Grp.*, 150 F.3d 132, 138 (2d Cir. 1998) ("As in *Twin Peaks*, for the purposes of the quantitative copying analysis we shall treat *Seinfeld*—a discrete, continuous television series—as a single work.").

5

*Wainwright Secs. v. Wall St. Transcript Corp.* does not support Deloitte's proposition. The court consistently referred to the infringed "reports" and "abstracts" in the plural sense. *See* 558 F.3d 91, 93-94 (2d Cir. 1977). And there, the defendant copied each of the abstracts in the same way (by publishing them in its weekly newspaper). *Id.* at 93. So, the court concluded "Wainright's <u>reports</u> were copyrighted[.]" *Id.* at 94. Even where multiple works are grouped for the comparison exercise, courts still treat each registered work separately for liability and damages. *See Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1381 (2d Cir. 1993) (eight separately registered teleplays were "eight separate works" warranting separate statutory awards); *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, (S.D.N.Y. 2008) ("[T]he Court awards Plaintiffs the minimum award under the statute for each work with respect to which Plaintiff's have established infringement. Plaintiffs are entitled to statutory damages of $750.00 for each of the seven *Harry Potter* novels and each of the two companion books[.]"). Here, the scope of each registration—and its express disclaimer of prior published code—defines the scope of the corresponding infringement suit claim.

Deloitte's proposed verdict form fails to account for its burden to prove that the portions of the asserted works that Deloitte claims were infringed by Sagitec are covered by Deloitte's registrations or whether registration of these portions were expressly disclaimed by Deloitte's assertion that its registrations exclude "prior published code." The scope of the copyright registration defines the scope of the claim of infringement that the copyright owner can assert in litigation. *TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 51 (1st Cir. 2020) (citing *Fourth Estate Pub. Benefit Corp.*, 139 S. Ct. at 887); *Deloitte Consulting LLP v. Sagitec Sols. LLC*, 2026 U.S. Dist. LEXIS 41028, at *25 (D. Del. Feb. 19, 2026) [[Summary Judgment Order, D.I. 376, at 16]]. Where there are multiple different versions of a particular work, each version constitutes a separate work. *Deloitte Consulting*, 2026 U.S. Dist. LEXIS 41028, at *25. Deloitte's June 29, 2018 registrations for the works titled "uFACTS (NM: Tax and Benefits)" and "uFACTS (Mass: Benefits)" each expressly disclaimed registration for "[p]rior published code." According to Deloitte's registrations, the work titled "uFACTS (NM: Tax and Benefits)" was first published June 06, 2013, and the work titled "uFACTS (Mass: Benefits)" was first published October 17, 2013. Any material that was published under the definition of 17 U.S.C. § 101 is thus not within the scope of Deloitte's registrations and may not form the basis of any finding of copyright infringement. 17 U.S.C. § 411(a). Sagitec's proposed verdict form resolves this issue by separately questioning the jury about publication.

Publication is an objective act under 17 U.S.C. § 101—distribution to the public by sale or other transfer—and the statute contains no exception for a "draft." *See Milton H. Greene Archives, Inc. v. BPI Communs., Inc.*, 378 F. Supp. 2d 1189, 1199 n.10 (C.D. Cal. 2005) ("[T]he forfeiture resulting from publication occurs as a matter of law regardless of intent."). Deloitte's derivative-work-registration argument does not avoid the disclaimer: Deloitte cannot use derivative-registration doctrine to recapture material that it expressly disclaimed as prior published code, and that disclaimer is an affirmative limitation on the registration's scope, not an immaterial error in a registration date. Neither party has asserted any "error" in the identified publication date for any of Deloitte's registered works.

Deloitte's proposed verdict form fails to account for its burdens to establish infringement and misappropriation within the applicable statutory periods, especially given the Court's finding at summary judgment that Deloitte was on notice of its claims by September 2018. D.I. 376 at 32. 17 U.S.C. § 507(b); 11th Circuit Pattern Jury Instructions (Dec. 2025 Revisions), Instruction No. 9.29 ("Each act of infringement is a separate harm that creates an independent claim for relief. The statute of limitations only prevents [name of plaintiff] from recovering remedies for infringing acts that occurred more than three years before [name of plaintiff] filed [his/her/its] lawsuit."); D.I. 376 at 32 ("Deloitte has not put forth any evidence from which a reasonable jury could conclude that Deloitte was not on notice of its claims as of September 2018."); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 672 (2014*)* ("[W]hen a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (*i.e.*, acts within the three-year window), but untimely with respect to prior acts of the same or similar kind."), 671 n.6 ("separately accruing harm should not be confused with harm from past violations that are continuing."); Minn. Stat. § 325C.06 ("An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim."); D.I. 376 at 38 ("Deloitte's request for money damages for alleged violation of New York trade secret law is subject to the three-year statute of limitations."), at 49

(damages for Deloitte's state law trade secret claim "stemming from injuries that occurred more than three [years]" before "the filing of the [March 23, 2023] Complaint will be time-barred."); at 49 (finding fact question as to "what, actions, if any by Sagitec during the relevant period would constitute misappropriation and whether any of those actions would be sufficient to establish a continuing tort."). Sagitec's proposal provides a framework to account for Deloitte's remaining statute of limitation issues.

The references to conduct occurring after March 23, 2020 do not convert the statute of limitations into an element of Deloitte's claims or improperly shift any burden to Deloitte. They implement this Court's summary judgment rulings. As the Court recognized at summary judgement, the party asserting a limitations defense bears only the *initial* burden to show that the plaintiff had sufficient information regarding possible wrongdoing to be on notice of its claim; once that showing is made, the burden shifts to the plaintiff to show that it exercised reasonable diligence and still could not have discovered its injuries. D.I. 376 at 28–29. Here, the Court found that Sagitec carried its initial burden and that "Deloitte has not put forth any evidence from which a reasonable jury could conclude that Deloitte was not on notice of its claims as of September 2018." D.I. 376 at 32 (citing D.I. 280, Ex. 31.) The burden question is therefore not an open jury issue that the verdict form improperly shifts—it has already been resolved. The Court also held that any damages or relief stemming from alleged trade secret misappropriation that occurred more than three years before the March 23, 2023 Complaint are time-barred, and left for trial only what acts, if any, by Sagitec during the actionable period constitute misappropriation. D.I. 376 at 48–49. Tying the jury's liability and damages findings to conduct within the limitations period conforms the verdict to the Court's previous rulings and prevents an undifferentiated verdict resting on time-barred conduct.

iii   **Deloitte's Position**: Deloitte's proposed verdict form properly asks the jury whether Deloitte has proven that Sagitec misappropriated one or more of its trade secrets. There is no categorical requirement—nor does Sagitec cite any—that a verdict form must list every individual trade secret. Indeed, numerous courts have used the same approach. *See* Verdict Form, *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.,* No. 15 Civ. 0211 (S.D.N.Y. 2020),, D.I. 931 at 2 (verdict form not listing out each trade secret and asking only if plaintiff proved "that it possessed one or more trade secrets that was/were misappropriated."); Final Verdict Form, *Sabatino Bianco, M.D., v. Globus Med., Inc.*, No. 12 Civ. 0147 (E.D. Tex. 2014), D.I. 228 at 1 (verdict form not listing all trade secrets but merely asking "Do you find that Dr. Bianco has proved by a preponderance of the evidence that Globus Medical, Inc., misappropriated a trade secret belonging to Dr. Bianco?"); Final Verdict Form, *Vesata Software, Inc. et al v. Internet Brands, Inc.*, No. 08 Civ. 313 (E.D. Tex. 2012), D.I. 286 at 9 (trade secret verdict form not listing each trade secret, but merely asking whether plaintiff "has proved by a preponderance of the evidence that [defendant] misappropriated [plaintiff]'s alleged trade secret(s) in applications and components provided to Toyota in 1998?"). Sagitec's authorities do not support importing its structure into the verdict form. None of its authorities require a verdict form to separately question the jury on each asserted trade secret. Moreover, *Ollnova Technologies, Ltd. v. ecobee Technologies ULC* is an inapposite patent decision concerning the combination of distinct asserted patents into a single infringement question and does not govern trade secret verdicts. No. 25 Civ. 1045, 2026 WL 1596936, at *7 (Fed. Cir. June 4, 2026). Accordingly, Deloitte's proposed verdict form appropriately frames the misappropriation question for the jury. As to identification of Deloitte's trade secrets, that will be satisfied by the parties identifying them during the case—not by enumerating each item on the verdict form itself. Sagitec's citation to the verdict form in *Steves & Sons, Inc. v. JELD-WEN, Inc.* that listed every single trade secret does not compel a different result—Sagitec cannot realistically claim that requiring a jury to wade through an 80+ page verdict is efficient, straightforward, and unprejudicial.

iv   **Sagitec's Position**: Deloitte's proposed verdict form improperly groups the 74 separate alleged trade secrets asserted by Deloitte together into a single question, and fails to question the jury about which alleged trade secret, if any, form the basis of the jury's response. *Guy Carpenter & Co. v. John B. Collins & Assocs.*, No. 05-1623 (JRT/FLN), 2006 U.S. Dist. LEXIS 61765, at *7 (D. Minn. Aug. 29, 2006) ("[F]ailure to identify trade secrets with specificity renders the Court powerless to enforce a trade secret claim."); 1B N.Y. Pattern Jury Instr.—Civil 3G 4 Intro. 1 (3d ed. 2019) (citing *Valkyrie AI LLC v. PricewaterhouseCoopers LLP*, 233 AD3d 460, 221 NYS3d 101 (1st Dept 2024) ("Plaintiff must precisely identify the trade secrets it alleged that defendant misappropriated. The allegations must be more than a collection of 'broad concepts,' and cannot be readily available to the public."); Final Instructions *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Group, Inc.,* No. 15-cv-00211-LGS-SDA, Dkt. No. 953 at 851 ("You should consider several factors to

7

determine whether any of the 104 items that [Plaintiff] claims are trade secrets in fact rise to the level of a trade secret.") (S.D.N.Y. 2020). This failing renders any misappropriation verdict under Deloitte's proposed verdict form incapable of being properly assessed in post-trial motions or on appeal. *See, e.g.*, *Ollnova Techs., Ltd. v. ecobee Techs. ULC, d/b/a ecobee*, C.A. No. 2025-1045, Dkt. No. 78 (Fed. Cir. June 4, 2026) (finding district court's verdict form "improperly combined all Asserted Patents into a single infringement question and permitted the jury to find liability without unanimous agreement that ecobee infringed any particular claim of any patent"). The principle *Ollnova* applied is not unique to patents: a verdict form may not be structured so that jurors can return a single liability finding without agreeing on, and identifying, the same underlying conduct that satisfies the claim. Given that Deloitte has asserted 74 different alleged trade secrets, the risk in this case is particularly acute. If the jury finds fewer than all 74 asserted items are trade secrets and there has been misappropriation, an aggregated question will not allow for a review of whether any damages award rests on items for which the jury found liability or those it did not. This is a significant risk here given that: (1) there is disparate evidence regarding whether each of the 74 alleged trade secrets are in fact trade secret (as opposed to public records available upon request to any who ask) and (2) Deloitte has chosen to proffer only damages calculations relating to the collective of all of the 74 alleged trade secrets as a group as opposed to any evidence relating to individual alleged trade secrets. It is possible under Deloitte's flawed verdict form proposal that the jury could reach a finding of liability without unanimous agreement that Sagitec misappropriated any particular alleged trade secret—or indeed, with each juror finding misappropriation of a *different* trade secret. Sagitec's proposed verdict form corrects this issue by questioning the jury about each trade secret individually rather than Deloitte's vague and inaccurate terminology. Contrary to Deloitte's position, courts have deemed fit to separate each trade secret. In *Steves & Sons, Inc. v. JELD-WEN, Inc.,* not only did the court ask the jury to make a determination as to each of 67 enumerated trade secrets, it required the jury to do so *twice* because plaintiff had asserted both federal and state trade secret claims—resulting in a 80+page verdict that the jury had no trouble completing. Verdict Form, *Steves & Sons, Inc. v. JELD-WEN, Inc.*, Civil Action No. 3:16-cv-545 (E.D. Va. May 10, 2018) (D.I. 1609), *aff'd*, 988 F.3d 690 (4th Cir. 2021).